**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC.; ASBURY FT. WORTH FORD, LLC, d/b/a DAVID MCDAVID FORD FT. WORTH; MCDAVID FRISCO – HON, LLC, d/b/a DAVID MCDAVID HONDA OF FRISCO; MCDAVID IRVING – HON, LLC, d/b/a as DAVID MCDAVID HONDA OF IRVING; and ALI BENLI, | No. _____ |
| *Plaintiffs*, | |
| v. | |
| THE FEDERAL TRADE COMMISSION and LINA M. KHAN, REBECCA KELLY SLAUGHTER, ALVARO BEDOYA, MELISSA HOLYOAK, and ANDREW FERGUSON in their official capacities as Commissioners of the Federal Trade Commission, | |
| *Defendants*. | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF

The Asbury Plaintiffs[1] respectfully state as follows for their Complaint seeking injunctive and declaratory relief for deprivation of their constitutional rights against Defendants, the Federal Trade Commission (the "FTC" or "Commission") and FTC Commissioners Lina M. Khan, Rebecca Kelly Slaughter, Alvaro Bedoya, Melissa Holyoak, and Andrew Ferguson in their official capacities (collectively, the "Commissioners").

---

[1] The "Asbury Plaintiffs" are Asbury Automotive Group, Inc.; three affiliated dealerships in the Dallas-Ft. Worth ("DFW") area Asbury Ft. Worth Ford, LLC d/b/a David McDavid Ford Ft. Worth, McDavid Frisco – Hon, LLC d/b/a David McDavid Honda of Frisco, and McDavid Irving – Hon, LLC d/b/a David McDavid Honda of Irving (collectively, the "David McDavid Dealerships")—and Ali Benli ("Mr. Benli")

## NATURE OF THE ACTION

1.      The Asbury Plaintiffs seek injunctive and declaratory relief to prevent irreparable harm to their business, reputation, and constitutional rights—including their rights to due process and trial by jury—with which they are threatened as a result of the FTC's pending administrative proceeding styled *In the Matter of Asbury Automotive Group, Inc*. et. al., FTC Docket No. D-9436 (the "FTC Proceeding").  The FTC Proceeding began on August 16, 2024 with the filing of an administrative complaint (the "FTC's Complaint").  Unless enjoined, the Complaint filed by the FTC will be the subject of an "evidentiary hearing" (*i.e.*, a non-jury trial) before an administrative law judge ("ALJ") employed by the FTC.  The evidentiary hearing is scheduled to begin April 16, 2025 and could last as long as 210 hours.

2.      The Commission filed its Complaint after the Asbury Plaintiffs refused to agree to an unreasonable "consent order" that would have prevented them from, among other things, selling lawful products supplied by third parties while also requiring an exorbitant payment to avoid the FTC's issuance of a press release and public filing of incendiary claims.  The headline of the FTC's August 16, 2024 press release announcing its filing against the Asbury Plaintiffs states: "FTC Takes Action Against Auto Dealer Group Asbury Automotive for Discriminating Against Black and Latino Consumers and Charging for Unwanted Add-Ons."[2]  This announcement came more than two years after the August 1, 2022 issuance of a FTC Civil Investigative Demand ("CID") to Plaintiff Asbury Automotive Group, Inc. It was  preceded by other FTC press releases announcing "settlements" with other auto dealers accused of practices similar to those that the FTC has since attributed to the Asbury Plaintiffs.[3]

---

[2]    *See*   www.ftc.gov/news-events/news/press-releases/2024/08/ftc-takes-action-against-auto-dealer-group-asbury-automotive-discriminating-against-black-latino.

[3] Commissioner Fergason filed a Concurring Statement in Asbury wherein he wrote "The reader can do the math. The majority has advanced its novel theory in a case no court will decide but omitted it from a proceeding that could very

3.      The Complaint that the FTC ultimately filed against the Asbury Plaintiffs alleges

violations of the Federal Trade Commission Act (the "FTC Act") and the Equal Credit Opportunity

Act ("ECOA").[4]  These claims are based on allegations that, in the process of selling cars and

trucks, the David McDavid Dealerships:

>    a.      charge consumers for additional items ("add-ons"), such as service
>
> contracts, maintenance contracts, or chemical coatings, on top of the price of the vehicle
>
> without obtaining consumers' consent (notwithstanding the consumers' written
>
> confirmation of such consent);
>
>    b.      misrepresent that the charges are required; and
>
>    c.      charge Black and Latino consumers more than non-Latino White consumers
>
> for add-ons.

4.      Before commencing the FTC Proceeding, the Commission refused to identify the

consumers who were allegedly harmed by these alleged practices or to produce any complaints

upon which these allegations were based. The Commission also refused to turn over a so-called

"survey" that allegedly supported such claims. Nor would the Commission provide an alleged

analysis that it said supported its "disparate impact" claims. The Commission asserted the

---

well go to court [although subject to "substantial evidence review"]. The only inference to draw is that the majority does not want a court to look under the hood of its new Section 5 theory." He also enunciated "reservations about whether ECOA satisfies the statutory requirements for dispart-impact liability…" https://www.ftc.gov/system/files/ftc_gov/pdf/ferguson-asbury-concurrence-8.16.2024.pdf

He referred to his Concurring and Dissenting Statement the day prior in Coulter Motor Company, LLC https://www.ftc.gov/system/files/ftc_gov/pdf/commissioner-ferguson-concurring-statement-coulter.pdf.          For example, an April 1, 2022 press release announcing "FTC Takes Action Against Multistate Auto Dealer Napleton for Sneaking Illegal Junk Fees onto Bills and Discriminating Against Black Consumers" (www.ftc.gov/news-events/news/press-releases/2022/04/ftc-takes-action-against-multistate-auto-dealer-napleton-sneaking-illegal-junk-fees-bills) was followed by an April 4, 2022 posting on the FTC's "business blog" proclaiming "Record-setting $10 million FTC-Illinois settlement takes on car dealers' unauthorized add-ons and discriminatory lending practices" (www.ftc.gov/business-guidance/blog/2022/04/record-setting-10-million-ftc-illinois-settlement-takes-car-dealers-unauthorized-add-ons-and).

[4]   The redacted public version of the FTC's Complaint is available at www.ftc.gov/system/files/ftc_gov/pdf/d9436_asbury_p3_complaint_public_redacted.pdf.

Commission's "policy" of not disclosing such information before filing an administrative action or lawsuit in court—even though the Commission has not formally adopted or published any such policy.[5] The Commission advised that the materials would be provided after it filed suit.

5.      In fact, the alleged "policy" is illusory.  To this day, the Commission still refuses to disclose the information providing the key support for the allegations of its own Complaint that the Commissioners voted to file,[6] that the Commission widely publicized in a press release, and that the Commission's ALJ will adjudicate (subject to the Asbury Plaintiffs' right of appeal—to the Commission).  Upon filing its Complaint, the FTC harmed the Asbury Plaintiffs by issuing a very public press release announcing that "[a] survey of customers across the dealerships showed that as many as 75 percent of consumers reported that they were charged for add-on products and services they did not authorize or were falsely told were required" and that "Asbury discriminates against Black and Latino consumers, targeting them with unwanted and higher-priced add-ons."[7] However, even after the filing of its Complaint, the FTC continues to refuse to produce, in response to formal discovery,  its alleged "survey," disclose how it even determined the race of the allegedly injured consumers (a consumer's race is not collected by the Asbury Plaintiffs, nor is it disclosed on consumers' drivers' licenses), and produce its disparate impact analysis.  The justification cited by the FTC—in addition to vague claims of "privilege"—includes the FTC Rules of Practice for

---

[5] Commissioner Holyoak criticized this practice and the use of disparate impact analysis in her August 16, 2024 Statement issued upon voting to file the administrative action. https://www.ftc.gov/system/files/ftc_gov/pdf/commissioner-holyoak-statement-re-asbury8-16-24.pdf

She also incorporated her Dissenting and Concurring Statement issued the previous day in Coulter. https://www.ftc.gov/system/files/ftc_gov/pdf/commissioner-holyoak-statement-re-asbury8-16-24.pdf

[6] Calling into question whether or not a legitimate "survey" or disparate impact analysis actually existed when the FTC issued its press release.

[7] *See* www.ftc.gov/news-events/news/press-releases/2024/08/ftc-takes-action-against-auto-dealer-group-asbury-automotive-discriminating-against-black-latino.

Adjudicative Proceedings (the "FTC Rules")[8] and the FTC ALJ's Scheduling Order.[9]  If and only if the FTC's testifying expert eventually decides to rely upon this alleged evidence will the FTC perhaps make this information available to the Asbury Plaintiffs—on February 24, 2025, *after* the February 18, 2025 close of fact discovery set by the ALJ's Scheduling Order.[10]  Further depriving the Asbury Plaintiffs' of their due process rights, the Scheduling Order—entered over their objection—and the FTC Rules that it references allow them a mere 14 days after learning the identity of the FTC's expert(s) and receiving and reviewing the FTC's expert reports to identify and retain a contrary expert, have that expert produce an expert report, and produce it.[11]

6.      Regardless of when and whether the FTC retains an expert, in an Article III court the Asbury Plaintiffs would be entitled to know the facts upon which the allegations of the FTC's Complaint are based.  The pending in-house adjudication by the FTC deprives the Asbury Plaintiffs of this basic principle of due process.  The FTC has refused to provide the evidence that the Asbury Plaintiffs need to defend themselves as part of the Mandatory Initial Disclosures required by the FTC's own procedural rules, such as they are.  In an effort to obtain this information, the Asbury Plaintiffs served discovery requests on the FTC on the earliest possible date.  The FTC responded with "Specific Responses and Objections" claiming that the answers are *somewhere* among the 10,000 documents that Plaintiff Asbury Automotive Group, Inc.

---

[8] The FTC Rules are available at www.ecfr.gov/current/title-16/chapter-I/subchapter-A/part-3.

[9] *See, e.g.*, FTC's Objections to Asbury's Requests for Production at Objection to Request No. 6, 8-11 ("Accordingly, Complaint Counsel will not produce documents responsive to this Request"). Interestingly, in the objections, the FTC takes the position that the objections are only those of "Complaint Counsel" and that the Commission itself—the ultimate finder of law and fact in the ALJ administrative process-- may have other privileges or objections preventing production of responsive information.  *Id.* at General Response 6 (sic actually the second General Response numbered 6) ("Privileges held by the Commission (not Complaint Counsel) can only be waived by the Commissioner."). As a result of the FTC's Rules and the Scheduling Order, the Asbury Plaintiffs may never be allowed to know if the allegations made in the FTC's public press release and in the FTC's Complaint were actually true or if they themselves were misrepresentations made to consumers.

[10] *See* Scheduling Order at 2.

[11] *See* Scheduling Order at 2; FTC Rule § 3.31A.

produced during the course of the FTC's two-year investigation[12].  Only the FTC knows exactly where, but it isn't telling.  The FTC claims that it would be unduly "burdensome" for the FTC to identify the particular documents by Bates numbers.  In an Article III court, this and other cynical gamesmanship would not be tolerated.  In FTC administrative adjudications, it is apparently standard operating procedure.

7.     In this Complaint, the Asbury Plaintiffs do not seek to litigate the merits of the Commission's accusations against them in the FTC Proceeding.  Instead, the Asbury Plaintiffs seek to enjoin the FTC Proceeding while the Court considers the merits to their challenge to its constitutionality.  Like the litigants in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), the Asbury Plaintiffs are parties to "an illegitimate proceeding, led by an illegitimate decisionmaker" and face "the 'here-and-now' injury of subjection to an unconstitutionally structured decision-making process" in which they will lose their constitutional rights if they cannot assert them until the proceeding is over.  *Id.* at 191-92.  In this case, the FTC Proceeding that the Asbury Plaintiffs seek to enjoin pending this Court's ruling is unconstitutional for five reasons:

a.     The FTC's attempt to adjudicate private rights in an administrative proceeding violates Article III of the U.S. Constitution.

b.     The FTC Proceeding violates the Asbury Plaintiffs' right to a jury trial under the Seventh Amendment to the U.S. Constitution.

c.     The FTC Proceeding deprives the Asbury Plaintiffs of due process because they are being denied notice of the factual basis of the FTC's assertions and a fair opportunity to rebut the FTC's factual assertions before a neutral decisionmaker.

---

[12] *See, e.g.*, FTC's Objections to Asbury's Requests for Production at Objection to Request No 1-5. 7, 12-14, 18, 19-35. ("Complaint Counsel objects to this Request to the extent it calls for documents already in Respondents' possession, custody, or control, including documents that Respondents produced to Complaint Counsel during the pre-suit investigation.").

      d.      The fact that the ALJ presiding over the FTC Proceeding cannot be removed for any reason by the President violates Article II of the U.S. Constitution.

      e.      The FTC Proceeding violates Article II because the FTC Commissioners exercise executive powers but are not subject to removal by the President.

A summary of the basis for each of these five constitutional challenges follows.

8.      First, the FTC's attempt to adjudicate private rights in an administrative proceeding violates Article III of the U.S. Constitution as interpreted by the Supreme Court in *SEC v. Jarkesy,* ____ U.S. ___, 144 S. Ct. 2117, 2132 (2024).  Like the Complaint that the FTC has since filed, the proposed consent order that the FTC presented to the Asbury Plaintiffs before initiating the FTC Proceeding would have required them not to "charge consumers for 'ResistAll'"—a third-party product sold throughout the country[13]—or "any exterior or interior surface protective coating product."  The FTC apparently believes that ResistAll is a waste of money.  Regardless of the basis for and merits of the FTC's opinion, the power to enjoin the sale of ResistAll (or any other lawful product) is vested solely in Article III courts.[14] Other private rights that the FTC seeks to adjudicate in-house include its request that the Asbury Plaintiffs be prohibited from participating in the "extension, renewal, or continuation of credit unless they establish and implement, and thereafter maintain" what the FTC considers to be "a fair lending program" and the monetary relief that its Complaint seeks.  Moreover, an order at the conclusion of the FTC Proceeding could specifically expose the Asbury Plaintiffs to future civil penalties pursuant to 15 U.S.C. § 45(1), thereby implicating "private rights" under *Tull v. United States*, 481 U.S. 412, 422 (1987).

---

[13] *See* www.caltexus.com/products/appearance-protection.

[14] The FTC's Complaint, like its proposed consent order, also seeks an order "[p]rohibiting charges for any add-on that [allegedly] does not provide a benefit to consumers."  In other words, the Asbury Plaintiffs could be held in contempt for selling lawful products that the FTC may later determine to be of no benefit.

9.      The second reason the FTC Proceeding should be enjoined is that it violates the Asbury Plaintiffs' right to a jury trial under the Seventh Amendment to the U.S. Constitution as interpreted by the Supreme Court in *Jarkesy* and *Tull*.  It does so because the FTC seeks to adjudicate the Asbury Plaintiffs' property rights and the FTC's claims accusing the Asbury Plaintiffs of making false and misleading representations to consumers—claims that are akin to common law fraud and deceit claims.  The FTC Proceeding violates the Seventh Amendment because it affords the Asbury Plaintiffs no right to a trial by jury pursuant to a statutory scheme, the FTC Act, that provides for the potential future imposition of civil penalties.  *See* 15 U.S.C. § 45(l).  The same is true of the FTC's claims for violation of ECOA, as "it is well-established that a jury trial is required in an action brought [by private litigants] under the Equal Credit Opportunity Act."  *Davis v. Strata Corp.*, 242 F. Supp. 2d 643, 650 (D.N.D. 2003) (citing *Vander Missen v. Kellogg Citizens Nat'l Bank of Green Bay,* 83 F.R.D. 206 (E.D. Wis. 1979)).  The in-house adjudication contemplated by the FTC Act and ECOA cannot override the protections of the Seventh Amendment.  In the words of the Fifth Circuit: "Congress cannot convert any sort of action into a 'public right' ***simply by finding a public purpose*** for it and codifying it in federal statutory law." *Jarkesy v. SEC*, 34 F.4th 446, 456-57 (5th Cir. 2022), *aff'd,* 144 S. Ct. 2117 (2024) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989)) (emphasis added).

10.      The third reason the FTC Proceeding should be enjoined is that—***as applied*** to the Asbury Plaintiffs—it deprives the Asbury Plaintiffs of due process regardless of whether in-house adjudication under the FTC Act generally "violate[s] due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights." *Axon Enter., Inc.*, 598 U.S. at 202 (Thomas, J., concurring) (citations omitted).  The FTC Proceeding deprives the

Asbury Plaintiffs of due process because of its biased nature[15] and because they are being denied "notice of the factual basis" of the FTC's assertions "and a fair opportunity to rebut the [FTC's] factual assertions before a neutral decisionmaker." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

11.     The fourth reason the FTC Proceeding should be enjoined is that the FTC Act's constraints on removal of the ALJ violate Article II of the Constitution.  FTC-appointed ALJs can only be removed for "good cause" in accordance with statutory procedures. 5 U.S.C. § 7521(a), (b)(1).  That the ALJ in this case cannot be removed for any reason by the President violates Article II under the Fifth Circuit's interpretation of Supreme Court precedent.  *Jarkesy*, 34 F.4th at 465 n.20.  The Fifth Circuit is one of many courts that have found the appointment of ALJs pursuant to similar statutory provisions invalid under *Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010).

12.     The fifth reason the FTC Proceeding should be enjoined is that the FTC Commissioners unconstitutionally exercise executive authority because they are effectively insulated from removal by the President, who can remove a Commissioner only "for inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  This violates Article II because FTC Commissioners who "set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties" are insulated from rather than subject to the President's unrestricted removal power.  *See Seila Law LLC v. CFPB*, 591 U.S. 197, 200 (2020).   Requiring "cause" for removal of an agency director with "broad investigative and enforcement authority" violates Article II. *Collins v. Yellen*, 594 U.S. 220, 230 (2021).  The import of these recent Supreme Court decisions under Article II is not diminished by its prior rejection of an Article II challenge to the FTC as it existed 88 years ago in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)

---

[15] *See generally Marshall v. Jerrico, Inc*., 446 U.S. 238, 242 (1980); *Williams v. Pennsylvania*, 579 U.S. 1, 14-16 (2016); *see also Axon*; *Jarkesy*; *In re Murchison*, 349 U.S. 133, 136 (1955)

rejecting. The Asbury Plaintiffs are not asking this Court to do what only the Supreme Court can do, *i.e.*, "overturn a Supreme Court precedent" by deciding "whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023). Rather, they merely seek to have the Court "extend those precedents to the 'new situation' before us." *Seila Law*, 591 U.S. at 220. *Humphrey's Executor* is not controlling because it did not involve identical or similar material facts. *Home Tel. & Tel. Co. v. City of Los Angeles*, 211 U.S. 265, 274 (1908); *United States v. Holyfield*, 703 F.3d 1173, 1177 n.7 (10th Cir. 2013). Rather, "the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Seila Law*, 591 U.S. at 215 (quoting *Humphrey's Ex'r*, 295 U.S. at 628). Since 1935, the FTC's executive powers have greatly expanded so that, for example, it can prosecute enforcement actions in federal court. That change alone warrants finding a delegation of executive power in violation of Article II.

13.    Importantly, a very recent opinion in the Northern District of Texas has affirmed these arguments with respect to the NLRB's unconstitutionally protected ALJs. Specifically, citing the Fifth Circuit's opinion regarding the nearly identical provisions concerning the SEC in *Jarkesy*, the Court held that "Congress impermissibly protected the NLRB ALJs from the President's Article II power by insulating them from removal." *Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. September 16, 2024) (citing *Jarkesy*, 34 F.4th at 465). The Court wrote that "the NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs" and that "the NLRB has not, and cannot, offer any distinction between the relevant provisions or the protections they confer upon the ALJs. *Bertha*, 2024 WL 4202383, at *2.

14.     Without preliminary injunctive relief, "[j]udicial review of [the Asbury Plaintiffs'] structural constitutional claims would come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 191.  Therefore, the Court should enjoin the FTC Proceeding to "preserve the status quo until the merits of a case can be adjudicated."  *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975).

## PARTIES

15.     Plaintiff Asbury Ft. Worth Ford, LLC d/b/a David McDavid Ford Ft. Worth ("McDavid Ford Ft. Worth") is a Delaware limited liability company with its principal place of business at 300 West Loop 820 South, Ft. Worth, Texas 76108.

16.     Plaintiff McDavid Frisco – Hon, LLC d/b/a David McDavid Honda of Frisco ("McDavid Honda Frisco") is a Delaware limited liability company with its principal place of business at 1601 North Dallas Parkway (7200 State Highway 121), Frisco, Texas 75034.

17.     Plaintiff McDavid Irving – Hon, LLC d/b/a David McDavid Honda of Irving ("McDavid Honda Irving") is a Delaware limited liability company with its principal place of business at 3700 West Airport Freeway, Irving, Texas 75062.

18.     Plaintiff Asbury Automotive Group, Inc. ("Asbury") is a Delaware corporation with its principal place of business at 2905 Premiere Parkway, Suite 300, Duluth, GA 30097.

19.     Plaintiff Ali Benli ("Mr. Benli") is the General Manager of McDavid Ford Ft. Worth and an employee of Asbury and was the General Manager of McDavid Honda Irving and the General Manager of McDavid Honda Frisco.

20.     Defendant Federal Trade Commission is an agency of the United States government whose principal place of business is Washington, D.C.

21.     Defendant Lina M. Khan is the Chair of the Federal Trade Commission. She was sworn in as Chair of the Commission on June 15, 2021.  She is being sued in her official capacity.

22.     Defendant Rebecca Kelly Slaughter is a Commissioner of the FTC.  She was sworn in as a Commissioner on May 2, 2018.  She is being sued in her official capacity.

23.     Defendant Alvaro Bedoya is a Commissioner of the FTC.  He was sworn in as a Commissioner on May 16, 2022.  He is being sued in his official capacity.

24.     Defendant Melissa Holyoak is a Commissioner of the FTC. She was sworn in as a Commissioner on March 25, 2024.   She is being sued in her official capacity.

25.     Defendant Andrew Ferguson is a Commissioner of the FTC.  He was sworn in as a Commissioner on April 2, 2024.  He is being sued in his official capacity.

## JURISDICTION AND VENUE

26.     This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over it pursuant to the U.S. Constitution and 28 U.S.C. § 1331. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e), including because a substantial part of the events or omissions giving rise to the claims occurred in this district.

28.     This Court is authorized to grant the relief prayed for under the U.S. Constitution and the All Writs Act, 28 U.S.C. § 1651(a); and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201(a)-2202, and Federal Rule of Civil Procedure 65.

## FACTUAL AND LEGAL BACKGROUND

**A.     The FTC Proceeding Deprives the Asbury Plaintiffs of Procedural Safeguards, Including Due Process, That They Would Be Afforded in an Article III Court.**

29.     "Congress . . . created the FTC to promote fair competition. The Commission[] enforce[s], . . . the FTC Act (among other laws). See . . . 15 U.S.C. § 41 et seq. (FTC Act). [The FTC Act] . . . authorize[s] the Commission[] to address statutory violations either by bringing civil suits in federal district court or by instituting their own administrative proceedings. *See . . .* §§ 45(b), (m))." *Axon Enter., Inc.*, 598 U.S. at 180-81.

30.     "When [the] Commission elects the latter option . . .[,] it typically delegates the initial adjudication to an ALJ. See § . . . note following § 41.  To foster independence, [the] Commission's ALJs are removable "only for good cause" as determined by the Merit Systems Protection Board (MSPB)—a separate agency whose members are themselves removable by the President only for cause, such as "neglect of duty" or "malfeasance." 5 U.S.C. §§ 7521(a), 1202(d). An ALJ assigned to hear an . . . FTC enforcement action has authority, much like a regular trial judge, to resolve motions, hold a hearing, and then issue a decision.  *See* 16 C.F.R. §§ 3.21– 3.56 (2021) . . . ." *Axon Enter., Inc*., 598 U.S. at 181.

31.     But the FTC's internal administrative hearings do not provide the same substantive or procedural protections enjoyed by litigants in federal district court.  Federal district court judges are Article III impartial factfinders who owe no allegiances to the agency.  In contrast, any FTC Commissioner (including those who voted to pursue the FTC Proceeding against Plaintiffs) is permitted to preside over the administrative hearing, though an ALJ appointed by and compensated by the FTC will typically preside.  *See* 15 U.S.C. § 41 *et seq*.; 16 C.F.R. 3.42; *Axon Enter., Inc.,* 598 U.S. at 181. Moreover, federal court proceedings are governed by the Federal Rules of Evidence and Federal Rules of Civil Procedure.  These rules do not apply in FTC administrative

proceedings. Nor do the procedures applicable to proceedings before the Commission afford comparable protections. The Asbury Plaintiffs will provide thorough examples at the hearing on its request for preliminary injunction. However, as merely one example, the FTC's deadline to provide its expert reports is February 24, 2025—more than six months after commencement of the FTC Proceeding and more than two and a half years after the FTC's investigation began. In short, the FTC gives itself ***three years*** to retain experts and produce expert reports. Under FTC Rule § 3.31A, the Asbury Plaintiffs have only fourteen days after being told who the FTC's experts are (until March 10, 2025) to review the FTC's expert report(s), retain potential expert(s) to review same, and draft and produce responsive expert witness report(s).[16] The Asbury Plaintiffs' repeated requests to obtain even one more week to produce its expert reports were denied by the ALJ, who indicated that her hands were tied by FTC Rule § 3.31A.[17]

32.    Upon adjudication by the Commission's ALJ:

> A losing party may appeal the ALJ's ruling to the Commission; alternatively, the Commission may undertake review on its own initiative. *See* 16 C.F.R. §§ 3.52–3.53 . . . . Upon completion of internal review, the Commission enters a final decision. See 16 C.F.R. § 3.54 . . . . Or if no such review has occurred, the ALJ's ruling itself becomes the decision of the Commission. *See* . . . 16 C.F.R. § 3.51(a) [et. seq.].

*Axon Enter., Inc.,* 598 U.S. at 181. Judicial review proceeds as follows:

> The . . . FTC Act . . . provide[s] for review of a final Commission decision in a court of appeals, rather than a district court . . . . The FTC Act . . . provides that the party subject to an FTC order may "obtain a review of such order" in a court of appeals, and grants the [appellate] court "jurisdiction" to "affirm[ ], modify[ ], or set[ ] aside the order." § 45(c).

*Axon Enter., Inc*., 598 U.S. at 181. Importantly:

---

[16] https://www.ecfr.gov/current/title-16/chapter-I/subchapter-A/part-3 ("Each respondent shall serve each other party with a report prepared by each of its expert witnesses not later than 14 days after the deadline for service of complaint counsel's expert reports.")

[17] *See* Transcript of September 12, 2024 Scheduling Conference at 27 line 1-18.

That Article III review is sharply limited. For example, under the administrative review scheme [applicable to the FTC] . . ., the reviewing court must treat agency findings of fact as "conclusive" so long as they are "supported by substantial evidence," . . . See Section 45(c) ("if supported by evidence"), a highly deferential standard of review.

*Axon Enter.*, 598 U.S. at 196-97 (Thomas, J., concurring).  "The reviewing court also cannot take its own evidence—it can only remand the case to the agency for further proceedings." *Id*. at 197. Because of this process, the factual findings of the FTC cannot—as a practical matter—be reversed.

33.    The FTC has multiple avenues to seek civil penalties or monetary relief from private parties. Section 5 of the FTC Act authorizes the Commission to recover "a civil penalty of not more than $10,000 for each violation" of an order of the FTC."  15 U.S.C. § 45(l).  Section 5 also authorizes the Commission to recover "a civil penalty of not more than $10,000 for each violation" of "any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule."  15 U.S.C. § 45(m).

34.    Rather than commence an administrative proceeding against Plaintiffs, the FTC had the option under 15 U.S.C. § 57b to commence an action "for relief under subsection (b) in a United States district court or in any court of competent jurisdiction of a State" for violation of "any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of section 45(a) of this title)."  If enjoined as the Asbury Plaintiffs seek, the FTC could still do so—but without depriving Plaintiffs of their constitutional

rights as the pending administrative FTC Proceeding would.[18]  In contrast, if the Commission

sought civil penalties in a cease and desist proceeding, its findings of fact would be "conclusive"

—*i.e.*, not subject to review by an Article III court—and never found by a jury of the Asbury

Plaintiffs' peers.[19]

  35. Consumers have a private right of action under ECOA, 15 U.S.C. § 1691e.  The

statute also contains a provision, however, that enables the FTC to enforce the statute

administratively or through the courts—just as it can under Section 5 of the FTC Act.[20]  That too

---

[18] The relief available in such a proceeding would be as follows:

> (b) Nature of relief available

> The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. ***Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages***, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

15 U.S.C. § 57b (emphasis added).

[19] *See* 15 U.S.C. § 57b:

> (c) Conclusiveness of findings of Commission in cease and desist proceedings; notice of judicial proceedings to injured persons, etc.

> (1) If (A) a cease and desist order issued under section 45(b) of this title has become final under section 45(g) of this title with respect to any person's, partnership's, or corporation's rule violation or unfair or deceptive act or practice, and (B) an action under this section is brought with respect to such person's [FN1] partnership's, or corporation's rule violation or act or practice, then the findings of the Commission as to the material facts in the proceeding under section 45(b) of this title with respect to such person's, partnership's, or corporation's rule violation or act or practice, shall be conclusive unless (i) the terms of such cease and desist order expressly provide that the Commission's findings shall not be conclusive, or (ii) the order became final by reason of section 45(g)(1) of this title, in which case such finding shall be conclusive if supported by evidence.

[20] *See* 15 U.S.C. § 1691c(c):

> (c) Overall enforcement authority of Federal Trade Commission

> Except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to some other Government agency under any of paragraphs (1) through (8) of subsection (a), and subject to subtitle B of the Consumer Financial Protection Act of 2010, the Federal Trade Commission shall be authorized to enforce such requirements. ***For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. 41 et seq.), a violation of any requirement imposed under this subchapter shall be deemed a violation of a requirement imposed under that Act. All of the***

deprives the Asbury Plaintiffs of their rights to have these claims decided in an Article III court, with findings of fact made by a jury if they so choose, subject to due process, and presided over by a judge—not an ALJ and Commissioners appointed in violation of Article II.

**B.      The FTC Proceeding is the Culmination of a Two-Year Process in Which the FTC Abused Its Authority and Imposed Undue Burdens on the Asbury Plaintiffs.**

36.      The FTC's staff initiated the process that has led to the FTC Proceeding with a civil investigative demand ("CID") issued to Asbury on August 1, 2022 to which Asbury made fifteen productions from August 2022 through early June 2023, producing upwards of 10,000 documents. To do so, Asbury and its outside counsel collected and reviewed approximately 66,000 documents from 60 different custodians.  Despite the strain placed on Asbury's legal department and the disruption to its operations, Asbury fully cooperated with the CID.

37.      Asbury did not hear anything from FTC Staff for over eight months following its production until, on February 8, 2024, FTC Staff provided Asbury with a Draft Complaint.  The draft complaint contained allegations similar to those in the Complaint the FTC has filed in the FTC Proceeding and included a proposed draft consent order requiring payment to resolve those allegations of an amount that Asbury considered to be exorbitant.  The FTC gave Asbury merely a month to engage in "consent negotiations," imposing a deadline of March 8, 2024 to reach agreement on both injunctive and monetary remedies, even though it typically can take upwards of a year to settle matters of similar size and scope due to the complexities attendant to evaluating the impact of the demand on the business, and whether requested changes to business operations

---

*functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance* by any person with the requirements imposed under this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce any rule prescribed by the Bureau under this subchapter in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

(emphasis added).

are even feasible. Moreover, Asbury's counsel pointed out to the FTC that one consideration included the fiduciary duties that publicly traded companies owe their shareholders. Nevertheless, the FTC gave Asbury just a week to respond with a monetary counteroffer along with its "framework for calculating harm."

38.     During the course of subsequent discussions with the FTC, FTC staff, Commission Chair Khan, Commissioner Bedoya, and FTC Consumer Protection Bureau Director Levine confirmed the FTC has an unwritten "policy" to refuse pre-suit disclosure of any information that corroborates or evidences alleged violations and stated that the specifics of the alleged violations would be disclosed only after the FTC filed its Complaint.[21]  Asbury nevertheless engaged in good faith negotiations and countered with a counter offer and edits to the proposed consent order on March 7, 2024 in an effort to avoid unnecessary litigation.  Without providing Asbury any more information to judge the merits of the FTC's claims or to ferret out any issues that might need correcting at the McDavid Dealerships, the FTC responded on March 8, 2024 with a new proposed order that rejected virtually all of Asbury's proposed edits.  The FTC also made a revised monetary demand that, while lower than the initial demand, was still in an amount that Asbury considered to be exorbitant and unreasonable. Simultaneously, FTC staff recommended the filing of complaint to Director Levine.  The FTC continued to refuse to provide Asbury with the information that could have allowed an informed analysis of the FTC's allegations.

39.     Beginning on April 17, 2024 and continuing through May 2, 2024, Asbury and its counsel attended five video conference meetings over the course of two weeks with each of the five Defendant Commissioners to discuss FTC Staff's allegations. During the meetings, and also

---

[21] To date, however, the FTC has provided the Asbury Plaintiffs next to no information other than what is contained in the Complaint filed in the FTC Proceeding, as set forth herein.

in a white paper submitted to the Commissioners on April 29, 2024, Asbury and its counsel set forth why they did not believe they had committed the violations alleged by FTC Staff, asked for specifics regarding the alleged violations, asked for information to correct any such violations, and urged the Commissioners not to vote to file a complaint.

40.     Instead, on August 15, 2024, FTC staff contacted counsel for the Asbury Plaintiffs and advised them that the Commissioners had voted to file the Complaint in the FTC Proceeding. The FTC gave the Asbury Plaintiffs only a few hours to settle the dispute based upon the terms previously demanded by the FTC.  The FTC continued to refuse, however, to provide the Asbury Plaintiffs with the information that would have allowed the Respondents to undertake an informed analysis of the FTC's allegations. On August 16, 2024, the Commission issued a public press release highly critical of the Asbury Plaintiffs and filed the Complaint in the FTC Proceeding.[22] The Asbury Plaintiffs filed their answer on September 3, 2024.

41.     While seeking discovery in the FTC Proceeding and complying with their obligations under the September 16, 2024 Scheduling Order, the Asbury Plaintiffs seek to enjoin the FTC Proceeding until the merits of their constitutional claims are decided by an Article III court—the U.S. District Court for the Northern District of Texas.

---

[22]  https://www.ftc.gov/news-events/news/press-releases/2024/08/ftc-takes-action-against-auto-dealer-group-asbury-automotive-discriminating-against-black-latino (last visited October 3, 2024).

**C.      The FTC Seeks to Adjudicate the Private Rights of the Asbury Plaintiffs and Consumers Patronizing the David McDavid Dealerships in Violation of Article III.**

42.      Under the U.S. Constitution, only an Article III court may adjudicate private rights. Administrative agencies such as the FTC may not adjudicate such rights.

43.      Like the Complaint that the FTC ultimately filed, the proposed consent order presented to the Asbury Plaintiffs in advance of initiating the FTC Proceeding includes numerous impingements on Plaintiffs' property rights.  For example, the Commission would have required the Asbury Plaintiffs not to "charge consumers for . . . any exterior or interior surface protective coating product, or any Add-on Product or Service" that—regardless of consumer demand—the FTC believes "does not provide a benefit to consumers."  Additionally, it would have precluded the Asbury Plaintiffs from participating in the "extension, renewal, or continuation of credit unless they establish and implement, and thereafter maintain" a lending program that the FTC considers to be "fair."  The FTC even sought a monetary payment similar to the millions of dollars it obtained in settlements from other dealerships to avoid litigation[23]-- to be used "for relief, including

---

[23] As recognized by Commissioner Fergason:

"The public rightly should doubt the legitimacy of any theory of unfairness that the majority is so desperate to shield from judicial review.

Finally, this practice generates perverse incentives. The majority has pushed its novel discrimination theory only in unadjudicated complaints and omitted it from complaints alleging substantively identical conduct that might make their way into court. But it continues to rely on the untested theory as grounds to enforce Section 5—and therefore as grounds to coerce regulated firms into compliance. The majority thus creates for itself an endlessly recursive legal loop. It develops a novel legal theory to accuse a firm of misconduct; the firm does not resist the accusation, content to settle so that the Commission goes away; the majority then treats the accusation as "the law"; and the majority enforces the accusation-cum-law in future cases. Eventually, in one of these future settlement complaints, the majority may add a new aggressive theory on some other issue, which once again will go unchallenged. The cycle begins anew, and no court gets a say. The rule of law demands more than this bureaucratic chicanery.

That a firm may break this cycle by litigating is no answer to my objection. For most small businesses—and many large ones—a Commission investigation is costly. Lawyers are expensive, and investigations sometimes last for years. Litigation may take many years more. The mere risk of a Commission investigation is coercive and can be enough to force some businesses to yield. In that sense, the Commission premising its enforcement decisions on untested theories of Section 5 trotted out only in settled cases can have the same coercive effect as a judicial interpretation of Section 5, but none of its legitimacy. Furthermore, once it has accumulated a long line of settlements involving a novel theory, the Commission puts itself in a strong position to list those settlements as precedents when it finally does litigate the theory in court, creating for judges and litigants the impression of a long-settled lawful practice that should not be

consumer redress and any attendant expenses for the administration of any redress fund" or "for such other relief (including consumer information remedies) as [the FTC] determines to be reasonably related to [the Asbury Plaintiffs' practices alleged in the Complaint"—with the right to deposit "any money not used" in the U.S. Treasury.  *See id*. at 7.

44.     These comprehensive measures and monetary impositions intrude upon the Asbury Plaintiffs' private rights, including their rights to offer lawful products and services to consumers without being subjected to monetary penalties.  The causes of action that the FTC has asserted in its Complaint and the remedies that the FTC seeks in its Complaint involve private rights that must be adjudicated in an Article III court.  *See, e.g., Stern v. Marshall*, 564 U.S. 462, 469 (2011).  *SEC v. Jarkesy,* 144 S. Ct. 2117, 2132 (2024); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014); *Tull v. United States*, 481 U.S. 412, 422 (1987).

**D.     The FTC Proceeding Deprives the Asbury Plaintiffs of their Right Under the Seventh Amendment to Have Disputed Issues of Facts Decided by a Jury.**

45.     The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.

46.     The FTC Proceeding will entail administrative adjudication of issues involving the Asbury Plaintiffs' property rights, including the adjudication of claims akin to claims at common law such as claims based on deceit and sounding in fraud.  Moreover, the FTC Proceeding is

---

lightly disturbed, thereby completing the process of laundering the theory into law without ever defending it on its merits alone."

https://www.ftc.gov/system/files/ftc_gov/pdf/ferguson-asbury-concurrence-8.16.2024.pdf

governed by a statutory scheme that provides for the potential future imposition of civil penalties. *See* 15 U.S.C. § 45(l).

47.     The statutory and regulatory provisions governing the FTC Proceeding, however, afford Plaintiffs no right to a trial by jury.

48.     Accordingly, the FTC Proceeding violates the Asbury Plaintiffs' right to a jury trial under the Seventh Amendment with respect to the FTC's claims for violation of the FTC Act[24] and ECOA alike.  *See, e.g., Davis v. Strata Corp.*, 242 F.Supp.2d 643, 650 (D.N.D. 2003) ("it is well-established that a jury trial is required in an action brought [by private litigants] under the Equal Credit Opportunity Act") (citing *Vander Missen v. Kellogg Citizens National Bank of Green Bay,* 83 F.R.D. 206 (E.D.Wis.1979) ("a jury trial is required in an action brought under the Equal Credit Opportunity Act").

**E.     The FTC Proceeding Denies the Asbury Plaintiffs Their Due Process Rights to Fair Notice of the Claims Against Them and Unbiased, Impartial Adjudication.**

49.     The record of the FTC Proceeding both before and after its commencement shows that the Asbury Plaintiffs have not received and will not receive fair notice of the factual basis for the FTC's claims, much less unbiased adjudication.  For example:

a.     The Scheduling Order sets the FTC's deadline for providing expert reports on February 24, 2025—more than *six months* after commencement of the FTC Proceeding and more than *two and a half years* after the FTC's investigation began. The Asbury Plaintiffs, however, have only fourteen days (until March 10, 2025) to produce responsive expert witness report(s).  The Asbury Plaintiffs' repeated requests to obtain at least one

---

[24] *See, e.g, Jarkesy*, 144 S.Ct. at 2129, *Tull*, 481 U.S. at 418-24.

more week to produce its expert reports were denied by the ALJ, who cited her need to have a month before trial to review them.

      b.     The Scheduling Order also sets the hearing (*i.e.*, non-jury trial) to begin April 16, 2025, a date on which counsel for the Asbury Plaintiffs already has a two-day trial scheduled to begin. FTC Complaint Counsel did not object to a one-week delay in trial of the FTC Proceeding, which the FTC ALJ advised could last as long as 210 hours. The FTC ALJ, however, advised that she was powerless to change the date set by the Commission when it voted to file the FTC Complaint.

      c.     The ALJ denied the Asbury Plaintiffs' request to alter the Scheduling Order to allow for deposition of the organizational representative of the party making the accusations against them—the FTC. FTC Complaint Counsel and the FTC ALJ both cited FTC Rule 3.33(c)(1) ***expressly prohibiting*** the Asbury Plaintiffs from taking an organizational (or other) deposition of the FTC.

      d.     The ALJ's Protective Order prevents counsel for the Asbury Plaintiffs from sharing information designated as "confidential material" from their own clients (including in-house counsel) but imposes no such restrictions on FTC Complaint Counsel.

      e.     The Asbury Plaintiffs' ability to effectively appeal the FTC's factual findings is illusory. Pursuant FTC Rule 3.51, the FTC ALJ makes a "recommended decision" to the FTC Commissioners. Pursuant to FTC Rule 3.54, the FTC Commissioners who voted to commence the FTC proceeding issue their Decision wherein they "may adopt, modify, or set aside the [FTC ALJ's] recommended findings, recommended conclusions, and proposed rule or order contained in the recommended decision, and will include in the decision a statement of the reasons or basis for its action and any concurring and dissenting

opinions." Ironically, the Scheduling Order cites Article III federal court case law in support of the admonition that "[m]otions in limine are strongly discouraged" because "the risk of prejudice from giving undue weight to marginally relevant evidence is minimal in a bench trial such as this where the ALJ is capable of assigning appropriate weight to evidence." In reality, there is a substantial risk of prejudice to the Asbury Plaintiffs. Although the Commission's final decision is appealable, unlike a clearly erroneous appellate standard from factual findings in an Article III court, the standard on appeal of any factual findings made by the Commission is "substantial evidence review"—a virtually insurmountable standard.[25]

50.     The fair notice requirement of the Due Process Clause is well established, as is the requirement of unbiased adjudication. *See, e.g., Marshall v. Jerrico, Inc*., 446 U.S. 238, 242 (1980); *Williams v. Pennsylvania*, 579 U.S. 1, 15-16 (2016); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *In re Murchison*, 349 U.S. 133, 136 (1955). The fact that agencies like the FTC act as both prosecutor and judge has raised judicial eyebrows about its impartiality all the way up to the Supreme Court. *See, e.g., Jarkesy*, 144 S. Ct. at 2140 (Gorsuch, J., concurring); *Axon Enter., Inc.*, 598 U.S. at 202 (Thomas, J., concurring). The FTC's internal administrative process contrasts dramatically with the substantive and procedural due process protections afforded to litigants in an Article III court. For example, Article III federal district court judges are impartial factfinders

---

[25] The Commission's findings are "conclusive" if supported by substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 15 U.S.C. §§ 21(c), 45(c); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986). The court's "task is not to reweigh the evidence." *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410 at 430 (5th Cir. 2008). "The statute **forbids** a court to make its own appraisal of the testimony, picking and choosing for itself among uncertain and conflicting inferences." *Indiana Fed'n*, 476 U.S. at 454 (emphasis added). Rather, the court "**must accept** findings supported by evidence even if suggested alternative conclusions may be equally or even more reasonable and persuasive." *Impax Labs v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021) (emphasis added).

appointed for life who owe no allegiances to the FTC.  On the other hand, FTC Commissioners both make the critical decision to issue administrative complaints and subsequently decide the resulting administrative adjudications.  In addition, federal court proceedings are governed by the Federal Rules of Evidence and Federal Rules of Civil Procedure. Neither applies in FTC administrative proceedings.

51.     The fundamentally neutral nature of an adjudication before an Article III tribunal versus the bias inherent in adjudications before the FTC is illustrated by the difference between the Commission's record when litigating before itself (which it is successful) and its record when litigating in Article III courts (where it loses cases with great and growing frequency).  Indeed, as Justice Gorsuch recently wrote in *SEC v. Jarkesy*:

> The Seventh Amendment's jury-trial right does not work alone. It operates together with Article III and the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property. The Seventh Amendment guarantees the right to trial by jury.  Article III entitles individuals to an independent judge who will preside over that trial. And due process promises any trial will be held in accord with time-honored principles. Taken together, all three provisions vindicate the Constitution's promise of a 'fair trial in a fair tribunal.'

*Jarkesy*, 144 S.Ct. 2140 (2024) (quoting *In re Murchison*, 349 U.S. at 136, 75 S. Ct. 623).  In light of Justice Gorsuch's writing, this Court should examine and decide the Asbury Plaintiffs' due process claim along with their Article III and Seventh Amendment claim.

**D.     The FTC Proceeding Violates Article II Because FTC ALJs Enjoy Two Layers of Protection from Removal and Cannot Be Removed for Any Reason by the President.**

52.     The fact that the ALJ in this case cannot be removed for any reason by the President violates Article II, according to the Fifth Circuit's interpretation of Supreme Court precedent. *Jarkesy*, 34 F.4th at 465 n.20.  The ALJs that initially conduct administrative proceedings receive constitutionally impermissible layers of protection from Presidential removal. FTC-appointed

ALJs can also only be removed for "good cause" in accordance with statutory procedures. *See* 5 U.S.C. § 7521(a), (b)(1). This creates a dual layer of protection for FTC ALJs. The Supreme Court has uniformly held that such dual layered protection schemes are unconstitutional. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 495 (2010) (holding unconstitutional similar multi-layer tenure protection); *Seila Law LLC*, 591 U.S. at 204 (holding that the removal restrictions on the CFPB's director violated Article II of the Constitution). The result is that enforcement actions that can have wide-ranging impacts on the American economy are currently taken by unelected individuals that are not controlled by the President. And that state of affairs violates Article II of the Constitution.

53. Importantly, a very recent opinion in the Northern District of Texas has affirmed these arguments with respect to the NLRB's unconstitutionally protected ALJs. Specifically, citing the Fifth Circuit's opinion regarding the nearly identical provisions concerning the SEC in *Jarkesy*, the Court held that "Congress impermissibly protected the NLRB ALJs from the President's Article II power by insulating them from removal." *Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. September 16, 2024) (citing *Jarkesy*, 34 F.4th at 465). The Court wrote that "the NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs" and that "the NLRB has not, and cannot, offer any distinction between the relevant provisions or the protections they confer upon the ALJs. *Bertha*, 2024 WL 4202383, at *2.

**E.     The Commissioners Exercise Executive Authority While Being Impermissibly Insulated from Removal by the President for Any Reason in Violation of Article II.**

54. The FTC exercises extensive executive authority. The Commission's law enforcement activity is executive in nature. It includes initiating formal investigations and disciplinary proceedings and engaging in the daily exercise of prosecutorial discretion. The

Commissioners set enforcement priorities, initiate prosecutions, and determine what redress—including monetary penalties—to seek against private parties.

55.    Each of the Commission's powers reflects exercise of executive power which, under Article II, is vested exclusively in the President of the United States. *See* U.S. Const. art. II, § 1, cl. 1.  While the President may delegate his or her power to others, he or she must retain unrestricted removal authority over them.  Yet, the FTC Commissioners are not subject to the President's unrestricted removal authority.  Instead, they can only be removed for "inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.

56.    The Commission's executive powers have greatly expanded in the many decades since the Supreme Court upheld—in 1935—the FTC Act's restrictions on the President's power to remove the Commissioners on the ground that the Commission "exercise[d] no part of the executive power." *Seila L*aw, 591 U.S. at 215 (quoting *Humphrey's Ex'r*, 295 U.S. at 628). Executive powers granted to the Commission in those intervening decades include the grant in Section 13(b) of the power to prosecute enforcement actions in federal court.

57.    The current Commission does not otherwise possess the organizational features that caused the Supreme Court to uphold the removal restriction in *Humphrey's Executor*.   In fact, until just a few months ago the Commission had only three members, all from the same political party, and the Commissioners lack the tenure that is supposed to be the source of their expertise.

58.    Importantly, in this regard, the Asbury Plaintiffs ask this Court not to overrule any precedent of the Supreme Court, which of course it cannot do (and nor can the Fifth Circuit). Rather, The Asbury Plaintiffs suggest that properly understood, their request is for the Court to undertake an examination of the Commission's ***current*** structure and apply that precedent to it.

**F.    The Asbury Plaintiffs Will Suffer Irreparable Harm Unless the Court Enjoins the FTC Proceeding in Which Their Constitutional Rights Are Being Violated.**

59.     The FTC's structural defects will cause the Asbury Plaintiffs to suffer irreparable harm in the form of a "here-and-now" injury if subjected to the FTC Proceeding. The injury here simply arises from the fact that the Asbury Plaintiffs are being subjected to a constitutionally infirm proceeding.  Once the harm is done, it cannot be undone. Any subsequent judicial review of the Asbury Plaintiffs' claims would come too late in the game to be meaningfully remedied.

**COUNT I**
**(Violation of Article III of the U.S. Constitution)**

60.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

61.     Article III requires that the judicial power of the United States be vested in Article III courts. As a result, cases involving private rights may not be removed from the jurisdiction of those courts.

62.     Private rights that cannot be removed from the jurisdiction of the Article III courts include property rights such as the rights to offer products and services to consumers and not face monetary penalties.

63.     The FTC seeks to usurp the exclusive jurisdiction of the Article III courts via the FTC Proceeding by actively impinging on The Asbury Plaintiffs' private rights to property, including by seeking to preclude them from conducting their business and offering the products and services to consumers they currently do and wish to continue to offer.  Additionally, the FTC Act will potentially subject the Asbury Plaintiffs to monetary sanction, including civil penalties, and thereby deprive them of their property.

64.     The FTC's purported adjudication of the foregoing private rights, including in the FTC Proceeding, violates Article III of the U.S. Constitution.

**COUNT II**

**(Violation of the Seventh Amendment of the U.S. Constitution: Right to a Jury Trial)**

65.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

66.     The Seventh Amendment requires that the right to a jury trial for suits arising in common law exceeding $20 in value be preserved.

67.     The FTC Proceeding entails the administrative adjudication of issues for which the Seventh Amendment affords the Asbury Plaintiffs the right to trial by jury, including claims akin to common law deceit and fraud, and is governed by a statutory scheme that provides for the potential future imposition of civil penalties. *See* 15 U.S.C. § 45(l). Under the statutes and regulations governing the FTC Proceeding, however, the Asbury Plaintiffs have no right to a jury trial.

68.     Therefore, the FTC Proceeding violates the Asbury Plaintiffs' right to a trial by jury under the Seventh Amendment.

## <u>COUNT III</u>
**(Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution)**

69.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

70.     As applied to the Asbury Plaintiffs, the FTC Proceeding violates the Due Process Clause.

71.     Under the FTC Act, the FTC, as prosecutor, initiates an administrative proceeding in its discretion, and, as judge, decides the matter, including through factual findings[26] and legal determinations.

---

[26] The use of "substantial evidence" review virtually assures that the fact findings cannot be overturned on appeal

72.     The FTC's dual role of prosecutor and adjudicator violates the Asbury Plaintiffs' right to due process because it brings into serious question whether the respondent will receive a fair and unbiased hearing, and because as Supreme Court Justice Gorsuch has recently explained, the Due Process Clause of the Fifth Amendment works together with the Seventh Amendment's jury-trial right and Article III to limit how the government may go about depriving an individual of life, liberty, or property.

**COUNT IV**
**(Violation of Article II of the U.S. Constitution**
**Due to Dual Layer Protection for FTC ALJs)**

73.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

74.     The ALJ appointed by the FTC in the FTC Proceeding, has an impermissible dual-layer of insulation from removal. Because this aspect of the agency's structure also violates Article II, any actions taken against the Asbury Plaintiffs under the FTC's present structure are invalid.

**COUNT V**
**(Violation of Article II of the U.S. Constitution**
**Due to Removal Provisions for FTC Commissioners)**

75.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

76.     Article II, Section 3 provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and grants the President appointment and removal powers over executive officers.

77.     The Commissioners are executive officers as they exercise delegated executive authority, including among other things exercising prosecutorial discretion and the ability to initiate enforcement proceedings.

78.     But the Commissioners are not freely removable by the President. *See* 15 U.S.C. § 41.  Commissioners may only be removed for "inefficiency, neglect of duty, or malfeasance in office." *Id*.

79.     This insulation under Section 41 of the FTC Act violates Article II, Section 3 of the U.S. Constitution, as the FTC's current structure must be interpreted under Supreme Court precedent.

## COUNT VI
### (Declaratory and Injunctive Relief)

80.     The Asbury Plaintiffs incorporate by reference and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

81.     As described above, the FTC Proceeding is constitutionally infirm on multiple bases.  The FTC's structural defects will cause the Asbury Plaintiffs to suffer imminent irreparable harm in the form of a "here-and-now" injury if subjected to the FTC Proceeding.  The Asbury Plaintiffs are likely to succeed on the merits, will suffer irreparable harm without preliminary relief, the balance of equities weighs in the Asbury Plaintiffs' favor, and an injunction would be in the public interest.

82.     Therefore, the violations of The Asbury Plaintiffs' constitutional rights described above entitle the Asbury Plaintiffs to declaratory relief under the Declaratory Judgment Act 28 U.S.C. § 2201, as well as permanent injunctive relief against the continuation of the FTC Proceeding.

## REQUEST FOR RELIEF

WHEREFORE, the Asbury Plaintiffs respectfully requests that this Court after appropriate hearing and/or trial enter an order and judgment in favor of the Asbury Plaintiffs and against Defendants:

      a.      Preliminarily and permanently enjoining the FTC Proceeding against the Asbury Plaintiffs, including all deadlines set forth or to be set forth by the Commission or the ALJ for the Asbury Plaintiffs in the FTC Proceeding.

      b.      Declaring that the FTC's adjudication of private rights, including in the FTC Proceeding against the Asbury Plaintiffs, violates Article III of the U.S. Constitution;

      c.      Declaring that the FTC Proceeding violates the Seventh Amendment of the U.S. Constitution;

      d.      Declaring that the FTC Proceeding against the Asbury Plaintiffs violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

      e.      Declaring that the FTC Act's dual layer of insulation from removal of the FTC ALJ appointed in the FTC Proceeding violates Article II of the U.S. Constitution;

      f.      Declaring that the FTC Act's insulation of FTC Commissioners against at-will removal by the President of the United States violates Article II of the U.S. Constitution; and

      g.      Awarding such other and further relief to the Asbury Plaintiffs that the Court deems just and proper.

Dated: October 4, 2024

Respectfully submitted,

FOLEY & LARDNER LLP

Todd A. Murray
(Texas State Bar No. 00794350)
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

By: /s/ Edward D. ("Ed") Burbach

Edward D. ("Ed") Burbach*
(Texas State Bar No. 03355250)
John Sepehri
(Texas State Bar No. 00797408)
Robert F. Johnson III
(Texas State Bar No. 10786400)
Brandon M. Livengood^
(Texas State Bar No. 24128022)
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com

Michael J. Lockerby^
Megan Chester^
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

_____
*Attorney in charge
^ *Pro Hac Vice* application forthcoming

*Counsel for the Asbury Plaintiffs*