**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION**

|  |  |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>THE FEDERAL TRADE COMMISSION, *et al.*,.<br><br>     *Defendants*. | No. 4:24-cv-00950-O |

**BRIEF IN SUPPORT OF OPPOSED EXPEDITED MOTION FOR PRELIMINARY
INJUNCTION STAYING FTC PROCEEDING PENDING ADJUDICATION OF
<u>THE ASBURY PLAINTIFFS' CONSTITUTIONAL CLAIMS</u>**

Edward D. Burbach*
 (Texas State Bar No. 03355250)
John Sepehri
 (Texas State Bar No. 00797408)
Robert F. Johnson III
 (Texas State Bar No. 10786400)
Brandon M. Livengood^
 (Texas State Bar No. 24128022)
**FOLEY & LARDNER LLP**
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com
_____
*Attorney in charge
^ *Pro hac vice* application forthcoming

Todd A. Murray
 (Texas State Bar No. 00794350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby^
Megan Chester^
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

*Counsel for the Asbury Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   BACKGROUND ....................................................................................... 3

III.  ARGUMENT ............................................................................................ 9

    A.    The Asbury Plaintiffs Are Likely to Succeed on the Merits of Their
    Constitutional Challenges to the Commission's Structure and
    Conduct of the FTC Proceeding. ...........................................................9

        1.    Adjudicating the Asbury Plaintiffs' "private rights" in the
        FTC Proceeding violates Article III as interpreted by the
        Supreme Court in *SEC v. Jarkesy*................................................9

        2.    Unless enjoined, the FTC Proceeding will deprive the Asbury
        Plaintiffs of their Seventh Amendment right to a jury trial of
        the Commission's claims. ..........................................................13

            a.    The Asbury Plaintiffs are entitled to a jury trial because
            the FTC Act subjects them to civil penalties for
            violations. .......................................................................13

            b.    In administrative proceedings, the FTC bases its
            determination of liability for violation of the FTC Act
            on the FTC's findings of fact. ....................................14

            c.    The FTC's statutory claims against the Asbury
            Plaintiffs are  akin to common law actions for deceit
            and are legal in nature.................................................15

        3.    The FTC Proceeding against the Asbury Plaintiffs deprives
        them of fair notice and opportunity to be heard in violation of
        the Due Process Clause...............................................................17

        4.    The ALJ overseeing the FTC Proceeding enjoys multiple layers
        of  protection from removal by the President in violation of
        Article II....................................................................................20

        5.    The FTC's exercise of executive authority violates Article II
        because Commissioners cannot be removed by the President............23

    B.    The Asbury Plaintiffs Will Suffer Irreparable Harm if Forced to
    Defend the FTC's Claims in an Administrative Proceeding in
    Violation of Their Constitutional Rights. ............................................24

i

|     | C. | The Injury Faced by the Asbury Plaintiffs Outweighs Any Claimed Injury to the FTC if the FTC Proceeding is Stayed Pending Adjudication of its Constitutionality..................................................25 |
|     | D. | The Public Interest Favors Enjoining the FTC Proceeding While the Court Decides Whether it Would Deprive the Asbury Plaintiffs of Their Constitutional Rights. ..............................................................25 |
| IV. | CONCLUSION ...............................................................................25 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*American Realty Tr., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   362 F. Supp. 2d 744 (N.D. Tex. 2005) ................................................................... 17

*Anibowei v. Morgan*,
   70 F.4th 898 (5th Cir. 2023), *cert. denied sub nom*, *Anibowei v. Mayorkas*, 144 S.Ct. 551
   (2024) .................................................................................................................. 9

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
   430 U.S. 442 (1977) ............................................................................................. 12

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ..................................................................................... passim

*Axon Enter., Inc. v. FTC*,
   986 F.3d 1173 (9th Cir. 2021), *rev'd on other grounds*, 598 U.S. 175 (2023)................. 19

*Baldwin v. Hale*,
   68 U.S. 223 (1863) .............................................................................................. 18

*Bertha v. NLRB*,
   No. 4:24-cv-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024)..................... 22

*Chicago Bridge & Iron Co. N.V. v. FTC*,
   534 F.3d 410 (5th Cir. 2008) ................................................................................. 9

*Clarke v. Commodity Futures Trading Comm'n*,
   74 F.4th 627 (5th Cir. 2023) ................................................................................. 25

*Collins v. Yellen*,
   594 U.S. 220 (2021)............................................................................................. 23

*Davis v. Strata Corp.*,
   242 F.Supp.2d 643 (D.N.D. 2003)........................................................................ 17

*Dimick v. Schiedt*,
   293 U.S. 474 (1935)............................................................................................. 13

*Edmond v. United States*,
   520 U.S. 651 (1997) ....................................................................................... 20, 21

*Energy Transfer, LP v. NLRB*,
   No. 3:24-cv-198, 2024 WL 3571494 (S.D. Tex. July 2024) ............................ 22, 24

*Exec. Benefits Ins. Agency v. Arkison*,
   573 U.S. 25 (2014)................................................................................................ 9

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010)........................................................................... 20, 21, 22, 23

*Freytag v. Comm'r*,
   501 U.S. 868 (1991)............................................................................................. 20

*Frith v. Guardian Life Ins. of Am.*,
   9 F. Supp. 2d 734 (S.D. Tex. 1998) ...................................................................... 17

*FTC v. Am. Precious Metals, LLC*,
   No. 11-61072-Civ, 2012 WL 13114034 (S.D. Fla. Apr. 12, 2012)........................ 16

*FTC v. Indiana Fed'n of Dentists*,
   476 U.S. 447 (1986).................................................................................................... 9
*FTC v. Ivy Cap., Inc.*,
   No. 2:11-CV-283, 2011 WL 2118626 (D. Nev. May 25, 2011)............................................ 16
*FTC v. Kochava Inc.*,
   671 F. Supp. 3d 1161 (D. Idaho 2023) ........................................................................ 19
*FTC v. Lights of Am., Inc.*,
   760 F. Supp. 2d 848 (C.D. Cal. 2010) ......................................................................... 16
*FTC v. Meta Platforms Inc.*,
   654 F. Supp. 3d 892 (N.D. Cal. 2023)......................................................................... 19
*FTC v. Microsoft Corp.*,
   681 F. Supp. 3d 1069 (N.D. Cal. 2023) ....................................................................... 19
*FTC v. Neora LLC*,
   No. 3:20-cv-01979-M, 2023 WL 8446166 (N.D. Tex. Sept. 28, 2023) ................................. 19
*FTC v. Swish Mktg.*,
   No. C 09–03814 RS,  2010 WL 653486 (N.D. Cal. Feb. 22, 2010).................................... 16
*Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*,
   858 F.3d 666 (1st Cir. 2017)..................................................................................... 16
*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)................................................................................................. 16
*Hamdi v. Rumsfeld*,
   542 U.S. 507 (2004)............................................................................................... 18
*Home Tel. & Tel. Co. v. City of Los Angeles*,
   211 U.S. 265 (1908)............................................................................................... 24
*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935)............................................................................................... 24
*Hunt v. SEC*,
   520 F. Supp. 580 (N.D. Tex. 1981) ............................................................................ 25
*Illumina, Inc. v. FTC*,
   88 F.4th 1036 (5th Cir. 2023) ............................................................................. 17, 24
*Impax Labs v. FTC*,
   994 F.3d 484 (5th Cir. 2021) ..................................................................................... 9
*In re Murchison*,
   349 U.S. 133 (1955)....................................................................................... 17, 19, 20
*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022), *aff'd*, 144 S.Ct. 2117 (2024) ....................................... passim
*League of Women Voters of United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ..................................................................................... 25
*Lucia v. SEC*,
   585 U.S. 237 (2018)............................................................................................... 21
*Marshall v. Jerrico, Inc.*,
   446 U.S. 238 (1980)............................................................................................... 18
*Melder v. Morris*,
   27 F.3d 1097 ....................................................................................................... 17
*Morgan v. Fletcher*,
   518 F.2d 236 (5th Cir. 1975) ..................................................................................... 2

iv

*Myers v. United States*,
    272 U.S. 52 (1926)....................................................................................... 20

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982)....................................................................................... 10

*NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*,
    927 F.3d 1 (1st Cir. 2019)........................................................................... 14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    584 U.S. 325 (2018)..................................................................................... 10

*POM Wonderful, LLC v. FTC*,
    777 F.3d 478 (D.C. Cir. 2015)..................................................................... 16

*Printz v. United States*,
    521 U.S. 898 (1997)..................................................................................... 20

*Reid v. Covert*,
    354 U.S. 1 (1957)......................................................................................... 13

*Scott v. Roberts*,
    612 F.3d 1279 (11th Cir. 2010) .................................................................. 23

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    678 F. Supp. 3d 88 (D.D.C. 2023).............................................................. 24

*SEC v. Jarkesy*,
    144 S.Ct. 2117 (2024)............................................................................ passim

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)...................................................................... 20, 23, 24

*Space Expl. Technologies Corp. v. Bell*,
    701 F.Supp.3d 626 (S.D. Tex. 2023)........................................................... 23

*Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*,
    No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024)......................... 23

*Stern v. Marshall*,
    564 U.S. 462 (2011)................................................................................... 9, 10

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ...................................................................... 25

*Tull v. United States*,
    481 U.S. 412 (1987)................................................................................ 13, 14

*United States v. Daniel Chapter One*,
    896 F. Supp. 2d 1 (D.D.C. 2012)................................................................ 14

*United States v. Golden Fifty Pharm. Co.*,
    421 F. Supp. 1199 (N.D. Ill. 1976)............................................................. 14

*United States v. JB Williams Co.*,
    498 F.2d 414 (2d Cir. 1974)........................................................................ 14

*United States v. Piuma*,
    40 F. Supp. 119 (S.D. Cal. 1941), *aff'd*, 126 F.2d 601 (9th Cir. 1942) .................................. 14

*United States v. Wilson* Chem. Co.,
    No. 61-637, 1962 U.S. Dist. LEXIS 5522, at *18-22, 1962 Trade Cas. (CCH) ¶ 70,478 (W.D.
    Penn. *1962*), aff'd, 319 F.2d 133 (3d Cir. 1963) ..................................... 14

*Vander Missen v. Kellogg Citizens National Bank of Green Bay*,
    83 F.R.D. 206 (E.D.Wis.1979) .................................................................. 17

*Vanderstok v. Blackhawk Mfg. Grp., Inc.*,
  639 F. Supp. 3d 722 (N.D. Tex. 2022) ...................................................................... 25
*Walmart Inc. v. King*,
  No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) ............................... 23
*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665 (2015) ...................................................................................................... 10
*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) .......................................................................................... 18, 19, 22

## Statutes

5 U.S.C. § 7521(a) ............................................................................................................. 21
15 U.S.C. § 21(c) ................................................................................................................ 9
15 U.S.C. § 41 ................................................................................................................... 23
15 U.S.C. § 45(b) ............................................................................................................. 23
11 U.S.C. § 45(c) ................................................................................................................ 9
15 U.S.C. § 45(l) ............................................................................................................... 14
15 U.S.C. § 45(m) ............................................................................................................. 14
15 U.S.C. § 45(m)(2) ........................................................................................................ 15
11 U.S.C. § 53(b) ............................................................................................................. 23
U.S. Const., art. II § 1, cl. 1 ............................................................................................ 20
U.S. Const., art. III, § 1 ...................................................................................................... 9

## Other Authorities

1 William Blackstone, Commentaries on the Laws of England 1765-1769 ................................ 10
Evan D. Bernick, *Is Judicial Deference to Agency Fact-Finding Unlawful?* 16 Geo. J.L. & Pub.
  Pol'y 27 (2018) .................................................................................................................. 9
William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511 (2020) ...................... 10

## I.    **INTRODUCTION**

The "Asbury Plaintiffs"[1] move for a preliminary injunction[2] prohibiting the Federal Trade Commission (the "FTC" or "Commission") from taking further action in the FTC administrative proceeding, *In the Matter of Asbury Automotive Group, Inc. et. al.*, FTC Docket No. D-9436, (the "FTC Proceeding"), pending this Court's adjudication of their constitutional claims. This challenge is based on a growing body of precedent decided under Articles II and III of the U.S. Constitution, the Due Process Clause, and the Seventh Amendment. Just last year, a unanimous Supreme Court enjoined similar proceedings before the FTC and the Securities & Exchange Commission ("SEC") pending constitutional challenges to the agencies' authority. *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).[3] As in *Axon*, the Asbury Plaintiffs are parties to "an illegitimate proceeding, led by an illegitimate decisionmaker" and face "the 'here-and-now' injury of subjection to an unconstitutionally structured decision-making process" in which they will lose their constitutional rights if they cannot assert them in an Article III tribunal now. *Id.* at 191-192.

The Supreme Court recently reiterated that "private rights" may not be adjudicated by an administrative agency but must be decided by an Article III court. *SEC v. Jarkesy,* 144 S.Ct. 2117, 2132 (2024). Notwithstanding the clear direction provided by the Supreme Court, the FTC was not persuaded. With the ink barely dry on *Jarkesy*, on August 15, 2024 the Commissioners voted to file the complaint commencing the FTC Proceeding (the "FTC Complaint"). The FTC Proceeding followed a roughly two-year investigation during which Plaintiff Asbury Automotive Group, Inc. ("Asbury") produced nearly 10,000 documents. App. 1 ¶2. The FTC made a demand

---

[1] The "Asbury Plaintiffs" are Asbury Automotive Group, Inc.; three affiliated dealerships in the Dallas-Ft. Worth area—Asbury Ft. Worth Ford, LLC d/b/a David McDavid Ford Ft. Worth, McDavid Frisco – Hon, LLC d/b/a David McDavid Honda of Frisco, and McDavid Irving – Hon, LLC d/b/a David McDavid Honda of Irving—and Ali Benli.
[2] Documentary evidence supporting the Asbury Plaintiffs' claims is found in the accompanying Declaration of Edward D. Burbach, cited herein as "Decl.," and other materials in the LR 7.1(i) Appendix, cited herein as "App."
[3] Justice Kagan's opinion was joined by Chief Justice Roberts and Justices Thomas, Alito, Sotomayor, Kavanaugh, Barrett, and Jackson, with Justice Thomas filing a concurring opinion and Justice Gorsuch concurring in the judgment.

for an exorbitant payment whereby Asbury could avoid the adverse publicity, expense, and diversion of management time defending a claim for alleged violations of Section 5 of the FTC Act and the Equal Credit Opportunity Act. App. 1-2 ¶3.

Asbury repeatedly sought in vain to learn of the underpinning of the FTC's charges, including who was supposedly injured by alleged practices that are contrary to safeguards that Asbury and its affiliated dealerships have long had in place; the methodology used and data compiled by the FTC in putting together a "survey" it claimed supported its charges; and the FTC's bases for its alleged "disparate impact analysis" supporting the charges. App. 3-4 ¶9. Each individual Commissioner, including Commission Chair Lina Khan herself confirmed the FTC has an unwritten "policy" to not share pre-suit the information supporting their proposed claims. App. 4 ¶10. The FTC's Complaint does not disclose the alleged victims of any "unfair" or "deceptive" conduct. App. 8-19. Even after filing, the FTC still flatly refuses to produce the survey or analysis, citing the FTC's Rules ("FTCR"[4]). App. 5 ¶13-14, 105-109 at responses 6, 8-11). Further, the FTC's "Preliminary Proposed Fact Witness List" lists "[c]onsumers who purchased vehicles at" the Respondent McDavid Dealerships as potential witnesses at trial (App 120 ¶26-28), effectively listing thousands, if not hundreds of thousands, of potential witnesses. The FTC does not have to provide its final proposed witness list until March 5, 2024 which is more than two weeks *after* the February 24, 2025 close of fact discovery.

Rather than allow the FTC to deprive the Asbury Plaintiffs of their constitutional rights, the Court should enjoin the FTC Proceeding to "preserve the status quo until the merits of a case can be adjudicated." *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975) (citation omitted). The "here-and-now" irreparable injury that the Asbury Plaintiffs would suffer from having to

---

[4] https://www.govinfo.gov/content/pkg/CFR-2024-title16-vol1/pdf/CFR-2024-title16-vol1-part3.pdf

participate in a constitutionally infirm agency proceeding "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. This type of irreparable harm to constitutional rights is much like the situation involving "established immunity doctrines" under which "certain rights 'not to stand trial' or face other legal processes . . . are 'effectively lost' if review is deferred until after trial." *Id.* at 192. The harm to the Asbury Plaintiffs is compounded by the unspecified, unsupported, and inflammatory charges in the FTC Complaint—charges that could easily be tested in an Article III court with its procedural safeguards.

The balance of equities also favors the Asbury Plaintiffs, which face harm without injunctive relief that far outweighs any harm the FTC might claim from deferring the FTC Proceeding while an Article III court decides its constitutionality. Finally, preliminary injunctive relief is in the public interest, which favors ensuring that administrative agencies exercise their power lawfully, in a way that respects the Constitution.

## II.       BACKGROUND

Asbury is among the largest franchised automotive retailers in the United States. App. 35 & 63. Three of the Asbury Plaintiffs—David McDavid Ford Ft. Worth, David McDavid Honda of Frisco, and David McDavid Honda of Irving (collectively, the "McDavid Dealerships")—identify their dealerships with the name David McDavid, a name familiar to many Texas consumers. They all have a long history in North Texas and take pride in providing an exceptional auto buying experience. This commitment is reflected in, for example, highly positive customer reviews by

the Kelley Blue Book ("KBB"),[5] which as of the date of this brief rates McDavid Ford 4.3 out of 5 stars[6] and rates McDavid Honda Irving and McDavid Honda Frisco 4.5 and 4.6 out of 5 stars.[7]

The reputation of the McDavid Dealerships and the entire Asbury Group is now threatened by the salacious, unsupported charges in the FTC Complaint. That complaint was filed after roughly two years of Asbury receiving and responding to extensive requests, which began with the FTC's issuance of a civil investigative demand ("CID") on August 1, 2022. App. 1 ¶2. In response, Asbury made 15 productions of information and documents during the period August 31, 2022 through June 5, 2023, ultimately producing nearly 10,000 items. *Id*.

After completing its production of information and documents, Asbury heard nothing from the FTC for more than eight months. On February 8, 2024, the FTC sent a draft complaint, which the FTC threatened to file unless Asbury agreed to entry of its proposed "Agreement Containing Consent Order" and a "Decision and Order" (App. 1-2 ¶3)—the terms of which included payment in an amount far in excess of any recent public settlement payment made by any other car dealership, which Asbury considered to be exorbitant and unjustified. In recent years the FTC has extracted millions of dollars from car dealerships that have paid "settlements" to avoid the filing of similar charges.[8] Before commencement of the FTC Proceeding, the Asbury Group, Inc. disclosed in its 10-Q that it was the target of an investigation, stating as follows:

---

[5] KBB's dealer ratings contain a "How is this KBB.com rating calculated?" feature accessible on the individual dealership review page. This feature reflects that KBB measures consumer satisfaction with dealerships via reviews on its own web site, from Google, and from Facebook. KBB also considers the volume and dates of review.

[6] *See* www.kbb.com/dealers/fort-worth-tx/69553501/mcdavid-ford-fort-worth/?zip=76104.

[7] *See* www.kbb.com/dealers/irving-tx/898124/david-mcdavid-honda-of-irving and www.kbb.com/dealers/frisco-tx/55049698/david-mcdavid-honda-of-frisco.

[8] *See e.g*, April 1, 2022 FTC press release "FTC Takes Action Against Multistate Auto Dealer Napleton for Sneaking Illegal Junk Fees onto Bills and Discriminating Against Black Consumers" (www.ftc.gov/news-events/news/press-releases/2022/04/ftc-takes-action-against-multistate-auto-dealer-napleton-sneaking-illegal-junk-fees-bills); April 4, 2022 FTC "business blog" "Record-setting $10 million FTC-Illinois settlement takes on car dealers' unauthorized add-ons and discriminatory lending practices" (www.ftc.gov/business-guidance/blog/2022/04/record-setting-10-

At this time, we are unable to reasonably predict the possible outcome of this matter, or provide a reasonably possible range of loss, if any, as a result of the investigation.  If the FTC files a suit against us based on these allegations, whether meritorious or not, it may adversely affect our ability to attract customers, result in the loss of existing customers, harm our reputation and cause us to incur defense costs and other expenses.

App. 64.

Asbury made every effort to resolve this matter.  The FTC's February 8, 2024 demand, however, gave Asbury only a month to engage in "consent negotiations," imposing a deadline of March 8, 2024 to reach agreement on both injunctive and monetary remedies. App. 3 ¶7.  The FTC also gave Asbury only a week to make a counteroffer and provide a "framework for calculating harm." *Id*. On March 7, 2024, Asbury made a counteroffer while also providing a red line with comments to the FTC's proposed Consent Order and seeking the particulars of what the McDavid Dealerships had supposedly done wrong. *Id* ¶8. The next day, the FTC responded with a new proposed consent order rejecting virtually all the proposed edits and requiring a payment that— while slightly reduced—was in an amount that Asbury still considered to be exorbitant and unsupported. *Id*.  Simultaneously, FTC staff recommended commencing the administrative proceeding in which the Asbury Plaintiffs have since been named as respondents. *Id*.

---

million-ftc-illinois-settlement-takes-car-dealers-unauthorized-add-ons-and).f    As recognized by Commissioner Fergason in the FTC Proceeding:

"The majority thus creates for itself an endlessly recursive legal loop. It develops a novel legal theory to accuse a firm of misconduct; the firm does not resist the accusation, content to settle so that the Commission goes away; the majority then treats the accusation as "the law"; and the majority enforces the accusation-cum-law in future cases… That a firm may break this cycle by litigating is no answer to my objection. For most small businesses—and many large ones—a Commission investigation is costly. Lawyers are expensive, and investigations sometimes last for years. Litigation may take many years more. The mere risk of a Commission investigation is coercive and can be enough to force some businesses to yield. In that sense, the Commission premising its enforcement decisions on untested theories of Section 5 trotted out only in settled cases can have the same coercive effect as a judicial interpretation of Section 5, but none of its legitimacy. Furthermore, once it has accumulated a long line of settlements involving a novel theory, the Commission puts itself in a strong position to list those settlements as precedents when it finally does litigate the theory in court, creating for judges and litigants the impression of a long-settled lawful practice that should not be lightly disturbed, thereby completing the process of laundering the theory into law without ever defending it on its merits alone."  https://www.ftc.gov/system/files/ftc_gov/pdf/ferguson-asbury-concurrence-8.16.2024.pdf

Before the FTC Complaint was filed, however, Asbury continued its efforts to learn what facts the FTC considered to be sufficient support for its scandalous charges. On March 11, 2024, the FTC's Acting Assistant General Counsel confirmed in response to a FOIA request that the FTC had received ***no complaints*** from consumers about the McDavid Dealerships during the preceding five years and only two complaints nationwide about Asbury—both in Georgia App. 4-5 ¶12, App. 65-66. The FTC nevertheless claimed to have a "survey" of McDavid Dealership consumers reflecting that consumers were charged for "Add On" products without their consent, even though the consumers had repeatedly confirmed and signed for such purchases in writing. It also claimed to have an "analysis" evidencing "disparate impact" discriminatory charges to "Blacks" and "Latinos." The FTC refused, however, to provide its "survey," "disparate impact analysis," or any details. Today, more than seven months later, the FTC has yet to provide the Asbury Plaintiffs with this basic information necessary to evaluate the merits of the FTC Complaint. App. 5 ¶14. Indeed, in its recent objections to Respondents' Requests for Production, the FTC flatly states that it will <u>not</u> produce the "survey," the "analysis," or other relevant information.[9]

Beginning April 17, 2024 and continuing through May 2, 2024, Asbury and its counsel separately met by video conference with each of the five FTC Commissioners to discuss the FTC's

---

[9] The FTC's approach calls into question whether a legitimate "survey" or disparate impact analysis actually existed when the FTC issued its press release. *See, e.g.*, App. 105-109, FTC's Objections to Asbury's Requests for Production at Objection to Request No. 6, 8-11 ("Accordingly, Complaint Counsel will not produce documents responsive to this Request"). Interestingly, in the objections, the FTC takes the position that the objections are only those of "Complaint Counsel" and that the Commission itself—the ultimate finder of law and fact in the ALJ administrative process-- may have other privileges or objections preventing production of responsive information. *Id.* at General Response 6 (sic actually the second General Response numbered 6) ("Privileges held by the Commission (not Complaint Counsel) can only be waived by the Commissioner."). App.104. As a result of the FTC's Rules and the Scheduling Order, the Asbury Plaintiffs may never be allowed to know if the allegations made in the FTC's public press release and in the FTC's Complaint were actually true or if they themselves were misrepresentations made to consumers. Yet the FTC is an agency tasked with protecting the public from deceptive practices. *See* https://www.ftc.gov (About the FTC: "Our mission is protecting the public from deceptive or unfair business practices and from unfair methods of competition through law enforcement, advocacy, research, and education.").

allegations. App. 4 ¶10.   Asbury also submitted a white paper and subsequent letter explaining the basis for its belief that it had not committed the violations alleged by FTC staff, asking for information that would support these allegations, allow Asbury to correct any actual violations, and urging the Commissioners to vote against filing a complaint.  App. 4 ¶11.[10]

Despite these meetings and efforts, on August 15, 2024, the Commissioners voted to initiate the FTC Proceeding.  App. 5 ¶13.[11]  The FTC Complaint, issued the very next day, alleges that the Asbury Plaintiffs violated the Federal Trade Commission Act (the "FTC Act") and Equal Credit Opportunity Act ("ECOA") by (1) making false or misleading misrepresentations that consumers authorized charges for "add-ons" to sales contracts when in fact they did not do so, and that consumers were required to buy one or more add-ons that they were not required to buy; (2) charging consumers for add-ons without obtaining their express, informed consent; and (3) charging Black and Latino consumers more for add-ons than non-Latino White customers. App. 17-19.   The Asbury Plaintiffs denied these allegations in their September 3, 2024 Answer and Affirmative Defenses. App. 88-92. Upon filing its Complaint, outside the privilege protections of the Complaint, the FTC harmed the Asbury Plaintiffs by issuing a very public press release announcing that ***"[a] survey** of customers across the dealerships showed that as many as 75 percent of consumers reported that they were charged for add-on products and services they did not

---

[10] Also on May 7, 2024, Asbury sent a detailed email declining a May 2, 2024 email request of Chair Khan's Attorney Advisor which demanded "correction" of alleged "distortions" of the Chair's comments referenced in the white paper. App. 4 ¶11 n.3.
[11] While explaining their votes in favor of proceeding, Commissioner Ferguson issued a Concurring Statement (www.ftc.gov/system/files/ftc_gov/pdf/ferguson-asbury-concurrence-8.16.2024.pdf)  and  Commissioner  Holyoak issued a Statement  (www.ftc.gov/system/files/ftc_gov/pdf/commissioner-holyoak-statement-re-asbury8-16-24.pdf) criticizing the majority's use of the administrative process and lack of transparency to the Asbury Plaintiffs.

authorize or were falsely told were required" and that "Asbury *discriminates* against Black and Latino consumers, targeting them with unwanted and higher-priced add-ons."[12]

The FTC Proceeding is now in process, and on September 13, 2024, following a scheduling conference the prior day, the presiding ALJ issued a Scheduling Order. The Scheduling Order and FTC Rules of Practice for Adjudicative Proceedings ("FTCR") reflect the one-sided nature of the FTC Proceeding. For example:

- FTCR[13] 3.31A(a) and the Scheduling Order gives the Asbury Plaintiffs merely ***fourteen days*** (March 10, 2025) to receive, review, and provide expert reports responsive to the FTC's expert reports. In contrast, the FTC's deadline for providing expert reports is February 24, 2025 (more than ***six months*** after the FTC Proceeding commenced and more than ***two and a half years*** after the FTC began its investigation). The Asbury Plaintiffs' request for at least one more week was denied by the ALJ, citing FTCR 3.31A(a) and indicating a need to have all expert reports *a month* before the hearing (i.e. a non-jury trial). App. 5-6 ¶15.

- The Scheduling Order sets the hearing to begin April 16, 2025, a date on which counsel for the Asbury Plaintiffs already has a two-day trial scheduled to begin. App. 6 ¶15, 25). The ALJ denied an unopposed one week or any other extension citing FTCR 3.11(b)(4) granting the Commission sole authority to set the hearing. App. 6 ¶15.

- The ALJ denied the Asbury Plaintiffs' opposed request to obtain a deposition of the FTC's organizational representative citing FTCR 3.33(c)(1) expressly prohibiting organizational (or other) deposition(s) of the party making the claims—the FTC--while allowing similar deposition(s) of Respondents. *Id*.

- The ALJ's Protective Order purports to prevent the attorneys defending the Asbury Plaintiffs from sharing information designated as "confidential material" with their own clients (including in-house counsel) but imposes no such restrictions on FTC Complaint Counsel. *Id*, App. 6 & 99 (the ALJ's Protective Order makes clear it is a FTC form Protective Order which is part of FTCR 3.31(d) ("… the protective order set forth in the appendix to that section is attached verbatim as Attachment A and is hereby issued.")), App. 99-102.

- The Asbury Plaintiffs' ability to effectively appeal the FTC's factual findings is illusory. FTC ALJ makes a "recommended decision" to the FTC Commissioners (FTCR 3.51) who

---

[12] *See* www.ftc.gov/news-events/news/press-releases/2024/08/ftc-takes-action-against-auto-dealer-group-asbury-automotive-discriminating-against-black-latino (emphasis added).

[13] FTCR stands for Federal Trade Commission Rules of Practice for Adjudicative Proceedings, which may be found at: https://www.govinfo.gov/content/pkg/CFR-2024-title16-vol1/pdf/CFR-2024-title16-vol1-part3.pdf

voted to commence the FTC Proceeding, who then issue a decision that "may adopt, modify, or set aside the [FTC ALJ's] recommended findings, recommended conclusions, and proposed rule or order contained in the recommended decision". FTCR 3.54. Ironically, the Scheduling Order cites Article III federal court case law to support the admonition that "[m]otions in limine are strongly discouraged" (App. 29 ¶16), exacerbating the effect of the Commission's final factual findings not being subject to the Article III "clearly erroneous" standard for appellate review, but rather, to "substantial evidence review"—a virtually insurmountable standard—which itself may be unconstitutional.[14]

### III.    ARGUMENT

The Asbury Plaintiffs' motion easily satisfies all four requirements for preliminary injunctive relief, *i.e.*, (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury without injunctive relief; (3) that the threatened injury to them outweighs any harm the injunction may cause the FTC, and (4) that granting the preliminary injunction will not disserve the public interest. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied sub nom*, *Anibowei v. Mayorkas*, 144 S.Ct. 551 (2024) (citation omitted).

**A.    The Asbury Plaintiffs Are Likely to Succeed on the Merits of Their Constitutional Challenges to the Commission's Structure and Conduct of the FTC Proceeding.**

**1.    Adjudicating the Asbury Plaintiffs' "private rights" in the FTC Proceeding violates Article III as interpreted by the Supreme Court in *SEC v. Jarkesy*.**

The federal judicial power is vested in Article III courts. U.S. Const. art. III, § 1; *Stern v. Marshall*, 564 U.S. 462, 469 (2011). Cases involving "private rights" may "not be removed from Article III courts." *SEC v. Jarkesy*, 144 S.Ct. at 2132 (citations omitted); *see also Exec. Benefits*

---

[14] "[A]gency fact-finding in administrative adjudications implicating core private rights may be overturned by reviewing courts only if an agency's determinations are found to be 'unsupported by substantial evidence'—a standard which requires broad deference to administrative findings—judges cannot comply with section 706(2)(E) in such cases without violating the Constitution." Evan D. Bernick, *Is Judicial Deference to Agency Fact-Finding Unlawful?* 16 GEO. J.L. & PUB. POL'Y 27, 30 (2018). Indeed, the Commission's findings are "conclusive" if supported by substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 15 U.S.C. §§ 21(c), 45(c); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986). The court's "task is not to reweigh the evidence." *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410 at 430 (5th Cir. 2008). "The statute **forbids** a court to make its own appraisal of the testimony, picking and choosing for itself among uncertain and conflicting inferences." *Indiana Fed'n*, 476 U.S. at 454 (emphasis added). Rather, the court "**must accept** findings supported by evidence even if suggested alternative conclusions may be equally or even more reasonable and persuasive." *Impax Labs v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021) (emphasis added).

*Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014); *Stern*, 564 U.S. at 482-84, 491.  In contrast, Congress has "significant latitude to assign adjudication of public rights to entities other than Article III courts."  *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018).

Private rights are "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789."  *Stern*, 564 U.S. at 484 (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment).  They encompass "'the three absolute rights, life, liberty, and property, so called because they appertain and belong to particular men merely as individuals, not to them as members of society or standing in various relations to each other—that is, not dependent upon the will of the government.'"  *Axon*, 598 U.S. at 198 (Thomas, J., concurring) (citation omitted).  The common law right to property "consist[ed] in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land," and "to vindicate these rights when actually violated or attacked, the subjects of England [were] entitled, in the first place, to the regular administration and free course of justice in the courts of law."[15]

The term "public rights" has historically "referred to forms of adjudication that did not deprive any people of their private rights to life, liberty, or property." William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1542 (2020).  Public rights "historically could have been determined exclusively by the executive and legislative branches."  *Jarkesy*, 144 S. Ct. at 2132 (alteration and quotation marks omitted).  Such rights are "a ***narrow*** class defined and ***limited*** by history" that "has traditionally included the collection of revenue, customs enforcement, immigration, and the grant of public benefits."  *Id.* at 2146 (Gorsuch, J., concurring) (emphasis

---

[15] 1 William Blackstone, Commentaries on the Laws of England 1765-1769 at 134, 138; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 713-18 (2015) (Thomas, J., dissenting) (citing Blackstone).

added).  The Fifth Circuit's decision in *Jarkesy*, affirmed by the Supreme Court, observed that "the government's involvement alone does not convert a suit about private rights into one about public rights."  *Jarkesy v. SEC*, 34 F.4th 446, 458 (5th Cir. 2022), *aff'd,* 144 S.Ct. 2117 (2024).  As the Supreme Court clarified in *Jarkesy*, a case does not implicate "public rights" merely because Congress created a statutory claim and delegated enforcement to an agency. 144 S.Ct. at 2136. "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled."  *Id*.

"'Traditional legal claims' must be decided by courts, 'whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears.'"  *Id*. at 2135 (quoted case omitted).  "The Constitution prohibits Congress from 'withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law.'"  *Id*. at 2131 (quoted case omitted).  Further, in *Jarkesy*, the Supreme Court "emphasized one point: 'To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider congress can ... withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."  *Id*. at 2134 (citation omitted).  The Supreme Court has "typically evaluated the legal basis for the assertion [that rights are public] with care" because "[t]he public rights exception is, after all, an exception" which "has no textual basis in the Constitution and must therefore derive instead from background legal principles."  *Id.* at 2133-34.  Even "'with respect to matters that arguably fall within the scope of the 'public rights' doctrine, ***the presumption is in favor of Article III courts***.'"  *Id*. at 2134 (quoted case omitted) (emphasis added).

The private rights the Commission wants to adjudicate in the FTC Proceeding include the Asbury Plaintiffs' freedom to contract with their customers who decide to buy otherwise lawful

products.  Like the FTC's Complaint, its proposed consent order would prohibit the Asbury Plaintiffs from charging consumers for "ResistAll, any exterior or interior surface protective coating product, or any Add-on Product or Service" that the FTC believes "does not provide a benefit to consumers." App. 2 ¶4; 21 ¶c.  The FTC apparently believes that protective coatings like ResistAll are a waste of money, but the power to enjoin the sale of these lawful products is vested solely in Article III courts.  The FTC's proposed consent order would have also required the Asbury Plaintiffs to "establish and implement, and thereafter maintain, a fair lending program" consisting of specific items required by the FTC. App. 2 ¶4[16]

The proposed Decision and Order also sought monetary relief to be used by the Commission "for relief, including consumer redress and any attendant expenses for the administration of any redress fund" or "[i]f a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed…for such other relief (including consumer information remedies) as [the FTC] determines to be reasonably related to [the Asbury Plaintiffs'] practices alleged in the Complaint." App. 2-3 ¶5.  Now that the FTC Proceeding is underway, the FTC's Complaint similarly may seek "[a]ny other relief appropriate to correct or remedy the effects of Respondents' deceptive, unfair, or discriminatory practices or of any or all of the conduct alleged in the complaint."  App. 21 ¶j). Moreover, an order at the conclusion of the FTC Proceeding could specifically expose the Asbury Plaintiffs to future civil penalties pursuant to 15 U.S.C. § 45(1), thereby implicating "private

---

[16] The FTC can no longer claim that administrative proceedings under a statute authorizing civil penalties are within the public rights doctrine recognized in *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 445–47 (1977).  "After *Atlas Roofing*," the Court "clarified that the Seventh Amendment does apply to novel statutory regimes, so long as the claims are *akin* to common law claims." *Jarkesy*, 144 S.Ct. at 2139 (citation omitted) (emphasis added).

rights." *See Tull v. United States*, 481 U.S. 412, 422 (1987) ("A civil penalty was a type of remedy at common law that could only be enforced in courts of law.").

> **2.**    **Unless enjoined, the FTC Proceeding will deprive the Asbury Plaintiffs of their Seventh Amendment right to a jury trial of the Commission's claims.**

The Seventh Amendment's preservation of the common law right to jury trial is a "vital barrier[] to governmental arbitrariness." *Reid v. Covert¸* 354 U.S. 1, 9-10 (1957). "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence" that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). The constitutional right to jury trial "is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 144 S.Ct. at 2128. Rather:

> [T]he Framers used the term "common law" in the Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence" . . . . The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume."

*Id*. (quoted case omitted). "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature' . . . . As [the Supreme Court has] made clear . . ., whether that claim is statutory is immaterial to this analysis." *Id*. (citations omitted).

> **a.**    **The Asbury Plaintiffs are entitled to a jury trial because the FTC Act subjects them to civil penalties for violations.**

"To determine whether a suit is legal in nature," the Court must "consider the cause of action *and* the remedy it provides." *Jarkesy*, 144 S.Ct. at 2129 (emphasis added). Finding that the parties facing the SEC's securities fraud claims were entitled to a jury trial because "the remedy [was] all but dispositive," the Supreme Court explained that, "[f]or respondents' alleged fraud, the SEC s[ought] civil penalties, a form of monetary relief," and that "[w]hile monetary relief can be legal or equitable, money damages are the prototypical common law remedy." *Id.*

Like the SEC proceeding in *Jarkesy*, the FTC Proceeding in this case is governed by a statute (15 U.S.C. § 45(l)) that violates the Seventh Amendment because it provides for the imposition of civil penalties but affords the Asbury Plaintiffs no right to a trial by jury.  The Supreme Court "has specifically held that . . . the Seventh Amendment jury-trial right applies to suits brought under a statute seeking civil penalties."  *Jarkesy*, 34 F.4th at 452 (citing *Tull*, 481 U.S. at 418-24); *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 8 (1st Cir. 2019).

        **b.**        <u>**In administrative proceedings, the FTC bases its determination of liability for violation of the FTC Act on the FTC's findings of fact.**</u>

In the administrative proceeding that the Supreme Court found deficient in *Jarkesy*, the statute specifically allowed the SEC to impose civil penalties in-house.  *See Jarkesy*, 144 S.Ct. at 2126.  While the FTC must go to an Article III court to seek civil penalties for alleged violations of a cease and desist order adjudicated in-house (*see* 15 U.S.C. §§ 45(l), 45(m)), this distinction does not cure the constitutional deficiencies.  Indeed, the FTC Proceeding deprives the Asbury Plaintiffs of their right to have findings of fact made by a jury and their right to appeal judicial findings of fact under a clearly erroneous standard.  Because the FTC's claims are closely related to common law actions for deceit, they are legal in nature.

Before *Jarkesy*, U.S. district courts often stated that the FTC's findings of liability and the findings of fact upon which they were based are not subject to collateral attack in Article III courts.  *See, e.g., United States v. Piuma*, 40 F. Supp. 119, 122 (S.D. Cal. 1941), *aff'd*, 126 F.2d 601 (9th Cir. 1942).[17]  "[U]nder the administrative review scheme [applicable to the FTC] . . ., the reviewing

---

[17] *See also United States v. Wilson Chem. Co.*, No. 61-637, 1962 U.S. Dist. LEXIS 5522, at *18-22, 1962 Trade Cas. (CCH) ¶ 70,478 (W.D. Penn. 1962), *aff'd*, 319 F.2d 133 (3d Cir. 1963); *United States v. Golden Fifty Pharm. Co.*, 421 F. Supp. 1199, 1202 (N.D. Ill. 1976); *United States v. JB Williams Co.*, 498 F.2d 414, 426 (2d Cir. 1974); *United States v. Daniel Chapter One*, 896 F. Supp. 2d 1, 14 (D.D.C. 2012).

court must treat agency findings of fact as 'conclusive' so long as they are 'supported by substantial evidence,' . . . *see* § 45(c) ("if supported by evidence"), ***a highly deferential standard of review***." *Axon*, 598 U.S. at 196-97 (Thomas, J., concurring) (emphasis added). By the time the FTC seeks penalties in an Article III court, the defendant has already been deprived of the right to jury trial. Allowing Congress to stack the deck in favor of the FTC in this way circumvents the constitutional right to a jury trial. Like the SEC proceeding at issue in *Jarkesy*, the FTC's Complaint against the Asbury Plaintiffs "is not the stuff of equity or admiralty jurisdiction but the sort of suit historically adjudicated before common-law courts." *Jarkesy*, 144 S.Ct. at 2145 (Gorsuch, J., concurring). "In this regard, it is irrelevant that the SEC derived its power to sue under a 'new statut[e]' or that the agency proceeded under 'a new cause of action'. . . . [T]he government cannot evade the Seventh Amendment so easily." *Id.* (internal citations omitted).[18]

        **c.**      **The FTC's statutory claims against the Asbury Plaintiffs are akin to common law actions for deceit and are legal in nature.**

Although the remedy is the "more important" factor in determining the Seventh Amendment right to jury trial, "courts [are] to consider the cause of action and the remedy it provides." *Jarkesy*, 144 S.Ct. at 2129. In *Jarkesy*, after finding that the remedy sought by the SEC made the claim legal in nature, the Court observed that "[t]he close relationship between the causes of action in this case and ***common law fraud*** confirms [that the suit] implicates the Seventh Amendment right, and that a defendant would be entitled to a jury on the[] [SEC's] claims." *Id.* at 2130 (emphasis added) (citations omitted). Similarly, the FTC Act's prohibitions are closely related to common law actions for deceit based upon "[a] false affirmation, made by the defendant

---

[18] FTC Act Section 5(m) also demonstrates the prejudicial nature of cease and desist orders under FTC Act Section 5(l) against parties specifically named in such orders. Section 5(m), which allows the FTC to seek penalties against parties that were not respondents in a proceeding that resulted in an order, explicitly provides that issues of fact must be tried *de novo* against such parties: "If [a] cease and desist order establishing that [an] act or practice is unfair or deceptive was not issued against the defendant in a civil penalty action under paragraph (1)(B) the issues of fact in such action against such defendant ***shall be tried de novo***." 15 U.S.C. § 45(m)(2) (emphasis added).

with intent to defraud the plaintiff." *Pasley v. Freeman*, 100 Eng. Rep. 450 (1789); *see also Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 676 (1st Cir. 2017) ("fraud, deceit, [and] misrepresentation" were actions at law, not equity). The FTC Act's prohibition of deceptive acts and practice applies to material representations or omissions, or any other practice, likely to mislead consumers acting reasonably under the circumstances. *See POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015).

For purposes of the Seventh Amendment, it does not matter that a common law tort requires harm to a particular victim whereas a violation of the FTC Act does not. When the Supreme Court found the securities law fraud claim at issue in *Jarkesy* closely related to common law actions for fraud and therefore legal in nature, it explicitly noted: "Courts have . . . not typically interpreted federal securities fraud to require a showing of harm to be actionable by the SEC." *See Jarkesy*, 144 S.Ct. at 2131 (citations omitted). Nor do the FTC's statutory duties to prevent deception deprive the Asbury Plaintiffs of their right to a jury trial. As the Fifth Circuit wrote in *Jarkesy*, "Congress cannot convert any sort of action into a 'public right' **simply by finding a public purpose** for it and codifying it in federal statutory law." *Jarkesy v. SEC*, 34 F.4th at 456-57 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989)) (emphasis added).

The conclusion that FTC Act claims are analogous to common law claims for fraudulent and negligent misrepresentation is bolstered by numerous cases holding or suggesting that FTC Act claims must be pled with particularity under Federal Rule of Civil Procedure 9(b) because they are based on or related to fraud. *See, e.g., FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853-54 (C.D. Cal. 2010); *FTC v. Ivy Cap., Inc.*, No. 2:11-CV-283, 2011 WL 2118626, at * 3 (D. Nev. May 25, 2011); *FTC v. Swish Mktg.*, No. C 09–03814 RS,  2010 WL 653486, at *4 (N.D. Cal. Feb. 22, 2010); *FTC v. Am. Precious Metals, LLC*, No. 11-61072-Civ, 2012 WL 13114034, at *4 (S.D.

Fla. Apr. 12, 2012).[19]  In this case, the FTC specifically alleges that the Asbury Plaintiffs made representations to consumers that were false and misleading—legal claims actionable at common law for which the Asbury Plaintiffs have a constitutional right to a jury trial.  The same is true with respect to the FTC's claims against the Asbury Plaintiffs for violation of ECOA.[20]

3.    **The FTC Proceeding against the Asbury Plaintiffs deprives them of fair notice and opportunity to be heard in violation of the Due Process Clause.**

The FTC Act—***as applied*** in the FTC Proceeding against the Asbury Plaintiffs—deprives them of due process.  Accordingly, the Court need not decide the serious questions about the continuing vitality after *Jarkesy* of *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023)—in which the Fifth Circuit rejected a ***facial*** due process challenge to the FTC Act—raised in the concurring opinions of Justices Gorsuch and Thomas in *Jarkesy* and *Axon*.  "The Seventh Amendment's jury-trial right does not work alone." *Jarkesy*, 144 S.Ct. at 2140 (Gorsuch, J., concurring).  Instead:

> It operates together with Article III and the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property.  The Seventh Amendment guarantees the right to trial by jury.  Article III entitles individuals to an independent judge who will preside over that trial. And due process promises any trial will be held in accord with time-honored principles. Taken together, all three provisions vindicate the Constitution's promise of a "fair trial in a fair tribunal."

*Id.* (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  "The 'appellate review model' of agency adjudication . . . raises serious constitutional concerns" under Article III, "may violate due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core

---

[19] This Court has similarly held that Rule 9(b) applies to claims of securities fraud.  *See, e.g., American Realty Tr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744,750 (N.D. Tex. 2005) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir.1994).  *See also Frith v. Guardian Life Ins. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (alleged violations of Texas Insurance Code and DTPA, along with allegations of "fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation, subject to Rule 9(b).") (citations omitted).

[20] *See Davis v. Strata Corp.*, 242 F.Supp.2d 643, 650 (D.N.D. 2003) ("it is well-established that a jury trial is required in an action brought [by private litigants] under [ECOA]") (citing *Vander Missen v. Kellogg Citizens National Bank of Green Bay*, 83 F.R.D. 206 (E.D.Wis.1979) ("a jury trial is required in an action brought under [ECOA]").

private rights," and "may run afoul of the Seventh Amendment by allowing an administrative agency to adjudicate what may be core private rights without a jury." *Axon*, 598 U.S. at 202 (Thomas, J., concurring) (citations omitted).

The issue before this Court is simply whether the current FTC Proceeding against the Asbury Plaintiffs passes constitutional muster under the Due Process Clause. It does not. The Due Process Clause "preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (citations omitted); *see also Williams v. Pennsylvania*, 579 U.S. 1, 15-16 (2016). Even an "unacceptable risk of actual bias" violates due process. *Id.* at 14.

Due process requires "notice of the factual basis" of the FTC's assertions "and a fair opportunity to rebut the [FTC's] factual assertions before a neutral decisionmaker." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right . . . an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)). Here, as set forth above, the FTC's Adjudicatory Rules, the ALJ's Protective Order, and the Scheduling Order—individually and collectively—deprive the Asbury Plaintiffs of that fair opportunity.

A "meaningful" hearing for purposes of due process "requires a neutral and detached judge." *Id.* (quoted case omitted). "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Williams*, 579 U.S. at 9. "Fair trials are too important a part of our free society to let prosecuting judges be trial judges

of the charges they prefer." *In re Murchison*, 349 U.S. at 137.  In this case, the Commission (as prosecutor) voted to initiate the FTC Proceeding against the Asbury Plaintiffs.  The merits of the FTC's Complaint—including findings of fact and conclusions of law—will be decided by the Commission (as judge).  This alone presents an "unacceptable risk of actual bias." *Williams*, 579 U.S. at 14.  In fact, it has resulted in a long history of systematically biased adjudication: "the FTC does not appear to dispute . . . that [it] has not lost a single [administrative] case in the past quarter-century.  Even the 1972 Miami Dolphins would envy that type of record." *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd on other grounds*, 598 U.S. 175 (2023).

In *Axon*, Justices Gorsuch and Thomas both found the Commission's "one-side[d]" historical record probative of structural bias.  Justice Thomas's concurrence found that "[d]eferential review of the SEC's and FTC's decisions is particularly concerning given their tendency to overwhelmingly agree with their respective agency's decisions." *Id.* at 197 n.1 Observing that "[a]gencies like the SEC and FTC combine the functions of investigator, prosecutor, and judge under one roof," Justice Gorsuch's concurrence cited statistics showing "just how tilted this game is," noting that "some say the FTC has not lost an in-house proceeding in 25 years" whereas an amicus brief "suggest[ed] the FTC has won more like 90% of the time." *Id.* at 215-16 (citations omitted).  In contrast, the Commission's track record in court has been far less impressive.  Last year alone, the Commission suffered more defeats in federal court than in decades of administrative adjudication.[21]  In this case, enjoining the FTC Proceeding is necessary "to

---

[21] *See, e.g., FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1076 (N.D. Cal. 2023) (denying preliminary injunction because "FTC has not shown it is likely to succeed"); *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161 (D. Idaho 2023) (dismissing FTC complaint for failure to state a claim by not adequately alleging how a defendant's actions created the required substantial injury element); *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 941 (N.D. Cal. 2023) (denying preliminary injunction because "the FTC has not demonstrated a likelihood of ultimate success on the merits"); *FTC v. Neora LLC*, No. 3:20-cv-01979-M, 2023 WL 8446166 (N.D. Tex. Sept. 28, 2023) (slip op.) (post-trial opinion rejecting all of the FTC's claims, finding its analysis "slavish," consisting of "rigid theoretical opinions" not "borne out in reality," and "unsupported by the evidence").

vindicate the Constitution's promise of a 'fair trial in a fair tribunal.'" *See Jarkesy*, 144 S.Ct. at 2140 (Gorsuch, J., concurring) (quoting *In re Murchison*, 349 U.S. at 136).

4.   **The ALJ overseeing the FTC Proceeding enjoys multiple layers of protection from removal by the President in violation of Article II.**

The fact that the ALJ in this case cannot be removed for any reason by the President violates Article II, according to the Fifth Circuit's interpretation of Supreme Court precedent. *Jarkesy*, 34 F.4th at 465 n.20.   Article II provides that "the executive Power shall be vested in a President." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020) (quoting U.S. Const., art. II § 1, cl. 1).   It does so because the Framers wanted to "ensure . . . accountability" in the Executive Branch. *Printz v. United States*, 521 U.S. 898, 922 (1997).   Although the President needs to delegate some authority and responsibilities, the President's removal power is "essential." *Myers v. United States*, 272 U.S. 52, 117 (1926).   To ensure that "the buck stops" in the Oval Office, the President must have the "power to remove" principal officers "who assist him in carrying out his duties." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 493, 512-14 (2010).   The President can delegate power only subject to an "unrestricted" right of removal. *Seila Law*, 591 U.S. at 214.

The President's Article II "power to oversee executive officers through removal" (*Free Enterprise Fund*, 561 U.S. at 492) extends to any officers who "wield executive power on his behalf." *Seila Law*, 591 U.S. at 204.   Article II distinguishes between "superior" officers—who generally may be appointed only with the advice and consent of the Senate—and "inferior" officers. *Freytag v. Comm'r*, 501 U.S. 868, 877–78 (1991).   Inferior officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 663 (1997).   Such officers may have some protection from presidential removal, but they may be given only one layer of for-cause removal protection—not two. *Seila Law*, 591 U.S. at 204.

In *Free Enterprise Fund*, the Supreme Court addressed the lawfulness of a statutory scheme whereby PCAOB members were removable only for cause by SEC commissioners, who are themselves removable by the President only for cause. *See* 561 U.S. at 486–87. The Supreme Court found the PCAOB's structure—a structure identical to the FTC's structure with respect to ALJs—invalid because "dual for-cause limitations on the removal of" officers of the United States "contravene the Constitution's separation of powers." *Id.* at 492. The Supreme Court reasoned that, with a second level of tenure protection for an inferior officer, principal officers would be "only responsible for their own determination of whether the Act's rigorous good-cause standard is met" and not for the inferior officer's actions, while the President would be "powerless to intervene." *Id*. at 496. The Supreme Court therefore found multilayer tenure schemes "contrary to Article II's vesting of the executive power in the President." *Id*.

The FTC ALJ presiding over the FTC Proceeding against the Asbury Plaintiffs is an Executive Branch officer who "hold[s] a continuing office established by law," "exercise[s] . . . significant discretion when carrying out . . . important functions," and renders decisions. *Lucia v. SEC*, 585 U.S. 237, 247–49 (2018) (quotation marks omitted). FTC ALJs "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges," and they "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Id.* at 248–49. FTC ALJs are inferior officers because they answer to the Commissioners, who are themselves appointed and confirmed by the Senate. *Edmond*, 520 U.S. at 663. Article II requires that FTC ALJs be accountable to the President, but they can be removed only "for good cause" by the Merit Systems Protection Board. 5 U.S.C. § 7521(a). The members of that Board may be removed only "for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d). This is the same removal structure the Court struck down in *Free Enterprise Fund*

21

as contrary to Article II.  To be sure, the Supreme Court did not specifically "address that subset of independent agency employees who serve as administrative law judges" because "[w]hether administrative law judges are necessarily 'Officers of the United States' [was] disputed" in that case and because such officials may "perform adjudicative rather than enforcement or policymaking functions" or may "possess purely recommendatory powers."  561 U.S. at 507 n.10. *Free Enterprise Fund* thus left for later whether ALJ dual layer protection violates Article II.

Yet the Fifth Circuit has since found the reasoning of *Free Enterprise Fund* applicable to ALJs, holding that SEC ALJs—who enjoy two layers of removal protection—were appointed in violation of Article II because "they are integral pieces within" an agency's "powerful enforcement apparatus," using their tools "at the direction of and with the power delegated to them by the Commission." *Jarkesy*, 34 F.4th at 465 n.20.  Citing the Fifth Circuit's decision in *Jarkesy*, the Northern District of Texas recently held that "Congress impermissibly protected the NLRB ALJs from the President's Article II power by insulating them from removal."  *Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024) (citing *Jarkesy*, 34 F.4th at 465).  The Court wrote that "the NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs." *Bertha*, 2024 WL 4202383, at *2.[22]  Two other district courts in Texas have cited *Jarkesy* to find two-layer removal protections for ALJs unconstitutional and issue preliminary injunctions,[23] and

---

[22] The Court also rejected the NLRB's arguments that the plaintiff could not rely on *Axon* to establish entitlement to injunctive relief because that case did not directly address an injunction, noting that the plaintiff's "alleged injury is having to participate in a constitutionally defective administrative process that is created by the removal provisions." *Bertha*, 2024 WL 4202383, at *3.  In fact, the Court concluded the plaintiff would suffer irreparable injury if subjected to a proceeding before an unaccountable ALJ.  *See id.* (citations omitted).  In contrast, the government would suffer no cognizable harm if the unlawful agency action were enjoined.  *Id.* at 4.  It also rejected the NLRB's argument that the Court should simply sever the unconstitutional removal provisions from the statute because that would not afford the plaintiff relief from having to appear before an unconstitutionally insulated ALJ.  *Id.* at 3.

[23] *See also Energy Transfer, LP v. NLRB,* No. 3:24-cv-198, 2024 WL 3571494, at *2 (S.D. Tex. July 2024) ("In *Jarkesy* . . ., the Fifth Circuit held that the statutory removal protections for [SEC ALJs] were unconstitutional" and

other U.S. district courts have applied *Free Enterprise Fund* to other federal agency ALJs. *See, e.g., Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *3 (S.D. Ga. Mar. 25, 2024). Because FTC ALJs are unconstitutionally protected, the FTC Proceeding is "an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191.

5.    **The FTC's exercise of executive authority violates Article II because Commissioners cannot be removed by the President.**

The FTC Act's delegation to the Commission of the executive powers to investigate statutory violations, exercise prosecutorial discretion, and initiate enforcement proceedings (15 U.S.C. §§ 45(b), 53(b)) violates Article II. Like PCAOB members, FTC Commissioners are not subject to removal even though they are "empowered to take significant enforcement actions," including initiating and disciplinary proceedings and engaging in prosecutorial discretion. *See Free Enterprise Fund*, 561 U.S. at 485 &504. Like the CFPB director, FTC Commissioners who "set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties" are insulated from rather than subject to the President's unrestricted removal power. *See Seila Law*, 591 U.S. at 214 & 225. Requiring "cause" for removal of an agency director with "broad investigative and enforcement authority" violates Article II. *Collins v. Yellen*, 594 U.S. 220, 230 (2021). Like the FHFA Director in *Yellen*, FTC Commissioners can be removed only for "inefficiency, neglect of duty, or malfeasance." 15 U.S.C. § 41.

---

"[t]he same holds true here" as "[t]he removal provisions that protect NLRB ALJs are indistinguishable from those that protect SEC ALJs") (citations omitted); *Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *4 (W.D. Tex. July 23, 2024) ("Defendants argue that a preliminary injunction is inappropriate because severance of the unconstitutional removal restrictions is the appropriate remedy. At the Preliminary Injunction stage, this Court does not believe it needs to reach the issue of whether it should sever or grant a permanent injunction.") (citing *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010); *but see Space Expl. Technologies Corp. v. Bell*, 701 F.Supp.3d 626, 634-35 (S.D. Tex. 2023) ("Plaintiff argues this unconstitutionally insulates [Office of the Chief Administrative Hearing Officer] ALJs from removal because they are the types of officers the President must be able to remove at will. Even if this is true, the Court can sever the unconstitutional statutory provisions.") (citations omitted).

The Supreme Court's more recent Article II jurisprudence is not diminished by its decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which rejected an argument that the FTC as it existed 88 years ago violated Article II.  Since 1935, the FTC's executive powers have greatly expanded so that, for example, it can prosecute enforcement actions in federal court.  That change alone warrants finding a delegation of executive power in violation of Article II.  Accordingly, the Asbury Plaintiffs are not asking this Court to do what only the Supreme Court can do, *i.e.*, "overturn a Supreme Court precedent" by deciding "whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding."  *Illumina*, 88 F.4th at 1047.  Instead, they merely seek to have the Court "extend those precedents to the 'new situation' before us."  *Seila Law*, 591 U.S. at 220.  *Humphrey's Executor* is not controlling because it did not involve identical or similar material facts.  *See Home Tel. & Tel. Co. v. City of Los Angeles*, 211 U.S. 265, 274 (1908).  Rather, "the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'"  *Seila Law*, 591 U.S. at 197 (quoting *Humphrey's Ex'r*, 295 U.S. at 628).

**B.**    **The Asbury Plaintiffs Will Suffer Irreparable Harm if Forced to Defend the FTC's Claims in an Administrative Proceeding in Violation of Their Constitutional Rights.**

Without preliminary injunctive relief, "[j]udicial review of [the Asbury Plaintiffs'] structural constitutional claims would come too late to be meaningful."  *Axon Enter., Inc.*, 598 U.S. at 191.  "[U]nder the Supreme Court's explicit language, the nature of the constitutional claims asserted here, no matter their unlikelihood of success, suffice to show irreparable harm."  *Scottsdale Cap. Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 110–11 (D.D.C. 2023), appeal pending, No. 23-5129 (D.C. Cir.).  "The harm of 'being subjected to' 'a proceeding by an unaccountable ALJ' is an injury that 'cannot be undone'" and "is by definition irreparable."  *Energy Transfer, L.P.*, 2024 WL 3571494, at *4 (quoted cases and citations omitted).  In this case,

the "here-and-now" injury that "is impossible to remedy once the proceeding is over" (*Axon Enter., Inc.*, 598 U.S. at 192) is compounded by the likely harm to the Asbury Plaintiffs from the FTC Proceeding, as described in SEC filings. App. 63-64.

**C.    The Injury Faced by the Asbury Plaintiffs Outweighs Any Claimed Injury to the FTC if the FTC Proceeding is Stayed Pending Adjudication of its Constitutionality.**

"The entry of a preliminary injunction which enjoins the [FTC] from violating [the Asbury] Plaintiffs' rights . . . could not possibly result in any harm to the Defendant agency. Such an injunction would merely require the agency to do that which the law already requires of it." *Hunt v. SEC*, 520 F. Supp. 580, 609 (N.D. Tex. 1981). The balance of equities favors the Asbury Plaintiffs because an injunction will merely preserve the status quo while the Court adjudicates their constitutional claims.

**D.    The Public Interest Favors Enjoining the FTC Proceeding While the Court Decides Whether it Would Deprive the Asbury Plaintiffs of Their Constitutional Rights.**

There is a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Vanderstok v. Blackhawk Mfg. Grp., Inc.*, 639 F. Supp. 3d 722, 731 (N.D. Tex. 2022) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up)); *see also Texas v. United States,* 40 F.4th 205, 229 (5th Cir. 2022) (same); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643-44 (5th Cir. 2023).  In contrast, there is generally "no interest in the perpetuation of unlawful agency action." *Texas*, 40 F.4th at 229 (quoting *League of Women Voters*, 838 F.3d at 12).

## IV.    <u>CONCLUSION</u>

Both in fact and as a matter of law, the Asbury Plaintiffs face irreparable harm.  The facts, the law, and the equities all favor a stay of the FTC Proceeding pending this Court's resolution of their constitutional claims.

Dated: October 14, 2024

Respectfully submitted,

FOLEY & LARDNER LLP

Todd A. Murray
(Texas State Bar No. 00794350)
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby
(*Pro hac vice* application forthcoming)
Megan Chester
(*Pro hac vice* application forthcoming)
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

By: /s/ Edward D. Burbach

Edward D. Burbach*
(Texas State Bar No. 03355250)
John Sepehri
(Texas State Bar No. 00797408)
Robert F. Johnson III
(Texas State Bar No. 10786400)
Brandon M. Livengood
(*Pro hac vice* application forthcoming)
(Texas State Bar No. 24128022)
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com

_____
*Attorney in charge

*Counsel for the Asbury Plaintiffs*

26