# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FT. WORTH DIVISION

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*,<br><br>        *Plaintiffs*,<br><br>v.<br><br>THE FEDERAL TRADE COMMISSION, *et al.*,<br><br>        *Defendants*. | No. 4:24-cv-00950-O |

## Defendants' Memorandum in Support of Their Motion to Dismiss

OF COUNSEL:

MATTHEW M. HOFFMAN
Attorney
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580

JAMIE D. BROOKS
JAMES DOTY
Attorneys
Division of Financial Practices
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BURDEN H. WALKER
Acting Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director, Civil Litigation

HILARY K. PERKINS
Assistant Director

ISAAC C. BELFER (D.C. Bar No. 1014909)
ZACHARY L. COWAN (N.C. Bar No. 53432)
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
(202) 305-7134 (Belfer)
(202) 353-7728 (Cowan)
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov
Zachary.L.Cowan@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND.............................................................................................................. 2

    I.      Statutory and Regulatory Background................................................... 2

    II.     Factual and Procedural Background ...................................................... 3

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT ................................................................................................................. 6

    I.      Count II Fails to State a Claim for Relief Because Asbury Is Not Entitled to a Jury Trial ......................................................................... 6

       A.    The Only Remedy Sought in the FTC Proceeding Is a Cease-And-Desist Order, Which Is Akin to an Equitable Injunction ................................. 7

       B.    The Administrative Proceeding Is Unlike Any Legal Action at Common Law for Which Asbury Would Be Entitled to a Jury Trial......................................... 9

    II.     Count I Fails to State a Claim for Relief Because, Consistent with Article III, the FTC Proceeding Is Adjudicating "Public" Rights ................................................. 13

    III.    Count III Fails to State a Claim for Relief Because Asbury Has Not Shown a Deprivation of Due Process, and the Court Lacks Jurisdiction over Asbury's As-Applied Due Process Challenge.............................. 16

    IV.    Counts IV and V Fail to State a Claim for Relief Under Article II Based on the ALJ and Commissioner Removal Protections ..................................... 20

CONCLUSION............................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
　295 U.S. 495 (1935)......................................................................................................... 11

*Akin v. OTS-DOT*,
　950 F.2d 1180 (5th Cir. 1992) ........................................................................................ 14

*Am. Airlines v. N. Am. Airlines*,
　351 U.S. 79 (1956) .......................................................................................................... 14

*Am. Fin. Servs. Ass'n v. FTC*,
　767 F.2d 957 (D.C. Cir. 1985) ....................................................................................... 12

*Am. Washboard Co. v. Saginaw Mfg. Co.*,
　103 F. 281 (6th Cir. 1900) .............................................................................................. 10

*Ark. Wholesale Grocers' Ass'n v. FTC*,
　18 F.2d 866 (8th Cir. 1927) ............................................................................................ 13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)................................................................................................... passim

*Atlas Roofing v. Occupational Safety and Health Review Comm'n*,
　430 U.S. 442 (1977)........................................................................................................ 15

*Axon Enterprise, Inc. v. FTC*,
　598 U.S. 175 (2023).................................................................................................. 16, 17

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
　591 U.S. 610 (2020)........................................................................................................ 22

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)........................................................................................................... 5

*Brownback v. King*,
　592 U.S. 209 (2021)........................................................................................................... 5

*Burgess v. FDIC*,
　639 F. Supp. 3d 732 (N.D. Tex. 2022) (O'Connor, J.)............................................... 2, 21

*Calcutt v. FDIC*,
　37 F.4th 293 (6th Cir. 2022) .......................................................................................... 23

*CFTC v. Schor*,
　478 U.S. 833 (1986)........................................................................................................ 15

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
　526 U.S. 687 (1999)........................................................................................................... 6

*Clapper v. Amnesty Int'l USA*,
　568 U.S. 398 (2013)........................................................................................................ 19

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
　51 F.4th 616 (5th Cir. 2022) .......................................................................................... 21

*Coleman v. Gen. Motors Acceptance Corp.*,
    220 F.R.D. 64 (M.D. Tenn. 2004) ................................................................. 8, 9

*Collins v. Yellen*,
    594 U.S. 220 (2021)................................................................................. 2, 20, 21

*Consumers' Rsch. v. CPSC*,
    91 F.4th 342 (5th Cir. 2024) ...................................................................... 2, 24

*Crowell v. Benson*,
    285 U.S. 22 (1932)................................................................... 1, 13, 14, 15

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ........................................................................................ 5

*Davis v. Strata Corp.*,
    242 F. Supp. 2d 643 (D.N.D. 2003)............................................................... 9

*Dickinson v. Zurko*,
    527 U.S. 150 (1999).................................................................................... 20

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) ........................................................................ 22, 23, 24

*FTC v. A. McLean & Son*,
    84 F.2d 910 (7th Cir. 1936) ........................................................................ 13

*FTC v. Cap. City Mortg. Corp.*,
    321 F. Supp. 2d 16 (D.D.C. 2004) ......................................................... 12, 14

*FTC v. Direct Connection Consulting, Inc.*,
    No. 1:08-CV-1739, 2008 WL 11336225 (N.D. Ga. Sept. 12, 2008).......................................... 8

*FTC v. Freecom Commc'ns, Inc.*,
    401 F.3d 1192 (10th Cir. 2005) ................................................................... 12

*FTC v. Liberty Supply Co.*,
    No. 4:15-CV-829, 2016 WL 4063797 (E.D. Tex. July 29, 2016) ......................................... 8, 9

*FTC v. R.F. Keppel & Bro.*,
    291 U.S. 304 (1934)................................................................................... 10

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972)................................................................................... 11

*FTC v. Standard Educ. Soc'y*,
    302 U.S. 112 (1937)................................................................................... 12

*FTC v. Sterling Drug, Inc.*,
    317 F.2d 669 (2d Cir. 1963)........................................................................ 12

*FTC v. Vylah Tec LLC*,
    No. 2:17-CV-228, 2018 WL 2970962 (M.D. Fla. June 13, 2018)........................................... 8

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)........................................................................ 12

*Gibson v. FTC,*
   682 F.2d 554 (5th Cir. 1982) ................................................................ 2, 16

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989) ...................................................................................... 6

*H&R Block Inc. v. Himes,*
   No. 24-CV-198, 2024 WL 3742310 (W.D. Mo. Aug. 1, 2024) ........................... 23

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984) ...................................................................................... 6

*Humphrey's Ex'r v. United States,*
   295 U.S. 602 (1935) ............................................................................... 2, 24

*Illumina, Inc. v. FTC,*
   88 F.4th 1036 (5th Cir. 2023) .......................................................... 2, 16, 24

*In re Abbott,*
   117 F.4th 729 (5th Cir. 2024) ................................................................... 6, 7

*Int'l Shoe Co. v. FTC,*
   280 U.S. 291 (1930) .................................................................................. 13

*Jarkesy v. SEC,*
   34 F.4th 446 (5th Cir. 2022) .................................................................. 22, 23

*Leachco, Inc. v. CPSC,*
   103 F.4th 748 (10th Cir. 2024) ................................................................... 21

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB,*
   No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023) ............................ 17

*Lucia v. SEC,*
   585 U.S. 237 (2018) .................................................................................. 22

*Marine Shale Processors, Inc. v. EPA,*
   81 F.3d 1371 (5th Cir. 1996) ................................................................ 7, 8, 9

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ......................................................................... 17, 18, 19

*Meta Platforms, Inc. v. FTC,*
   No. 23-CV-3562, 2024 WL 1121424 (D.D.C. Mar. 15, 2024) .................. 12, 15, 16

*Meta Platforms, Inc. v. FTC,*
   No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024) ..................... 7, 14, 16

*Mistretta v. United States,*
   488 U.S. 361 (1989) .................................................................................. 14

*Morrison v. Olson,*
   487 U.S. 654 (1988) .................................................................................. 24

*Muniz v. Hoffman,*
   422 U.S. 454 (1975) .................................................................................... 9

*Nat'l Harness Mfrs. Ass'n v. FTC*,
  268 F. 705 (6th Cir. 1920) ................................................................. 13

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ........................................................................... 6

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) ........................................................................... 13

*Ostler Candy Co. v. FTC*,
  106 F.2d 962 (10th Cir. 1939) ........................................................... 13

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ........................................................................... 8

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*,
  9 F.4th 247 (5th Cir. 2021) ............................................................... 4

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ........................................................................... 22

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024) ............................................................... passim

*Seila Law v. CFPB*,
  591 U.S. 197 (2020) ........................................................... 20, 22, 23, 24

*Singh v. Garland*,
  20 F.4th 1049 (5th Cir. 2021) ........................................................... 17

*Smith v. Barton*,
  914 F.2d 1330 (9th Cir. 1990) ........................................................... 11

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................. 5

*Thomas v. Union Carbide Agr. Prod. Co.*,
  473 U.S. 568 (1985) ........................................................................... 15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................... 7

*Tull v. United States*,
  481 U.S. 412 (1987) ........................................................................... 8

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) .............................................................................. 23

*Waldrop v. S. Co. Servs.*,
  24 F.3d 152 (11th Cir. 1994) ............................................................. 11

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) .............................................................................. 16

*Winnett v. Austin Reg'l Clinic*,
  No. 1:20-CV-1155, 2023 WL 3984674 (W.D. Tex. Apr. 26, 2023) ........ 8

*Withrow v. Larkin*,
  421 U.S. 35 (1975) ................................................................................. 2, 16

**Statutes**

5 U.S.C. §

  554(d)(2) ............................................................................................... 3, 16
  557(b) ........................................................................................................ 23
  706(2)(E) ................................................................................................... 19
  1202(d) ..................................................................................................... 20
  7521(a) ............................................................................................ 3, 20, 23

15 U.S.C. §

  41 ........................................................................................................... 3, 20
  45(a) .................................................................................................... 2, 4, 7
  45(b) ..................................................................................................... 3, 9
  45(c) ................................................................................................... 17, 18
  45(*l*) ......................................................................................................... 9
  45(n) ........................................................................................................ 12
  57b(b) ........................................................................................................ 8
  1691(a)(1) .................................................................................................. 4
  1691c(c) ..................................................................................................... 9

29 U.S.C. § 160(c) ....................................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 5
Fed. R. Civ. P. 12(h)(3) .................................................................................. 5
Fed. R. Civ. P. 26(a)(2)(D)(ii) ....................................................................... 18
Fed. R. Civ. P. 26(b)(4)(D) ........................................................................... 20

**Regulations**

12 C.F.R. § 202.4(a) ....................................................................................... 4

16 C.F.R. §

  3.31–3.46 .............................................................................................. 3, 18
  3.31(d) ...................................................................................................... 19
  3.31A(a) .................................................................................................... 18
  3.31AI ........................................................................................................ 20
  3.33(c)(1) ................................................................................................... 19
  3.36(a) ....................................................................................................... 19
  3.41–3.46 ................................................................................................... 18
  3.42 ............................................................................................................. 3
  3.51–3.54 .............................................................................................. 18, 23
  4.14(c) ......................................................................................................... 3
  4.7 .............................................................................................................. 16
  4.7(b) .......................................................................................................... 3

**Other Authorities**

Kimball Dean Parker, *A Historical Approach to Negligent Misrepresentation and Federal Rule of Civil Procedure 9(b)*, 80 U. Chi. L. Rev. 1461 (2013) ........................................................ 10

Neil G. Williams, *Offer, Acceptance, and Improper Considerations: A Common-Law Model for the Prohibition of Racial Discrimination in the Contracting Process*, 62 Geo. Wash. L. Rev. 183 (1993) ................................................................................................................................ 11

## INTRODUCTION[1]

Congress created the Federal Trade Commission ("FTC") in 1914 and empowered it to enforce the laws under its purview through administrative adjudication, subject to review in the federal courts of appeal. Pursuant to that mandate, the FTC has conducted administrative adjudications for the past 110 years, and its decisions have been repeatedly affirmed by the Supreme Court, the Fifth Circuit, and other courts. Plaintiffs here (collectively, "Asbury") operate or manage Dallas-area automobile dealerships and are respondents in an FTC administrative proceeding. The FTC has charged Asbury with unfair and deceptive practices in violation of the FTC Act—lying to consumers about fees and charges and imposing hidden charges without consent—and discriminating against Black and Latino consumers in credit transactions in violation of the Equal Credit Opportunity Act ("ECOA"). The Complaint asserts several constitutional challenges to the FTC proceeding, essentially claiming that the FTC's administrative proceedings have been unconstitutional for more than a century. But these claims are foreclosed by controlling precedent, and thus the Complaint should be dismissed.

*First*, Asbury is not entitled to a jury in the FTC proceeding because the remedy sought is a cease-and-desist order, akin to an equitable injunction. *Second*, the Supreme Court has long recognized that the FTC Act is a paradigmatic "public rights" statute that can be enforced through administrative adjudication consistent with Article III of the Constitution. *Crowell v. Benson*, 285 U.S. 22, 50–51 & n.13 (1932). *Third*, the Supreme Court and the Fifth Circuit have repeatedly held that an agency's combination of prosecutorial and adjudicative functions does not violate due

---

[1] Per the Court's Order, ECF No. 20, Defendants are filing this brief concurrently with their Opposition to Plaintiffs' Motion for Preliminary Injunction. The text in the two briefs is largely the same, except that the legal standards differ, and this brief does not include argument relating to irreparable harm, the balance of equities, and the public interest.

process. *Withrow v. Larkin*, 421 U.S. 35, 58 (1975); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023); *Gibson v. FTC*, 682 F.2d 554, 559–60 (5th Cir. 1982). Moreover, the Court does not have jurisdiction over Asbury's as-applied due process challenge, and that challenge is meritless in any event. *Fourth*, Asbury is not entitled to relief on its claims that the removal protections for FTC administrative law judges ("ALJs") and Commissioners violate Article II, since it has not shown any harm from those protections, and its claims also fail on the merits. *Collins v. Yellen*, 594 U.S. 220 (2021); *Humphrey's Ex'r v. United States*, 295 U.S. 602, 631–32 (1935); *Consumers' Rsch. v. CPSC*, 91 F.4th 342, 345 (5th Cir. 2024), *cert. denied,* No. 23-1323, 2024 WL 4529808 (U.S. Oct. 21, 2024); *Illumina*, 88 F.4th at 1047; *Burgess v. FDIC*, 639 F. Supp. 3d 732, 746-47 (N.D. Tex. 2022) (O'Connor, J.).[2]

For these reasons, the Court should dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim for relief.

## BACKGROUND

### I. Statutory and Regulatory Background

The FTC Act declares unlawful all "unfair or deceptive acts or practices in or affecting commerce," and it empowers the FTC to enforce the Act through administrative adjudication. 15 U.S.C. § 45(a), (b).[3] When the FTC believes an entity has been or is engaging in unfair or deceptive conduct and that an FTC proceeding would be in the public interest, it shall serve an administrative

---

[2] The Fifth Circuit is currently considering public rights, due process, and ALJ removal issues in the context of FTC administrative proceedings in *Intuit, Inc. v. FTC*, No. 24-60040 (5th Cir.). The court heard oral argument in that case on November 4, 2024. The Fifth Circuit is also considering public rights, Seventh Amendment, due process, and ALJ removal issues in the context of a National Labor Relations Board ("NLRB") proceeding in *Space Exploration Technologies Corp. v. NLRB*, No. 24-40315 (5th Cir.). Oral argument in that case is scheduled for November 18, 2024.

[3] Unless otherwise indicated, emphases in quotations are added, and internal citations, quotation marks, and alteration marks from quotations are omitted.

complaint stating its allegations. *Id.* § 45(b). The respondent may appear at a hearing and "show cause" why the FTC should not order it to cease and desist from the alleged conduct. *Id.* If the FTC decides that the respondent has engaged in unfair or deceptive conduct, it may issue a cease-and-desist order, which is reviewable by the courts of appeals; the FTC cannot award penalties or monetary relief. *Id.* § 45(b)–(c). In addition, the FTC enforces ECOA, violations of which are deemed to be violations of the FTC Act. *Id.* § 1691c(c).

The FTC has conducted hearings in accordance with the Administrative Procedure Act ("APA") since that statute was enacted in 1946. The FTC staff who prosecute a complaint (known as "Complaint Counsel") are strictly walled off from adjudicators and may not communicate with them about the merits of a proceeding. *See* 5 U.S.C. § 554(d)(2); 16 C.F.R. § 4.7(b). The initial hearing is typically conducted before an ALJ, who is appointed by the Commission and may be removed only for good cause found by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a). Parties to FTC proceedings have discovery and trial rights comparable to those in the Federal Rules of Civil Procedure. *See* 16 C.F.R. §§ 3.31–3.46. The ALJ issues a recommended decision, and the Commission reviews that decision *de novo*, including potentially expanding the record, and issues a final decision. 16 C.F.R. §§ 3.42, 3.51–3.54. There are five Commissioners (no more than three from the same political party), and final decisions are made by majority vote. 15 U.S.C. § 41; 16 C.F.R. § 4.14(c). Commissioners "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41.

## II.  Factual and Procedural Background

On August 16, 2024, the FTC issued an administrative complaint against Asbury, alleging that Asbury often charges consumers without their consent for add-ons such as service contracts or chemical coatings that commonly cost hundreds or thousands of dollars above the price of the

vehicle, or misrepresents that the charges are required. App.9, 11.[4] Asbury allegedly received many consumer complaints and found evidence of these practices through its audits, which each dealership named in the complaint failed repeatedly due to payment packing and other "Deceptive Practice[s]," as Asbury labels them, sometimes "in over 50% of deals." App.12–15.[5] Also, a "survey of consumers who [Asbury] charged for" add-ons showed that at the three named dealerships, at least 58%, 75%, and 73% of the surveyed consumers "were charged for at least one add-on that they did not agree to buy or that was misrepresented as required." App.15. The FTC alleges this conduct is unfair and deceptive, violating the FTC Act. 15 U.S.C. § 45(a); App.17–18.

The complaint further alleged that Asbury "charge[s] Black and Latino consumers more than non-Latino White consumers" for the same add-ons, App.9, and "target[s] Black and Latino consumers with packed add-ons and higher-priced add-ons," such as by "encourag[ing] employees to pack add-ons more often in contracts with Latino consumers and consumers who are non-native English speakers." App.16. The complaint alleged that this conduct constitutes discrimination by a creditor against an applicant with respect to any aspect of a credit transaction on the basis of race, color, or national origin, in violation of ECOA and its implementing Regulation B, 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 202.4(a). App.18–19.

---

[4] Citations to "App." refer to the Appendix to Asbury's brief in support of its preliminary injunction motion. ECF No. 9. These citations may be considered in resolving Defendants' motion to dismiss because they refer to documents in the administrative proceeding that are referenced in the Complaint. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021) ("At the 12(b)(6) stage, the court may consider the complaint in its entirety, including documents incorporated into the complaint by reference." (quotations omitted)). In particular, the Complaint references the administrative complaint (App.8–21) at paragraphs 1–8, 40, 44, the Scheduling Order (App.22–33) at paragraphs 5, 41, 49, Asbury's Answer and Affirmative Defenses (App.67–98) at paragraph 40, and the Protective Order (App.99–102) at paragraph 49.

[5] *See* https://perma.cc/Q26R-63F8 (administrative complaint with amended redactions).

The complaint identified potential relief, including prohibiting "misrepresentations in connection with motor vehicles" and "charges for any add-on that does not provide a benefit to consumers," requiring "express, informed consent for all charges in connection with motor Vehicles," prohibiting "unlawful credit discrimination," and requiring "a fair lending program that safeguards against discrimination against credit Applicants." App.21. The Commission noticed a hearing before an ALJ for April 16, 2025. App.20. Asbury filed this action on October 4, 2024, ECF No. 1, and filed its preliminary injunction motion on October 14, 2024, ECF No. 6. On October 29, 2024, the Commission granted a joint motion to extend all pre-hearing deadlines in its proceeding by four months and to continue the hearing until August 18, 2025.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction, which must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Court "presume[s]" to "lack jurisdiction" unless Plaintiffs meet their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *see Brownback v. King*, 592 U.S. 209, 217 (2021) (plaintiff "must plausibly allege all jurisdictional elements"). If the burden is not met, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"To survive a motion to dismiss" under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept as true "conclusory statements" or "legal conclusions." *Id.* at 678–79. The complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678, and "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. "[I]f as a matter of law 'it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

A<span style="font-variant:small-caps">RGUMENT</span>

**I.  Count II Fails to State a Claim for Relief Because Asbury Is Not Entitled to a Jury Trial**

Asbury claims the FTC proceeding deprives it of its right to a jury trial. ECF No. 1 ("Compl.") ¶¶ 65–68. The Seventh Amendment guarantees a jury trial for "Suits at common law" and was intended to preserve the jury right for "suits in which *legal* rights were to be ascertained and determined." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41–42 (1989). It does not expand the jury right to all suits "where *equitable* rights alone were recognized, and equitable remedies were administered." *Id.* In particular, it is "settled law that the Seventh Amendment does not apply to suits seeking only injunctive relief." *In re Abbott*, 117 F.4th 729, 739 (5th Cir. 2024) (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999)). Here, the *only* remedy sought in the FTC proceeding is a cease-and-desist order, akin to an equitable injunction. App.20–21. Thus, Asbury is not entitled to a jury trial.

Asbury nevertheless asserts a jury right under *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), which was a securities fraud enforcement action where the Securities and Exchange Commission ("SEC") sought civil penalties—not just injunctive relief. Since *Jarkesy*, the Fifth Circuit has reaffirmed that the Seventh Amendment does not apply to proceedings seeking only injunctive relief. *See In re Abbott*, 117 F.4th at 739. Regardless, the analysis in *Jarkesy* confirms that Asbury is not entitled to a jury trial. To decide whether a jury right applied, *Jarkesy* examined two factors:

6

"the cause of action and the remedy it provides." 144 S. Ct. at 2129. Here, both factors show the FTC proceeding is akin to an equitable action—not a legal action. Thus, Asbury has no jury right.

### A. The Only Remedy Sought in the FTC Proceeding Is a Cease-And-Desist Order, Which Is Akin to an Equitable Injunction

*Jarkesy* held that "the remedy is the more important" factor in deciding whether a litigant has a jury right. *Id.* Here, the remedy is dispositive. The FTC is conducting a proceeding to decide whether to order Asbury "to cease and desist" from unfair and deceptive conduct in violation of the FTC Act, 15 U.S.C. § 45(a), and discrimination in violation of ECOA, *id.* § 1691(a)(1). App.20. This remedy—a prospective order addressing future conduct—is akin to an injunction and is equitable in nature. It is not even "arguably analogous" to "relief available at law." *Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732, at *3 (D.C. Cir. Mar. 29, 2024) ("*Meta II*").

Although a cease-and-desist order is the only relief sought in the FTC proceeding, *see* App.20–21,[6] Asbury speculates that, if the FTC issues such an order in the *current* proceeding, it *may* seek civil penalties in a *future* proceeding for violations of that order. Compl. ¶ 46. But for three reasons, Asbury fails to show it is entitled to a jury trial in the FTC's current proceeding.

***First***, for Asbury's claim that it may someday be injured by being deprived of a jury in a civil penalty proceeding (Compl. ¶ 46), Asbury cannot show a "certainly impending" injury as required for Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (stating "plaintiffs must demonstrate standing for each claim that they press"). In this Circuit, a litigant suffers "no arguable" Seventh Amendment injury "*unless and until* [it] is prevented from litigating its defenses . . . to a jury." *Marine Shale Processors, Inc. v. EPA*, 81 F.3d 1371, 1378 (5th Cir.

---

[6] Although the FTC's complaint states that the FTC may impose "any other relief *appropriate*," App.21, this is "standard prayer for relief" language and does not change the fact that the only contemplated relief is a cease-and-desist order. *See In re Abbott*, 117 F.4th at 738.

1996). Several contingencies must occur before Asbury could suffer the claimed injury, including (1) the FTC must issue an order, (2) Asbury must violate that order, (3) the FTC must sue for civil penalties, and (4) a court must withhold a jury right. Asbury's speculation about "future possible litigation outcomes" is not a "certainly impending" injury. *Winnett v. Austin Reg'l Clinic*, No. 1:20-CV-1155, 2023 WL 3984674, at *5–7 (W.D. Tex. Apr. 26, 2023) (similar).

   ***Second***, under binding precedent, the Court should not evaluate what remedy the FTC *could* seek in a future proceeding; rather, it must "examine the remedy *sought*" in the *current* proceeding. *Tull v. United States*, 481 U.S. 412, 417 (1987). The FTC has not sought civil penalties or any other legal remedy in the current proceeding, so Asbury does not have a jury right. *See, e.g.*, *FTC v. Vylah Tec LLC*, No. 2:17-CV-228, 2018 WL 2970962, at *7 (M.D. Fla. June 13, 2018); *FTC v. Direct Connection Consulting, Inc.*, No. 1:08-CV-1739, 2008 WL 11336225, at *1 (N.D. Ga. Sept. 12, 2008).[7] Asbury claims that ignoring possible future proceedings would circumvent the jury right. Compl. ¶ 34. It does not. At common law, courts of equity could adjudicate issues even when there were potential follow-on legal proceedings. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333 (1979). Consistent with this tradition, the Supreme Court has held that an "equitable determination" may be reached—and even treated as preclusive—in a "subsequent legal action" without violating the Seventh Amendment. *Id.* at 335; *see Marine Shale*, 81 F.3d at 1376 (similar); *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 84–85 (M.D. Tenn. 2004) (holding plaintiff is not entitled to a jury on an ECOA claim based on "hypothetical, follow-on

---

[7] The administrative complaint recognizes that, if the FTC issues an order, it may then file suit in district court to "seek relief to redress injury to consumers." App.20–21; *see* 15 U.S.C. § 57b(b); *see also* Compl. ¶ 43. This redress "restore[s] the victim." *Jarkesy*, 144 S. Ct. at 2129. Such relief is equitable and does not entitle a litigant to a jury trial, which Asbury does not dispute. *See, e.g., FTC v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4063797, at *2 (E.D. Tex. July 29, 2016). Moreover, Asbury cannot establish a certainly impending injury based on possible future proceedings. *Supra* pp. 7–8.

suits for money damages").[8]

*Third*, even if Asbury would have a jury right in some future civil penalty proceeding, the jury in that proceeding would be "deciding different questions" than the FTC's current proceeding. *Marine Shale*, 81 F.3d at 1377. Currently, the FTC is considering whether to issue an order directing Asbury to cease and desist unlawful conduct. 15 U.S.C. §§ 45(b), 1691c(c). By contrast, in a future civil penalty proceeding, a factfinder would determine whether Asbury knowingly violated an FTC order *after* it was issued. *Id.* § 45(*l*). These two proceedings may "involve common issues, but [they] are deciding different questions." *Marine Shale*, 81 F.3d at 1377.[9]

In sum, the relief sought in the FTC proceeding is akin to an equitable remedy and thus does not entitle Asbury to a jury trial under the Seventh Amendment.

## B. The Administrative Proceeding Is Unlike Any Legal Action at Common Law for Which Asbury Would Be Entitled to a Jury Trial

Asbury is also incorrect that the FTC proceeding is akin to a common-law legal action. Compl. ¶¶ 9, 46. Courts have "unanimously held that," where the FTC seeks injunctive relief to halt unfair and deceptive conduct, such "claims are equitable in nature" and not legal. *Liberty Supply Co.*, 2016 WL 4063797, at *2 (collecting numerous cases).

---

[8] Indeed, if a jury right attached based on possible follow-on proceedings, this would eviscerate federal courts' equitable jurisdiction. For example, parties could assert a jury right whenever courts imposed an injunction, based on hypothetical follow-on criminal contempt proceedings. *See, e.g., Muniz v. Hoffman*, 422 U.S. 454, 476 (1975) (noting jury right in certain contempt proceedings).

[9] Asbury attempts to support its claim of a jury right under ECOA by citing a case involving a private litigant, Compl. ¶¶ 9, 35, but private litigants are differently situated from the FTC, which enforces the law to protect the public. Moreover, the private suit Asbury cites involved a claim for monetary damages. *See Davis v. Strata Corp.*, 242 F. Supp. 2d 643, 650 (D.N.D. 2003). By contrast, courts have held there is no jury right for ECOA claims for injunctive relief. *See Coleman*, 220 F.R.D. at 84–85. Here, the FTC is seeking relief akin to an injunction.

Ignoring this authority, Asbury asserts a dubious connection between the FTC proceeding and common-law actions for "fraud" and "deceit." Compl. ¶ 46.[10] Asbury relies on *Jarkesy*, which discussed securities fraud, not unfairness or deception under the FTC Act. 144 S. Ct. at 2130. In *Jarkesy*, after finding that the SEC sought civil penalties as a legal remedy, the Court held that the SEC's action was akin to an action at law. The Court identified a "close relationship" between securities fraud and common-law fraud, which "target the same basic conduct." *Id.* Moreover, Congress "deliberately used 'fraud' and other common law terms of art" to incorporate the common law "into federal securities law." *Id.* While the remedy was more important, this common-law connection "confirm[ed]" that the Seventh Amendment applied. *Id.*

Unlike the statutory scheme in *Jarkesy*, the FTC Act and ECOA are "self-consciously novel" and not meant "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Id.* at 2137. Before the FTC was created, courts lacked "equitable jurisdiction" to "suppress the trade and businesses of all persons whose goods may deceive the public." *Am. Washboard Co. v. Saginaw Mfg. Co.*, 103 F. 281, 286 (6th Cir. 1900). Litigants could bring a claim "for the protection of the property rights of a complainant," but "not based upon fraud or imposition upon the public." *Id.* at 285.

Congress filled this gap in 1914 by directing the FTC to halt "unfair methods of competition." *See FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310, 313 (1934) (holding the FTC

---

[10] Asbury's preliminary injunction motion also compared the FTC proceeding to common-law negligent misrepresentation. *See* ECF No. 8 at 15–16. Although the tort of negligent misrepresentation "has its roots in the common law," it was not recognized until 1922—eight years after the FTC Act's enactment. Kimball Dean Parker, *A Historical Approach to Negligent Misrepresentation and Federal Rule of Civil Procedure 9(b)*, 80 U. Chi. L. Rev. 1461, 1469 (2013). Thus, it is not a relevant reference for rights "preserved" under the Seventh Amendment. U.S. Const. amend. VII. In any event, FTC Act and ECOA claims differ in material respects from negligent misrepresentation, as discussed below.

may stop practices that "exploit consumers" even if not "forbidden at common law"). This phrase "was an expression new in the law." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 532 (1935). In fact, Congress "explicitly considered, and rejected," the idea of "tying the concept of unfairness to a common-law or statutory standard." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972). After 1914, there were "judicial attempts" to limit the FTC Act to traditional views of unfairness. *Id.* at 241. But in 1938, Congress "legislatively confirmed" that the FTC Act extended beyond the common law by amending the statute to prohibit "unfair or deceptive acts or practices." *Id.* at 244. Thus, the Supreme Court has held that the FTC "does not arrogate excessive power to itself" when it measures a practice against the "congressionally mandated standard of fairness," but rather it acts "*like a court of equity*" in "consider[ing] public values." *Id.*

Similarly, the common law did not prohibit racial discrimination. *See Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) (recognizing "there were no discrimination actions at common law"); *Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990) (same). This was especially true with respect to credit lending. The common law recognized "freedom of contract," meaning "parties could not be compelled to contract with one another," and "any person had a right to refuse to deal with another person for any reason whatsoever." Neil G. Williams, *Offer, Acceptance, and Improper Considerations: A Common-Law Model for the Prohibition of Racial Discrimination in the Contracting Process*, 62 Geo. Wash. L. Rev. 183, 191 (1993). When Congress amended ECOA in 1976, it departed from the common law and created new rights for applicants seeking credit. Specifically, it prohibited racial discrimination against applicants by creditors because it found that race is "totally unrelated to creditworthiness." S. Rep. 94-589, at 4 (1976). Congress also directed the FTC to "ferret out" this "inherently insidious" discrimination in lending. *Id.* at 13, 17.

11

The FTC Act and ECOA claims differ in material respects from common-law legal claims for fraud, deceit, and negligent misrepresentation. For example, conduct is "unfair" under the FTC Act if: (1) the acts at issue are likely to cause substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) the injury is not outweighed by any countervailing benefits to consumers or competition. 15 U.S.C. § 45(n). Thus, unfairness is "not moored in the traditional rationales of anticompetitiveness or deception," but rather is based on the FTC's decades of public policy experience determining what types of business practices are harmful to consumers, before being codified by Congress. *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 971 (D.C. Cir. 1985); *see FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 244 (3d Cir. 2015).

Moreover, the FTC Act's "central purpose" was "to abolish the rule of caveat emptor which traditionally defined rights and responsibilities," *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963), and establish a new norm of "honesty" in order to "protect the trusting as well as the suspicious" from deceptive and unfair practices, *FTC v. Standard Educ. Soc'y*, 302 U.S. 112, 116 (1937). In addition, unlike the common-law claims cited by Asbury, "the FTC need not prove scienter, reliance or injury to establish" a violation of the FTC Act. *Meta Platforms, Inc. v. FTC*, No. 23-CV-3562, 2024 WL 1121424, at *18 & n.6 (D.D.C. Mar. 15, 2024) ("*Meta I*"); *see FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005). Finally, when the FTC commences a proceeding under ECOA, it addresses harm to the "public at large," not just to "individual consumers." *FTC v. Cap. City Mortg. Corp.*, 321 F. Supp. 2d 16, 22 (D.D.C. 2004).

In sum, the FTC proceeding is akin to an equitable action and is unlike any common-law action at law. Asbury fails to state a claim for relief on its Seventh Amendment claim.

**II. Count I Fails to State a Claim for Relief Because, Consistent with Article III, the FTC Proceeding Is Adjudicating "Public" Rights**

Asbury wrongly claims the FTC proceeding violates Article III by adjudicating "private" rights. Compl. ¶¶ 60–64. But Asbury's argument is foreclosed by *Crowell,* which identified the FTC as a "familiar illustration of [an] administrative agency created for the determination" of public rights. 285 U.S. at 50–51 & n.13 (citing *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 297 (1930)). Consistent with *Crowell*, courts of appeals have rejected Article III challenges to the FTC Act.[11]

Asbury suggests that *Jarkesy* upended this longstanding precedent. Compl. ¶ 8. But *Jarkesy* was a Seventh Amendment case and did not discuss how Article III applies in actions that do not implicate the jury right. Here, the FTC has not sought civil penalties and Asbury does not have a jury right, *supra* pp. 6–12, so *Jarkesy* is inapposite. Moreover, *Jarkesy* did not disturb the long history of administrative adjudication outside the narrow context of civil penalties. To the contrary, *Jarkesy* cited *Crowell* in its discussion of past public-rights cases. 144 S. Ct. at 2133.

Even applying *Jarkesy*, Asbury fails to show an Article III violation. "Congress cannot confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018). To decide if a proceeding involves an exercise of judicial power, the Supreme Court has distinguished public and private rights and has "given Congress significant latitude to assign adjudication of public rights to entities other than Article III courts." *Id.* Private rights are "the traditional actions at common law tried by the courts at Westminster in 1789." *Jarkesy*, 144 S. Ct. at 2132. Public rights are those that "historically could have been determined exclusively by the executive and legislative branches, even when they

---

[11] *See, e.g.*, *Ostler Candy Co. v. FTC*, 106 F.2d 962, 964 (10th Cir. 1939); *FTC v. A. McLean & Son*, 84 F.2d 910, 912 (7th Cir. 1936); *Ark. Wholesale Grocers' Ass'n v. FTC*, 18 F.2d 866, 870 (8th Cir. 1927); *Nat'l Harness Mfrs. Ass'n v. FTC*, 268 F. 705, 707 (6th Cir. 1920).

were presented in such form that the judicial power was capable of acting on them." *Id. Jarkesy* also recognizes that "certain historic categories of adjudications" and claims "unknown to the common law" could be assigned to agency adjudicators without offending Article III. *Id.* at 2133, 2138.

As explained, the FTC proceeding is unlike "traditional actions at common law tried by the courts at Westminster in 1789." *Supra* p. 13. Moreover, in bringing a proceeding under the FTC Act or ECOA, the FTC operates in the public interest by deciding what acts and practices are unfair, deceptive, and discriminatory and by developing ways to prevent such conduct in the future through FTC orders. *See Am. Airlines v. N. Am. Airlines*, 351 U.S. 79, 83, 85–86 (1956) (explaining the FTC Act does not "vindicate private rights" or involve the "punishment of wrongdoing or protection of injured competitors," but instead concerns the "protection of the public interest"); *Cap. City Mortg. Corp.*, 321 F. Supp. 2d at 22. That the FTC Act provides for judicial review of FTC orders shows Congress did not seek to aggrandize itself or the Executive Branch or to encroach on the Judicial Branch. *See Mistretta v. United States*, 488 U.S. 361, 382 (1989) (noting "encroachment and aggrandizement" animates "separation-of-powers jurisprudence"). Thus, courts routinely hold that FTC proceedings comport with Article III.[12]

Failing to grapple with more than a century of history, Asbury claims that Article III prohibits administrative adjudication because a cease-and-desist order could affect its property rights. Compl. ¶¶ 42–44, 62–63. Specifically, Asbury alleges that the FTC proceeding impinges

---

[12] *See, e.g., Crowell*, 285 U.S. at 50–51 & n.13; *Meta II*, 2024 WL 1549732, at *3 (denying stay where litigant could not show an FTC "proceeding would adjudicate anything other than public rights"); Order, *Intuit, Inc. v. FTC*, No. 24-60040 (5th Cir. Mar. 18, 2024) (denying motion to stay FTC order based on the FTC allegedly adjudicating private rights); *see also Akin v. OTS-DOT*, 950 F.2d 1180, 1182–83, 1186 (5th Cir. 1992) (finding an administrative proceeding to be "a proper . . . forum for adjudicating public rights" related to an agency's "cease and desist" order).

upon Asbury's purported right to "offer lawful product[s],"[13] may require Asbury to implement a fair lending program, and may also result in a future judicial proceeding for monetary relief or civil penalties against Asbury. Compl. ¶ 8.[14] Asbury's contentions fail.

Courts routinely recognize that "[t]he dividing line between private rights and public rights is not whether an adjudication might have some impact on a person's property; indeed, most administrative adjudications have such an effect." *Meta I*, 2024 WL 1121424, at *19 n.7. In fact, the Supreme Court has held that "[m]any matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 583 (1985).[15] Contrary to Asbury's suggestions, *see* Compl. ¶ 8, *Jarkesy* does not even suggest otherwise. In fact, *Jarkesy* identified multiple examples of public rights proceedings that affected litigants' property interests, including proceedings involving "tariff[s] . . . to produce fair competition," "pensions," and "patent rights." 144 S. Ct. at 2132–33.

Accordingly, Asbury fails to state a claim for relief on Count I. *Iqbal*, 556 U.S. at 678.

---

[13] There is no truth to Asbury's claim that the administrative complaint would prohibit Asbury from charging consumers for ResistAll. Compl. ¶ 8. The administrative complaint's contemplated relief nowhere mentions, much less prohibits, that product.

[14] Again, Asbury cannot satisfy Article III standing for its claim that it will suffer actual or imminent injury based on hypothetical follow-on proceedings. *Supra* pp. 7–8.

[15] *See also, e.g.*, *Atlas Roofing v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 447–48 (1977) (upholding agency order imposing civil penalties and requiring changes to business practices to abate safety hazards); *CFTC v. Schor*, 478 U.S. 833, 853 (1986) (allowing CFTC to adjudicate debit balance claims between commodity futures brokers and customers); *Crowell*, 285 U.S. at 51–53 (replacing injured longshore workers' traditional negligence cause of action against employers with an administrative workers' compensation system).

### III. Count III Fails to State a Claim for Relief Because Asbury Has Not Shown a Deprivation of Due Process, and the Court Lacks Jurisdiction over Asbury's As-Applied Due Process Challenge

Asbury asserts a deprivation of due process based on two grounds: (1) the FTC's exercise of both prosecutorial and adjudicative functions, and (2) the rules and orders in the administrative proceeding. Compl. ¶¶ 10, 49–51, 69–72. Asbury fails to state a claim for relief on either ground. *Iqbal*, 556 U.S. at 678.

**The FTC's Exercise of Both Prosecutorial and Adjudicative Functions.** Asbury argues that there is a risk of bias because the Commission both voted to initiate and will adjudicate the FTC Proceeding. Compl. ¶¶ 71–72.[16] But the Fifth Circuit has "rejected the argument that the FTC's structure, which combines prosecutorial and adjudicative functions, deprives parties of due process." *Illumina*, 88 F.4th at 1047 (citing *Gibson*, 682 F.2d at 559–60); *see id.* ("courts cannot presume bias merely from the institutional structure of an agency").[17] The Supreme Court has similarly held that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Withrow*, 421 U.S. at 58.[18] Asbury's alleged statistics

---

[16] Asbury cites *Williams v. Pennsylvania*, 579 U.S. 1, 14 (2016), Compl. ¶¶ 10, 50, in which "a prosecutor who approve[d] the decision to seek the death penalty in a case" then sat "as an appellate judge reviewing the imposition of the death penalty in that very case." *Meta I*, 2024 WL 1121424, at *15 n.4 (citing *Williams*, 579 U.S. at 10–11). It "does not require fine line drawing to distinguish" the clear conflict in *Williams* from the facts here, where the FTC "authorize[d] the initiation of a proceeding based on the available evidence and [in the future will] decide[], after hearing from the respondent, whether to take the proposed action." *Id.*

[17] Asbury claims to challenge the FTC Act "as applied," not facially as in *Illumina*. Compl. ¶¶ 10, 12, 70. But its argument that the FTC's exercise of both prosecutorial and adjudicative functions violates due process is a *facial* challenge to the structure of FTC adjudications.

[18] Asbury's citation of Justice Thomas's *concurrence* in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), cannot overcome Supreme Court or Fifth Circuit precedent. *See* Compl. ¶¶ 10, 32, 50. Moreover, "both [FTC] regulations and the [APA] require some structural separation between" the FTC's "adjudicative and investigative operations." *Meta II*, 2024 WL 1549732, at *1 (citing 16 C.F.R. § 4.7; 5 U.S.C. § 554(d)(2)). And agency adjudicators are entitled to a "presumption of honesty and integrity." *Withrow*, 421 U.S. at 47.

about FTC adjudications do not alter this binding precedent, and in any event they are wrong.[19]

   ***The Rules and Orders Governing the Administrative Proceeding.*** Asbury argues that the FTC's Adjudicatory Rules, the ALJ's Protective Order, and the Scheduling Order—individually and collectively—deprive Asbury of a fair opportunity to be heard. Compl. ¶¶ 10, 49–51, 70. As an initial matter, the Court lacks jurisdiction over this as-applied due process challenge. Although *Axon* recognized jurisdiction over a combination-of-functions claim, which "object[ed] to the Commissions' power generally," it distinguished such claims from "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." 598 U.S. at 193. Such claims, including Asbury's as-applied due process challenges, should be reviewed through the normal judicial review process provided by Congress in the FTC Act: review of final FTC orders in the courts of appeals. 15 U.S.C. § 45(c); *see Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023).

   Even if the Court considered Asbury's claim, Asbury fails to state a claim for relief because the FTC proceeding provides notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see id.* at 348-49. Asbury received notice of the charges through the FTC complaint, which sets out in detail the factual allegations, the alleged violations of law, and the contemplated relief. App.8–21. Asbury filed an answer to the FTC complaint, App.67–98, and has the opportunity to take extensive discovery, including serving written discovery requests, exchanging expert witness reports, and taking fact

---

[19] Asbury asserts that "the Commission's record when litigating before itself" suggests "bias" in FTC adjudications. Compl. ¶ 51. But an authoritative peer-reviewed study shows that, "between 1977 and 2016, the Commission dismissed 29% of the administrative cases before it, including 16% on the merits." Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. Competition L. & Econ. 623, 626 (2016). Moreover, a "raw statistic cannot of itself show bias in a particular case." *Singh v. Garland*, 20 F.4th 1049, 1054-55 (5th Cir. 2021).

and expert witness depositions, App.22–33; *see* 16 C.F.R. §§ 3.31–3.40. After the parties have an opportunity to file pretrial briefs, the ALJ will conduct an evidentiary hearing at which Asbury may present evidence and argument contesting the charges, followed by an opportunity to file a post-trial brief. App.25, 29–33; *see* 16 C.F.R. §§ 3.41–3.46. The ALJ will then issue a recommended decision, and if Asbury objects, it may file exceptions to the recommendation before the Commission. 16 C.F.R. §§ 3.51–3.54. If Asbury objects to the Commission's decision, it may seek judicial review in the court of appeals. 15 U.S.C. § 45(c). In sum, the process afforded Asbury far exceeds the notice and opportunity for a hearing that the Due Process Clause requires. *See Mathews*, 424 U.S. at 333.

Asbury complains about the schedule for exchanging expert reports (which has since been stayed), its inability to obtain a deposition of the FTC's organizational representative, and the fact that the Protective Order in the administrative proceeding prevents Asbury's counsel from disclosing "confidential" information to Asbury. Compl. ¶ 49. But although Asbury might prefer different procedures, it has not shown that it has been deprived of "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. In particular, both sides' expert reports were due after the close of fact discovery, consistent with the FTC Rules and ordinary federal civil litigation.[20] Regarding depositions of organizational representatives, the ALJ again followed the FTC Rules, which allow such depositions for FTC bureaus or regional offices,

---

[20] In fact, the Scheduling Order is even more favorable to Asbury than the FTC Rules because it gave Complaint Counsel only six days after the close of fact discovery to file its expert reports, App.23, rather than the default 14 days. 16 C.F.R. § 3.31A(a). Moreover, contrary to Asbury's argument, Compl. ¶ 31, the ALJ properly denied Asbury's request for at least one more week to disclose its expert reports, as such an extension would have violated the FTC Rules. 16 C.F.R. § 3.31A(a). Finally, the ALJ reasonably required Asbury's expert reports a month before the hearing; indeed, the default deadline for rebuttal expert reports under the Federal Rules of Civil Procedure is at least 60 days before trial. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

18

though not for the FTC itself, *see* 16 C.F.R. §§ 3.33(c)(1), 3.36(a). Asbury also has ample opportunity to obtain information from the FTC through written discovery. App.27.[21] Finally, the Protective Order in the FTC proceeding is identical to the form in the FTC Rules' appendix. App.99; *see* 16 C.F.R. § 3.31(d). And it is eminently reasonable, and consistent with standard federal practice, to allow Asbury's outside counsel but not Asbury itself to access confidential information, including "competitively sensitive information" from third parties. App.100.[22]

Asbury also argues that its "ability to effectively appeal the FTC's factual findings is illusory" because those findings are reviewed under the "virtually insurmountable" "substantial evidence" standard rather than the "clearly erroneous" standard (i.e., the standard for appellate review of district court factual findings). Compl. ¶ 49. This claim has yet another jurisdictional defect: Asbury fails to show any "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). There is no final FTC order from which Asbury could appeal, and it is speculative whether any final order will be adverse to Asbury, whether Asbury will appeal, and whether factual findings will be at issue. *See id.* at 414 (a "speculative chain of possibilities does not establish" a "certainly impending" injury).

Even if the Court were to consider Asbury's argument, Asbury fails to show that the "substantial evidence" standard, which the APA expressly requires for certain categories of judicial review, 5 U.S.C. § 706(2)(E), deprives it of a meaningful opportunity to be heard, *Mathews*, 424 U.S. at 333. The difference between the "substantial evidence" and "clearly erroneous" standards "is a subtle one—so fine" that the Supreme Court identified almost no

---

[21] Moreover, due process does not require the FTC proceeding to permit the exact same discovery as under the Federal Rules. *See Mathews*, 424 U.S. at 348.

[22] Of course, FTC employees are not similarly situated to Asbury for these purposes because they are not "competitors" of the third parties who provided confidential information.

"instance in which a reviewing court conceded that use of one standard rather than the other would in fact have produced a different outcome." *Dickinson v. Zurko*, 527 U.S. 150, 162–63 (1999).[23]

### IV. Counts IV and V Fail to State a Claim for Relief Under Article II Based on the ALJ and Commissioner Removal Protections

Asbury challenges ALJs' multiple layers of protection from removal by the President: ALJs may be removed by the FTC "only for good cause established and determined by the [MSPB]," 5 U.S.C. § 7521(a), and FTC Commissioners and MSPB members, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d); 15 U.S.C. § 41.[24] Asbury also challenges the Commissioners' removal protection. Compl. ¶¶ 11–12, 52–58, 73–79. But Asbury has failed to state a claim for relief because the ALJ and Commissioners were validly appointed, and Asbury has not even attempted to establish that it has suffered harm from the President's inability to remove them at will. In any event, the ALJ's and the Commissioners' removal protections do not violate Article II.

***Asbury Is Not Entitled to Relief Enjoining the FTC Proceeding.*** In *Burgess*, this Court rejected a challenge to the removal protection for FDIC Board members and the multiple levels of for-cause removal protection for FDIC ALJs. This Court explained that "[i]n *Collins v. Yellen*, the Supreme Court made clear that relief from agency proceedings involving potentially unconstitutional removal provisions is predicated on a showing that the unconstitutional provision

---

[23] Asbury also argues that its counsel has a scheduling conflict on the original hearing date, Compl. ¶ 49, but this issue is moot because the Commission granted the joint motion of Complaint Counsel and Asbury to continue the hearing date by four months. Finally, Asbury complains that the FTC declined to produce non-testifying consulting expert material, Compl. ¶¶ 4–6, yet the FTC followed FTC Rules that precisely parallel the Federal Rules of Civil Procedure in protecting such material from disclosure. *Compare* 16 C.F.R. § 3.31AI, *with* Fed. R. Civ. P. 26(b)(4)(D).

[24] Asbury does not otherwise challenge ALJs' removal protection. It is settled that inferior officers with "limited duties and no policymaking or administrative authority" like FTC ALJs may be protected from at-will removal. *Seila Law v. CFPB,* 591 U.S. 197, 218 (2020); *see Collins,* 594 U.S. at 250 n.18 (adjudicators have a "unique need" for "freedom from Executive interference").

inflicted compensable harm." 639 F. Supp. 3d at 746 (citing *Collins*, 594 U.S. at 258–60). An unconstitutional removal protection is not enough by itself because, unlike cases "involv[ing] a Government actor's exercise of power that the actor did not lawfully possess," a properly appointed officer's insulation from removal "does not strip the [officer] of the power to undertake the other responsibilities of his office." *Id.* (quoting *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022)[25]). The plaintiff must show harm from the allegedly unconstitutional removal provision even when "seeking prospective relief." *Id.* (citing *Cmty. Fin. Servs.*, 51 F.4th at 631); *see Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024).

This Court explained that "[t]he Fifth Circuit has distilled from *Collins* three requisites for proving a potentially unconstitutional removal provision caused harm": "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the [frustrated] desire to remove and the challenged actions taken by the insulated actor." *Burgess*, 639 F. Supp. 3d at 746 (quoting *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632). In *Burgess*, the plaintiff had not made this showing and thus was not entitled to relief. *Id.* at 747.

Here, Asbury does not even attempt to make the requisite showing of harm. It does not argue that the President desires to remove the ALJ or any Commissioners, that removal protections prevented him from doing so, or that there is any nexus between the President's frustrated desire to remove the ALJ or Commissioners and how the administrative proceeding is being conducted. *See Burgess*, 639 F. Supp. 3d at 746. Thus, Asbury has not stated a claim for relief. *Iqbal*, 556 U.S. at 678.

---

[25] *Rev'd and remanded on other grounds*, 601 U.S. 416 (2024), and *reinstated in part by* 104 F.4th 930 (5th Cir. 2024).

Finally, even if Asbury had shown the requisite harm, it would not be entitled to an order enjoining the FTC proceeding. There is a "strong presumption" that statutory provisions are severable, and absent a "nonseverability clause," courts will sever an unconstitutional provision if "the remainder of the [statute] is capable of functioning independently and thus would be fully operative as a law." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625–30 (2020) (plurality op.). Here, Asbury does not dispute that the APA and FTC Act lack a nonseverability clause and that the remainder of those statutes "is capable of functioning independently [of the removal protections] and thus would be fully operative as a law." *Id.* Thus, even if Asbury ultimately prevailed in showing the removal protections were unconstitutional, those removal protections could simply be severed, and the administrative proceeding could proceed.[26] Thus, Asbury has failed to show that it is entitled to an order enjoining the FTC proceeding. Compl. 32; *see Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974).

***Asbury Has Not Shown that the ALJ Removal Protection Violates Article II.*** Asbury cites *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd and remanded*, 144 S. Ct. 2117 (2024),[27] which held that the SEC ALJs' multiple levels of for-cause removal protection were unconstitutional. *Jarkesy*, 34 F.4th at 463. But there is a critical difference between the SEC structure in *Jarkesy* and the FTC structure here. SEC ALJs' decisions are "often . . . final and binding," *id.* at 464, as "the SEC can decide against reviewing an ALJ decision at all," *Lucia v. SEC*, 585 U.S. 237, 249 (2018). By contrast, decisions of FTC ALJs are purely recommendatory and are automatically reviewed

---

[26] In analogous challenges to removal restrictions, the Supreme Court "use[d] a scalpel rather than a bulldozer" by severing the invalid provision while leaving the remainder of the statute intact. *Seila*, 591 U.S. at 235–37; *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 508–09 (2010).

[27] When the Supreme Court affirmed the Fifth Circuit's *Jarkesy* decision on the Seventh Amendment issue, it declined to address the ALJ removal issue. 144 S. Ct. at 2139.

by the Commission. 5 U.S.C. § 557(b); 16 C.F.R. § 3.51.[28] Indeed, noting many ALJs "possess purely recommendatory powers," *Free Enterprise* expressly declined to hold that ALJs could not have multiple levels of for-cause removal protection. 561 U.S. at 507 n.10.[29]

*Jarkesy*, moreover, did "not address whether vacating would be appropriate based on" the constitutionally improper removal protection. *Jarkesy*, 34 F.4th at 465–66. As discussed above, even if this Court found an Article II violation, Asbury has not stated a claim for relief. *Iqbal*, 556 U.S. at 678.

Finally, Asbury cites *Free Enterprise*, Compl. ¶¶ 11, 52, but the Court explained that its holding "does not address that subset of independent agency employees who serve as administrative law judges. . . . [U]nlike members of the [Public Company Accounting Oversight] Board, many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions, or possess purely recommendatory powers." 561 U.S. at 507 n.10. Moreover, *Free Enterprise* considered a "rigorous" and "unusually high" for-cause standard, *id.* at 502–03, which was more exacting than the "good cause" standard for FTC ALJs, 5 U.S.C. § 7521(a); *see H&R Block Inc. v. Himes*, No. 24-CV-198, 2024 WL 3742310, at *3 (W.D. Mo. Aug. 1, 2024) (*Free Enterprise* "involve[d] a far different statutory scheme").

---

[28] The district court cases cited by Asbury addressing ALJs of the NLRB are inapposite for the same reason. Compl. ¶¶ 13, 53; *see* 29 U.S.C. § 160(c) (decisions of NLRB ALJs "become the order of the Board and become effective as therein prescribed" if no exceptions are timely filed).

[29] *See Seila,* 591 U.S. at 218–19 (noting the important difference between an adjudicator who "may unilaterally issue final decisions" and one who submits only "recommended dispositions"); *United States v. Arthrex, Inc.*, 594 U.S. 1, 25-26 (2021) (plurality op.) (upholding removal protections for Executive Branch adjudicators whose functions were similar to those of ALJs, while making the adjudicators' decisions reviewable by a principal officer); *id.* at 44 (Breyer, J., concurring in the judgment in part and dissenting in part) (agreeing with plurality's choice of remedy); *Calcutt v. FDIC*, 37 F.4th 293, 319 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023).

*Asbury Has Not Shown that the Commissioners' Removal Protection Violates Article II.*

*Humphrey's Executor v. United States* rejected an Article II challenge to the same for-cause removal provision that Asbury challenges. 295 U.S. 602, 631–32 (1935); Compl. ¶¶ 12, 56–57. That case remains binding precedent, and over the past ninety years the Supreme Court has repeatedly applied and declined to overrule it. *See, e.g.*, *Seila*, 591 U.S. at 204; *Free Enter.*, 561 U.S. at 483; *Morrison v. Olson*, 487 U.S. 654, 688 & n.25 (1988). Asbury argues that *Humphrey's Executor* involved different facts, since the FTC's powers have changed since 1935. Compl. ¶¶ 12, 56–57. But *Illumina* rejected that argument: "the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not [lower courts], to answer." 88 F.4th at 1047. Similarly, in *Consumers' Research*, the Fifth Circuit upheld an agency structure that was "a mirror image" of the FTC's because *Humphrey's Executor* still "controls." 91 F.4th at 346.[30]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim for relief.


November 12, 2024                         Respectfully submitted,

                                          */s/ Isaac C. Belfer*
                                          ISAAC C. BELFER (D.C. Bar No. 1014909)
                                          ZACHARY L. COWAN (N.C. Bar No. 53432)
                                          Trial Attorneys
                                          Consumer Protection Branch
                                          Civil Division
                                          U.S. Department of Justice
                                          P.O. Box 386

---

[30] Count VI seeks declaratory and injunctive relief based on the other Counts. Compl. ¶¶ 80–82. Asbury has failed to state a claim for relief on Count VI for the same reasons it has failed to state a claim for relief on Counts I–V. *Iqbal*, 556 U.S. at 678.

Washington, DC 20044-0386
(202) 305-7134 (Belfer)
(202) 353-7728 (Cowan)
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov
Zachary.L.Cowan@usdoj.gov