**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION**

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*,<br><br>                   *Plaintiffs*,<br><br>      v.<br><br>THE FEDERAL TRADE COMMISSION, *et al.*,<br><br>                   *Defendants*. | No. 4:24-cv-00950-O |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DIMISS

Edward D. Burbach*
   (Texas State Bar No. 03355250)
John Sepehri
   (Texas State Bar No. 00797408)
Robert F. Johnson III
   (Texas State Bar No. 10786400)
Brandon M. Livengood
   (Texas State Bar No. 24128022)
**FOLEY & LARDNER LLP**
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com
_____
*Attorney in charge
∧ Admitted pro hac vice

Todd A. Murray
   (Texas State Bar No. 00794350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby∧
Megan Chester∧
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

*Counsel for Plaintiffs*

December 10, 2024

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

A.      Count I States a Claim for Relief as the FTC's claims must be in an Article III
        Court ....................................................................................................................... 2

        1.      The FTC Misapprehends Jarkesy's Relevance to Article III Claims ..................... 2

        2.      The FTC's Claims Are within Article III Jurisdiction Since They Are
                Closely Related to Common Law and Equitable Fraud and Deceit Claims ........... 4

                a.      Deception and unfairness were actionable in courts of equity as
                        fraud. ................................................................................................................ 4

                b.      The FTC Act Intruded Federal Statute onto Fraud and Deceit .................... 5

                c.      FTC Claims and Fraud are Similar Enough for Article III
                        Jurisdiction ..................................................................................................... 6

        3.      The FTC's "Public Rights" Arguments Are Unavailing ......................................... 8

                a.      The FTC Cites Inapposite Dicta in *Crowell v. Benson* ............................... 8

                b.      The FTC Proceeding More than Just "Affects" Private Rights .................. 9

                c.      The Public Rights Exception Is Extremely Narrow ................................... 10

B.      Count II States a Claim for Relief because the FTC Asserts Common Law Claims ......... 11

        1.      Courts Look at Two Factors to Determine Seventh Amendment Rights ............. 11

        2.      A Claim Need Only be Considered "Akin" to a Claim at Common Law ............. 12

        3.      Plaintiffs' Right to a Jury Trial Does Not Depend on the FTC's Ability to
                Obtain Money from Them in the FTC Proceeding ................................................. 12

C.      Count III is Valid because the FTC Deprives Plaintiffs of Meaningful Due
        Process ................................................................................................................... 14

        1.      The FTC Proceeding deprives Plaintiffs of Fair Notice and Hearing ................. 14

        2.      The FTC's Process Leaves Plaintiffs No Meaningful Judicial Review ............... 17

        3.      There are no jurisdictional hurdles to Plaintiffs' Due Process claim .................. 17

i

D.    Count IV States a Claim for Relief under *Jarkesy*, *Axon*, and a Series of Later Cases ...................................................................................................................17

    1.    Jarkesy Flatly Held Dual Layer ALJ Protections Violate Article II ......................17

    2.    Axon and Recent District Court Opinions Have Clarified that Collins Does Not Always Require the Harm Showing Defendants Assert ................................18

        a.    *Axon's* Logic Requires Automatic Vacatur Here.......................................18

        b.    Texas Courts Have Read *Axon* to Halt Proceedings Involving Improperly Insulated ALJs .........................................................................19

    3.    Severance is Not an Appropriate Remedy for Plaintiffs.......................................22

    4.    Differences between SEC ALJs and FTC ALJs Do Not Matter...........................23

E.    Count V States a Claim for Relief because *Humphrey's Executor* Does Not Apply ........25

III.    CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996).................................................................................................12

*ABM Industry Groups, LLC v. Dept. of Labor*,
    No. H-24-3353, 2024 WL 4642962
    (S.D. Tex. Oct. 30, 2024) .................................................................................21, 24, 25

*Alpine Securities Corp. v. FINRA*,
    No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023).................................................25

*Am. Fin. Servs. Ass'n v. FTC*,
    767 F.2d 957 (D.C. Cir. 1985)...................................................................................6

*American Airlines v. North American Airlines*,
    351 U.S. 79 (1956).................................................................................................8

*AMG Capital Mgmt., LLC v. FTC*,
    No. 19-508, 2020 WL 7093938 ...............................................................................6

*Atlas Life Ins. Co. v. W.I. S., Inc.*,
    306 U.S. 563 (1939)...............................................................................................3

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    430 U.S. 442 (1977)...............................................................................................1

*Aunt Bertha v. NLRB*,
    No. 4:24-cv-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024).........................21, 22

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023) ..................................................................................... *passim*

*Baldwin v. Hale*,
    68 U.S. 223 (1863)...............................................................................................15

*Burgess v. FDIC*,
    639 F. Supp. 3d 732 (N.D. Tex. 2022) .................................................................11, 18

*Burgess v. FDIC*,
    871 F.3d 297 (5th Cir. 2017)...................................................................................24

*CFTC v. Schor*,
    478 U.S. 833 (1986)...............................................................................................9

*City of Arlington v. FCC*, 569 U.S. 290 (2013 ......................................................................24

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) ............................................................................................ 11, 13

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ........................................................................... 19, 20, 21

*Collins v. Yellen*,
    594 U.S. 220 (2021) .................................................................................... *passim*

*Crosswell v. Martinez*,
    120 F.4th 177 (5th Cir. 2024) ................................................................................ 7

*Crowell v. Benson*,
    285 U.S. 22 (1932) ................................................................................................ 8

*Curtis v. Loether*,
    415 U.S. 189 (1974) ............................................................................................ 12

*DeLeo v. City of Stamford*,
    919 F.Supp. 70 (D. Conn. 1995) ......................................................................... 12

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ...................................................... 24

*Energy Transfer, LP v. NLRB*,
    2024 WL 3571494, No. 3:24-cv-198
    (S.D. Tex. July 29, 2024) ............................................................................ 20, 21, 22

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998) ....................................................................................... 11, 13

*Free Enterprise Fund v. PCAOB*,
    561 U.S. 477 (2010) ................................................................................... 19, 22, 25

*FTC v. Algoma Lumber Co.*,
    291 U.S. 67 (1934) .......................................................................................... 5, 7

*FTC v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965) .............................................................................................. 6

*F.T.C. v. Nat'l Bus. Consultants, Inc.*,
    1990 WL 32967 (E.D. La. Mar. 20, 1990) ............................................................. 7

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972) .............................................................................................. 4

*FTC v. Standard Educ. Soc.*,
    302 U.S. 112 (1937) .............................................................................................. 7

iv

*FTC v. Sterling Drug, Inc.*,
    317 F.2d 669 (2d Cir. 1963) ................................................................7

*FTC v. Think Achievement Corp.*,
    312 F.3d 259 (7th Cir. 2003) ..............................................................6

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ................................................................6

*Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*,
    858 F.3d 666 (1st Cir. 2017) ...............................................................4

*Gharbi v. Blakeway*,
    191 F. App'x 253 (5th Cir. 2006) ........................................................9

*Gordon v. Washington*,
    295 U.S. 30 (1935) ..............................................................................3

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) .......................................................................2, 10

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004) ..........................................................................15

*Holloway v. Bristol-Myers Corp.*,
    485 F.2d 986 (D.C. Cir. 1973)............................................................6

*Illumina, Inc. v. Fed. Trade Comm'n*,
    88 F.4th 1036 (5th Cir. 2023)............................................................25

*In re Abbott*,
    117 F.4h 729 (5th Cir. 2024) ............................................................11

*In re Trans Union Corp.*,
    129 F.T.C. 471 (2000) .......................................................................24

*International Shoe v. FTC*,
    280 U.S. 291 (1930)............................................................................8

*Intuit, Inc. v. FTC*,
    No. 24-60040 (5th Cir.)......................................................................9

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022).....................................................2, 12, 24

*Lucia v. SEC*,
    585 U.S. 237 (2018)....................................................................23, 24

*Marine Shale Processors, Inc. v. EPA,*
 81 F.3d 1371 (5th Cir.1996) ...................................................................13

*Mathews v. Eldridge,*
 424 U.S. 319 (1976) ...............................................................................15

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
 59 U.S. 272 (1856) ...............................................................................2-3

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.,*
 458 U.S. 50 (1982) ...................................................................................4

*Parklane Hosiery Co. v. Shore,*
 439 U.S. 322 (1979) ...............................................................................14

*Payne v. Hook,*
 74 U.S. 425 (1868) ...................................................................................3

*Polk's Lessee v. Wendell,*
 18 U.S. 293 (1820) ...................................................................................5

*Robinson v. Campbell,*
 16 U.S. 212 (1818) ...................................................................................3

*Russell v. Clark's Ex'rs,*
 11 U.S. 69 (1812) .....................................................................................5

*Sears, Roebuck & Co. v. F.T.C.,*
 258 F. 307 (7th Cir. 1919) ......................................................................6

*SEC v. Jarkesy,*
 144 S.Ct, 2117 (2024) ....................................................................*passim*

*Seila Law LLC v. CFPB,*
 591 U.S. 197 (2020) ...........................................................................19, 25

*Seton v. NLRB,*
 NO. 1-24-CV-01176-ADA, 2024 WL 4678057
 (W.D. Tex. Oct. 18, 2024) ......................................................................22

*Space Expl. Technolo-Gies Corp. v. Nat'l Labor Relations Bd.,*
 No. W-24-CV-00203-ADA, 2024 WL 3512082
 (W.D. Tex. July 23, 2024) ..............................................................22, 23, 25

*Space Exploration Tech. Corp. v. Bell,*
 701 F.Supp.3d 626, 635 (S.D. Tex. 2023) ..............................................22

*Stern v. Marshall*,
    564 U.S. 462 (2011) ............................................................................................4

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ............................................................................................9

*Tilton v. SEC*,
    824 F.3d 276 (2d Cir. 2016) ............................................................................24

*Tull v. U.S.*,
    481 U.S. 412 (1987) ..................................................................................11, 12

*Vander Missen v. Kellogg Citizens National Bank of Green Bay*,
    83 F.R.D. 206 (E.D.Wis.1979) ........................................................................12

*Waldrop v. Southern Co. Servs., Inc.*,
    24 F.3d 152 (11th Cir. 1994) ............................................................................12

*Walmart Inc. v. King*,
    CV 623-040, 2024 WL 1258223 ......................................................................25

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016) ............................................................................................15

## Statutes

5 U.S.C. § 1202 ......................................................................................22, 25

5 U.S.C. § 7521(a) ........................................................................................22

15 U.S.C. § 41 ..............................................................................................23

15 USC § 45(b) ............................................................................................16

15 U.S.C. § 45(c) ..........................................................................................17

15 U.S.C. § 45(l) ..........................................................................................13

15 U.S.C. § 53b(b) ..........................................................................................6

15 U.S.C. § 57b(b) ........................................................................................13

28 U.S.C. § 1331 ............................................................................................1

## Regulations

16 CFR 3.13(a) ............................................................................................16

16 CFR 3.31 ................................................................................................15

16 CFR 3.31A(a) ...................................................................................................16

16 CFR 3.31(a) .....................................................................................................16

16 CFR 3.31(b) .....................................................................................................16

16 CFR 3.22(a) .....................................................................................................17

16 CFR 3.22(d) .....................................................................................................17

16 CFR 3.22(e) .....................................................................................................17

16 CFR 3.22(f) ......................................................................................................17

16 CFR 3.23(a)(2) .................................................................................................16

16 CFR 3.33(c)(1) .................................................................................................16

16 CFR 3.33(e)(2) .................................................................................................16

16 CFR § 3.42(c) ...................................................................................................24

16 CFR 32.35(a)(2) ...............................................................................................16

17 CFR § 201.360(d)(1) ........................................................................................24

## **Constitutional Provisions**

U.S. Const. art. II ......................................................................................... passim

U.S. Const. art. III, § 1 ................................................................................. passim

U.S. Const. amend. VII ................................................................................. passim

## **Other Authorities**

1 Joseph Story, *Commentaries on Equity Jurisprudence: As Administered in England and America* § 187 at 197–98 (1st ed. 1836) ...........................................5

*Bath and Mountague's Case*, (1693) 3 Chan. Cas. 55 (AD-1) ..............................5

*Blackstone's Commentaries* (AD-11) ...................................................................4

Br. for Appellee (FTC), *AMG Capital Mgmt., LLC v. FTC*, No. 19-508  2020 WL 7093938 ..............................................................................................................6

*Doe v. Martin*, (1790) 4 TR 39 (AD-3) ................................................................5

*Earl of Chesterfield v. Janssen*, (1950) 2 Ves. Sen. 125 (AD-4) .........................5

FTC Act, Pub. L. 63-203 § 5, 38 Stat. 717 (1914)............................................................5

*Furnis v. Leicester*, (1618) Croke, Jac. 474 (AD-5) ....................................................12

Henry Ballow & John Fonblanque, *Treatise of Equity* 109–10 (1793) (AD-9)............5

*In re Trans Union Corp.*,
    129 F.T.C. 471 (2000) ............................................................................................24

Linda D. Jellum, *"You're Fired!" Why the ALJ Multi-Track Dual Removal Provisions
    Violate the Constitution & Possible Fixes*, 26 GEO. MASON L. REV. 705, 707
    (2019)........................................................................................................................22

Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for
    Developing the Law or Rubber Stamp?*, 12 J. COMPETITION L. & ECON. 623, 658
    (2016)........................................................................................................................24

*Pasley v. Freeman*, (1789) 3 TR 51 (AD-7).................................................................12

*Popham v. Eyre*, (1831) Lofft 786 (AD-8)......................................................................5

S. Rep. No. 95-969 (1978).............................................................................................23

*Trans-Alaska Pipeline Authorization Act*, Pub. L. No. 93-153 § 408(f), 87 Stat. 576
    (1973) (codified as amended at 15 U.S.C. § 53(b) .................................................6

Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111 (1938) .............................6

## I.    <u>INTRODUCTION</u>

Plaintiffs seek a determination that the FTC Proceeding[1] is unconstitutional.  This litigation is therefore a "civil action[] arising under" the Constitution of which "[t]he district courts shall have original jurisdiction."  28 U.S.C. § 1331.  Last year, the Supreme Court unanimously rejected the FTC's contention that district courts lack jurisdiction to decide such claims.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023).  Defendants thus acknowledge that "*Axon* recognized jurisdiction over a combination-of-functions claim, which 'object[ed] to the Commissions' power generally.'"  ECF 25 at 25.  Nevertheless, they ignore that Plaintiffs' due process claim includes both an "as-applied" challenge (ECF 1 at 29, ¶ 70) and a "combination of functions claim,"[2] while they concede that Plaintiffs' argument that the FTC's exercise of both prosecutorial and adjudicative functions violates due process is a *facial* challenge . . . ."[3]

Substantively, over time, the FTC has encroached significantly into claims that otherwise clearly have been within the purview of Article III Courts since 1789.  With this context, the relevant analysis turns on four points.  First, the FTC's Complaint against Plaintiffs state a claim under Article III of the Constitution because, under *SEC v. Jarkesy*, 144 S.Ct, 2117 (2024), the Complaint articulates claims that involve "private rights," which presumptively include claims that have a "close relationship" to a "suit at the common law, or in equity," namely fraud and deceit.  Defendants contend that the FTC's administrative proceeding is within the *Atlas Roofing*[4] public

---

[1] The "FTC Proceeding," styled *In the Matter of Asbury Automotive Group, Inc. et. al.*, is pending on the FTC Docket as No. D-9436 and names Plaintiffs as respondents.

[2] *See* ECF1 at 29, ¶ 71 ("Under the FTC Act, the FTC, as prosecutor, initiates a[] . . . proceeding . . ., and, as judge, decides the matter . . . ."); *id.*, n. 28   ("The use of 'substantial evidence' review virtually assures that the fact findings cannot be overturned . . . .").  *See also* ECF 1 at 30, ¶ 72 ("The FTC's dual role . . . violates the . . . Plaintiffs' right to due process because it brings into . . . question whether the respondent will receive a fair . . . hearing, and because . . . , the Due Process Clause . . . works together with the Seventh Amendment's jury-trial right and Article III . . . .").

[3] *See* ECF 25 at 24, n. 17 (emphasis in original).

[4] *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 445–47 (1977).  *See* ECF 25 at 23, n. 15.  Notably, the *Jarkesy* Court described *Atlas Roofing* as "a departure from our legal traditions," and definitively rejected it as governing anything other than OSHA claims. 144 S. Ct. at 2137–39 & n.3–4.

rights doctrine, but ignore *Jarkesy's* observation that the "public rights exception does not apply automatically whenever Congress assigns a matter to an agency for adjudication."[5]  Second, under *Jarkesy,*[6] Plaintiffs have "the right for a jury to adjudicate the facts underlying any potential fraud liability that justifies penalties."  Ignoring this, Defendants misrepresent that they seek only cease-and desist relief despite expressly seeking "other relief."  Third, Defendants deny Plaintiffs due process.  While they represent that "[p]arties to FTC proceedings have discovery and trial rights comparable to those in the [FRCP]," the opposite is evident by a cursory comparison of the FRCP and the FTC's adjudicative rules.  Fourth, under *Axon*, the FTC Proceeding violates Article II because the FTC's ALJs impermissibly have layers of protection from presidential removal.

## II.   ARGUMENT[7]

A.   Count I States a Claim for Relief as the FTC's claims must be in an Article III Court

### 1.   *The FTC Misapprehends Jarkesy's Relevance to Article III Claims*

Defendants incorrectly construe *Jarkesy* as "a Seventh Amendment case [that] did not discuss how Article III applies in actions that do not implicate the jury right." ECF 25 at 21. Although *Jarkesy* decided whether the Seventh Amendment entitled the respondents to a jury trial on the SEC's claims, *Jarkesy* highlights that "'the judicial Power of the United States' cannot be shared with the other branches." 144 S. Ct. at 2131 (indirectly quoting U.S. Const. art. III, § 1).[8] *Jarkesy* confirmed that the Constitution prohibits Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit ***at the common law, or in equity***, or admiralty." *Jarkesy*, 144 S. Ct. at 2134 (quoting *Murray's Lessee v. Hoboken Land &*

---

[5] *Id.* (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989)).
[6] *Jarkesy v. SEC*, 34 F.4th 446, 457 (5th Cir. 2022), *aff'd by*, 144 S.Ct, 2117 (2024)
[7] Unless otherwise indicated, emphases in quotations are added.
[8] "The judicial Power shall extend to all Cases, ***in Law and Equity***, arising under this Constitution, the Laws of the United States …; [and] to Controversies to which the United States shall be a Party …."  U.S. Const. art. III, § 2.

*Improvement Co.*, 59 U.S. 272, 284 (1856)).[9] Further, actions that involve "private rights" "may

not be removed from Article III courts." 144 S. Ct. at 2132; *see also id*. at 2136 ("In short, this

action involves a matter of private rather than public right. Therefore, Congress may not withdraw

it from judicial cognizance."). "[A] suit concerns private rights" if, for example, "it is made of the

stuff of ***the traditional actions at common law*** . . . ." *Id*. at 2132.  Suits in the nature of "action[s]

at common law" "presumptively concern[] private rights, and adjudication[s] by an Article III

court [are] mandatory." *Id*. A matter in its nature is a "suit in equity"—and thus also subject to

Article III jurisdiction, *see id*. at 2134—if "relief is sought according to the principles applied by

the English Court of Chancery before 1789, as they have been developed in the federal courts."

*Gordon v. Washington*, 295 U.S. 30, 36 (1935).[10]

    *Jarkesy* distinguished between legal and equitable claims because the Seventh Amendment

preserves "the right of trial by jury" in "[s]uits at common law"—"***in contradistinction to equity***,

and admiralty, and maritime jurisprudence." *See* Jarkesy, 144 S. Ct. at 2128.  *Jarkesy* did not

distinguish between legal and equitable claims for purposes of Plaintiffs' ***Article III*** claim, which

again rests on Congress impermissibly withdrawing from the federal courts a matter which from

its nature, "is the subject of ***a suit at the common law, or in equity*** . . . ." 144 S. Ct. at 2134

(quoting *Murray's Lessee*, 59 U.S. at 284).[11]

    *Jarkesy* also very narrowly construes the only exception to Article III jurisdiction

---

[9] Notably, "Section 11 of the Judiciary Act of 1789 … provided that the circuit courts should have 'cognizance … of all suits of a civil nature ***at common law or in equity***' in cases appropriately brought in those courts." *Atlas Life Ins. Co. v. W.I. S., Inc*., 306 U.S. 563, 568 (1939).
[10] *See also Payne v. Hook*, 74 U.S. 425, 430 (1868) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses …."); *Robinson v. Campbell*, 16 U.S. 212, 213 (1818) ("The remedies in the courts of the United States at common law and in equity, are to be … according to the principles of common law and equity as defined in England.").
[11] Compare *id*. at 2128 (explaining "[t]he ***Amendment*** … embrace[s] all suits which are ***not of equity . . .*** ").

3

applicable here—the so-called "public rights" exception[12]—by setting forth a "presumption" that even public rights should be adjudicated by Article III courts. *See* 144 S. Ct. at 2134. Public rights may be determined by non-Article III tribunals only in "exception[al]" situations "derive[d] … from background legal principles." *Id*. Article I administrative adjudication is only permitted in fields over which the "***political branches*** had ***traditionally held exclusive power … and had exercised it***." *Id*. at 2133 ("Without … close attention to the basis for each asserted application of the [public rights] doctrine, the exception would swallow the rule."). *Id*. There is simply no public rights exception to the Seventh Amendment separate from the public rights exception to Article III adjudication. *Jarkesy* expressly framed the relevant issue as "whether the 'public rights' exception to Article III jurisdiction applies." 144 S. Ct. at 2127.[13] Thus, *Jarkesy* is critical to analyzing whether the FTC's claims must be adjudicated in an Article III court.

### 2. *The FTC's Claims Are within Article III Jurisdiction Since They Are Closely Related to Common Law and Equitable Fraud and Deceit Claims*

#### a. Deception and unfairness were actionable in courts of equity as fraud.

*Jarkesy* focused on the common law origins of securities fraud, but made clear that Article III applies with equal force to claims in equity. 144 S. Ct. at 2134. Securities fraud is a legal claim at common law in part based on the fact that there is a "close relationship" between securities fraud and common law fraud, 144 S. Ct. at 2129-30, but despite some authority suggesting the contrary,[14] fraud and deceit were widely recognized at the time of the founding ***both*** at common law and in equity—and had ***both*** legal and equitable remedies. "[E]very kind of fraud is equally cognizable, and equally adverted to, in a court of law" as in a court of equity. Blackstone's Commentaries at

---

[12] Interestingly, the FTC posits that Plaintiffs have no jury right because the claims against them are equitable—*see* ECF 25 at 9—but if true, that undermines the agency's Article III position because the Supreme Court has likened the FTC's cease and desist power to "a court of equity." *FTC v. Sperry & Hutchinson Co*., 405 U.S. 233, 244 (1972).

[13] In fact, leading public rights precedents presented no Seventh Amendment issue. *See, e.g., N. Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982); *Stern v. Marshall*, 564 U.S. 462 (2011).

[14] *See, e.g., Full Spectrum Software, Inc. v. Forte Automation Sys., Inc*., 858 F.3d 666, 676 (1st Cir. 2017).

431 (AD-11).[15]  Article III courts carried on this tradition. *See, e.g., Polk's Lessee v. Wendell*, 18 U.S. 293, 297 (1820) ("Courts of common law have a concurrent jurisdiction with Courts of Equity, in all cases of frauds."); *Russell v. Clark's Ex'rs*, 11 U.S. 69, 84 (1812) ("A Court of Law is as competent as a Court of Equity, to decide a case of fraud.").[16] "Fraud … in the sense of a Court of Equity, properly includes all acts, omissions, and concealments, which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 1 Joseph Story, *Commentaries on Equity Jurisprudence: As Administered in England and America* § 187 at 197–98 (1st ed. 1836) (hereinafter "Story's Commentaries on Equity") (AD-13). "Courts of Equity … have, very wisely, never laid down, as a general proposition, what shall constitute fraud, or any general rule, beyond which they will not go upon the ground of fraud, lest other means of avoiding the Equity of the Courts should be found out." *Id*. § 186, at 196.[17]

    b.    The FTC Act Intruded Federal Statute onto Fraud and Deceit

Section 5 of the FTC Act originally prohibited only "unfair methods of competition"—*see* FTC Act, Pub. L. 63-203 § 5, 38 Stat. 717, 719 (1914)—but that later changed. In 1938, the

---

[15] *See also, e.g., Doe v. Martin*, (1790) 4 TR 39, 66–67 (Lord Kenyon, C.J.) ("This then was a gross rank fraud, which . . . renders it absolutely void, as well in a Court of Law as in a Court of Equity.") (AD-3); *Popham v. Eyre*, (1831) Lofft 786, 809–10 ("[F]or fraud and circumvention there would have been at common-law a relief similar to that which Courts of Equity give ….") (AD-8); *Earl of Chesterfield*, 2 Ves. Sen. at 155 ("[Fraud] may be apparent from the intrinsic nature and subject of the bargain itself … which are unequitable and unconscientious bargains; and of such even the common law has taken notice ….") (AD-4); *Bath and Mountague's Case*, (1693) 3 Chan. Cas. 55, 74 (Lord Treby, C.J.) (explaining that the legal doctrine of *Surreptio*—"when a Man will by false Suggestions prevail upon another . . ."—is properly called "Fraud," and expressing "no doubt but Equity ought to set aside that") (AD-1).
[16] *See also* 1 Joseph Story, *Commentaries on Equity Jurisprudence: As Administered in England and America* § 184 at 195 (1st ed. 1836) (AD-13) ("[T]he Courts of Equity may be said to possess . . . concurrent jurisdiction with Courts of Law in cases of frauds cognizable in the latter . . . .") (AD-13).
[17] Various species of fraud were recognized as remediable in equity, including fraudulent misrepresentation (which remedies did not necessarily require scienter).  *See, e.g., FTC v. Algoma Lumber Co.*, 291 U.S. 67, 81 (1934) ("[T]here is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made."). Equity also granted remedies for unfair and unconscionable bargains under the label of fraud.  *See Story's Commentaries on Equity* § 188 at 198 (AD-13) (citing Lord Chancellor Hardwicke's opinion in the "celebrated case" of *Earl of Chesterfield v. Janssen*, (1950) 2 Ves. Sen. 125, 155–56 (AD-4)); *accord* Henry Ballow & John Fonblanque, *Treatise of Equity* 109–10 (1793) (AD-9).

Wheeler-Lea Act amended Section 5 to add a prohibition against "unfair or deceptive acts or practices." *See* Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111 (1938); *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 966 (D.C. Cir. 1985). This "significant amendment show[ed] Congress' concern for consumers . . . ." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384 (1965).[18] Congress then "superimposed a structure of Federal law upon the existing system of common law remedies for fraud and deceit." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 989 (D.C. Cir. 1973). In 1973, Congress enacted Section 13(b) of the FTC Act, authorizing the FTC to seek injunctive relief from Article III courts for Section 5 violations. *See Trans-Alaska Pipeline Authorization Act*, Pub. L. No. 93-153 § 408(f), 87 Stat. 576, 592 (1973) (codified as amended at 15 U.S.C. § 53(b)). And Section 13(b) "was enacted" to augment the FTC's authority to "combat fraud." Br. for Appellee (FTC), *AMG Capital Mgmt., LLC v. FTC*, No. 19-508 2020 WL 7093938, at *4;[19] *see also FTC v. Think Achievement Corp.,* 312 F.3d 259, 261 (7th Cir. 2003)(noting the FTC brought suit "seeking relief against . . . [a] scheme to ***defraud*** persons. . . .").[20] Thus, Section 5 claims roots in fraud and deceit as recognized at the founding.

      c.      FTC Claims and Fraud are Similar Enough for Article III Jurisdiction

A Section 5 claim for deceptive acts or practices and a traditional common law or equitable claim for fraud and deceit generally "target the same basic conduct," which includes "misrepresenting or concealing material facts." *Jarkesy*, 144 S. Ct. at 2130; *compare F.T.C. v. Nat'l Bus. Consultants, Inc.*, 1990 WL 32967, at *8 (E.D. La. Mar. 20, 1990) ("An act or practice

---

[18] Federal courts had previously remarked on the relationship between the FTC's unfair competition actions and common law actions. *See, e.g., Sears, Roebuck & Co. v. F.T.C.*, 258 F. 307, 311 (7th Cir. 1919)(stating that "[t]he trader is entitled to his day in court, and there the same principles and tests that have been applied ***under the common law*** or under statutes of the kinds hereinbefore recited are expected by Congress to control).

[19] Specifically, Congress added Section 13(b) to give the Commission "the ability, ***in the routine fraud case***, to merely seek a permanent injunction [in certain] . . . situations . . . ." S. Rep. 93-151, 30-31.

[20] *See also FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 245 (3d Cir. 2015) ("[F]acts relevant to unfairness and deception claims frequently overlap. We cannot completely disentangle the two theories here.").

is deceptive under Section 5. . ., if there is a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances, and the representation, omission, or practice is material....") (internal citations omitted) with *Crosswell v. Martinez*, 120 F.4th 177, 188 (5th Cir. 2024) (the elements of fraud are ""(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.").[21] Similarly, "[c]ourts have … not typically interpreted federal securities fraud to require a showing of harm to be actionable," but it is not significant that securities fraud and common law fraud are not "identical." *Jarkesy*, 144 S. Ct. at 2131.

Defendants argue that the FTC Act's "central purpose" was "to abolish the rule of *caveat emptor.*" ECF 25 at 20. But that illustrates "Congress's decision to draw upon common law fraud" and confirms the "close relationship" described in *Jarkesy*. 144 S. Ct. at 2130. Congress wanted to eliminate *caveat emptor* because it could be a defense to liability for "fraud and deception." *See FTC v. Standard Educ. Soc*., 302 U.S. 112, 116 (1937); *FTC v. Sterling Drug, Inc*., 317 F.2d 669, 674 (2d Cir. 1963) ("[T]he rule of caveat emptor … can no longer be relied upon as a means of rewarding fraud and deception …."). Congress's elimination of defenses made Section 5 "broader" in some respects than fraud, but that does not detract from the "close relationship." *See Jarkesy*, 144 S. Ct. at 2130. Section 5 is certainly not, as the FTC suggests "self-consciously novel" and not meant "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." ECF 25 at 18; s*ee also Jarkesy*, 144 S. Ct. at 2137.

---

[21] *See also Algoma Lumber*, 291 U.S. at 81 ("[T]here is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made.").

3.    *The FTC's "Public Rights" Arguments Are Unavailing*

a.    The FTC Cites Inapposite Dicta in *Crowell v. Benson*

The FTC argues that the Supreme Court has recognized that the FTC Act is a paradigmatic "public rights" act. *See* ECF 25 at 21-23 (citing *Crowell v. Benson*, 285 U.S. 22, 50-51 n. 13 (1932)). On the contrary, *Crowell* merely described *International Shoe v. FTC*, 280 U.S. 291 (1930) in passing. That dicta is unavailing to Defendants. It also addressed an agency determining matters "which arise between the government and persons subject to its authority" pursuant to "the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions, and payments to veterans." *See Crowell*, 285 U.S. at 50–51 & n.13. Further, neither *International Shoe* (which involved the Clayton Act but not Article III) nor *Crowell* (which involved the LHWCA) addressed Section 5. Even if one could read *Crowell's* dicta as broadly as Defendants to reach adjudication of FTC Section 5 claims, such a reading cannot be reconciled with *Jarkesy*. Under *Jarkesy*, it is not dispositive to the Article III analysis whether a matter "arise[s] between the government and persons subject to its authority." *Crowell*, 285 U.S. at 50. *Jarkesy* **expressly rejected** the propositions that a public right is involved because "the SEC action originated in a newly fashioned regulatory scheme" or because "the Government is the party prosecuting this action," reasoning that "**_what matters is the substance of the suit_**, not where it is brought, who brings it, or how it is labeled." 144 S. Ct. at 2136 (emphasis added). As discussed below, Section 5 regulates private transactions.[22] *Jarkesy* held that securities fraud claims, which entailed the exercise of Congress's

---

[22] Similarly, Defendants quote dicta in *American Airlines v. North American Airlines*, 351 U.S. 79, 83, 85–86 (1956) that "the FTC Act does not 'vindicate private rights,' as the Act is concerned 'with protection of the public interest,'. . . .'" But that decision did not adjudicate Article III, and its reasoning is otherwise inapt. Indeed, even if an agency has some public rights role, not every proceeding brought by (or before) that agency's captive tribunal falls within the public rights exception. That exception naturally turns on the rights at issue.

interstate commerce power, did not qualify for the public rights exception. *Id.* at 2136.[23]

   b. The FTC Proceeding More than Just "Affects" Private Rights

  Defendants incorrectly argue that Plaintiffs assert Article III prohibits the FTC Proceeding merely because it could "affect [their] property rights," which ignores a "century of history." *See* ECF 25 at 22-23. However, *Jarkesy* rejected the notion that "practice could transmute a private right into a public one" or that "the absence of legal challenges brought by one generation could waive the individual rights of the next." 144 S. Ct. at 2134 n.2. Moreover, Defendants disregard the tradition of judicial determination of "claims regarding unfair or deceptive business practices", Congress' and the FTC's recognition of the relationship between Section 5 and fraud, and the similar elements of FTC Act claims to contemporary fraud claims. Defendants' argument ignores the Supreme Court's longstanding directive that "where private, common law rights are at stake, [the Court's] examination of the congressional attempt to control the manner in which those rights are adjudicated has been searching." *CFTC v. Schor*, 478 U.S. 833, 854 (1986).

  The problem is not simply that the FTC Proceeding may "affect private interests," *Thomas v. Union Carbide Agric. Prods. Co*., 473 U.S. 568, 583 (1985); but rather that it will ***directly adjudicate*** Plaintiffs' property and liberty interests by attempting to enjoin the consummation of the Plaintiffs' private business dealings. For example, the FTC's Complaint's Notice of Contemplated Relief seeks broad relief including, but not limited to, "Prohibiting charges for any add-on that [allegedly] does not provide a benefit to consumers." *See* FTC Complaint, ECF 9 at

---

[23] Defendants also cite a Fifth Circuit order denying a motion to stay based on the FTC allegedly adjudicating private rights. *See* ECF 25 at 22, n. 12 (citing Order, *Intuit, Inc. v. FTC*, No. 24-60040). But the Fifth Circuit's Order says nothing about the merits and is the same as or is akin to a non-final order which does not finally dispose of the issues in the case and does not offer any rationale for the Court's basis of denial. *See Gharbi v. Blakeway*, 191 F. App'x 253, 254 (5th Cir. 2006) (discussing non-final court orders). Therefore, the *Intuit* order has no weight here.

24, ¶ c.[24]  This alone would impact a quintessentially private right, Plaintiffs' ability to freely

contract and to acquire and dispose of property.[25]  The private rights at stake are manifold and

manifest.  The object of the FTC, like the object of the SEC action in *Jarkesy*, is flatly to regulate

transactions between private market participants--*see* 144 S. Ct. at 2136.

c.      The Public Rights Exception Is Extremely Narrow

Post-*Jarkesy*, the "public rights" exception is limited to matters that "historically could

have been determined ***exclusively*** by the executive and legislative branches," which is not the case

with an FTC Act that allows the FTC to bring Section 5 claims in federal court. *Jarkesy*, 144 S.

Ct. at 2132–33.  Also, "[e]ven with respect to matters that arguably fall within the scope of the

'public rights' doctrine, the presumption is in favor of Article III courts."  *Id*. at 2134.  *Jarkesy*

rejected the government's role as "the party prosecuting th[e] action" was sufficient to implicate

the public rights exception, as well as the notion that the "constitutionally relevant distinction" is

that the issue "has been assigned to a federal agency to enforce."  144 S. Ct. at 2136 ("[W]hat

matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled.").

"Nor does the fact that [an] . . . action 'originate[d] in a newly fashioned regulatory scheme' permit

Congress to siphon th[e] action away from an Article III court."  *Id*. (quoting *Granfinanciera, S.A.*,

492 U.S. at 52).[26]  Against this backdrop, the FTC makes no serious attempt to show that Section

5 gives rise to "public rights"—with good reason. A Section 5 claim bears no resemblance to the

limited classes of public rights cases *Jarkesy* recognizes—revenue collection cases,

"immigration," "foreign commerce," "relations with Indian tribes," "the administration of public

---

[24] Similarly, the FTC's proposed Decision and Order would explicitly require Plaintiffs not to "charge consumers for 'ResistAll,' any exterior or interior surface protective coating product, or any Add-on Product or Service" that allegedly "does not provide a benefit to consumers." *See* ECF 9 at 5, ¶ 4.
[25] The proposal sought to (and the FTC's Complaint could) impose other major intrusions. *See* ECF 25 at 11-12.
[26] Indeed, the Supreme Court has "typically evaluated the legal basis for the assertion [that rights are public] ***with care***" because "[t]he public rights exception is, after all, an exception. It has no textual basis in the Constitution and must therefore derive instead from background legal principles." *Jarkesy*, 144 S. Ct. at 2133-34.

lands," or "the granting of public benefits such as payments to veterans, pensions, and patent rights." *See id.* at 2132–33.[27]  Thus, the FTC's claims here belong in an Article III tribunal.

**B.    Count II States a Claim for Relief because the FTC Asserts Common Law Claims**

### 1.    *Courts Look at Two Factors to Determine Seventh Amendment Rights*

As this Court has noted, "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022) (citations omitted). Careful scrutiny of *Jarkesy* and other cases mandate the FTC's claims here be heard by a jury as they are closely related to common law claims.  Contrary to the FTC's suggestion (*see* ECF 25 at 22-23), caselaw teaches that ***both*** the elemental nature of claims and remedies sought matter to the Seventh Amendment analysis. *Jarkesy* says so: "[t]o determine whether a suit is legal in nature, we directed courts to consider the cause of action ***and*** the remedy it provides." 144 S. Ct. at 2129.[28]  In fact, the Supreme Court has explicitly rejected that both the remedy and nature of the claim must be legal in nature to invoke the a jury trial right: "The Government contends that both the cause of action and the remedy must be legal in nature" but the Court's "search is for a single historical analog, taking into consideration the nature of the cause of action ***and*** the remedy as ***two important factors***." *Tull v. U.S.*, 481 U.S. 412, 421, n. 6 (1987).[29]

---

[27] *See also Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 198-99 (2023) (Thomas, J., concurring)(citations omitted)(noting "[p]rivate rights . . . 'appertain and belong to particular men. . . .'" and . . . "public rights' 'belon[g] to the people at large,' and governmental privileges are 'created purely for reasons of public policy and ha[ve] no counterpart in the Lockean state of nature.'").

[28] *See also Jarkesy*, 144 S.Ct. at 2130 ("The close relationship between the causes of action in this case and common law fraud ***confirms*** th[e] conclusion [that securities fraud is legal in nature]."

[29] *See also Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 348 (1998)(citations omitted)("To determine whether a statutory action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, we examine ***both*** the nature of the statutory action and the remedy sought."); *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 708-09 (1999)(citations omitted)(noting that the Supreme Court "ask[s], first, whether we are dealing with a cause of action that either was tried at law at the time of the founding ***or is at least analogous*** to one that was" and that "'suits at common law' include . . . suits in which legal rights were to be ascertained and determined, in contradistinction to those ***where equitable rights alone were recognized*** . . . .'"); *In re Abbott*, 117 F.4h 729, 735 (5th Cir. 2024)(citation omitted)(noting that in determining whether a statutory action is sufficiently "analogous" to "[s]uits at common law," "courts analyze whether the cause of action at issue and the historical common law claim 'target the same basic conduct.'")

## 2.    A Claim Need Only be Considered "Akin" to a Claim at Common Law

The Supreme Court "clarified in *Tull* that the Seventh Amendment does apply to novel statutory regimes, so long as the claims are ***akin*** to common law claims." *See Jarkesy*, 144 S. Ct. at 213. Some elemental differences between a common law claim and a statutory claim do not matter. *See Jarkesy*, 144 S. Ct. at 2130. Fraud claims at common law[30] (and in equity) at the founding bear a close relationship to the FTC's statutory deceptive acts authority (and the specific allegations of deception the FTC has asserted against the Plaintiffs).[31] On this basis alone, the Court should determine the Plaintiffs are entitled to a jury trial on the FTC's claims.[32]

## 3.    Plaintiffs' Right to a Jury Trial Does Not Depend on the FTC's Ability to Obtain Money from Them in the FTC Proceeding

Defendants make a number of erroneous arguments to convince this Court that the FTC's inability to obtain money from Plaintiffs in the FTC Proceeding forecloses their right to a jury trial. For example, Defendants cite to cases for the assertion that Asbury cannot show a "certainly impending" injury for Article III standing, including for the proposition that a litigant suffers no

---

[30] *See also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495 (1996)("In the early years, ***the common law, and later, statutes***, served the consumer[]. . . by prohibiting fraudulent and misleading advertising"); *Jarkesy*, 34 F.4th at 453-54(citations omitted)("Fraud prosecutions were regularly brought in English courts at common law."); *Pasley v. Freeman*, (1789) 3 TR 51 (upholding a common law claim for deceit by a seller against a third party who falsely affirmed . . . the [buyer's] creditworthiness) (AD-7); *Furnis v. Leicester*, (1618) Croke, Jac. 474 (upholding a common law claim for deceit . . . against the seller for falsely affirming . . . sheep were his) (AD-5).

[31] The FTC Complaint alleges in part that Plaintiffs violated the FTC Act by making false or misleading misrepresentations that consumers authorized charges for "add-ons" to sales contracts when they did not, and that consumers were required to buy one or more add-ons that they were not required to buy. ECF 9 at 8 ¶ 13; *id* at 11-22.

[32] The same is true because of the FTC's ECOA claim. Initially, the FTC cites some caselaw to assert there was no analogous common law claim for discrimination. *See* ECF 25 at 18-19. But as one court has noted analyzing "actions under § 504 of the Rehabilitation Act," those actions "are comparable to actions brought before courts of law in 18th-century England—namely, an action in tort to redress ***discrimination*** . . . . *Waldrop v. Southern Co. Servs., Inc.*, 24 F.3d 152, 156 (11th Cir. 1994) (citing *Curtis*, 415 U.S. at 196 n. 110 ('An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress.'))." *See DeLeo v. City of Stamford*, 919 F.Supp. 70, 76 (D. Conn. 1995). Additionally, ECOA "sounds basically in tort and creates a new legal duty for creditors. In addition, the Act permits a successful party to recover both actual and punitive damages. Both of these forms of relief are traditional forms of relief offered in the courts of law." *See Vander Missen v. Kellogg Citizens National Bank of Green Bay*, 83 F.R.D. 206 (E.D.Wis.1979)(citations omitted). Given the FTC's ability to treat a violation of an ECOA rule as a violation of its rules, that it must prove the same elements as a private party, and that the FTC can later seek penalties and damages, its ECOA claims should be treated the same as its FTC Act claims, subject to the Seventh Amendment.

arguable Seventh Amendment injury until it is prevented from litigating defenses to a jury. *See* ECF 25 at 15)(e.g., citing *Marine Shale Processors, Inc. v. EPA*, 81 F.3d 1371, 1378 (5th Cir.1996)). But that case did not involve a private party that could be subjected to civil penalties and other non-remedial monetary penalties. Instead, it involved "the EPA's decision to deny MSP's application for a Boiler and Industrial Furnace Permit required by the Resource Conservation and Recovery Act." *See Marine Shale Processors, Inc*, 81 F.3d at 1374.  Also, Defendants cite pre-*Jarkesy* cases and ignore key language from the Fifth Circuit in *Jarkesy*:

> The fact remains, though, that the enforcement action seeking penalties in this case was one for securities fraud, which is nothing new and nothing foreign to Article III tribunals and juries.
>
> That being so, **Petitioners had the right for a jury to adjudicate the facts underlying any potential fraud liability that justifies penalties**. And because those facts would potentially support not only the civil penalties sought by the SEC, but the injunctive remedies as well, Petitioners had a Seventh Amendment right to a jury trial for the liability-determination portion of their case.

*Jarkesy*, 34 F.4th at 456-57.  Given the non-novel, fraud-based nature of the FTC's claims against Plaintiffs, the administrative determination of the FTC's claims against Plaintiffs expose them to a subsequent FTC suit seeking collection of civil fines and other non-restitution amounts.[33] Plaintiffs are thus entitled to a jury to adjudicate the underlying facts that would later be used as

---

[33] Notably, the proposed Decision and Order also sought "relief, including consumer redress and any attendant expenses for the administration of any redress fund" or "[i]f a representative of the [FTC] decides that direct redress to consumers is wholly or partially impracticable *or money remains after redress is completed…for such other relief* . . . as [the FTC] determines to be reasonably related to [the Asbury Plaintiffs'] practices alleged in the Complaint." *See* ECF 9 at 5, ¶5. In fact, not only can the FTC seek civil penalties—*see* 15 U.S.C. § 45(l)—but it can seek other relief that "may include, but shall not be limited to . . . the payment of **damages**." *See* 15 U.S.C. §57b(b); *see Jarkesy*, 144 S.Ct. at 2129-30 (citations omitted)("What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, *solely* to 'restore the status quo' and "[t]he final proof that this remedy is punitive is that the SEC is *not obligated to return any money to victims*."); *City of Monterrey*, 526 U.S. at 710-11 ("[J]ust compensation is, like *ordinary money damages*, a compensatory remedy. The Court has recognized that compensation is a purpose 'traditionally associated with legal relief.'"); *Feltner*, 523 U.S. 340, 352-53 (citations omitted)("We have recognized the 'general rule' that monetary relief is legal . . . Nor . . . is a monetary remedy rendered equitable simply because it is 'not fixed or readily calculable from a fixed formula.' . . . . [T]here is historical evidence that cases involving discretionary monetary relief were tried before juries.").

justification for seeking penalties and such amounts.[34]

Defendants' other Seventh Amendment remedy-oriented arguments similarly fail. For instance, they cite to cases for the proposition that an "equitable determination" may be reached—and even treated as preclusive—in a "subsequent legal action" without violating the Seventh Amendment. *See* ECF 25 at 8 (citing, e.g., *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333-35 (1979)). But that pre-*Jarkesy* case presented the very different "question [of] whether a party who has had issues of fact adjudicated adversely to it in an [SEC] equitable action may be ***collaterally estopped*** from relitigating the same issues before a jury in a subsequent [stockholders class action] brought against it by a ***new*** party." *See* 439 U.S. 322, 324-25.[35] This is far from a federal agency lodging common law-like claims in its in-house tribunal sans a jury to establish liability subject to the deferential "substantial evidence" review standard, and then the same federal agency subsequently seeking monetary penalties based upon the prior non-jury finding with a jury deciding only if conduct breached the ***established*** factual and liability findings. That simply doesn't square with the Fifth Circuit's view and "the government cannot evade the Seventh Amendment so easily." *Jarkesy*, 144 S.Ct. at 2145 (Gorsuch, J., concurring). "Otherwise, evading the Seventh Amendment would become nothing more than a game" where agencies could avoid jury trials by pursuing traditional legal relief as a vindication of "public rights." *See id.* at 2139.[36]

C.    Count III is Valid because the FTC Deprives Plaintiffs of Meaningful Due Process

### 1.    *The FTC Proceeding deprives Plaintiffs of Fair Notice and Hearing*

---

[34] *See also Axon*, 598 U.S. at 203-04 (Thomas, J., concurring)("The rights at issue in these cases appear to be core private rights . . . . For one, Axon and Cochran face **the threat** of significant monetary fines.)

[35] Similarly, the FTC's brief argument in a footnote that adhering to the logic of *Jarkesy* would eviscerate federal courts' equitable jurisdiction by potentially allowing parties to assert jury rights "whenever" courts imposed an injunction, based on hypothetical follow-on criminal proceedings (ECF 25 at 17 n. 8) is scaremongering without basis since *Jarkesy* pertains to a specific set of circumstances that similarly exist here.

[36] The FTC's argument that "even if Asbury would have a jury right in some future civil penalty proceeding, the jury . . . would be "deciding different questions" than the . . . current proceeding" (ECF 25 at 17) fails on that logic.

For the government to limit private rights, a constitutional minimum of the process and proceedings of the common law is required, including the chance to rebut factual assertions before a neutral decisionmaker in a "meaningful manner."[37]  Plaintiffs, however, are being denied tools like depositions and cross-examination by the FTC's Adjudicatory Rules through the ALJ's use of the FTC's form Protective Order and the ALJ's Scheduling Order, making due process illusory.[38] Defendants argue that Plaintiffs have received appropriate due process because they have been provided with notice, an opportunity to be heard, and may conduct "extensive discovery."[39]  This is not true in practice. For example, while Plaintiffs received a copy of the administrative complaint and its conclusory accusations,[40] they have been unable to discover the factual basis for the FTCs lawsuit, despite attempts via FOIA[41] and the FTC's discovery process to do so.[42]  The FTC's rules—see 16 CFR 3.31—provide that "[p]arties may obtain discovery" from each other through interrogatories, depositions, and document request. In reality, Plaintiffs "enjoy[] no general right

---

[37] *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) ("[A]n opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'") (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)).

[38] *See, e.g., Williams v. Pennsylvania*, 579 U.S. 1, 15-16 (2016)(holding that even an "unacceptable risk of actual bias" violates due process.).

[39] Defendants cite *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) for the proposition that due process requires both notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." But *Matthews*—relating to how much process is due regarding social security benefits (i.e., a public right)—cannot be fairly analogized to this case. The Supreme Court has made clear that the amount of notice and the level at which one must be heard (e.g., briefing, in person hearing, etc) varies depending on the right at issue. *See Jarkesy*, 144 S. Ct. at 2131.

[40] The FTC redacted portions of its complaints, none of which show sensitive information. And the ALJ's Protective Order prevent Plaintiffs attorneys from sharing with Asbury the redacted portions of the complaint. This inhibited Plaintiffs' ability forthrightly defend themselves against the FTC accusations both in the FTC Proceeding and against the FTC's media blast which shouted the FTC's allegations to the marketplace.

[41] Before the FTC filed its Complaint, Plaintiffs sought to learn about the evidence for the FTC's charges. On March 11, 2024, the FTC's Acting Assistant General Counsel confirmed in response to a FOIA request that the FTC had no complaints from consumers about the McDavid Dealerships during the preceding five years. But later in response to a discovery request seeking similar material during the FTC Proceeding, the FTC produced complaints it supposedly had in its Sentinel database. It appears that either the FTC violated FOIA or the FTC subsequently added alleged complaints.  This is emblematic of the difficulty Plaintiffs have had in terms of actual notice of the basis of the FTC's allegations. Moreover, the FTC's claimed "survey" of McDavid Dealership consumers reflecting that consumers were charged for products without consent, and the FTC's alleged "analysis" establishing "disparate impact" on Blacks and Latinos have never been produced.  "Complaint Counsel" refused to produce same. *See* ECF 9 at 6-7, ¶ 9.

[42] FTC's Complaint Counsel has essentially objected to nearly all discovery. *See e.g.*, ECF 9 at 106-112.

to discovery"[43] and are subjected to asymmetry which favors obtaining discovery from Plaintiffs but limiting it against the FTC.[44] For example, by Rule, the FTC reserves veto powers to prohibit certain discovery orders against it,[45] and is expressly exempt from any organizational representative depositions as well as depositions by written questions.[46] Furthermore, the FTC utilizes its "Complaint Counsel" as the purported respondent to discovery to add an additional layer of insulation for itself.[47] Complaint Counsel responded to discovery and attested to the factual basis of the answers to interrogatories effectively shielding the FTC.[48] Moreover, Complaint Counsel has represented that they and the FTC are able to make their own separate objections to discovery.[49] Thus, the plaintiffs in the FTC proceeding are the FTC **and** the third-party Complaint Counsel, each with their own objections, their own authority, and their own

---

[43] *See Jarkesy*, 144 S. Ct. at 2141 (Gorsuch, J., concurring).

[44] Compare the standard time discovery deadlines in an Article III court with those in the FTC Adjudicatory Proceeding Rules, adopted in the administrative Scheduling Order. Perhaps most illustrative of bias in the FTC's Rules is that the Respondents ***are given a mere fourteen (14) days*** to receive and review the FTC's experts reports, identify responsive experts, have those responsive experts review the FTC's experts reports, write responsive expert reports, and produce those responsive expert reports to FTC. In contrast, the FTC's deadline for providing expert reports is February 24, 2025 (***more than six months*** after the FTC Proceeding commenced and ***more than two and a half years*** after the FTC began its investigation). The Plaintiffs' request for a mere one more week extension was denied by the ALJ, citing 16 CFR 3.31A(a), and indicating a need to have all expert reports ***a month*** before the hearing (the ALJ indicated the FTC's Rules gave her no power to move the deadline citing 16 CFR 3.13(a)). *See also* Declaration of Edward D. ("Ed") Burbach (ECF 9 at 4-10).

[45] *See* 16 CFR 3.23(a)(2) ("The Commission upon its own motion may enter an order staying compliance with a discovery demand authorized by the [ALJ] pursuant to § 3.36 or placing the matter on the Commission's docket . . .").

[46] 16 CFR 3.33(c)(1) & 16 CFR 3.33(e)(2). In the FTC Proceeding, the ALJ denied the Plaintiffs' request to obtain a deposition of the FTC's organizational rep citing 16 C.F.R 3.33(c)(1) expressly prohibiting organizational (or other) deposition(s) of the party making the claims—the FTC--while allowing similar deposition(s) of Respondents.

[47] The adjudicative rules shift from the guarantee that ***the "parties"*** (i.e. the FTC and Respondents) may conduct discovery, 16 CFR 3.31(a), to ***"Complaint Counsel"*** being directed to do certain things on the FTC's behalf despite not being a party itself, *see e.g.*, 16 CFR 3.31(b). The FTC's stock Protective Order (at Attachment "A" para. 7) purports to prevent the attorneys defending the Respondents therein (the Plaintiffs herein) from sharing information merely designated as "confidential material" with their own clients (including in-house counsel) but imposes no such restrictions on FTC "Complaint Counsel." Thus, the rules again apply burdens on respondents but not the FTC.

[48] Complaint Counsel both answered for and made objections on behalf of the FTC when answering Plaintiffs' Interrogatories to the FTC. The FTC's own rules require the "parties" to verify the accuracy of the answers to interrogatories. 16 CFR 32.35(a)(2). The "parties" to an FTC administrative proceeding are the respondents, and the Federal Trade Commission itself, as required by 15 USC § 45(b) ("Whenever the FTC shall have reason to believe that any … person… has been or is using any unfair method of competition… it shall issue and serve upon such person… [a] complaint."). Complaint Counsel also made its own set of objections to Asbury's discovery requests.

[49] Ostensibly, Complaint Counsel was referring to 16 CFR 3.23(a)(2), which allows the Commission to override any ALJ order for the Commission to respond to discovery request and/or subpoenas.

prerogatives.[50]

### 2.    The FTC's Process Leaves Plaintiffs No Meaningful Judicial Review.

The review scheme applicable to the FTC's proceeding requires a reviewing court to apply "substantial evidence" review, thus treating substantial agency findings of fact as *conclusive* so long as they are "supported by evidence."[51] By the time a court reviews the FTC's findings, the fix is in. These asymmetrical rules prevent Plaintiffs from meaningfully developing the record to counter the FTC and then Article III courts must accept the FTC's factual findings.

### 3.    There are no jurisdictional hurdles to Plaintiffs' Due Process claim.

Defendants also claim this Court has no jurisdiction to hear Plaintiffs' due process claim because 1) Plaintiffs' as-applied challenges should proceed through judicial review under the FTC Act, and 2) in the absence of a final order, it is speculative whether any appeal will be necessary and/or whether there will be factual issues. But *Axon* makes clear that Plaintiffs need not wait. Plaintiffs' due process claim falls squarely within the structural challenges permitted under *Axon*. While Plaintiffs' due process claim stands alone, it also functions alongside their other structural challenges, which is dissimilar from challenging any single ruling.  In short, Plaintiffs' have "here-and-now injur[ies]" which may be raised now to attack an illegitimate proceeding, led by an illegitimate decisionmaker, and this Court has jurisdiction to hear all the Plaintiffs' claims.[52]

D.    Count IV States a Claim for Relief under *Jarkesy*, *Axon*, and a Series of Later Cases

### 1.    Jarkesy Flatly Held Dual Layer ALJ Protections Violate Article II

Defendants do not dispute that the Fifth Circuit explicitly held that the dual layer ALJ

---

[50] The FTC's rules effectively substitute in "Complaint Counsel" for the Commission as if a party for purposes of adjudication, further insulating the FTC from equally participating in the process and prohibiting Plaintiffs from developing a fair factual background. The FTC bestows the right of a reply to a moving party making a motion, 16 CFR 3.22(d), extends time for ALJ to rule on pending motions, 16 CFR 3.22(e), reserves the ability to waive requirements of its motion practice rules, 16 CFR 3.22(f), and requires certain motions go directly to it, 16 CFR 3.22(a)
[51] 15 U.S.C. § 45(c).
[52] *See Axon Enter., Inc.*, 598 U.S. at 191.

removal protection scheme involving the SEC's ALJs is unconstitutional. *Jarkesy*, 34 F.4th at 465-466.  The Fifth Circuit left open whether such an Article II violation was sufficient to vacate the SEC enforcement proceeding at issue, *see* Jarkesy, 34 F.4th at 465-466, but later cases make clear that such a violation is, alone, sufficient to enjoin administrative proceedings.

> ### 2.    *Axon and Recent District Court Opinions Have Clarified that Collins Does Not Always Require the Harm Showing Defendants Assert*
>
> #### a.    *Axon's* Logic Requires Automatic Vacatur Here

Ignoring the Fifth Circuit's holding in *Jarkesy*, Defendants rely on this Court's 2022 opinion. ECF 25 at 20-21)(citing *Burgess*, 639 F. Supp. 3d at 746, which cited *Collins*, 594 U.S. at 258-260). When deciding *Burgess*, however, this Court did not have the benefit of the 2023 *Axon* opinion, or multiple *post-Axon* opinions of other Texas district courts, which all recognized *Axon's* impact on Article II ALJ-related claims.  *Axon*, as post-2023 decisions have reasoned, is critical. *Axon* addressed two consolidated appeals asserting that tenure protections enjoyed by ALJs rendered them "insufficiently accountable to the President, in violation of separation-of-powers principles."  *See Axon Enter., Inc.* 598 U.S. at 180.  In *Axon*, "[t]he challenges [were] fundamental, even existential" since the claims maintained "in essence that the [FTC and SEC], as currently structured, are unconstitutional in much of their work."  *Id*.  The Supreme Court specifically recognized the challenges to the SEC asserted that some "fundamental aspect" of its "structure violates the Constitution; that the violation made the entire proceeding unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (***independent of any rulings the ALJ might make***)" and "similarly, . . . [the party challenging the FTC's structure] asked the court to enjoin the FTC 'from subjecting' it to the Commission's 'unfair and unconstitutional internal forum.'"  *Id*. at 182-183 (emphasis added).

Critically, in opining that the parties in *Axon* had the right to have their structural

constitutional claims heard before an Article III tribunal <u>before</u> going through the FTC's and SEC's administrative proceedings, the Supreme Court firmly established that the harm such parties face is having to endure such proceedings at all.  As the Supreme Court wrote:

> "[H]ere is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in. Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of- powers claim is not about that order; indeed, Axon would have the same claim had it won before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker."

*Id*. at 191. Furthermore, "[w]hat ma[de] the difference" was "the nature of the claims and accompanying harms that the parties . . . assert[ed]" as the parties were "protest[ing] the 'here-and-now' injury of subjection to an unconstitutionally structured decision[-]making" and "more, subjection to that process ***irrespective of its outcome, or of other decisions made within it***."  *Id*. at 192.[53]  Although *Axon* was technically a jurisdictional dispute, it's analysis cannot be so cabined. Indeed, *Axon* inescapably leads to the conclusion that the *Collins* "harm test" Defendants assert here does not apply to Plaintiffs' ALJ Article II claim.

        b.     Texas Courts Have Read *Axon* to Halt Proceedings Involving Improperly Insulated ALJs

Relying on *Axon*, multiple Texas federal courts have enjoined in-house adjudicative proceedings of two federal agencies because the presiding ALJs enjoyed constitutionally impermissible removal protections.  Moreover, those opinions have explicitly held—in light of *Axon*—that Defendants' application of the *Collins* test does not govern such a structural

---

[53] *See also Cochran v. SEC*, 20 F.4th 194, 210 n. 16 (5th Cir. 2021), *affirmed by*, 598 U.S. 175 (2023) ("*Collins* does not impact our conclusion . . . because ***Cochran does not seek to 'void' the acts of any SEC official. Rather, she seeks an administrative adjudication untainted by separation-of-powers violations*** . . . ."); *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 490 (2010) (stating that "The Government suggests that petitioners could first have sought Commission review of the Board's 'auditing standards, registration requirements, or other rules[,]' . . . ***[b]ut petitioners object to the Board's existence*** . . . ."); *Seila Law LLC v. CFPB*, 591 U.S. 197, 211 (2020)(citation omitted)("[W]e have expressly 'reject[ed]' the 'argument that consideration of the effect of a removal provision is not 'ripe' until . . . actually used,' because ***when such a provision violates the separation of powers it inflicts a 'here-and-now' injury***").

challenge.[54] In one, Southern District of Texas Judge Jeff Brown rejected the argument that Defendants make here. Judge Brown noted that in most "removal-restriction cases, a plaintiff seeks to invalidate an action that an unconstitutionally insulated official has already taken," adding, for example, that "the plaintiffs in *Collins* sought to invalidate an amendment to a stock purchasing agreement made by the FHFA Director." *Energy Transfer, LP v. NLRB*, 2024 WL 3571494, No. 3:24-cv-198, at *3 (S.D. Tex. July 29, 2024)(citation omitted). He further explained that "[t]he 'harm,' in such a case, is being subjected to ***a specific rule or decision*** implemented by an unconstitutionally protected official." *Id*. But the party asking Judge Brown to enjoin—on the basis of *Axon*—an NLRB proceeding "face[d] a fundamentally different injury"—the injury of "'being subjected to unconstitutional agency authority—a proceeding before an unaccountable ALJ.'" *Id*. (citations omitted). Noting that the Fifth Circuit has recognized a distinction between the two types of injuries in *Cochran v. Securities & Exchange Commission*, Judge Brown held that—to the extent *Collins* applies to the latter type—its test is ***readily satisfied*** as the challenger would have had "to participate in a constitutionally defective administrative process," made defective by ALJ removal provisions. *See Energy Transfer, LP*, 2024 WL 3571494, at *4 (citations omitted); *see Cochran v. SEC*, 20 F.4th 194, 212-13 (5th Cir. 2021), *affirmed by*, 598 U.S. 175 (2023) ("[I]f Cochran's claim is meritorious, then withholding judicial consideration would ***injure her by forcing her to litigate before an ALJ* . . . .").**

　　Similarly, Southern District of Texas jurist Sim Lake also rejected Defendants' position here. Judge Lake too determined that post-*Axon Collins* is not applicable to ALJ removal

---

[54] Notably, as Justice Gorsuch indicated in his *Collins concurrence*, that case involving a challenge to a specific agency ruling) was unique: "[T]he Court's opinion. . . prompted by the prospect that affording a more traditional remedy here could mean unwinding or disgorging hundreds of millions of dollars that have already changed hands . . . ." *See Collins*, 594 U.S. at 282 (Gorsuch, J., concurring). Justice Gorsuch further advised that "rather than carve out some suit-specific, removal-only, money-in-the-bank exception . . ., [he] would take a simpler and more familiar path" in that "[w]hether unconstitutionally installed or improperly unsupervised, officials cannot wield executive power except as Article II provides. . . " *Id*. at 282-83.

protection claims.  Judge Lake initially explained that relevant to *Axon's* affirmance of the Fifth

Circuit's *Cochran* decision (and its reversal of the Ninth Circuit) "was the fact that being subject

to a proceeding before an improperly insulated ALJ ***is a legal harm separate from any decisions***

***made by the ALJ***."  *ABM Industry Groups, LLC v. Dept. of Labor*, No. H-24-3353, 2024 WL

4642962, at *5  (S.D. Tex. Oct. 30, 2024).  He then opined as follows:

> *Collins* dealt with challenges to the substantive actions taken by an improperly
> insulated officer. To void those actions, plaintiffs must connect their harm resulting
> from those . . . actions to the challenged . . . restrictions. What *Cochran* **and** *Axon*
> make clear is that being subject to a proceeding before an improperly insulated ALJ
> is a harm ***separate from any substantive action taken by the ALJ***. Moreover, . . .
> *Cochran* **and** *Axon* . . . make clear that plaintiffs should be able to challenge
> proceedings before improperly insulated ALJs before the fact – because there is no
> remedy for that injury after the fact . . . . The court  concludes that a plaintiff seeking
> to halt a proceeding before an unconstitutionally insulated ALJ ***need not show that***
> ***the removal restrictions caused harm other than the proceeding itself***.

*ABM Industry Groups, LLC*, 2024 WL 4642962, * at 5.  "*Axon* makes clear that being subject to a

proceeding before an improperly insulated ALJ is ***an actual harm independent of [other] costs***."

*Id.*, at *6 (citing *Axon*, 143 S. Ct. at 904).

Finally, Northern District of Texas Judge Mark Pittman and Western District Judge Alan

Albright followed *Axon* when enjoining NLRB proceedings, taking *Collins* into account.  As Judge

Pittman put it, "[t]he Court, having reviewed the Parties' arguments and the relevant case law,

adopts *Energy Transfer's* reasoning. Findhelp's alleged injury is ***having to participate in a***

***constitutionally defective administrative process*** that is created by the removal provisions."  *Aunt*

*Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024).  Judge

Albright agreed with *Energy Transfer* that "*Collins's* causal-harm requirement is satisfied when a

removal-restriction claim is brought before the insulated actor acts" as the  "alleged harm is ***not***

***the threat of being subjected to a particular action***, but rather, being forced to participate in a

constitutionally defective administrative process" and "it is the removal provisions that protect the

NLRB ALJ's . . . that create the constitutional defect." *Seton v. NLRB*, NO. 1-24-CV-01176-ADA, 2024 WL 4678057 (W.D. Tex. Oct. 18, 2024).[55]

### 3.    *Severance is Not an Appropriate Remedy for Plaintiffs*

Defendants improperly assert that the removal protections for FTC ALJs can simply be severed, so that the FTC administrative proceeding may proceed. ECF 25 at 30.[56] However, there is no easy severance fix for the FTC ALJ removal provisions.   First, the removal provision of 5 U.S.C. § 7521(a) applies to all ALJs, not just those within the FTC; and second, the removal provision of 5 U.S.C. § 1202 applies to the members of the Merit Systems Protection Board ("MSPB") regardless of what kind of civil servant is the subject of a removal proceeding. Striking either provision because of the FTC ALJs would have ramifications far beyond the scope of this case. *See* Linda D. Jellum, *"You're Fired!" Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution & Possible Fixes*, 26 GEO. MASON L. REV. 705, 707 (2019)(noting that a decision striking 5 U.S.C. § 7521(a) would "ha[ve] the potential to affect all ALJs"); *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 509 (2010) (severance is appropriate only where "[t]he remaining provisions are not 'incapable of functioning independently'"). Statutory interpretation does not invite an alternate structure carving FTC ALJs out. *Free Enter. Fund*, 561 U.S. at 509-

---

[55] Even one recent, post-*Axon* opinion in Texas to deny injunctive relief on the basis of an ALJ removal protection claim did not do so on the basis of the *Collins* specific harm test.  Rather, Judge Rolando Olvera acknowledged, with reference to *Collins*, that "if Plaintiff can show that ... ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ" because "[p]roceeding before 'an unaccountable ALJ' 'is a here-and-now injury. . . .'"  *See Space Exploration Tech. Corp. v. Bell*, 701 F.Supp.3d 626, 635 (S.D. Tex. 2023)(citing *Axon Enter., Inc*., 598 U.S. at  191).  Judge Olvera held merely that "Plaintiff ha[d] not shown it [wa]s entitled to an injunction instead of severance . . . ." *See Space Exploration Tech. Corp*., 701 F.Supp.3d at 635.

[56] As multiple of this Court's sister courts in Texas have recognized, severance can be appropriate as a form of declaratory judgment only after a provision has been ***finally*** determined to be unconstitutional. *See Aunt Bertha*, 2024 WL 4202383, at *3; *Energy Transfer*, 2024 WL 3571494, at *4; *see Space Expl. Technolo-Gies Corp. v. Nat'l Labor Relations Bd*., No. W-24-CV-00203-ADA, 2024 WL 3512082, at *5 (W.D. Tex. July 23, 2024).  Thus, some courts decline to address substantive severance arguments in response to preliminary injunction motions. Nonetheless, as reflected *infra in the main text*, the severance issue with respect to ALJ removal claims is purely legal. Therefore, there is likely more to the reluctance to address substantive severance arguments even in the contexts of preliminary injunction motions. *See Aunt Bertha*, 2024 WL 4202383, at *3 ("[T]he Court is skeptical that severance is the proper remedy . . . .").

10.

Furthermore, there are at least two layers of removal protection here, and Defendants have identified no statutory clue as to "which, if any, Congress would be willing to give up."  *See Space Expl. Technolo-Gies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *5 (W.D. Tex. July 23, 2024). There are reasons Congress might wish to keep one or the other or sever one or the other.  With respect to the lower layer, "[t]he substantial independence that the Administrative Procedure Act's removal protections provide to administrative law judges is a ***central*** part of the Act's overall scheme." *Lucia v. SEC*, 585 U.S. 237, 260 (2018) (Breyer, J., concurring in the judgment and dissenting in part).  Regarding the MSPB, the removal provision was explicitly designed to "ensure[] that the [MSPB] will be independent of the direction and control of the President." *See* S. Rep. No. 95-969, at 29 (1978). Thus, this Court should not divine whether Congress would have implemented the current ALJ or MSPB systems sans the provisions, and especially which of the removal provisions should be severed.[57]

### 4.    Differences between SEC ALJs and FTC ALJs Do Not Matter

Defendants also assert "a critical difference" in that SEC ALJ decisions are "often . . . final and binding" and that "the SEC can decide against reviewing an ALJ decision" while "decisions of FTC ALJs are purely recommendatory" and "automatically reviewed." ECF 25 at 30-31.

---

[57] The situation here simply does not involve a discrete provision unconstitutional in its entirety that can be stricken without disrupting a larger scheme.  The *Space Expl.* court more fully explained the dilemma:

> "The removal protections that the APA gives to ALJs are 'a central part of the Act's overall scheme' to protect against the troubling questions that arise from an agency's commingling of adjudicative and prosecutorial functions . . . . Congress designed the NLRB to be an independent agency insulated from presidential control . . . . And finally, to further insulate the ALJs, Congress created the MSPB in the Civil Service Act of 1978, . . . ."

*Space Expl.*, 2024 WL 3512082, at *5(2024)(citations omitted). These factors are present here, including that the FTC is an independent agency with commissioners who can only be removed "for inefficiency, neglect of duty, or malfeasance in office" ultimately responsible for initiating an MSBP action to remove an ALJ (arguably making for a third layer of ALJ removal protection), and thus "there is no appropriate way to sever any of the removal protections." *See id* & 15 U.S.C. § 41.  Adding it up, the FTC ALJs are less accountable than the PCAOB.

However, the Fifth Circuit's *Jarkesy* holding was not conditioned on the finality of ALJ decisions. Indeed, the court reasoned: "SEC ALJs exercise considerable power over administrative case records **by controlling the presentation and admission of evidence**; they may **punish** contemptuous conduct; and **often** their decisions are final and binding." *Jarkesy*, 34 F.4th at 464 (citation omitted). In addition to presuming that sometimes SEC ALJ decisions are ***not*** binding, the Fifth Circuit focused on no single feature of SEC ALJs; instead, the court took them in general to be "inferior officers" of an executive agency "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id*.[58] Moreover, the court noted that the SEC typically reviews the resolutions of claims by its ALJ's. *Id*. at 465 n. 20; *see also Burgess v. FDIC*, 871 F.3d 297, 302 (5th Cir. 2017)(noting that final decision-making power is not a necessary to be an inferior executive officer).[59]

Other courts too have indicated that the key is not whether every single decision of an ALJ is reviewable. For example, in *ABM Industry Groups, LLC*, in sustaining a challenge against the

---

[58] Notably, the FTC has not challenged the status of its ALJs as inferior officers of the executive branch of the federal government. Of course, it cannot since their positions are "'established by law,'" and they "'carry out important functions' over which they 'exercise significant discretion.'" *Burgess v. FDIC*, 871 F.3d 297, 302 (5th Cir. 2017) (cleaned up) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 881–82 (1991)); *see also City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013)(recognizing that the activities of administrative agencies sometimes "take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they must be exercises of—the 'executive Power.'"). In fact, FTC ALJs possess "all powers necessary" to "conduct fair and impartial hearings, to take all necessary action to avoid delay in the disposition of proceedings, and to maintain order" in the FTC's enforcement proceedings, 16 C.F.R. § 3.42(c), where parties rights and interests sit. Review by the FTC does little to diminish the authority of its ALJs. Many parties settle before they make their way to the FTC. *See* Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. COMPETITION L. & ECON. 623, 658 (2016); *Tilton v. SEC*, 824 F.3d 276, 298 n.5 (2d Cir. 2016) (Droney, J., dissenting) (noting "the vast majority" of respondents settle; and in a "number of cases" the SEC "threaten[s] administrative proceedings" before ALJs in a calculated effort to compel settlement), *cert. denied*, 581 U.S. 1006 (2017). And even in cases that proceed, an ALJ has already critically shaped the administrative record for commissioners who realistically afford some deference to their ALJs. *See, e.g., Lucia*, 585 U.S. at 248, 250; *see also, e.g.*, *In re Trans Union Corp*., 129 F.T.C. 471, 482 (2000).

[59] *See* 17 C.F.R. § 201.360(d)(1) ("If a party or an aggrieved person entitled to review timely files a petition for review or a motion to correct a manifest error of fact in the initial decision, or if the Commission on its own initiative orders review of a decision with respect to a party or a person aggrieved who would be entitled to review, the initial decision shall not become final as to that party or person."). Indeed, while the dissenting judge at the Fifth Circuit in *Jarkesy* stressed that an ALJ's decision is "essentially a recommendation," 34 F.4th at 478 (Davis, J., dissenting), that argument did not persuade the majority, *see id*. at 464 (majority op.).

Labor Department's ALJ structure, the court noted that "DOL ALJs still have all the powers to conduct administrative proceedings and therefore **to play a major role in shaping the administrative record**. And their recommendations still carry weight – formally **or informally**." *ABM Industry Groups, LLC*, 2024 WL 4642962, at *4.[60]  For all the foregoing reasons, the Court should reject the Defendants' arguments regarding the Plaintiffs' Article II ALJ-based claim.[61]

E.    Count V States a Claim for Relief because *Humphrey's Executor* Does Not Apply

Plaintiffs are not asking this Court to "overturn a Supreme Court precedent." *See Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1047 (5th Cir. 2023).  Rather, they merely seek to have the Court examine the Supreme Court's precedents in light of the "'new situation.'"  *See Seila Law*, 591 U.S. at 220 (citation omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss for lack of subject-matter jurisdiction or that Plaintiffs have failed to state claims for relief.

---

[60] *See also Space Expl.*, 2024 WL 3512082, at *1 & *3 (citations omitted)(noting that "[w]hile the NLRB . . . is **not bound to accept an ALJ's findings of fact or conclusions of law,**" that "[b]oth [NLRB and SEC ALJs] are 'inferior officers' who 'have **substantial authority**. . .'"); *Walmart Inc. v. King*, CV 623-040, 2024 WL 1258223, at *3 (citations omitted)("OCAHO ALJs are . . . **carrying out executive power by enforcing federal law**."); *Alpine Securities Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) (Walker, J., concurring)(noting that the Supreme Court has reasoned SEC ALJs "'exercised significant authority'" because they had "'discretion'" to exercise an "'important' government function—'enforc[ing] the nation's securities laws[.]'" and "'could, among other things, demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt.'").

[61] The FTC also tries to make something of *Free Enterprise Fund* not applying to ALJs and that *Free Enterprise Fund* "considered a 'rigorous' and 'unusually high' for-cause standard." ECF 25 at 31 (citations omitted).  However, that case was not contingent on the particular for cause standard present. Also, the argument ignores the top layer of removal protection, which permits removal of the MSPB members "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202. It further ignores that a single layer of for-cause removal for inferior officers is already at the "outermost constitutional limits." *See Seila Law*, 591 U.S. at 218.  Indeed, in *Collins*, the Supreme Court rejected the distinction between "for cause" removal and removal for "inefficiency, neglect of duty, or malfeasance." 594 U.S. at 255–56 ("'[F]or cause' does not mean the same thing as 'at will.'" (alteration and quotation marks omitted)). And even in *Free Enterprise Fund*, the Court described the scheme before it as "not only protect[ing] Board members from removal except for good cause, but withdraw[ing] from the President any decision on whether that good cause exists." 561 U.S. at 495 (emphases added). Finally, the Supreme Court merely noted "what issues the Court was leaving open," its identification of "characteristics that were true of ALJs that were not true of PCAOB members" was "[f]ar from . . . justify[ing] multiple layers of removal protection," and the Supreme Court "merely identified that its decision d[id] not resolve the issue presented]." *See Jarkesy*, 34 F.4th at 464-65 (citations omitted).

Dated: December 10, 2024

Respectfully submitted,

FOLEY & LARDNER LLP

Todd A. Murray
(Texas State Bar No. 00794350)
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

By: /s/ Edward D. Burbach

Edward D. Burbach*
(Texas State Bar No. 03355250)
John Sepehri
(Texas State Bar No. 00797408)
Robert F. Johnson III
(Texas State Bar No. 10786400)
Brandon M. Livengood
(Texas State Bar No. 24128022)
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com

Michael J. Lockerby
(*Pro hac vice*)
Megan Chester
(*Pro hac vice*)
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

_____
*Attorney in charge

*Counsel for the Plaintiffs*

26