# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FT. WORTH DIVISION

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*,<br><br>                 *Plaintiffs*,<br>v.<br>THE FEDERAL TRADE COMMISSION, *et al.*,<br>                 *Defendants*. | No. 4:24-cv-00950-O |

## PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING THE FTC'S CHANGE IN CIRCUMSTANCES

Plaintiffs respectfully submit this supplemental brief regarding the impact of the recent change in the Federal Trade Commission's ("FTC") circumstances, in accordance with this Court's March 19, 2025 Order (ECF No. 33).

Edward D. Burbach\*
   (Texas State Bar No. 03355250)
John Sepehri
   (Texas State Bar No. 00797408)
Robert F. Johnson III
   (Texas State Bar No. 10786400)
Brandon M. Livengood
   (Texas State Bar No. 24128022)
**FOLEY & LARDNER LLP**
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com
_____
\*Attorney in charge
^ *Pro hac vice*

Todd A. Murray
   (Texas State Bar No. 00794350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby^
Megan Chester^
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

*Counsel for the Asbury Plaintiffs*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PROCEDURAL BACKGROUND AND INTRODUCTION | 1 |
| II. | ARGUMENT AND AUTHORITIES | 3 |
| | A. The FTC Generally Requires at Least Three of its Five Members to Conduct Business without Authority from Congress to Act with Less | 3 |
| |     1. In Absence of Expressed Congressional Authority the FTC May Not Act with Less than Three Commissioners | 3 |
| |     2. The FTC Lacks Authority from Congress to Act with Less than Three Members | 4 |
| |     3. The 1961 Reorganization Plan Does Not Authorize the FTC to Act with Less than Three Commissioners Beyond Reviewing the Acts of Inferior Officers | 6 |
| | B. The Plaintiffs Are Now Left with Even Less Due Process in the FTC Proceeding | 6 |
| | C. The President's Removal of Commissioners Bedoya and Slaughter Also Bolsters One of the Plaintiffs' Article II Claims | 7 |
| III. | CONCLUSION | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) .................................................................................................. 8
*Baldwin v. Hale,*
  68 U.S. 223 (1863) .................................................................................................... 7
*Collins v. Yellen,*
  594 U.S. 220 (2021) .................................................................................................. 9
*Comm'ty Fin. Serv's Ass'n of Am. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ................................................................................ 9, 10
*Consumers' Research v. Consumer Product Safety Commission,*
  98 F.4th 646 (5th Cir. 2024) ..................................................................................... 8
*F.T.C. v. Flotill Prods., Inc.,*
  389 U.S. 179 (1967) .......................................................................................... 3, 4, 6
*Falcon Trading Grp., Ltd. v. S.E.C.,*
  102 F.3d 579 (D.C. Cir. 1996) .................................................................................. 5
*Hamdi v. Rumsfeld,*
  542 U.S. 507 (2004) .................................................................................................. 7
*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) .................................................................................................. 8
*Illumina, Inc. v. FTC,*
  88 F.4th 1036, (5th Cir. 2023) .................................................................................. 8
*LaPeyre v. F.T.C.,*
  366 F.2d 117 (5th Cir. 1966) .................................................................................... 4
*Marshall v. Jerrico, Inc.,*
  446 U.S. 238 (1980) .................................................................................................. 7
*S.E.C. v. Feminella,*
  947 F. Supp. 722 (S.D.N.Y. 1996) ........................................................................... 5
*Seila Law,*
  591 U.S. ..................................................................................................................... 8

**Statutes**

5 U.S.C. § 553(b)(A) .................................................................................................. 3, 6
5 U.S.C.A. § 905(4) ......................................................................................................... 6
15 U.S.C. § 4 .................................................................................................................... 3
15 U.S.C. § 78d-1 ............................................................................................................ 5
15 U.S.C. § 78w(a)(1) ..................................................................................................... 5
Articles II and III of the Constitution ............................................................................ 2

**Regulations**

16 CFR 0.7(b) .................................................................................................................. 4


16 CFR 4.14(b) ............................................................................................................................. 3, 4

Other Authorities

70 FR 53297.................................................................................................................................... 3

## I. PROCEDURAL BACKGROUND AND INTRODUCTION

Plaintiffs filed suit on October 4, 2024, seeking injunctive and declaratory relief from the FTC's unconstitutional in-house administrative proceeding (ECF No. 1). The parties jointly moved for a four-month stay of the administrative proceeding—which the FTC Commissioners granted on October 29, 2024—to allow this Court time to consider the parties' briefing. Since the stay was set to expire on March 3, 2025, the parties moved again for a further stay while this Court continues to consider the issues in this case. The parties thus filed a second Joint Motion to Stay on February 21, 2025, which was pending until March 26, 2025, when the FTC's two sole acting Commissioners granted the Motion, extending all procedural deadlines by 60 days, and extending the final hearing date to October 20, 2025.[1]

As this Court is aware, on March 18, 2025, President Donald J. Trump announced that he was firing the two remaining Democrats serving as FTC Commissioners, Commissioners Alvaro Bedoya and Rebecca Kelly Slaughter. The President's action appears to have reduced the total number of commissioners to two because the President's nomination of Mark Meador to a seat on the FTC awaits a confirmation vote of the full United States Senate.[2] However, Commissioners Bedoya and Slaughter have announced that they will be challenging the legality of their firings.[3]

As described in detail below, with only two sitting commissioners, the FTC can no longer produce a quorum to conduct its business. As such, the FTC cannot legally rule on the second Joint

---

[1] Order Granting Joint Motion for Further Stay and Continuance of Administrative Proceedings. *See* https://www.ftc.gov/legal-library/browse/cases-proceedings/222-3135-asbury-automotive-group-inc-et-al-matter

[2] The U.S. Senate Commerce Committee approved the nomination of Mr. Meador on March 13, 2025. *See* https://www.commerce.senate.gov/2025/3/commerce-committee-advances-two-nominations-and-multiple-cruz-led-bipartisan-bills

[3] It appears that the U.S. Supreme Court may have to determine the legality of the firings. https://www.npr.org/2025/03/21/nx-s1-5333325/ftc-trump-firings-supreme-court (Asked about the firings of FTC Commissioners Rebecca Kelly Slaughter and Alvaro Bedoya, White House press secretary Karoline Leavitt said on Wednesday that "the time was right to let these people go," adding that the White House was prepared "to fight it all the way to the Supreme Court.").

1

Motion to Stay. Alternatively, even if the FTC with only two commissioners could act on "minor" internal administrative matters (such as extending deadlines in administrative proceedings), it still may not conduct formal external business such as taking enforcement actions (e.g., issuing cease and desist orders, voting to sue, etc.), or take affirmative judicial actions (e.g., voting to adopt a ALJ's Recommendation to find Plaintiffs liable for FTC rule violations). To do so absent congressional authorization would violate the common law rule of requiring quorum based upon a majority of all the total number of commissioners set by Congress.

As a result, it is critical for this Court to grant Plaintiffs' Motion for Preliminary Injunction (ECF No. 7). Without a preliminary injunction, Plaintiffs will suffer deprivation of their constitutional rights, including protection from an illegitimate administrative proceeding before an illegitimate decisionmaker in violation of Articles II and III of the Constitution, their Fifth Amendment Due Process rights, and their Seventh Amendment right to a jury trial. In addition to those injures and deprivations, the Plaintiffs now face a situation where the FTC's ruling on their Motion to Stay and the FTC operating with only two commissioners raises even more uncertainty and improper legal harm to the Plaintiffs in all events.  Specifically, if the President may lawfully remove the two Commissioners (since—as Plaintiffs have argued—Humphrey's Executor does not apply to the current structure and nature of the FTC), the FTC will still lack a quorum to act without a third Commissioner.  The Plaintiffs are thereby left with even less due process than the FTC Proceeding afforded them prior to the President firing the two commissioners.  Conversely, if it is ultimately determined by the courts that the President cannot fire the two Commissioners, the FTC's actions without their participation may lack the necessary quorum to be valid agency acts. In either case, the Plaintiffs suffer harm unless this Court issues its own stay of the administrative proceedings via the preliminary injunction Plaintiffs have sought (and ultimately a

2

final injunction). Therefore, until this Court or another resolves the issues of when and how the FTC can operate with only two Commissioners and whether the President has the power to remove Commissioners, the Plaintiffs should not be subjected to the FTC Proceeding for that reason alone.

## II. ARGUMENT AND AUTHORITIES

### A. The FTC Generally Requires at least Three of its Five Members to Conduct Business without Authority from Congress to Act with Less.

With only two members, the FTC is unable to produce the quorum to conduct business. This is because the FTC consists of five commissioners, not more than three of whom may be from the same political party. 15 U.S.C. § 4. While the FTC's enabling statutes do not specify a quorum requirement, the Commission established its own quorum rule in 1915, requiring three of the five members to produce a quorum. *See F.T.C. v. Flotill Prods., Inc.*, 389 U.S. 179, 182 (1967) (discussing the FTC's original quorum rule). In 2005, the FTC purported to revise its quorum rule to permit a quorum with as few as two members, or perhaps even one. 16 CFR 4.14(b); *see also*, 70 FR 53297 (noting the FTC's reliance on 5 U.S.C. § 553(b)(A) as the basis for the quorum change and that the Administrative Procedure Act did not require prior public notice and comment because it related solely to agency procedural rules).

#### *1. In Absence of Expressed Congressional Authority the FTC May Not Act with Less than Three Commissioners.*

In *Flotill* the Supreme Court wrestled with the question of whether an enforceable cease-and-desist order of the Federal Trade Commission requires the concurrence of a majority of the full Commission, or only of a majority of the quorum that participated in the decision to issue the order. *Id* at 180. The Supreme Court expressly noted it was not weighing the question of whether, absent statutory authority, the FTC can set its own quorum requirements – a question that remains

3

open today. *Id* at 182.[4] The *Flotill* Court held that the FTC could operate with only three of its five members. In doing so, the Supreme Court noted that the FTC's actions did not violate the common-law rule requiring a simple majority of a collective body to act. *Id*. at 183–84 ("The almost universally accepted common-law rule is that, in the absence of a contrary statutory provision, a majority of a quorum, constituted by a simple majority of a collective body, is empowered to act for the body. Where the enabling statute is silent on the question, the body is justified in adhering to that common-law rule."). In other words, absent explicit congressional authorization to act with fewer than a simple majority of its members, the Commission is justified in operating with three out of five members. However, to act with fewer than three, which would violate established common law principles, the Commission would require authority from Congress.

### 2. The FTC Lacks Authority from Congress to Act with Less than Three Members.

*Flotill* noted that "when Congress wanted to authorize the exercise of the powers of an administrative body by less than the full body in other situations, it did not lack the words to do so expressly." *Id*. at 185. Other courts grappling with what Congressional authorization looks like when other agencies' enabling statutes are silent on quorum requirements is instructive here. For example, the Securities and Exchange Commission (SEC) lacks any express quorum requirements.

---

[4] Plaintiffs direct this Court to *LaPeyre v. F.T.C.*, 366 F.2d 117, 122 (5th Cir. 1966), decided a year before *Flotill*, in which the 5th Circuit upheld the FTC's authority to enact its own quorum rules, stating it was within the "Commission's power to make and is wholly valid." At the time of *LaPeyre*, the FTC's rules required three out of five commissioners to establish a quorum and take action. Today, the FTC's current quorum rules permit the Commission to act with as few as two members, or potentially even one. 16 CFR 4.14(b). However, *Flotill*, decided a year after *LaPeyre*, supports the proposition that even if the FTC has the authority to establish its own quorum rules, absent Congressional authorization, it may not set a quorum requirement below three of its five commissioners. Regardless, the FTC has gone well beyond what was discussed in both *Flotill* and *LaPeyre* regarding the requirements for official action from the Commission, without Congressional authorization. The FTC's rules on Delegation of Functions now allow persons other than commissioners to act when a quorum cannot be met. 16 CFR 0.7(b) ("In actions in which no Commissioner is available or participating, the General Counsel, in consultation with the Directors of the Bureaus of Consumer Protection, Competition, and Economics, will exercise this delegated authority without power of redelegation... This delegation is authorized only in instances where the Commission lacks a quorum as set forth in Commission Rule 4.14(b).").

4

But in *Falcon Trading Grp., Ltd. v. S.E.C.*, 102 F.3d 579 (D.C. Cir. 1996), the D.C. Circuit upheld an SEC action taken by two commissioners, holding that "[i]f not otherwise constrained by statute, an agency sufficiently empowered by its enabling legislation may create its own quorum rule." The *Falcon* court construed the SEC's general rulemaking authority to include the power to determine quorum. However, the rulemaking authority cited in *Falcon* pertains to the SEC's power to make substantive rules under the statutes it regulates, not internal organizational rules.

Less than a month earlier, a district court in *S.E.C. v. Feminella*, 947 F. Supp. 722, 726 (S.D.N.Y. 1996) emphasized this distinction. In *Feminella*, the court held that the rulemaking provision relied upon in *Falcon* was generally cited to make substantive rules, not to determine internal procedures like quorum. Here, the FTCs general rule making authority for substantive rules does not authorize it to set quorum requirements below the common law floor.

Moreover, the *Feminella* court further emphasized that it was necessary to examine the SEC's enabling statutes to determine whether Congress authorized the SEC to set aside the common-law quorum rule. The court found such authority in 15 U.S.C. § 78d-1, which authorizes the SEC to delegate certain functions to a single commissioner. The court held that Congress explicitly envisioned circumstances in which the SEC could act with fewer than three commissioners. Critically, **Congress** passed 15 U.S.C. § 78d-1, and it was not part of a presidential Reorganization Plan, which is an important point discussed further below.

In contrast, the FTC Act contains no express delegation language in its enabling statutes, and thus the Court should conclude the FTC cannot authorize a quorum of fewer than three commissioners, as per *Flotill*. Relying on the FTC's general rulemaking authority to regulate unfair or deceptive practices (Section 5(a) of the FTC Act) is flawed, as it does not represent express Congressional authorization to set a quorum lower than what common law would require.

5

Presumably, the FTC agrees, as it did not invoke its general regulatory authority in amending its current quorum rule, but instead relied on 5 U.S.C. § 553(b)(A), as discussed above.

### 3. *The 1961 Reorganization Plan Does Not Authorize the FTC to Act with Less than Three Commissioners Beyond Reviewing the Acts of Inferior Officers.*

Finally, the 1961 Reorganization Plan (the "1961 Plan") is also not a basis for the Commission to exercise its authority and conduct business with only two commissioners. As *Flotill* discussed, the 1961 Plan cannot be construed as a blanket authorization for the FTC to operate with a quorum lower than required by the common law. *Flotill*, at 188–89. Moreover, despite its adoption by Congress, the 1961 Plan cannot be interpreted as expressly authorizing the FTC to meet quorum with fewer than three commissioners, as the statute itself precludes any plan adopted under the Act from granting an agency authority to perform functions not explicitly authorized by law at the time the plan is transmitted to Congress. 5 U.S.C.A. § 905(4).

Alternatively, even if the 1961 Plan could be interpreted as authorizing the two acting commissioners to rule on Plaintiffs' pending Motion to Stay, the FTC still could not vote on the Administrative Law Judge's recommendation at the conclusion of the FTC Proceeding. Doing so would involve a fundamental action far beyond matters such as reviewing actions delegated to inferior officers. Rather, it would constitute a formal external action by the FTC in determining whether Plaintiffs violated the law—an action that requires a full quorum as set forth above.

## B. The Plaintiffs Are Now Left with Even Less Due Process in the FTC Proceeding

As stated above, whether the FTC can lawfully act on the parties' second Joint Motion to Stay raises additional concerns regarding the Plaintiff's Due Process rights. Subjecting Plaintiffs to a administrative processes where there is uncertainty regarding the FTC's authority to act inherently violates Plaintiff's Due Process rights. Due process guarantees "notice of the factual

basis" for the FTC's assertions and a fair opportunity to challenge those assertions before a neutral decisionmaker. *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). Parties whose rights may be affected are entitled to be heard, and for this right to be meaningful, it must be granted "at a meaningful time and in a meaningful manner." *Id.* (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)). But action taken by the Commission with two commissioners ostensibly removed and the inability to form a quorum casts serious doubt on the legality of the FTC's actions, creating a cloud of uncertainty over its authority and the entire process which Plaintiffs are being subjected.

This, combined with the Due Process claims already raised by Plaintiff (e.g., ECF No. 8, pp. 24-27), further muddies the waters, providing yet another reason why this Court should issue a preliminary injunction. A process in which both the rules and the final arbiter are in question lacks 'both the appearance and reality of fairness. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). Moreover, Plaintiff's ability to appeal agency action taken by inferior officers (such as the ALJ)—delegated by the Reorganization Act—is also uncertain given the absence of a three-commissioner quorum. And finally, again, any recommendation from the ALJ at the end of the administrative process to hold Plaintiffs responsible for violations of the FTC Act will remain in legal limbo, as the FTC cannot adopt, amend, or dismiss the recommendation without a quorum.

C. **The President's Removal of Commissioners Bedoya and Slaughter Also Bolsters One of the Plaintiffs' Article II Claims**

At a minimum, President Trump's actions reflect that the head of the executive branch of the United States government believes—in line with the Department of Justice (as previously reported to the Court by letter dated February 24, 2025, ECF 31)—that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) is no longer applicable to the FTC as it is currently constituted.[5]

---

[5] To be sure, "inferior courts must follow binding Supreme Court precedent," but "that truism accomplishes little because all agree that [they are] bound by *Humphrey's Executor, Myers, Seila Law*, &c." *See Consumers' Research v. Consumer Product Safety Commission*, 98 F.4th 646, 657 (5th Cir. 2024)(J. Oldham, dissenting from denial of

7

In fact, Karoline Leavitt, Press Secretary to President Trump, confirmed as much in a recent press briefing. In response to the question of whether the ultimate goal of the firing is an attempt to have the Supreme Court overturn the 1935 Supreme Court decision, *Humphrey's Executor*, Ms. Leavitt responded that the "goal was to let these individuals go. … [If we have] to fight it all the way to the Supreme Court, we certainty will." *See* Miranda Nazzaro, *White House Pledges to Defend FTC Firings in Court*, The Hill Magazine (3/19/24) located at https://thehill.com/homenews/administration/5203549-trump-fires-federal-trade-commission/.

Additionally, the Plaintiffs continue to assert that they need not show any particularized harm from the unconstitutional removal protections for FTC Commissioners or FTC administrative law judges (and instead have amply shown—under *Axon Enter., Inc. v. FTC,* 598 U.S. 175 (2023)—the "here and now" injury resulting from their having to proceed before illegitimate decisionmakers in an illegitimate proceeding). However, President Trump's actions demonstrate that if, for the sake of argument, Plaintiffs must show harm other than the *Axon* here-and-now injury previously briefed, the removal protections for the FTC commissioners harm the Plaintiffs.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the United States Supreme Court set forth pertinent principles by which harm from an unconstitutional removal provision could be shown to

---

rehearing *en banc*, joined by J. Jones, J. Smith, J. Elrod, J. Ho, J. Duncan, H. Engelhardt, and J. Wilson). But "the Court's precedents say the President has unrestrictable power to remove principal officers unless those officers are part of a traditional multimember expert agency that does not wield substantial executive power. That means the [the FTC Commissioners] removal protections are unconstitutional." *See id*. The Fifth Circuit spoke to none of this in *Illumina, Inc. v. FTC*, 88 F.4th 1036, (5th Cir. 2023), instead cursorily deferring to *Humphrey's Executor*. *See* id. at 1047. Accordingly, the Plaintiffs reiterate that they have never asked this Court to do what only the Supreme Court can do, i.e., "overturn a Supreme Court precedent" (*see Illumina*, 88 F.4th at 1047); but, rather merely have sought to have the Court examine the Supreme Court's precedents in light of the "'new situation'." *See Seila Law*, 591 U.S. at 220 (citation omitted).

the extent harm need be shown (which again it does not for claims such as Plaintiffs' challenging the mere subjection to illegitimate decisionmakers). The Supreme Court wrote as follows:

> Suppose, for example, that the President had attempted to remove a Director [of the CFPB] but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.
>
> In the present case, the situation is less clear-cut, but the shareholders nevertheless claim that the unconstitutional removal provision inflicted harm. Were it not for that provision, they suggest, the President might have replaced one of the confirmed Directors who supervised the implementation of the third amendment, or a confirmed Director might have altered his behavior in a way that would have benefited the shareholders.

*Collins*, 594 U.S. at 259-60. The Fifth Circuit has taken the Supreme Court's guidance further and distilled "from these hypotheticals three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Comm'ty Fin. Serv's Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd on other grounds by*, 601 U.S. 416 (2024). Furthermore, the Fifth Circuit remarked that "secondhand accounts" of President Trump's supposed intentions as to the removal of the CFPB Director were insufficient to establish harm and such director's "subjective belief" that his firing might be imminent did not by itself substantiate that the President would have removed him but for the unconstitutional removal protection. *See Comm'ty Fin. Serv's Ass'n*, 51 F.4th at 633.

In this case the President's actions and the remarks of his spokespersons are in no way secondhand or mere subjective belief on the part of an FTC Commissioner. Rather, the President removing Commissioners Bedoya and Slaughter, and his spokesperson's statements very

9

concretely drives home the President's belief that those commissioners do not reflect the administration's policies and therefore that their service on the FTC has tainted the FTC's actions. In fact, Press Secretary Leavitt stated that Commissioners Bedoya and Slaughter were "given ample notice" why the administration chose to let them go, namely, that their "continued service on the FTC is 'inconsistent' with the Trump administration's policies." *See* Miranda Nazzaro, *White House Pledges to Defend FTC Firings in Court*, The Hill Magazine (3/19/24) located at https://thehill.com/homenews/administration/5203549-trump-fires-federal-trade-commission/.

That is, to the extent this Court believes *Humphreys Executor* requires it to conclude President Trump may not remove FTC commissioners without cause, the administration's actions and statements patently reflect that the Plaintiffs are harmed by the removal protections insulating commissioners who do not share the President's policy vision. The removal protections thereby have tarnished the FTC's actions under their tenure, including the FTC's decision to continue to pursue an illegitimate administrative proceeding against Plaintiffs presided over by an illegitimately shielded ALJ that lacks due process and strips Plaintiffs of their right to an Article III tribunal as well as to have the claims against them tried before a jury.[6]

### III.  CONCLUSION

Plaintiffs respectfully request that this Court grant their Motion for a Preliminary and Permanent Injunction to prevent further harm to their constitutional rights. The questions surrounding the FTC's ability to act on the pending second Joint Motion to Stay due to the lack of a quorum, compounded by the potential for further unlawful and unconstitutional actions by an insufficient number of commissioners, underscores the urgency of judicial intervention.

---

[6] This is important because although the Defendants counsel has conceded it will no longer defend the constitutionality of for cause-type removal protections for "independent" agency commissioners or federal administrative law judges, counsel (wrongly) insists Plaintiffs must show harm from removal protections for those executive branch officers. *See* FTC's Brief in Support of its Motion to Dismiss (ECF No. 25).

| | |
|---|---|
| March 26. 2025 | Respectfully submitted, |
| | FOLEY & LARDNER LLP |
| | */s/ Edward D. Burbach* |
| Todd A. Murray | Edward D. Burbach* |
|   (Texas State Bar No. 00794350) |   (Texas State Bar No. 03355250) |
| **FOLEY & LARDNER LLP** | John Sepehri |
| 2021 McKinney Avenue, Suite 1600 |   (Texas State Bar No. 00797408) |
| Dallas, Texas 75201 | Robert F. Johnson III |
| Tel: 214.999.3000 |   (Texas State Bar No. 10786400) |
| Fax: 214.999.4667 | Brandon M. Livengood |
| Email: tmurray@foley.com |   (Texas State Bar No. 24128022) |
| | **FOLEY & LARDNER LLP** |
| Michael J. Lockerby^ | 600 Congress Avenue, Suite 2900 |
| Megan Chester^ | Austin, Texas 78701 |
| **FOLEY & LARDNER LLP** | Tel: 512.542.7000 |
| Washington Harbour | Fax: 512.542.7100 |
| 3000 K Street N.W., Suite 600 | Email: eburbach@foley.com |
| Washington, D.C. 20007 | Email: jsepehri@foley.com |
| Tel.: 202.672.5300 | Email: rjohnson@foley.com |
| Fax: 202.672.5399 | Email: brandon.livengood@foley.com |
| Email: mlockerby@foley.com | _____ |
| Email: mxchester@foley.com | *Attorney in charge |
| | ^ *Pro hac vice* |

*Counsel for the Asbury Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

| | |
|---|---|
| March 26, 2025 | /s/ *Brandon Livengood* |
| | Brandon Livengood |

11