IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*, | |
| *Plaintiffs*, | No. 4:24-cv-00950-O |
| v. | |
| THE FEDERAL TRADE COMMISSION, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEF**

Plaintiffs respectfully file this Reply to Defendants' Response to Plaintiffs' Supplemental Brief Regarding the FTC's Change in Circumstances (respectively, ECF Nos. 43 & 37).

**I.   The Court Need Not Resolve the Quorum Issue to Rule in Favor of Plaintiffs but the Issue is Still Relevant.**

As an initial matter, the quorum question raised by the removal of the two Democratic commissioners does not need to be resolved in order to rule in Plaintiffs' favor on their pending motion for injunctive relief, for the reasons outlined in the Plaintiffs' previous briefing (ECF Nos. 8, 28, & 29). Moreover, on April 10, 2025, President Donald J. Trump's most recent appointment to the Federal Trade Commission, Mark Meador, was confirmed as a Commissioner by the United States Senate in a 50-46 vote[1].

Regardless, the quorum issue is far from being rendered "meritless," as Defendants contend, because vacancy and quorum statutes are distinct. For example, despite the Senate's

---

[1] https://www.senate.gov/legislative/LIS/roll_call_votes/vote1191/vote_119_1_00209.htm

1

confirmation of Commissioner Meador, the question of whether the FTC's previous stay of the administrative proceeding[2] with only two commissioners is valid remains unresolved. This leaves Plaintiffs subject to a government enforcement action under rules that are unclear and arbitrary.

    a. *Plaintiffs' Due Process Deprivations Are Exacerbated by the Quorum Issue.*

Defendants argue Plaintiffs may not obtain injunctive relief without having a specific challenge to the issue in their complaint. However, Plaintiffs have, in fact, raised a Due Process challenge to the FTC's Administrative Proceeding, and the deprivations thereof have been exacerbated by the FTC's lack of quorum, as discussed in Plaintiffs' supplemental briefing (ECF No. 37). Due Process deprivations are "here-and-now" injuries grounded in "structural constitutional claims," where post-hoc review "would… come too late to be meaningful." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023). And a process with suspect rulings and questionable validity of decisions by its decision maker deprives Plaintiffs of their minimum Due Process guarantee—the right to a fair opportunity to rebut the FTC's factual assertions "in a meaningful manner." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

    b. *The FTC's Vacancy Provision Does Not Empower It to Operate Below a Common-Law Quorum.*

The FTC's reliance on 15 U.S.C. § 41 in conjunction with *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 473 (7th Cir. 1980), is misplaced. In *Assure*, the Fifth Circuit analyzed the 1980s Interstate Commerce Commission ("ICC") vacancy provision, 49 U.S.C. § 10301(e), which is nearly identical to the FTC's vacancy provision, 15 U.S.C. § 41. The Court found that the ICC could make quorum with a simple majority of "those actually in office." *Assure Competitive Transp., Inc.*, 629 F.2d at 473. Critically, the Fifth Circuit reached this decision not

---

[2] Among other things, the two Commissioners adopted a revised schedule which utilizes FTC Rule deadlines which deny them due process. Such FTC Rule deadlines are thoroughly discussed in Plaintiffs' Motion.

based on the vacancy provision alone, but also with the benefit of the ICC having a quorum rule ***in its enabling statute***, 49 U.S.C. § 10306(a), which then colored the Court's interpretation of the ICC's vacancy statute. *Id.*

Plaintiffs agree that the FTC's vacancy provision—15 U.S.C. § 4—empowers the FTC to act with fewer than its total five commissioners, similar to the ICC's vacancy provision. However, unlike in *Assure*, the FTC does not have a corresponding statutory quorum provision that would allow this Court to infer Congress authorized a mere two members of a five-member commission to make quorum. Indeed, in *Assure*, the Fifth Circuit noted that the Supreme Court has held that the FTC's vacancy provision, 15 U.S.C. § 4, "does not regulate the matter of a quorum." *Assure*, 629 F.2d at 473 (referencing *FTC v. Flotill Products, Inc.*, 389 U.S. 179 (1967)).

In *Flotill Products*, the Supreme Court explained that quorum, under common law, is understood to be a majority of a collective body—here, three out of five. *Flotill Products, Inc.*, 389 U.S. at 183. Moreover, when "Congress wanted to authorize the exercise of the powers of an administrative body by less than the full body... it did not lack the words to do so expressly." *Id.* at 185. Congress has not done so here, meaning that at least three out of five commissioners are required to make quorum.

Finally, Plaintiffs acknowledge that the Fifth Circuit found the FTC had authority to set its own quorum requirements in *LaPeyre v. FTC*, 366 F.2d 117 (5th Cir. 1966). However, the *LaPeyre* court was examining an FTC quorum rule that complied with the common law—i.e., a majority of the total number of commissioners. *Id.* The Court did not address whether the FTC had authority to set a quorum rule below the common-law rule, which is the rule in place today: 16 C.F.R. § 41.

**II.     The FTC Proceeding Is Still Constitutionally Defective Under Article II.**

The FTC continues to assert that Plaintiffs fail on their Article II claims. That is incorrect for a couple of reasons. First, as Plaintiffs have repeatedly argued and demonstrated, post-*Axon* it is clear that they need not show harm in any Article II removal protection challenge. This is because they suffer "here and now" injury by being subjected to illegitimate decisionmakers in an illegitimate proceeding. There is simply no need for the Court to get into whether the removal protections caused or are causing Plaintiffs' harm.

Second, even if Plaintiffs do have to show harm in an Article II removal challenge, the fact is that the President has unequivocally demonstrated his displeasure with the Commission that voted to file the FTC Proceeding. His announced removal of Commissioner Bedoya and Commissioner Slaughter was done on the basis of the incompatibility of their views with his administration's policy agenda. And it is widely known that former FTC Chairperson Lina Khan shared their policy outlook. While the two Republican commissioners also initially voted to file the administrative complaint, they did so in an entirely different milieu and context with a commission dominated by Democratic appointees at odds with the president's agenda. Indeed, Commissioner Bedoya and Commissioner Slaughter remained in office into the current administration. However, Defendants fail to mention that they are parties to this lawsuit[3] and also on March 27, 2025 filed suit to invalidate the president's announcement of firing them.[4] The whole process—including the continuation of the proceeding—is thereby patently tainted by the removal

---

[3] See e.g. April 4, 2024 docket entry 43: RESPONSE filed by Alvaro Bedoya, Andrew Ferguson, Melissa Holyoak, Lina M. Khan, Rebecca Kelly Slaughter, The Federal Trade Commission re: [37] Supplemental Document (Cowan, Zachary)

[4] *Slaughter In Her Official and Personal Capacities and Bedoya in His Official and Personal Capacities v. Trump et al.*, Cause No. 1:25-cv-00909, In the United States District Court for the District of Columbia. In that lawsuit Slaughter and Bedoya cite to previous confirmation testimony of Chair Ferguson (in an apparent assertion of admission by a party opponent) in support of their assertion that they still "are Commissioners of the Federal Trade Commission" and that "President Donald Trump purported to fire them, in direct violation of a century of federal law and Supreme Court precedent. Plaintiffs will not and do not accept this unlawful action…" Id. at 2, 10. They seek mandamus, declaratory and injunctive relief.

protections to the extent the Court concludes it cannot examine whether *Humphrey's Executor*, 295 US 602 (1935), applies to the current facts regarding the FTC's structure and powers (such that Bedoya and Slaughter remain commissioners).

Dated: April 11, 2025

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ *Brandon Livengood*

| | |
|---|---|
| Todd A. Murray | Edward D. ("Ed") Burbach* |
| (Texas State Bar No. 00794350) | (Texas State Bar No. 03355250) |
| 2021 McKinney Avenue, Suite 1600 | John Sepehri |
| Dallas, Texas 75201 | (Texas State Bar No. 00797408) |
| Tel: 214.999.3000 | Robert F. Johnson III |
| Fax: 214.999.4667 | (Texas State Bar No. 10786400) |
| Email: tmurray@foley.com | Brandon M. Livengood |
| | (Texas State Bar No. 24128022) |
| Michael J. Lockerby^ | 600 Congress Avenue, Suite 2900 |
| Megan Chester^ | Austin, Texas 78701 |
| Washington Harbour | Tel: 512.542.7000 |
| 3000 K Street N.W., Suite 600 | Fax: 512.542.7100 |
| Washington, D.C. 20007 | Email: eburbach@foley.com |
| Tel.: 202.672.5300 | Email: jsepehri@foley.com |
| Fax: 202.672.5399 | Email: rjohnson@foley.com |
| Email: mlockerby@foley.com | Email: brandon.livengood@foley.com |
| Email: mxchester@foley.com | |

*Attorney in charge
^ *Pro Hac Vice*

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record have been served with a true and accurate copy of the above filing, on April 11, 2025, via electronic mail.

By: /s/ *Brandon Livengood*

5