IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., et al. | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:24-cv-00950-O |
| THE FEDERAL TRADE COMMISSION, et al. | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Plaintiffs' Emergency Motion for Injunction and Stay of FTC Proceedings, Appendix, and Brief in Support (ECF Nos. 6–9); Defendants' Response (ECF No. 23); Plaintiffs' Reply (ECF No. 29); Plaintiffs' supplemental document (ECF No. 31); and Defendants' supplemental document (ECF No. 32). Additionally, before the Court are Plaintiffs' Supplemental Brief Regarding the FTC's Change in Circumstance (ECF No. 37); Defendants' Response (ECF No. 43); and Plaintiffs' Reply (ECF No. 44). Finally, Defendants filed a Brief of Supplemental Authority (ECF No. 49); and Plaintiffs filed a Response (ECF No. 50).

Also before the Court are Defendants' Motion to Dismiss and Brief in Support (ECF Nos. 24–25); Plaintiffs' Response (ECF No. 28); and Defendants' Reply (ECF No. 30). After due consideration of the briefing, the Court determines that Plaintiffs' Application for a Preliminary Injunction (ECF No. 6) is **DENIED** and Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED in part** and **DENIED in part**.

1

I.     **BACKGROUND**[1]

This action is a collateral attack on a pending administrative action. Plaintiffs are among the largest franchised automotive retailers in the United States. On August 16, 2024, the Federal Trade Commission (the "FTC" or "Commission") issued an administrative complaint against Plaintiffs, alleging that they often charge consumers without their consent for add-ons such as service contracts or chemical coatings that commonly cost hundreds or thousands of dollars above the price of the vehicle.[2]

A.  **The Regulatory and Administrative Regime**

The FTC, like all administrative agencies, is a creature of statute. Its origins are not found in the Constitution, but instead in the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41–58.

The FTC Act declares unlawful all "unfair or deceptive acts or practices in or affecting commerce," and it empowers the FTC to enforce the FTC Act through administrative adjudication. *Id.* § 45(a)–(b). When the FTC believes an entity has been or is engaging in unfair or deceptive conduct, it serves an administrative complaint stating its allegations. *Id.* § 45(b). The respondent is given the opportunity to appear at a hearing and "show cause" why the FTC should not order it to cease and desist from the alleged conduct. *Id.*

If the FTC decides that the respondent has engaged in unfair or deceptive conduct, it may issue a cease-and-desist order, which is reviewable by the courts of appeals. *Id.* § 45(b)–(c). The FTC cannot impose penalties or monetary relief. *Id.* However, *if* a party subject to an FTC cease-and-desist order violates the terms of that order, it is subject to "a civil penalty of not more than

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Complaint. *See* Pls.' Compl., ECF No. 1.
[2] Pls.' App. Supp. Prelim. Inj. 9, 11, ECF No. 9.

$10,000 for each violation." *Id.* § 45(l). The action to recover a civil penalty occurs in a United States district court. *Id.* § 45(m).

In addition, the FTC enforces the Equal Credit Opportunity Act ("ECOA"), violations of which are deemed to be violations of the FTC Act. *Id.* § 1691c(c). The FTC has conducted hearings in accordance with the Administrative Procedure Act since its enactment in 1946. The FTC staff who prosecute a complaint are walled off from adjudicators and may not communicate with them about the merits of a proceeding. *See* 5 U.S.C. § 554(d)(2); 16 C.F.R. § 4.7(b).

The initial hearing is typically conducted before an Administrative Law Judge ("ALJ"), who is appointed by the FTC and may be removed only for good cause as found by the Merit Systems Protection Board. 5 U.S.C. § 7521(a). Parties to FTC proceedings have discovery and trial rights, which the FTC maintains are comparable to those in the Federal Rules of Civil Procedure. *See* 16 C.F.R. §§ 3.31–3.46. The ALJ issues a recommended decision, and the FTC Commissioners review that decision *de novo*, including potentially expanding the record, and issue a final decision. 16 C.F.R. §§ 3.42, 3.51–3.54. There are five Commissioners (and by statute no more than three from the same political party), and final decisions are made by majority vote. 15 U.S.C. § 41; 16 C.F.R. § 4.14(c). Commissioners "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41.

## B. Underlying Administrative Proceeding

The FTC's underlying administrative complaint alleges, in short, that Plaintiffs often charge customers for additional items—even without the customer's knowledge.[3] Additionally, the FTC's complaint alleges that Plaintiffs' practice is discriminatory because "Black and Latino consumers" are charged with the additional services more than "White consumers."[4] The FTC used "disparate

---

[3] Pls.' App. Supp. Prelim. Inj. 9, 11, ECF No. 9.
[4] *Id.* at 9.

impact analysis" to discover that "Blacks" and "Latinos" were charged for the add-on services more often than Whites.[5] The FTC alleges this conduct is unfair and deceptive, violating the FTC Act. 15 U.S.C. § 45(a).[6] The FTC is currently seeking a cease-and-desist order for Plaintiffs to stop their complained-of conduct. Plaintiffs denied these allegations in their September 3, 2024, Answer and Affirmative Defenses.[7] The FTC temporarily stayed the administrative proceedings, extending the upcoming deadlines.[8]

### C.  This Action

On October 4, 2024, Plaintiffs filed this lawsuit against Defendants, the FTC, and FTC Commissioners—Lina M. Khan, Rebecca Kelly Slaughter, Alvaro Bedoya, Melissa Holyoak, and Andrew Ferguson—in their official capacities (collectively, the "Commissioners").[9] Since Plaintiffs' Complaint, two FTC Commissioners have been fired (which is the subject of a pending suit not before the Court). *See Slaughter v. Trump*, No. CV 25-909 (LLA), 2025 WL 1984396 (D.D.C. July 17, 2025). As of today, the FTC has three active Commissioners, namely, Andrew Ferguson, Melissa Holyoak, and Mark Meador.

Plaintiffs' Complaint contains five Counts. In Count I, Plaintiffs allege that the FTC's action violates Article III of the Constitution by adjudicating private rights in a non-Article III tribunal.[10] In Count II, Plaintiffs allege that the FTC's action violates their right to a jury trial as secured by the Seventh Amendment.[11] In Count III, Plaintiffs allege that the FTC's adjudication violates their Fifth Amendment due process rights, both facially and as applied.[12] Finally, in

---

[5] Pls.' App. Supp. Prelim. Inj. 4, ECF No. 9.
[6] *Id.* at 17–18.
[7] *Id.* at 88–92.
[8] *See* Notice of Stay, ECF No. 22; Notice of Further Stay, ECF No. 45.
[9] Pls.' Compl. 1, ECF No. 1.
[10] *Id.* at 28.
[11] *Id.* at 28–29.
[12] *Id.* at 29–30.

Counts IV and V, Plaintiffs allege that the FTC's proceeding is unlawful because the ALJs and the Commissioners, respectively, are unconstitutionally protected from removal.[13]

Plaintiffs seek an injunction "enjoining the FTC Proceeding against" Plaintiffs and a declaration that the FTC's proceeding is unconstitutional on each of the five above-mentioned Counts.[14] Plaintiffs moved for a preliminary injunction and Defendants moved to dismiss this case.[15] The Motions are ripe for the Court's consideration.

## II.    LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Defendants may challenge a court's authority to hear a dispute under Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Courts may dismiss for lack of subject matter jurisdiction on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal quotation marks and citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Generally, when a Rule 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the Rule 12(b)(1) motion must be addressed first. *See id.* ("When a Rule 12(b)(1) motion is filed

---

[13] *Id.* at 30–31.
[14] *Id.* at 32.
[15] *See* Pls.' Mot. Prelim. Inj., ECF No. 6; Defs.' Mot. Dismiss, ECF No. 24.

in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

### B.  Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion

6

to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

### C.  Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (quoting *Planned Parenthood of Hou. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)); *see also* FED. R. CIV. P. 65. The Court should issue a preliminary injunction only if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.*

### III.  ANALYSIS

Plaintiffs bring five Counts against Defendants. Defendants move to dismiss each of Plaintiffs' claims, either for lack of subject matter jurisdiction or for failure to state a claim. For the following reasons, Defendants' Motion to Dismiss is **GRANTED** as to all claims besides Count I, Plaintiffs' Article III claim. The Court requires additional briefing on Count I in order to

expeditiously decide the issue on summary judgment. Additionally, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

### A.  Subject Matter Jurisdiction

The Court addresses Defendants' Rule 12(b)(1) Motion to Dismiss first because subject matter jurisdiction must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Defendants argue that the Court lacks jurisdiction to address Plaintiffs' Seventh Amendment and as-applied Fifth Amendment due process claims. The Court addresses each argument in turn.

#### 1.  Seventh Amendment Claim

Defendants argue that Plaintiffs do not have standing to pursue a Seventh Amendment claim because they have not suffered an injury-in-fact.[16] Namely, Defendants argue that because the FTC seeks a cease-and-desist order, Plaintiffs do not have a Seventh Amendment injury.[17] The Court agrees.

Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing" that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). There are three requirements for Article III standing. A party seeking relief in federal court must demonstrate: (1) an injury-in-fact, which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action";

---

[16] Defs.' Br. Supp. Mot. Dismiss 7–9, ECF No. 25.
[17] *Id.*

and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 560–61 (citation modified).

Plaintiffs argue they are entitled to a jury trial because a future FTC action may seek a civil money penalty.[18] Plaintiffs argue that after the Fifth Circuit's *Jarkesy v. SEC* decision they are now "entitled to a jury to adjudicate the underlying facts that would later be used as justification for seeking penalties and such amounts."[19] 34 F.4th 446 (5th Cir. 2022). Plaintiffs correctly note that the Fifth Circuit in *Jarkesy* said "[p]etitioners had the right for a jury to adjudicate the facts underlying any potential fraud liability that justifies penalties." *Id.* at 457.

But the situation in *Jarkesy* was wholly dissimilar to that here. In *Jarkesy,* the SEC's administrative action sought a civil money penalty. Here, the pending FTC action only seeks a cease-and-desist order. And it is well established that the Seventh Amendment does not provide a jury trial right in cases of equity. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41–42 (1989) (explaining "[s]uits at common law" means "suits in which *legal* rights were to be ascertained and determined" not "where equitable rights alone were recognized, and equitable remedies were administered").

Plaintiffs do not *currently* have a cognizable Seventh Amendment injury because the pending administrative action does not implicate the Seventh Amendment. An "injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Plaintiffs' injury hinges on a series of future

---

[18] Pls.' Compl. 21–22 (citing 15 U.S.C. § 45(l)); Pls.' Br. Supp. Mot. Prelim. Inj. 12–13, ECF No. 8 ("Moreover, an order at the conclusion of the FTC Proceeding could specifically expose the Asbury Plaintiffs to future civil penalties pursuant to 15 U.S.C. § 45(1), thereby implicating private rights." (internal quotation marks and citation omitted)).
[19] Pls.' Resp. to Defs.' Mot. Dismiss 13–14, ECF No. 28.

events: the FTC must enter the cease-and-desist order, Plaintiffs must violate the order, and the FTC must then seek penalties for violating the FTC's order.[20] This speculative injury is insufficient to confer standing. Accordingly, the Court lacks jurisdiction, and Plaintiffs' Count II is **DISMISSED without prejudice.**

### 2. As-Applied Fifth Amendment Due Process Claim

Defendants next argue that the Court lacks jurisdiction to decide Plaintiffs' as-applied due process challenge.[21] Plaintiffs' Fifth Amendment challenge consists of two parts: a facial challenge and an as-applied challenge. Defendants do not argue that the Court lacks jurisdiction to consider Plaintiffs' facial challenge. Regarding the as-applied challenge, Plaintiffs argue the FTC's procedures deprive them of "fair notice of the factual basis for the FTC's claims."[22] Specifically, Plaintiffs challenge deadlines in the FTC's scheduling order, the original date set for their administrative hearing, their inability to depose the FTC, their counsel's inability to share confidential information with their clients, and the "illusory" ability to appeal FTC factual findings.[23]

Defendants argue Plaintiffs' as-applied challenge "should be reviewed through the normal judicial review process provided by Congress in the FTC Act."[24] That is, "review of final FTC orders in the courts of appeals."[25] Defendants argue that applying the *Thunder Basin* factors supports the position that the Court lacks jurisdiction.[26] *Thunder Basin Coal Co. v. Reich*, 510 U.S.

---

[20] By contrast, this Court in *Wulferic, LLC v. FDA* found the Seventh Amendment was implicated because the pending administrative action sought civil money penalties. No. 4:24-CV-01183-O, 2025 WL 2200923 (N.D. Tex. Aug. 1, 2025).
[21] Defs.' Br. Supp. Mot. Dismiss 17–20, ECF No. 25.
[22] Pls.' Compl. 22, ECF No. 1.
[23] *Id.* at 22–23.
[24] Defs.' Reply Supp. Mot. Dismiss 6. ECF No. 30.
[25] *Id.*
[26] *Id.* at 6–7.

200 (1994). Congress can "divest[ ] district courts of their ordinary jurisdiction" by substituting "an alternative scheme of review" within an agency—where the agency's final decision is reviewable by an Article III court of appeals. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Sometimes Congress does so in explicit terms, "providing in so many words that district court jurisdiction will yield." *Id.* Other times, it does so implicitly, leaving open the question whether the statutory review scheme is exclusive. *Id.*

In the latter case, when a party to an administrative proceeding seeks collateral review in district court, the district court must ask whether the statute precludes its jurisdiction. *Id.* If "the particular claims brought [are] 'of the type Congress intended to be reviewed within this statutory structure,'" the district court should decline to hear the case. *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212).

Plaintiffs do not cite to or discuss the *Thunder Basin* factors in their briefing; instead, Plaintiffs rely on *Axon* to argue "that Plaintiffs need not wait" to proceed with this challenge in federal court.[27] *Axon* presents the classic type of challenge that district courts can review on collateral attack, despite the agency's provision of a direct review process after a final order. 598 U.S. at 180 (charging "that the agencies, as currently structured, are unconstitutional in much of their work"). Plaintiffs therefore seek to align themselves with *Axon* to establish this Court's jurisdiction, while Defendants argue that *Axon* does not apply.

      **a. The "30,000-foot view of the issue"**

Before applying the *Thunder Basin* factors, the Supreme Court in *Axon* undertook a "30,000-foot view of the issue" by situating its challenge in relation to others that have been

---

[27] Pls.' Resp. Defs.' Mot. Dismiss 17, ECF No. 28.

analyzed under *Thunder Basin*. *Axon*, 598 U.S. at 189. This Court's jurisdictional analysis therefore proceeds in the same manner as *Axon*'s.

The Court begins with the question whether Plaintiffs' as-applied due process challenge is analogous to *Axon* and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, or whether it is more like those in *Thunder Basin* and *Elgin v. Department of Treasury*. *See Axon*, 598 U.S. at 186–89 (comparing these two sets of cases); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010); *Thunder Basin*, 510 U.S. at 217–18; *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012).

The constitutional challenges in *Axon* and *Free Enterprise* charge that "some fundamental aspect of the [agency's] structure violates the Constitution." *Axon*, 598 U.S. at 182 (double-for-cause removal protections, in violation of Article II's Vesting Clause; and combination of prosecutorial and adjudicatory functions in a single agency, in violation of separation-of-powers principles); *Free Enterprise*, 561 U.S. at 484 (double-for-cause removal protections, in violation of Article II's Vesting Clause). In both challenges, the district court had jurisdiction.

Conversely, the Supreme Court in *Axon* highlighted two cases where the district court did not have jurisdiction. 598 U.S. at 186–87. *Thunder Basin* involved a coal company that brought a pre-enforcement challenge to its statutory obligations under the Mine Act, arguing the "comply-or-incur-penalties" requirement violated the due process clause of the Fifth Amendment. 510 U.S. at 204–05. And *Elgin* concerned a federal employee who was discharged from his employment for failing to register for the draft. 567 U.S. at 6–7. He argued that the draft law violated the Equal Protection Clause by excluding women. *Id.* The Supreme Court held that the district court did not have jurisdiction over either of these challenges.

12

The Supreme Court in *Axon* distinguished these cases in this way: *Thunder Basin* and *Elgin* are challenges to a "specific substantive decision" of an agency or the "commonplace procedures agencies use to make such a decision." *Axon*, 598 U.S. at 189. But *Axon* and *Free Enterprise* involve challenges "to the structure or very existence of an agency." *Id.*

Here, Plaintiffs' as-applied Fifth Amendment due process challenge is precisely a challenge to the "commonplace procedures agencies use to make" substantive decisions. *Id.* Namely, determinations about scheduling,[28] deposing officials,[29] and attorney confidentiality[30] concern the basic procedures that govern an FTC proceeding.[31] Plaintiffs' as-applied challenge has nothing in common with *Axon*'s challenge "to the structure or very existence of an agency." *Axon*, 598 U.S. at 189. It is more like that in *Thunder Basin*, over which the district court did not have jurisdiction. And this "30,000-foot view" should "end[] up a good proxy" for the analysis under *Thunder Basin*. *Id.*

### b. *Thunder Basin* Factors

The first question under *Thunder Basin* is whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim. *Axon*, 598 U.S. at 186. The second question is whether the claim is "wholly collateral to [the] statute's review provisions." *Id.* (internal quotation marks and citation omitted). The third and final question is whether the claim is "outside the agency's expertise." *Id.* (internal quotation mark and citation omitted). When the answer to all three questions is "yes," the Court will "presume that Congress does not intend to limit jurisdiction." *Free Enterprise*, 561 U.S. at 489.

---

[28] Pls.' Compl. 22, ECF No. 1.
[29] *Id.* at 23.
[30] *Id.*
[31] *Id.* at 23–24.

First, the statutory scheme provides "meaningful judicial review by authorizing" a "circuit court" to review challenges to a final FTC order. *Bank of La. v. FDIC*, 919 F.3d 916, 925 (5th Cir. 2019). Like *Thunder Basin*, Plaintiffs here can obtain meaningful judicial review of the due process challenges after an FTC final order. Second, Plaintiffs' as-applied due process claim is not "wholly collateral" to the FTC enforcement scheme but instead arises from the alleged procedural deficiencies "in the agency enforcement proceedings." *Id.* at 928. Thus, Plaintiffs' as-applied due process claim is "inextricably intertwined with the conduct of" those proceedings. *Id.* Third, Plaintiffs' claim does not fall "outside the agency's expertise." *Id.* at 929–30. Instead, the FTC's expertise in the statutes it administers may "shed light" on Plaintiffs' claim, and the FTC may "moot[]" the claim if it ultimately finds in Plaintiffs' favor. *Id.*

Accordingly, the Court lacks jurisdiction and concludes that Plaintiffs' as-applied due process challenge is **DISMISSED without prejudice**.

## B. Failure to State a Claim

Next, Defendants move to dismiss Plaintiffs' remaining claims under Rule 12(b)(6) for failure to state a claim.[32] Specifically, Plaintiffs' Article III, facial due process, and removal claims. The Court considers each claim in turn.

### 1. Article III Adjudication

In Plaintiffs' first Count, Plaintiffs argue the FTC is depriving them of their right to proceed in an Article III court and instead forcing them to litigate a "private right" within an administrative agency.[33] "Congress cannot confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018). To decide if a proceeding involves an exercise of judicial power, the Supreme Court distinguishes

---

[32] *See generally* Defs.' Br. Supp. Mot. Dismiss, ECF No. 25.
[33] Pls.' Mot. Prelim. Inj. 9–12, ECF No. 8.

between public and private rights. An action implicates private rights if the action was cognizable in a court of law, equity, or admiralty at the Founding. *See Jarkesy*, 603 U.S. at 127 ("The Constitution prohibits Congress from 'withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" (quoting *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856))).

Conversely, public rights are those matters that "historically could have been determined exclusively by [the executive and legislative] branches." *Id.* at 128 (alteration in original) (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)). Such public rights were determined by the political branches "even when they were 'presented in such form that the judicial power [wa]s capable of acting on them.'" *Id.* (quoting *Murray's Lessee*, 18 How. at 284). "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* at 132 (quoting *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n. 23 (1982)).

Plaintiffs present two arguments that they are entitled to an Article III court. First, they argue that because the FTC's cease-and-desist order could later be used to seek monetary damages, the current administrative proceeding implicates their private rights *at law*.[34] In the alternative, Plaintiffs argue that the FTC action implicates private rights *in equity*.[35]

Both parties engage in the *Jarkesy* analysis, asking first whether the claim was actionable "at common law," before considering whether the public rights exception applies.[36] In *Jarkesy*, the

---

[34] Pls.' Compl. 21–22 (citing 15 U.S.C. § 45(l)); Pls.' Br. Supp. Mot. Prelim. Inj. 12–13, ECF No. 8 ("Moreover, an order at the conclusion of the FTC Proceeding could specifically expose the Asbury Plaintiffs to future civil penalties pursuant to 15 U.S.C. § 45(1), thereby implicating private rights." (internal quotation marks and citation omitted)).

[35] Pls.' Resp. to Defs.' Mot. Dismiss 3–4, ECF No. 28.

[36] Although *Jarkesy* is a Seventh Amendment case, its reasoning heavily implicated Article III. *See Wulferic*, 2025 WL 2200923, at *7 (explaining why this is so).

Supreme Court considered both the cause of action and the remedy to decide if the action was "at common law." Here, the Court considers the two components to decide if the action is a suit at law or in equity. The Supreme Court has not established a test to determine if a case is by its nature equitable. That said, "the phrase 'suits in equity' has been understood to refer to suits in which *relief* is sought according to the principles applied by the English Court of Chancery before 1789, as they have been developed in the federal courts." *Gordon v. Washington*, 295 U.S. 30, 36 (1935) (emphasis added). "Since some causes of action sound in both law and equity, [the Supreme Court] concluded that the remedy was the 'more important' consideration." *Jarkesy*, 603 U.S. at 123 (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)).

First, considering the cause of action, Plaintiffs argue that claims for deception and unfairness were actionable in courts of equity as fraud.[37] Plaintiffs argue that a "Section 5 claim for deceptive acts or practices" and an "equitable claim for fraud and deceit generally 'target[s] the same basic conduct,' which includes 'misrepresenting or concealing material facts.'"[38] Defendants counter, arguing fraud is not analogous because "[c]laims under the FTC Act and ECOA are not just 'broader' than those for common-law fraud and deceit . . . [t]hey serve wholly different purposes: vindicating Congress's new norms to protect the public."[39] Fraud was recognized as both a legal and equitable cause of action at the Founding.[40] Because the cause of action could go either way, the remedy is dispositive as to whether the claim is legal or equitable.

The Court next considers the remedy "because it is the 'more important' consideration." *AT&T, Inc. v. FCC*, 135 F.4th 230, 236 (5th Cir. 2025) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)). Throughout the briefing, Defendants, not Plaintiffs, expressly argue that

---

[37] Pls.' Resp. to Defs.' Mot. Dismiss 4–7, ECF No. 28.
[38] *Id.* at 6.
[39] Defs.' Reply Supp. Mot. Dismiss 3, ECF No. 30.
[40] *See* Pls.' Resp. to Defs.' Mot. Dismiss 4–7, ECF No. 28.

the cease-and-desist order is "akin to an equitable injunction."[41] The Court agrees. But, Article III can be implicated *in equity*. Here, Article III is not implicated at law because the remedy sought—a cease-and-desist order—is akin to an equitable injunction not a legal remedy. At the motion-to-dismiss stage, Plaintiffs have sufficiently stated an Article III claim based in equity, unless the public rights exception applies.

The public rights exception applies to matters that "historically could have been determined exclusively by [the executive and legislative] branches." *Jarkesy*, 603 U.S. at 112 (alteration in original) (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)). Defendants do not specify which of the "historic categories of adjudications" Section 5 of the FTC Act would fall into. *Jarkesy*, 603 U.S. at 130; *see AT&T*, 135 F.4th at 238 (listing "revenue collection, foreign commerce, immigration, tariffs, tribal relations, public lands, public benefits, and patents" (citing *Jarkesy*, 603 U.S. at 128–30)).

Instead, Defendants argue the Supreme Court has already settled the question. In *Crowell v. Benson*, the Supreme Court identified the FTC as a "familiar illustration[] of [an] administrative agenc[y] created for the determination" of public rights. 285 U.S. 22, 50–51 & n.13 (1932) (citing *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 297 (1930)).[42] But the Supreme Court recently made clear that "even with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Jarkesy* 603 U.S. at 112 (internal citation omitted). Thus, the Court rejects Defendants' argument that the FTC can never be challenged on the basis of adjudicating private rights.[43]

---

[41] Defs.' Resp. Plaintiffs' Prelim. Inj. 1, 5, 6, ECF No. 23; Defs.' Mot. Dismiss 1, 6, 7, ECF No. 24; Defs.' Reply Supp. Mot. Dismiss 4, ECF No. 30.

[42] Defs.' Resp. to Pls.' Mot. Prelim Inj. 12, ECF No. 23.

[43] This is a thorny question and should be decided at the summary-judgment stage of proceedings. The Court recognizes that Plaintiffs' argument is novel. Neither party to this dispute presents caselaw, binding or persuasive, that considered whether administrative agencies unconstitutionally adjudicate equitable

Based on this briefing, it is plausible that the FTC action implicates private rights in equity, and Defendants have not overcome the presumption in favor of Article III for the public rights exception to apply. "The public rights exception is, after all, an *exception*." *Id.* at 131. For the foregoing reasons, Defendants' Motion to Dismiss Count I is **DENIED**.

### 2. Facial Due Process

Regarding Plaintiffs' Count III—violation of the Fifth Amendment right to due process— Plaintiffs make both a facial argument and an as-applied challenge. As stated above, the Court does not have jurisdiction to consider the as-applied challenge and therefore only considers the facial challenge. Plaintiffs fail to state a claim for relief, however, because the argument is foreclosed by binding precedent.

To start, Defendants argue that "the Fifth Circuit has 'rejected the argument that the FTC's structure, which combines prosecutorial and adjudicative functions, deprives parties of due process.'"[44] Plaintiffs' preliminary injunction brief admits that in *Illumina, Inc. v. FTC*, "the Fifth Circuit rejected a facial due process challenge to the FTC Act." 88 F.4th 1036, 1047 (5th Cir. 2023). However, they argue its "continuing vitality" can be questioned because of Justice Gorsuch and Justice Thomas's concurring opinions in *Jarkesy* and *Axon*.[45] But *Illumina* clearly states that the Fifth Circuit "has already rejected the argument [in *Gibson v. FTC*] that the FTC's structure, which combines prosecutorial and adjudicative functions, deprives parties of due process." *Id.*

---

private rights. Thus, the question whether the FTC Act's Section 5 impermissibly assigns private rights in equity to a non-Article III tribunal is an open question. Should such caselaw exist, the Court welcomes the parties to discuss the cases extensively on summary judgment. The Court further notes that the parties did not extensively brief this narrow issue of whether the FTC adjudicates private right in equity. On summary judgment, the Court may alter its determination that Article III is implicated, or the public rights exception does not apply.

[44] Defs.' Br. Supp. Mot. Dismiss 16, ECF No. 25 (quoting *Illumina Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023)).

[45] Pls.' Br. Supp. Mot. Prelim. Inj. 17, ECF No. 8.

(citing *Gibson v. FTC*, 682 F.2d 554, 559–60 (5th Cir. 1982)). The Supreme Court has not altered the Fifth Circuit's holdings in *Illumina* and *Gibson* on this question, and thus this Court is bound by those previous decisions.

Plaintiffs do not otherwise respond to Defendants' Motion to Dismiss the facial challenge. Generally, a party may implicitly concede an argument by not responding to it. *See United States ex rel. Bias v. Tanigipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) (holding that a plaintiff conceded his claims were untimely because he did not respond to the defendant's argument). Therefore, Plaintiffs' facial due process claim is **DISMISSED with prejudice**.

### 3.    Removal Protections for FTC Commissioners and ALJs

Finally, the Court considers Plaintiffs' Counts IV and V together. Plaintiffs argue that they have a cognizable claim because the FTC's Commissioners and ALJs are unconstitutionally protected from removal.[46] Plaintiffs, however, fail to plead the requisite showing of harm to succeed on a removal challenge.

The Supreme Court addressed the requirements to succeed on a removal challenge in *Collins v. Yellen*, 594 U.S. 220, 258–60 (2021). This Court previously interpreted the decision to mean "that relief from agency proceedings involving potentially unconstitutional removal provisions is predicated on a showing that the unconstitutional provision inflicted compensable harm." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 746 (N.D. Tex. 2022) (citing *Collins*, 594 U.S. at 258–60). The Fifth Circuit construed *Collins* to require "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the [frustrated] desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51

---

[46] Pls.' Resp. 18–21, ECF No. 28.

F.4th 616, 632 (5th Cir. 2022) *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), and *reinstated in part by* 104 F.4th 930 (5th Cir. 2024). Plaintiffs do not plead the requisite harm under *Collins* and *Community Financial*.

Plaintiffs rely on three Texas district courts to argue that the trifold-harm requirement is not necessary to plead a claim. *See Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024); *Energy Transfer, LP v. NLRB*, 742 F.Supp.3d 755, 759–61 (S.D. Tex. July 2024); *Space Expl. Techs. Corp. v. NLRB*, 741 F.Supp.3d 630, 640 (W.D. Tex. July 23, 2024). Respectfully, the Court declines to adopt the reasoning in these cases. *See Burgess* 639 F. Supp. 3d 732, 746 (N.D. Tex. 2022) (applying the *Collins* harm requirement to a removal challenge).

The district courts relied on the *Axon* jurisdiction injury to satisfy the *Collins* harm requirement. In *Axon*, the Supreme Court stated that being subjected to a proceeding "led by an illegitimate decisionmaker" constitutes "a here-and-now injury" for purposes of jurisdiction. 598 U.S. at 191. But *Axon* does not address the requirement to obtain relief. Instead, *Axon* is purely a jurisdictional case. *See id.* at 180 ("Our task today is not to resolve those challenges; rather, it is to decide where they may be heard."). Although Plaintiffs may assert a here-and-now injury under *Axon* for jurisdiction, Plaintiffs must separately *plead* that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins*, 594 U.S. at 259.

Despite continuing to "assert that they need not show any particularized harm from the unconstitutional removal protections for FTC Commissioners or FTC administrative law judges,"[47] Plaintiffs filed a supplemental brief arguing that President Trump's removal of FTC commissioners Bedoya and Slaughter satisfies the *Collins* requirement. However, the very fact

---

[47] Pls.' Suppl. Br. 8, ECF No. 37.

that President Trump removed Bedoya and Slaughter disproves that the President had "a perceived inability to remove the actor due to the infirm provision." *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632. Thus, Plaintiffs cannot satisfy the *Collins* and *Community Financial* requirements. Accordingly, Plaintiffs' Counts IV and V are **DISMISSED with prejudice.**

### C. Preliminary Injunction

To secure preliminary-injunctive relief, a plaintiff must first show a substantial likelihood that he will succeed on the merits of his claims. *Daniels Health Scis.*, 710 F.3d at 582. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Id.*

Plaintiffs' only viable claim is the Article III claim, in which they argue the FTC is forcing them to litigate an equitable "private right" within an administrative agency.[48] Although Plaintiffs have stated a claim under Rule 12(b)(6), they do not have a *substantial* likelihood of success on the merits. The Court cannot grant Plaintiffs' preliminary injunction based on the equitable argument, though, because Plaintiffs do not present that argument in their Motion for Preliminary Injunction. Instead, Plaintiffs' Motion for Preliminary Injunction only argue the FTC adjudicates private rights *at law*, and the Court explained above why it rejects that characterization.

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is **DENIED.** The Court will ultimately decide the merits on summary judgment as a pure question of law.

### IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED in part** and **DENIED in part**. Count II (Seventh Amendment) and Count III (the as-applied due process challenges) are **DISMISSED without prejudice**. Count III (the facial due process challenge) and

---

[48] Pls.' Mot. Prelim. Inj. 9–13, ECF No. 8.

Counts IV and V (removal protections for FTC Commissioners and ALJs) are **DISMISSED with prejudice**. Having found no substantial likelihood of success on the merits of Plaintiffs' claims, the Court **DENIES** Plaintiffs' Application for a Preliminary Injunction (ECF No. 6).

In order to resolve the sole remaining issue, namely, Plaintiffs' Article III challenge in equity (Count I), the parties are **ORDERED** to file a joint briefing schedule for summary judgment. The parties shall file the joint briefing schedule **no later than August 22, 2025**.

SO ORDERED this **11th day** of **August, 2025**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE