IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*, <br><br>      *Plaintiffs*, <br><br>   v. <br><br> THE FEDERAL TRADE COMMISSION, *et al.*,. <br><br>      *Defendants*. | No. 4:24-CV-00950-O |

# BRIEF IN SUPPORT
# OF PLAINTIFFS' MOTION FOR RECONSIDERATION

Edward D. Burbach*
 (Texas State Bar No. 03355250)
John Sepehri
 (Texas State Bar No. 00797408)
Robert F. Johnson III
 (Texas State Bar No. 10786400)
Brandon M. Livengood
 (Texas State Bar No. 24128022)
**FOLEY & LARDNER LLP**
600 Congress Avenue, Suite 2900
Austin, Texas 78701
Tel: 512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com

_____
*Attorney in charge
∧ Admitted *pro hac vice*

Todd A. Murray
 (Texas State Bar No. 00794350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby∧
Megan Chester∧
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

***Counsel for the Plaintiffs***

September 26, 2025

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

II. ARGUMENT .......................................................................................................................... 2

A. Legal Standard for Rule 54(b) Motion for Reconsideration ...................................................2

B. *Space Exploration Tech. Corp. v. NLRB* Holds Specific Harm from Unconstitutional Removal Protections Need Not be Shown ..................................................................................2

C. *Space Exploration Tech. Corp. v. NLRB* Reinforces that Plaintiffs are Entitled to a Preliminary Injunction on Count IV of Their Complaint .........................................................4

    1. Plaintiffs Are Highly Likely to Succeed on the Merits ...................................................5

        a. *Space Exploration Technologies* Establishes that the FTC ALJ Removal Protections Are Unconstitutional .........................................................5

        b. *Space Exploration Technologies* Reinforces that There Is No Meaningful Difference Here Between FTC ALJs and Other ALJs ...................6

        c. Addressing Severance of Removal Protections Is Inappropriate at the Preliminary Injunction Stage ...................................................................14

        d. Severance is Ultimately Inappropriate ...........................................................14

    2. *Space Exploration Technologies* Establishes the Asbury Plaintiffs Will Suffer Irreparable Harm Sans an Injunction ......................................................................20

    3. *Space Exploration Technologies* Also Leaves No Doubt about the Final Two Injunction Elements ...................................................................................................21

D. *Space Exploration Technologies* Also Raises the Specter of Reconsideration for the Court's Rulings on the Plaintiffs' Due Process Claim ..........................................................22

    1. *Illumina* Does Not Foreclose a Challenge to Inherently Biased Rules ........................22

    2. The FTC's Rules Are Inherently Biased Against All ...................................................23

    3. The Court has Jurisdiction to Hear Plaintiffs' Structural Rules-Focused Due Process Challenge ...................................................................................................24

III. CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABM Industry Groups, LLC v. U.S. Dep't of Labor*,
   756 F. Supp. 3d 468 (S.D. Tex. 2024) ................................................................. 13

*Alaska Airlines, Inc. v. Brock*,
   480 U.S. 678 (1987) ................................................................................................ 15

*Axon Enter., Inc. v. FTC*,
   986 F.3d 1173 (9th Cir. 2021) ............................................................................... 24

*Axon Enterprises, Inc. v. FTC*,
   598 U.S. 175 (2023) ........................................................................................ passim

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) ............................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 2

*Bertha v. NLRB*,
   No. 4:24-cv-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) ............... 3, 19

*Burgess v. FDIC*,
   639 F. Supp. 3d 732 (N.D. Tex. 2022) ................................................................... 3

*Burgess v. FDIC*,
   871 F.3d 297 (5th Cir. 2017) ............................................................................ 10, 11

*Burgess v. Whang*,
   No. 22-11172, __ F.4th __, 2025 WL 2437490 (5th Cir. August 25, 2025) ............ 3

*Butz v. Economou*,
   438 U.S. 478 (1978) ......................................................................................... 15, 16

*Cmty. Fin. Servs. Ass 'n of Am., Ltd. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022) ................................................................................ 3, 4

*Collins v. Yellen*,
   594 U.S. 220 (2021) ................................................................................ 1, 3, 11, 13

*Conchran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) .................................................................................... 4

*Elgin v. Department of Treasury*,
   567 U.S. 1 (2012) ................................................................................................... 24

*Energy Transfer, LP v. NLRB*,
   742 F.Supp.3d 755 (S.D.Tex. July 2024) ................................................................ 3

ii

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) ........................................................................................ passim

*Freytag v. Commissioner*,
  501 U.S. 868 (1991) ........................................................................ 10, 11, 12, 13

*FTC v. Ruberoid Co.*,
  343 U.S 470 (1952) .................................................................................................. 1

*Goosehead Ins. Agency v. Williams Ins. & Consult., Inc.*,
  533 F.Supp.3d 367 (N.D. Tex. 2020) ..................................................................... 2

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004) ............................................................................................. 22

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ............................................................................................. 22

*Illumina, Inc. v. FTC,*
  88 F.4th 1036 (5th Cir. 2023) ............................................................................. 22

*In re Trans Union Corp.*,
  129 F.T.C. 471 (2000) ......................................................................................... 13

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ........................................................................ passim

*Lucia v. SEC*,
  585 U.S. 237 (2018) ................................................................... 11, 12, 13, 15

*Murphy v. NCAA*,
  584 U.S. 453 (2018) ..................................................................................... 15, 16

*Slaughter v. Trump*,
  No. 25-909, 2025 WL 1984396 (Dist. D.C. July 17, 2025) .................................. 21

*Slaughter v. Trump*,
  No. 25-5261, 2025 WL 2551247 (D.C. Cir. Sept. 2, 2025)................................... 21

*Space Expl. Techs. Corp. v. NLRB*,
  741 F.Supp.3d 630 (W.D.Tex. July 23, 2024)................................................. 3, 6, 19

*Space Expl. Techs. Corp. v. NLRB*,
  No. 24-50627, 2025 WL 2396748 (5th Cir. Aug. 19, 2025) ........................... passim

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)........................................................................................ 22, 24

*Trump v. Slaughter*,
  __ U.S. __, 2025 WL 2692050 (Sept. 22, 2025) ................................................. 22

*Trump v. Slaughter*,
  No. 25A264, 2025 WL 2582814 (U.S. Sept. 8, 2025)......................................... 21

*United States v. Bonilla-Romero*,
  984 F.3d 414 (5th Cir. 2020) ............................................................................. 15

*United States v. Nat'l Treasury Emps. Union*,
   513 U.S. 454 (1995) ........................................................................................ 18

*United States v. Reese*,
   92 U.S. 214 (1875) .......................................................................................... 18

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) ........................................................................................ 18

**Statutes**

5 U.S.C. 556 .......................................................................................................... 8

5 U.S.C. §556(c) .................................................................................................... 8

5 U.S.C. 557 ........................................................................................................... 8

5 U.S.C. § 1202 ............................................................................................... 13, 16

5 U.S.C. § 1202(d) ............................................................................................... 20

5 U.S.C. § 3105 .................................................................................................... 17

5 U.S.C. § 7521 ............................................................................................... 15, 17

5 U.S.C. § 7521(a) .................................................................................................. 5

15 U.S.C. § 41 ........................................................................................................ 5

Article II of the U.S. Constitution ................................................................. passim

Pub. L. No. 95-454 (1978) ................................................................................... 17

**Rules**

F.R.C.P. 54(b) .................................................................................................... 1, 2

**Regulations**

5 C.F.R. § 1200.1 ................................................................................................. 16

16 C.F.R. Part 3 ................................................................................................... 23

16 C.F.R. Part 4 ................................................................................................... 23

16 C.F.R § 3.31A ................................................................................................. 23

16 C.F.R. § 3.33(c)(1) .......................................................................................... 23

16 C.F.R. § 3.38(b) ............................................................................................ 8, 9

16 C.F.R. § 3.42 .................................................................................................... 7

16 C.F.R. § 3.42(c) ................................................................................................ 7

16 C.F.R. § 3.42(d) ................................................................................................ 8

16 C.F.R. § 3.51 .................................................................................................... 7

16 C.F.R. § 3.54 .................................................................................................... 7

17 C.F.R. § 201.360(d)(1) ................................................................................................ 10

17 C.F.R § 201.101(a)(5) .................................................................................................. 8

17 C.F.R §201.111 ........................................................................................................... 8

29 C.F.R. §102.177(b) ................................................................................................... 7, 8

29 C.F.R. §102.177(c) ...................................................................................................... 9

29 C.F.R. § 102.46 ……………………………………………………..………7

29 C.F.R. § 102.46(a)(1)(ii) ............................................................................................. 7

29 C.F.R. § 102.46(f) ………………………………………………………..…7

29 C.F.R. § 102.48(b)(1) ................................................................................................... 7

**Other Authorities**

*"You're Fired!" Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution
    and Pos*sible FIXES,
    26 GEO. Mason L. Rev. 705 (Spring 2019) ...................................................... 16, 18

*Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*,
    12 J. COMPETITION L. & ECON. 623 (2016) ...................................................... 13

*H.R. 11280* .................................................................................................................... 17

S. Rep. No. 95-969 ..................................................................................................... 16, 17

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Based on Fifth Circuit authority issued subsequent to this Court's August 11, 2025 order (Doc. 51) (the "Dismissal Order") in which the Court dismissed, among other claims, (1) Plaintiffs' claims asserting unconstitutional removal protections for FTC administrative law judges ("ALJs") and Commissioners, and (2) Plaintiffs' claims they are being denied constitutional due process, this Court appropriately suggested it would be helpful for Plaintiffs to seek reconsideration of aspects of the Dismissal Order.

In particular, the Court based its dismissal of Plaintiffs' challenges to such removal protections on the Court's finding that Plaintiffs failed to plead "the requisite showing of harm to succeed on a removal challenge."

As detailed below, the Fifth Circuit's recent opinion in *Space Exploration Tech. Corp. v. NLRB* definitively clarifies the law in this Circuit on that issue and the broader contours of the constitutional problems created by improper removal protections for federal officers. Indeed, "[i]n the case of a removal defect, a wholly unaccountable government agent asserts the power to make decisions affecting individual lives, liberty, and property. . . . Few things could be more perilous to liberty than some 'fourth branch' that does not answer even to the one executive official who is accountable to the body politic." *Collins v. Yellen*, 594 U.S. 220, 278-279 (2021)(Gorsuch, J., concurring in part) (citing *FTC v. Ruberoid Co.*, 343 U.S. at 487 (Jackson, J., dissenting)).

Accordingly, under Federal Rule of Civil Procedure 54(b) and based on *Space Exploration Tech. Corp. v. NLRB* (and other authority discussed below), Plaintiffs hereby move for the Court to reconsider and reverse its (1) dismissal of their removal protection challenges, (2) dismissal of their challenge based on their rights to due process, and (3) denial of their request for preliminary injunctive relief. This Court should reconsider and reverse for ***five*** reasons:

1

***First***, the *Space Exploration Tech. Corp. v. NLRB* opinion conclusively establishes that litigants challenging removal protections for FTC ALJs and Commissioners under Article II of the U.S. Constitution need not show specific harm flowing from such protections;

***Second***, that case and prior Fifth Circuit and Supreme Court authority mandate that FTC ALJs be treated the same as SEC and NLRB ALJs (and Special Tax Judges of the federal Tax Court) for the purposes of an Article II removal protection challenge;

***Third***, *Space Exploration Tech. Corp. v. NLRB* definitively precludes consideration of severance of unconstitutional removal protections as a remedy at the preliminary injunction stage;

***Fourth***, even at final judgment, severance would be unworkable and improper here; and

***Fifth***, Plaintiffs' due process challenges included a structural challenge—to the inherent unfairness of the FTC's adjudicative rules—that is not precluded by precedent.

## II.    ARGUMENT

### A.    Legal Standard for Rule 54(b) Motion for Reconsideration

As this Court has noted, when it is "asked to reconsider an order other than a final judgment, that reconsideration is usually governed by Federal Rule of Civil Procedure 54(b)." *See Goosehead Ins. Agency v. Williams Ins. & Consult., Inc.*, 533 F.Supp.3d 367, 379 (N.D. Tex. 2020). Rule 54(b) "allows a district court 'to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* at 379 (citations omitted).

### B.    *Space Exploration Tech. Corp. v. NLRB* Holds Specific Harm from Unconstitutional Removal Protections Need Not be Shown

As the Court noted in the Dismissal Order, "to defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *See* Doc. 51 at 6 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In this case, the

Court concluded Plaintiffs had not met their burden on their Article II claims because the Court previously interpreted the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. 220 (2021), to mean "'that relief from agency proceedings involving potentially unconstitutional removal provisions is predicated on a showing that the unconstitutional provision ***inflicted compensable harm***.'" *See* Doc. 51 at 19 (citing *Burgess v. FDIC*, 639 F. Supp. 3d 732, 746 (N.D. Tex. 2022)) (emphasis added).[1]  The Court also wrote that the Fifth Circuit had construed *Collins* to require a three-part harm showing.  *See id*. (citing *Cmty. Fin. Servs. Ass 'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *and reinstated in part by* 104 F.4th 930 (5th Cir. 2024)).  The Court noted that Plaintiffs had not pleaded harm under this three-part test.  Furthermore, the Court (a) was not persuaded by Plaintiffs' contention that the logic of the Supreme Court's decision in *Axon Enterprises, Inc. v. FTC*,  598 U.S. 175 (2023), compels that courts not require a compensable harm showing, and (b) declined to adopt the reasoning of several Texas courts that had interpreted *Axon* in a manner similar to Plaintiffs in three cases involving the NLRB.  *See* Doc. 51 at 20.[2]

However, in an opinion issued a little over a week after the Dismissal Order, the Fifth Circuit definitively clarified that plaintiffs seeking to invalidate an agency adjudication because of unconstitutional removal protections for executive officers ***need not show harm***.  As the Fifth Circuit wrote, courts requiring a showing of harm misconstrued *Collins* and the decisions surrounding it.  *Space Expl. Techs. Corp. v. NLRB*, No. 24-50627, 2025 WL 2396748, at *12 (5th Cir. Aug. 19, 2025).  "*Collins* governs retrospective relief from final agency action" while the

---

[1] Plaintiffs note that a panel of the Fifth Circuit reversed the Court's ruling in the *Burgess* case on another ground, *i.e.*, whether the Court had jurisdiction to enjoin the FDIC's proceedings against Burgess based on the FDIC's statute.  *See Burgess v. Whang*, No. 22-11172, __ F.4th __, 2025 WL 2437490 (5th Cir. August 25, 2025).

[2] Specifically, this Court declined to adopt the reasoning in *Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024); *Energy Transfer, LP v. NLRB*, 742 F.Supp.3d 755, 759-61 (S.D.Tex. July 2024); *Space Expl. Techs. Corp. v. NLRB*, 741 F.Supp.3d 630, 640 (W.D.Tex. July 23, 2024).

plaintiffs challenging the NLRB proceedings sought "to challenge the validity of the ongoing proceeding itself." *See id.*, at *13. Furthermore, the Fifth Circuit explained that *Community Financial Services Association v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), and *reinstated in part by* 104 F.4th 930 (5th Cir. 2024), "likewise involved retrospective relief from a final rule and required a causal link between the unconstitutional removal provision and the challenged agency action." *Id.* (citation omitted).

In contrast, the NLRB's in-house adjudications—like the FTC Proceeding—"is the injury. The harm is not downstream from the process—it is the process." *Id.* Moreover, the injury of the parties seeking to stop NLRB proceedings against them was "*Axon's* injury: the 'here-and-now injury' of 'being subjected to unconstitutional agency authority". *See id.* (citation omitted).[3] Accordingly, under this new clarifying and binding Fifth Circuit precedent, the Plaintiffs in this case need not show any specific harm from the unconstitutional removal protections for the FTC Commissioners and the FTC's ALJs, as the process is itself the harm. The Court should therefore revisit its ruling granting the FTC's Motion to Dismiss on Plaintiffs Counts IV and V because the ruling was based on the Court's prior view that a showing of specific harm was required.

**C.** ***Space Exploration Tech. Corp. v. NLRB* Reinforces that Plaintiffs are Entitled to a Preliminary Injunction on Count IV of Their Complaint**

The Fifth Circuit's opinion in *Space Exploration Technologies* illustrates why the Court should not only revisit its dismissal of the Plaintiffs' Article II claims, but also why it should issue a preliminary injunction. To obtain such an injunction, a plaintiff must show: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without an injunction; (3) the

---

[3] In this regard, the Fifth Circuit noted that in *Cochran v. SEC*, it had held *en banc* "that a plaintiff could seek to enjoin ongoing SEC proceedings before ALJs unconstitutionally insulated from removal" because "[t]he plaintiff was not attacking past agency action but seeking 'an administrative adjudication untainted by separation-of-powers violations.'" *Id.* (citing *Cochran v. SEC*, 20 F.4th 194, 210 n. 16, 213 (5th Cir. 2021), *aff'd and remanded sub nom. Axon Enter.*, 598 U.S. 175 (2023)).

balance of equities tips in its favor; and (4) an injunction is in the public interest," and the first factor is the most important one. *Space Expl. Techs. Corp.*, 2025 WL 2396748, at *6. Plaintiffs have met their burden on all these elements

### 1.    *Plaintiffs Are Highly Likely to Succeed on the Merits*

a.    <u>*Space Exploration Technologies* Establishes that the FTC ALJ Removal Protections Are Unconstitutional</u>

In *Space Exploration Technologies*, the Fifth Circuit began its analysis of the plaintiffs' claims against the NLRB by assessing the constitutionality of the removal protections for the NLRB's ALJs. The court noted that just two years before, in *Jarkesy v. SEC,* it had found unconstitutional a nearly identical removal protection for SEC ALJs, whereby: (1) ALJs could be removed by the Commission only for "good cause," as determined by the U.S. Merit Suspension Board ("MSPB"); and (2) SEC Commissioners and MSPB Members themselves could be removed only "for cause." *Space Expl. Techs.*, 2025 WL 2396748, at *8 (citations omitted). The Fifth Circuit then noted that the same analysis applied to the NLRB's ALJs since they too were protected by "at least" two layers of for-cause protection. *Id.* (citation omitted).

As this Court's Dismissal Order recognizes, the same multi-layered removal protections exist in the case of the FTC. The Court noted in the Dismissal Order that FTC ALJs may only be removed by the MSPB for good cause and that per the United States Code, the FTC Commissioners may only "be removed by the President for inefficiency, neglect of duty, or malfeasance in office." Doc. 51 at 3 (citing 5 U.S.C. § 7521(a) and 15 U.S.C. § 41). *Space Exploration Technologies* and *Jarkesy* therefore require this Court to reach the same conclusion as to the unconstitutionality of the removal protections for FTC ALJs as the Fifth Circuit did for SEC and NLRB ALJs.[4]

---

[4] Notably, the Department of Justice is no longer anywhere defending as constitutional the type of removal protections shielding FTC ALJs from presidential control. *See* https://www.reuters.com/legal/us-declares-administrative-law-judge-removal-rules-unconstitutional-2025-02-21/ (last visited Sept. 21, 2025).

  b.  *Space Exploration Technologies* Reinforces that There Is No Meaningful Difference Here Between FTC ALJs and Other ALJs

  Defendants have previously asserted that FTC ALJs should be treated differently from SEC ALJs for the instant constitutional analysis because SEC ALJ decisions are "often . . . final and binding" and because "the SEC can decide against reviewing an ALJ decision" while "decisions of FTC ALJs are purely recommendatory" and "automatically reviewed." Doc. 25 at 30-31. However, the Fifth Circuit's analysis in *Space Exploration Technologies* reinforces existing caselaw that defeats this contention. There, the NLRB sought to "cabin" its concession that NLRB ALJs are inferior executive branch officers by "arguing that 'NLRB ALJs' powers are materially more restricted in scope' than those of SEC ALJs, citing the ALJs' lack of sanction authority and the nonfinality of their decisions." 2025 WL 2396748, at *9. The Fifth Circuit rejected the NLRB's contentions in part because "NLRB ALJs may 'admonish or reprimand, after due notice, any person who engages in misconduct at a hearing,' and may strike witness testimony for refusing to answer a question," labeling such powers as sanction powers that "are hardly trivial." *Id.* (citation omitted). Additionally, the Fifth Circuit noted that upon the filing of exceptions by a party to an NLRB ALJ's decision, "the [NLRB] may adopt the ALJ's recommendation or issue its ***own decision***." *Id.* at *3 (emphasis added).[5] Based on all the foregoing features of an NLRB ALJ, and the Fifth Circuit's prior holding in *Jarkesy* regarding SEC ALJs, the Fifth Circuit concluded NLRB ALJs are unconstitutionally insulated from removal.

  As this Court's own review of the role of FTC ALJs and their powers partially demonstrates, there is no meaningful difference between FTC ALJs and NLRB ALJs for this

---

[5] One of the district court opinions consolidated into the *Space Exploration Technologies Corp* appeal before the Fifth Circuit also highlighted this fact, noting that "[w]hile the NLRB . . . is ***not bound to accept an ALJ's findings of fact or conclusions of law***," that "[b]oth [NLRB and SEC ALJs] are 'inferior officers' who 'have ***substantial authority***' in agency investigations and enforcement actions." *See Space Expl*. Tech. Corp., 741 F.Supp.3d at 636 (W.D.Tex. July 23, 2024)(citing *Jarkesy*, 34 F.4th at 464)(emphasis added).

constitutional analysis.  For example, as the Court noted, FTC ALJs "issue[] a recommended decision, and the FTC Commissioners review that decision *de novo*, including potentially expanding the record, and issue a final decision."  Doc. 51 at 3 (citing 16 C.F.R. §§ 3.42, 3.51-3.5).  In many instances—whenever a party files objections to an NLRB ALJ's decision—an NLRB ALJ's decision too will amount to nothing more than a recommendation.  *See* 29 C.F.R. § 102.48(b)(1) ("Upon the filing of timely and proper exceptions, and any cross-exceptions or answering briefs, as provided in § 102.46,[6] the [NLRB] may decide the matter upon the record, or after oral argument, or ***may reopen the record and receive further evidence*** before a[n] [NLRB] Member or other [NLRB] agent or agency, ***or otherwise dispose of the case***.") (emphasis added).

Moreover, FTC ALJs possess significant powers highly similar to the powers of NLRB ALJs.  For example, per the FTC's rules of practice, FTC ALJs "shall have the duty to conduct fair and impartial hearings, to take all necessary action to avoid delay in the disposition of proceedings, and to maintain order" and "have ***all powers necessary*** to that end." *See* 16 C.F.R. § 3.42(c).  Among those powers, just as NLRB ALJs may under 29 C.F.R. §102.177(b) "admonish or reprimand, after due notice, any person who engages in misconduct at a hearing," FTC ALJs can "regulate the course of the hearings and the conduct of the parties and their counsel therein" and "take any action authorized by the rules in this part or in conformance with the provisions of the Administrative Procedure Act as restated and incorporated in title 5, U.S.C."  *See id.*[7]

---

[6] "Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged will be deemed to have been waived. Any exception which fails to comply with the foregoing requirements may be disregarded," and "[m]atters not included in exceptions or cross-exceptions may not thereafter be urged before the Board, or in any further proceeding." *See* 29 C.F.R. §§ 102.46(a)(1)(ii) and 102.46(f).

[7] Among other things in Title 5 of the APA, subject to published rules of an agency and within its powers, a section within that title allows those presiding at hearings under its auspices to do the following:

. . .

(2) ***issue subpoenas*** authorized by law;

Additionally, just as an NLRB ALJ can—under 29 C.F.R. §102.177(b)—summarily exclude any person at any hearing for misconduct, FTC ALJs "have the authority, for good cause stated on the record, to suspend or bar from participation in a particular proceeding any attorney who shall refuse to comply with his directions, or who shall be guilty of disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language in the course of such proceeding." *See* 16 C.F.R. § 3.42(d).

Furthermore, "if a party or an officer or agent of a party fails to comply with any discovery obligation imposed by these rules, upon motion by the aggrieved party, the [FTC] Administrative Law Judge or the Commission, or both, may take" serious actions, including imposing sanctions. *See* 16 C.F.R. § 3.38(b). These actions include but are not limited to the following:

    (1) Order that any answer be amended to comply with the request, subpoena, or order;

    (2) Order that ***the matter be admitted or that the admission, testimony, documents, or other evidence would have been adverse*** to the party;

    (3) Rule that for the purposes of the proceeding the matter or matters concerning which the order or subpoena was issued be taken ***as established adversely to the party***;

---

(3) ***rule on offers of proof*** and receive ***relevant*** evidence;

(4) ***take depositions*** or ***have depositions taken*** when the ends of justice would be served;

(5) ***regulate the course of the hearing***;

. . .

(8) require the attendance at any conference held pursuant to paragraph (6) of at least one representative of each party who has ***authority to negotiate concerning resolution of issues in controversy***;

(9) ***dispose of procedural requests*** or similar matters;

. . .

5 U.S.C. §556(c)(emphasis added). Notably, the SEC's rules similarly reference the APA when delineating powers of its hearings officers (which include ALJs). *See* 17 CFR 201.111 ("The hearing officer shall have the authority to do all things necessary and appropriate to discharge his or her duties. No provision of these Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557"); 17 CFR 201.101(a)(5) (noting that a "hearing officer" includes an ALJ).

(4) Rule that the party **may not introduce into evidence or otherwise rely**, in support of any claim or defense, upon testimony by such party, officer, agent, expert, or fact witness, or the documents or other evidence, or upon any other improperly withheld or undisclosed materials, information, witnesses, or other discovery;

(5) Rule that the party **may not be heard to object to introduction and use of secondary evidence** to show what the withheld admission, testimony, documents, or other evidence would have shown;

(6) Rule that a pleading, or part of a pleading, or a motion or other submission by the party, concerning which the order or subpoena was issued, **be stricken, or that a decision of the proceeding be rendered against the party, or both**.

*See id*. (emphasis added). Similarly, an NLRB ALJ has the ability to strike all testimony on related matters given by a witness if he or she refuses to answer any question which has been ruled to be proper. *See* 29 C.F.R. §102.177(c). Like the sanctions powers possessed by NLRB ALJs, including as described by the Fifth Circuit in *Space Exploration Technologies*, an FTC ALJ's powers are "hardly trivial" and this Court should reject efforts to portray FTC ALJs as somehow meaningfully different from NLRB or SEC ALJ's for the instant constitutional analysis.

The foregoing noted, Fifth Circuit authority and United States Supreme Court cases predating *Space Exploration Technologies* already amply demonstrated that even ALJs with purely recommendatory decisioning authority at the end of a proceeding are powerful officers of the executive branch of the United States government. First, with respect to SEC ALJs, the Fifth Circuit reasoned in *Jarkesy* as follows: "SEC ALJs exercise considerable power over administrative case records **by controlling the presentation and admission of evidence**; they may **punish contemptuous conduct**; and **often** their decisions are final and binding." *Jarkesy*, 34 F.4th at 464 (citation omitted). In addition to presuming in the preceding sentence that sometimes SEC ALJ decisions are **not** binding, the Fifth Circuit focused on no single feature of SEC ALJs; instead, the Fifth Circuit took them in general to be "inferior officers" of an executive agency "sufficiently

important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* Moreover, the Fifth Circuit noted that the SEC typically reviews the resolutions of claims by its ALJ's. *Id.* at 465 n. 20. In fact, it may even do so **on its own initiative**.[8] Indeed, while the dissenting judge at the Fifth Circuit in *Jarkesy* stressed that an ALJ's decision is "essentially a recommendation," 34 F.4th at 478 (Davis, J., dissenting), such as the FTC has argued here, that argument did not persuade the majority.

Similarly in a previous Appointments Clause case—*Burgess v. FDIC*, 871 F.3d 297 (5th Cir. 2017)—the Fifth Circuit made clear that ALJs who can only issue recommendatory decisions are still executive officers given their vast powers. The Fifth Circuit compared FDIC ALJs to Special Trial Judges ("STJs") in the United States Tax Court—which the Supreme Court had found to be executive officers—and explained that the "FDIC ALJ's position is 'established by Law' and its 'duties, salary, and means of appointment are specified by statute'" while "FDIC ALJs also 'carry[ ] out . . . important functions' over which they 'exercise significant discretion.'" *Burgess*, 871 F.3d at 302 (quoting *Freytag v. Commissioner*, 501 U.S. 868, 881–82 (1991)). Furthermore, "[t]he STJs in *Freytag* '[took] testimony, conduct[ed] trials, rule[d] on the admissibility of evidence, and [had] the power to enforce compliance with discovery orders,'" and "FDIC ALJs perform all of these functions." *Burgess*, 871 F.3d at 302 (citations omitted). The Fifth Circuit further explained that the "broad authority" enjoyed by FDIC ALJs "to preside over agency adjudications and issue recommendations closely resembles the authority wielded by United States Commissioners—the forerunners of Magistrate Judges—who the Supreme Court held were

---

[8] *See* 17 C.F.R. § 201.360(d)(1) (emphasis added) ("If a party or an aggrieved person entitled to review timely files a petition for review or a motion to correct a manifest error of fact in the initial decision, or if the Commission **on its own initiative** orders review of a decision with respect to a party or a person aggrieved who would be entitled to review, the initial decision shall not become final as to that party or person.").

Officers," and "[e]ach of these functions entails the exercise of discretion." *Id.* (citations omitted). They were "'more than ministerial tasks.'" *Id.* (citing *Freytag*, 501 US at 881).

The key was that "[a]n FDIC ALJ has the broad authority to admit or exclude evidence, permit discovery and shape the course and scope of a contested hearing" such that "the absence of final decision-making authority d[id] not sufficiently undermine FDIC ALJs' 'significant authority,' such that they are employees, rather than Officers." *Burgess*, 871 F.3d at 303 (citations omitted). In sum, "final decision-making authority is ***not a necessary condition*** for Officer status" and "an ALJs' lack of final decision-making authority ***does not defeat [an] . . . assertion that they are inferior Officers***," *Burgess*, 871 F.3d at 301, 303 (citations omitted)(emphasis added).[9]

Beyond the Fifth Circuit's opinions discussed above, the Supreme Court too has reinforced that this Court should reject the proposition that FTC ALJs lack sufficient power to be considered executive officers that may not be shielded by multiple layers of statutory for cause removal protections. Specifically, the Supreme Court has done so in analyzing the officer status of SEC ALJs for Appointments Clause purposes. *See Lucia v. SEC*, 585 U.S. 237 (2018).[10] In *Lucia*, the Supreme Court described the powers of SEC ALJs as extensive even before addressing the finality of SEC ALJ decision-making:

> "***An ALJ assigned to hear an SEC enforcement action has extensive powers***—the 'authority to do all things necessary and appropriate to discharge his or her duties' and ensure a 'fair and orderly' adversarial proceeding . . . . Those powers

---

[9] Nor did it matter to the Fifth Circuit in *Burgess* that Tax Court STJs sometimes possessed final decision-making authority or that the FDIC had the power to "'perform, direct the performance of, or waive performance of'" its ALJs. *Burgess*, 871 F.3d at 303 (citations omitted). In fact, the Fifth Circuit even noted that in *Freytag*, "the Tax Court's standard of review of STJ determinations was '***not relevant***.'" *Burgess*, 871 F.3d at 303 (emphasis added).

[10] Notably, in *Jarkesy* the Fifth Circuit relied in part on *Lucia* in ruling that SEC ALJs were unconstitutionally shielded from presidential control via dual layer removal protections. *See Jarkesy*, 34 F. 4th at 464 ("[I]f SEC ALJs are 'inferior officers' of an executive agency, as the Supreme Court in *Lucia* indicated was the case at least for the purposes of the Appointments Clause, they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions."). Thus, there is no argument that the analysis with respect to the recommendatory aspect of an ALJs decisioning is different in Article II challenges than it is in Appointments Clause challenges. Indeed, "if anything, removal restrictions may be a greater constitutional evil than appointment defects." *Collins*, 594 U.S. at 277 (2021)(Gorsuch, J., concurring in part).

> 'include, but are not limited to,' supervising discovery; issuing, revoking, or modifying subpoenas; deciding motions; ruling on the admissibility of evidence; administering oaths; hearing and examining witnesses; generally '[r]egulating the course of' the proceeding and the 'conduct of the parties and their counsel'; and imposing sanctions for '[c]ontemptuous conduct' or violations of procedural requirements . . . . **As that list suggests, an SEC ALJ exercises authority 'comparable to' that of a federal district judge conducting a bench trial**."

*Lucia*, 585 U.S. at 241-42 (citations omitted) (emphasis added). Furthermore, with respect to the finality issue, the Supreme Court wrote that:

> "After a hearing ends, the ALJ issues an 'initial decision . . . .' That decision must set out 'findings and conclusions' about all 'material issues of fact [and] law'; it also must include the 'appropriate order, sanction, relief, or denial thereof . . . .' **The Commission can then review the ALJ's decision, either upon request or sua sponte . . . .** But if it opts against review, the Commission 'issue[s] an order that the [ALJ's] decision has become final . . . .' At that point, the initial decision is 'deemed the action of the Commission.'"

*Lucia*, 585 U.S. at 242 (citations omitted) (emphasis added). In other words, there is nothing necessarily final about an SEC ALJ's decision and an SEC ALJ—like an FTC ALJ—has enormous power in an in-house enforcement proceeding, comparable to the power of *a federal district judge conducting a bench trial* and irrespective of the finality of his or her ultimate decision.

Critically, the Supreme Court then harkened back to its *Freytag* decision concerning STJs (which the Fifth Circuit cited in *Burgess*) in a manner that reflects the FTC's arguments about the recommendatory power of FTC ALJs are irrelevant. The Supreme Court in *Lucia* wrote:

> "As the *Freytag* Court recounted, STJs 'prepare proposed findings and an opinion' adjudicating charges and assessing tax liabilities . . . . Similarly, the Commission's ALJs issue decisions containing factual findings, legal conclusions, and appropriate remedies . . . . And what happens next reveals that the ALJ can play the more autonomous role. In a major case like *Freytag*, *a regular Tax Court judge must always review an STJ's opinion. And that opinion counts for nothing unless the regular judge adopts it as his own* . . . . By contrast, the SEC can decide against reviewing an ALJ decision at all. And when the SEC declines review (and issues an order saying so), the ALJ's decision itself 'becomes final' and is 'deemed the action of the Commission . . . .' That last-word capacity makes this an a fortiori case: *If the Tax Court's STJs are officers*, . . . then [SEC] ALJs must be too."

*Lucia*, 585 U.S. at 249 (citations omitted)(emphasis added).[11]   That is, the Supreme Court recognized that its prior holding in *Freytag*—*that* STJs with purely recommendatory decisioning were executive officers of the United States—necessarily meant SEC ALJs were also executive officers, given that their decisions ***sometimes***—but certainly ***not always***—are final.[12]   In sum, the FTC's ALJs are inferior executive branch officers over which the President must have control in order to be properly accountable to the American people, and more than one layer of removal protection unconstitutionally impedes the President from performing his Article II duty.[13]

---

[11] In contrast, Justice Sonia Sotomayor would have held "that one requisite component of 'significant authority' is the ability to make final, binding decisions on behalf of the Government."   *Lucia*, 585 U.S. at 269 (Sotomayor, J., dissenting).  In her alternative to the majority view, "a person who merely advises and provides recommendations to an officer would not herself qualify as an officer."  *Id.*

[12]  In fact, review by the FTC of ALJ recommendations does little to diminish that authority of its ALJs. Indeed, many parties settle before the FTC finally decides cases. *See* Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. COMPETITION L. & ECON. 623, 658 (2016). And even in cases that proceed to an FTC final determination, as reflected in the main text, an FTC ALJ has already critically shaped the administrative record for commissioners who realistically afford some deference to their ALJs. *See, e.g.*, *In re Trans Union Corp.*, 129 F.T.C. 471, 482 (2000)(citations omitted) ("The Commission reviews the decision of the ALJ under a de novo standard . . . . The Commission can, however, give some ***deference to the ALJ's credibility determinations because, as the trier of fact, the ALJ had the opportunity to closely scrutinize witnesses' overall demeanor and to judge their credibility***.") (emphasis added); *see also ABM Industry Groups, LLC v. U.S. Dep't of Labor*, 756 F. Supp. 3d 468, 477 (S.D. Tex. 2024) ("DOL ALJs still have all the powers to conduct administrative proceedings and therefore ***to play a major role*** in shaping the administrative record. ***And their recommendations still carry weight – formally or informally***.") (emphasis added), *vacated*, 2024 WL 6076919 (S.D. Tex. Dec. 23, 2024)

[13] The FTC has also in the past tried to make something of *Free Enterprise Fund* not applying to ALJs and that *Free Enterprise Fund* "considered a 'rigorous' and 'unusually high' for-cause standard." (Doc 25 at 31 (citations omitted)). However, that case was not contingent on the particular for cause standard present. Also, the argument ignores higher levels of removal protection, such as for MSPB members, which allows their removal "only for inefficiency, neglect of duty, or malfeasance in office." *See* 5 U.S.C. § 1202. It further ignores that a single layer of for-cause removal for inferior officers is already at the "outermost constitutional limits." *See Seila Law*, 591 U.S. at 218. Indeed, in *Collins*, the Supreme Court rejected the distinction between "for cause" removal and removal for "inefficiency, neglect of duty, or malfeasance." 594 U.S. at 255–56 ("'[F]or cause' does not mean the same thing as 'at will.'" (alteration and quotation marks omitted)). And even in *Free Enterprise Fund*, the Court described the scheme before it as "not only protect[ing] Board members from removal except for good cause, but withdraw[ing] from the President any decision on whether that good cause exists." 561 U.S. at 495 (emphases added). Moreover, in *Free Enterprise Fund*, the Supreme Court was merely noting "what issues the Court was leaving open," its identification of "characteristics that were true of ALJs that were not true of PCAOB members" was "[f]ar from . . . justify[ing] multiple layers of removal protection," and the Supreme Court "merely identified that its decision d[id] not resolve the issue presented[.]" *See Jarkesy*, 34 F.4th at 464-65 (citations omitted).  Finally, given the Fifth Circuit's opinion in *Space Exploration Technologies Corp.* on top of its *Jarkesy* opinion, it is simply untenable at this juncture for the FTC to claim—if it again attempts to do so—based on *Free Enterprise Fund* that ALJs are exempt from the prohibitions on multi-layer removal protections for inferior executive officers.

    c.    <u>Addressing Severance of Removal Protections Is Inappropriate at the Preliminary Injunction Stage</u>

The FTC has argued that this Court may sever unconstitutional ALJ removal protection provisions (Doc. 25 at 22). However, the Fifth Circuit's opinion in *Space Exploration Technologies* forecloses a severance remedy here. Rejecting the NLRB's severance arguments, the Fifth Circuit noted that the plaintiffs in the district court cases before it had—like Plaintiffs here—sought declaratory judgments invalidating the removal provisions at issue[14]—two of which are at issue here—and that those requests were not properly before the district courts or the Fifth Circuit. 2025 WL 2396748, at *7. Rather, at the preliminary injunction stage, "the severability inquiry is premature and belongs to the merits phase, when the court considers final relief. Accordingly, the possibility of severance does not preclude preliminary injunctive relief." *Id*.

That is the situation in the present case. The Plaintiffs' Article II claims should not have been dismissed—as Plaintiffs have no burden to show any harm here beyond the *Axon* injury of subjection to an illegitimate decisionmaker—and therefore sought declaratory relief that is far more than "plausible on its face". Also, in the current posture of this case, the Plaintiffs' requests for declaratory relief are still not properly before this Court and the Plaintiffs' motion seeks reconsideration of the Court's denial of their motion for preliminary injunctive relief. Accordingly, just as in *Space Exploration Technologies,* this Court should assess this motion without reference to whether severance is available as a remedy for the unconstitutional shielding of the FTC's ALJs from presidential control.

    d.    <u>Severance is Ultimately Inappropriate</u>

However, even were this case procedurally at the stage of assessing a final judgment and

---

[14] A litigant who brings a pre-enforcement challenge to an agency adjudicator's removal protections is "entitled to declaratory relief sufficient to ensure that the [administrative requirements] will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

permanent relief, multiple reasons demonstrate that severance would be an improper remedy. Initially, the Supreme Court has instructed that the "inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress" if the invalid portion alone is voided. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis in original). The inquiry is not merely whether the statute still works after severance; courts still cannot sever statutory language if "'rewrit[ing] [the] statute'" would "'give it an effect altogether different from that sought by the measure viewed as a whole.'" *Murphy v. NCAA*, 584 U.S. 453, 481-82 (2018) (citation omitted). That is, "when a portion of a statute is unconstitutional, 'the traditional rule is that the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted.'" *United States v. Bonilla-Romero*, 984 F.3d 414, 418 (5th Cir. 2020) (citation omitted).

There is every reason to find that Congress would not have preferred statutory schemes at issue here without the removal protections included in them. For example, taking the lowest level of protection for FTC ALJ's in 5 U.S.C. § 7521 first, "[t]he substantial independence that the Administrative Procedure Act's removal protections provide to administrative law judges is a central part of the Act's overall scheme." *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in part) (citations omitted). As former Supreme Court Justice Stephen Breyer explained:

> "Before the Administrative Procedure Act, hearing examiners 'were in a dependent status' to their employing agency, with their classification, compensation, and promotion all dependent on how the agency they worked for rated them . . . . As a result of that dependence, '[m]any complaints were voiced against the actions of the hearing examiners, it being charged that they were mere tools of the agency concerned and subservient to the agency heads in making their proposed findings of fact and recommendations . . . .' The Administrative Procedure Act responded to those complaints by giving administrative law judges 'independence and tenure within the existing Civil Service system.'"

*Id.* (citations omitted). And along with this independence, Congress gave ALJs "powers . . . comparable to those of a trial judge." *Butz v. Economou,* 438 U.S. 478, 513 (1978). If ALJ removal protections are severable, then the officials overseeing agency adjudications would be simultaneously equipped with the powers of a judge and subordinate to the whims of the executive branch. Far from "preserving the independent judgment of these men and women," *Butz*, 438 U.S. at 514, such a dynamic would leave ALJs—with their judicial powers—subject to the very executive-branch pressures the APA sought to eliminate. That is, "[i]f a court were to invalidate the ALJ removal protection layer, the [supposed] independence and impartiality of administrative hearings would be lost. The system would return to . . . days, when hearing examiners were considered mere instruments of their agencies." Linda D. Dellum, *"You're Fired!" Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution and Possible Fixes*, 26 GEO. MASON L. REV. 705, 707 (Spring 2019) [hereinafter "Dellum"]. Because such results are "exactly backwards" as to Congress' intent, *Murphy*, 584 U.S. at 483, the ALJs' tenure protections may not be severed from the conferral of ALJ authority.

The statutory indications and legislative history for the MSPB similarly indicate Congress would not want this Court to sever the removal protection for members of that board found in 5 U.S.C. § 1202 because it too is central to the civil service statutory scheme. As the Senate Governmental Affairs Committee Report on the Civil Service Reform Act of 1978 explained:

> There is little doubt that a vigorous protector of the Merit Systems is needed. The lack of adequate protection was painfully obvious during the civil service abuses only a few years ago. Establishment of a strong and independent board and special counsel will discourage subversions of merit principles. Dwight Ink, Executive Director of the President's Personnel Management Study, called the independent and strong merit board 'the ***cornerstone***' of civil service reform.

 S. Rep. No. 95-969, at 6-7 (1978) (emphasis added). As a result of a structure allowing for MSPB members to be removed only for cause, the committee report noted that the "board should be

insulated from the kind of political pressures that have led to violations of merit principles in the past." *Id.* at 7; *see also* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). In fact, the removal provision shielding MSPB members was ***explicitly designed*** to "***ensure***[] that the [MSPB] will be independent of the direction and control of the President." *See* S. Rep. No. 95-969, at 29 (emphasis added); *see also Civil Service Reform: Hearings on H.R. 11280*, 95th Cong. 824 (1978) (reflecting that Congress was concerned that members of the MSPB would be vulnerable to political "pressure" absent removal protections). To allay these concerns, Congress crafted the present multi-layer tenure regime. Civil Service Reform Act of 1978, Pub. L. No. 95-454, §§ 1202, 1204, 92 Stat. 1111, 1121-1122, 1137 (1978).

The same type of concerns informed Congress' design of the FTC, including the statutory removal protections for the Defendant Commissioners. As the Supreme Court has opined, "the FTC was designed to be 'independent in character,' 'free from 'political domination or control,' and not 'subject to anybody in the government' or 'to the orders of the President.' " *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 502 (2010) (citation omitted). Accordingly, in this overall multi-layered and multi-statutory independence scheme with more than one layer of insulation from Presidential control for FTC ALJs not lending itself to the Court as a candidate for a severance, choosing one over another for such a candidacy is an even more speculative task.[15]

Another aspect of why this Court should be wary of supplanting its own view for Congress' is that severance of the removal protections at the ALJ and MSPB level would affect far more than just FTC ALJs. As one legal scholar has described it:

> "[U]nlike cases in which the courts have found removal provisions violate the Constitution and have severed the offending provisions, here, there is no easy fix.

---

[15] *See id.* at 545 (Breyer, J., dissenting) (citations omitted)(noting that "'the touchstone' of the severability analysis 'is legislative intent . . . ,' and Congress has repeatedly expressed its judgment 'over the last century that it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service.'")

> Federal statute 5 U.S.C § 7521 protects ALJs from at-will removal, reductions in pay or pay grade, suspensions, and furloughs. It applies to all ALJs who are appointed under 5 U.S.C. § 3105. Hence, [a] [c]ourt's holding has the potential to affect all ALJs: those working for independent agencies . . . and those working for executive agencies . . . ."

*Dellum*, at 707 (citations omitted). According to the same scholar, as of her writing, there were 1,584 ALJs in over twenty-five agencies. *See id*. at 744 (citation omitted). In other words, severance of ALJ protections could have much farther-reaching impact than severing other removal protection provisions. That alone makes the task of addressing the constitutional infirmity of multi-layer removal protections a job for Congress rather than the judiciary.

It is thus not possible for this Court to determine a severance path Congress would have deemed appropriate in order to remedy the constitutional defects with the FTC's structure. To do so in the face of Congress' expressed intent that ALJs, MSPB members, and independent agency members/commissioners be independent and free of Presidential control would improperly circumvent Congress. *See Free Enter. Fund*, 561 U.S. at 510 (explaining that the "editorial freedom" to remedy the statutory frameworks for unconstitutional removal provisions "belongs to the Legislature, not the Judiciary."). Severance here would "substitute the judicial for the legislative department of the government." *United States v. Reese*, 92 U.S. 214, 221 (1875); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) (citation omitted) (noting that "the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'"). This Court should "restrain [itself] from 'rewrit[ing] [the] law to conform it to constitutional requirements'" in the face of so much evidence Congress would not approve. *Ayotte*, 546 U.S. at 329 (quoting *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 387 (1988)). Where, as here, discretion and complex line-drawing would be required to salvage statutes, courts risk undertaking a "'far more serious

invasion of the legislative domain.'" *Id*. at 330 (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n.26 (1995)).

Moreover, it is important to note that judges presiding over two of the cases consolidated into *Space Exploration Technologies* at the Fifth Circuit expressly recognized the foregoing substantive problems with severance in circumstances such as are present here.   As Judge Alan Albright wrote in one of those cases:

> "The NLRB ALJ conducting the administrative proceedings against SpaceX has three sets of removal protections, and it is not clear which, if any, Congress would be willing to give up. The removal protections that the APA gives to ALJs are 'a central part of the Act's overall scheme' to protect against the troubling questions that arise from an agency's commingling of adjudicative and prosecutorial functions . . . . Congress designed the NLRB to be an independent agency insulated from presidential control . . . . And finally, to further insulate the ALJs, Congress created the MSPB in the Civil Service Act of 1978 . . ., and enacted provisions designed to 'confer upon [MSPB] members a tenure akin to that of the Federal judiciary . . .'
>
> While statutes are severable if 'the remainder of the law is capable of functioning independently and thus would be fully operative as a law,' doing so here would circumvent the legislature without clear congressional intent . . . . Here there is no appropriate way to sever any of the removal protections . . . ."

*Space Expl. Techs Corp. v. NLRB*, 741 F.Supp.3d 630, 639 (W.D. Tex. 2024) (citations omitted), *aff'd*, No. 24-50627, 2025 WL 2396748 (5th Cir. Aug. 19, 2025); *see also Aunt Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *3 (N.D. Tex. Sept. 16, 2024) ("[T]he Court is skeptical that severance is the proper remedy."), *aff'd*, No. 24-50627, 2025 WL 2396748 (5th Cir. Aug. 19, 2025).  This Court should consider their conclusions and decline to fundamentally rewrite the pertinent statutory schemes.

Finally, the Fifth Circuit has already effectively answered the question as to whether severance of any single layer of protection for FTC ALJs would be enough to make them sufficiently accountable to the President.  In *Jarkesy*, the Fifth Circuit noted that "the SEC urge[d]

[it] to interpret the for-cause protections for ALJs to instead allow removal for essentially any reason." *Jarkesy*, 34 F.4th at 465. However, the Fifth Circuit declined the SEC's invitation to effectively read the for cause protection for ALJs out of the statute noting that:

> "Even if we could do so (and the statutory language likely does not give us that flexibility), that would not solve the Article II problem. As noted . . ., the MSPB is part of the mix as well. Furthermore, MSPB members 'may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.' 5 U.S.C. § 1202(d). So, for an SEC ALJ to be removed, the MSPB must find good cause and the Commission must choose to act on that finding. And members of both the MSPB and the Commission have for-cause protection from removal by the President. Simply put, if the President wanted an SEC ALJ to be removed, at least two layers of for-cause protection stand in the President's way.
>
> Thus, SEC ALJs are sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed. The statutory removal restrictions are unconstitutional."

*Jarkesy*, 34 F.4th at 465. Whether the Court formally severed a layer of for cause protection here, such as the lowest layer shielding the FTC's ALJs, or it simply interpreted that layer to provide no protection to the FTC's ALJs, the ALJs would still have two layers of protection, and Plaintiffs would still be subjected to an illegitimate decisionmaker still "safely encased within a Matryoshka doll of tenure protections." *See Free Enter. Fund*, 561 U.S. at 497. For a host of reasons, then, even were it appropriate at this time for the Court to substantively analyze severance as a potential remedy for the constitutional violations present in this case, the Court should conclude that severance is no remedy for the injuries Plaintiffs have shown, not now or ever.

### 2.    Space Exploration Technologies *Establishes the Asbury Plaintiffs Will Suffer Irreparable Harm Sans an Injunction.*

Once this Court finds that the Plaintiffs are likely to succeed on the merits, *Space Exploration Technologies* firmly establishes they have suffered irreparable harm. Initially, as the Fifth Circuit put it, the injury at issue was "*Axon's* injury: the 'here-and-now injury' of 'being subjected to unconstitutional agency authority,'" and "***that harm is irreparable***." 2025 WL

2396748, at *13 (emphasis added) (citation omitted). Furthermore, the Fifth Circuit wrote that the NLRB had tried to "cabin *Axon* to jurisdiction" but *Axon's* "reasoning fits irreparable harm hand-in-glove: once an unconstitutional proceeding begins, the damage is done," and "[t]hat is the ***essence*** of irreparability." *Id*. (emphasis added). "No further showing—such as how the outcome might differ under a valid structure—is required." *Id.* (citation omitted). Finally, "[w]aiting until the end would be no remedy at all." *Id*. Accordingly, once the Court concludes Plaintiffs are likely to show the removal protections for FTC ALJs are unconstitutional, under this binding precedent, the irreparability issue is settled. The FTC simply has no rejoinder.

### 3.    Space Exploration Technologies *Also Leaves No Doubt about the Final Two Injunction Elements*

The Fifth Circuit leaves no doubt the final two elements of the injunction standard—the balance of the equities and the public interest—are met here. Initially, "those two factors 'merge when the Government is the opposing party.'" *Space Expl. Techs.*, 2025 WL 2396748, at *14 (citation omitted). In cases such as this one that present structural constitutional infirmity:

> "The Government suffers no cognizable injury when a court halts unlawful agency action. Nor does the public interest suffer when an unlawful agency structure is prevented from subjecting 'countless individuals and companies' to unconstitutional proceedings. To the contrary, 'the public is served when the law is followed.' And the public is disserved when "accountability" evaporates because 'a person or entity other than Congress exercises legislative power.'"

*Id.* (citations omitted). Indeed, as the Fifth Circuit put it in *Space Exploration Technologies*, the equities in these circumstances tip "sharply" against the FTC. *Id.*[16]

---

[16] The injunction analysis is similar regarding Plaintiffs' Count V. As Plaintiffs have previously argued, the FTC of 2025 is not the FTC of 1935, and courts should therefore analyze challenges to the FTC Commissioners' removal protections in light of present facts. Recently, Chief Justice John Roberts of the Supreme Court has signaled as much with respect to *Slaughter v. Trump*, No. 25-909, 2025 WL 1984396 (Dist. D.C. July 17, 2025). There, the district court granted Slaughter's motion seeking a declaration that President Trump was not entitled to remove her from her office as an FTC Commissioner. *See id*. at *17, *20. The D.C. Circuit initially stayed the district court's orders pending appeal but later dissolved that stay and denied the President's motion for stay pending appeal. *See* Order, *Slaughter v. Trump*, No. 25-5261 (D.C. Cir. July 21, 2025) (per curiam) and *Slaughter v. Trump*, No. 25-5261, 2025

### D.    *Space Exploration Technologies* Also Raises the Specter of Reconsideration for the Court's Rulings on the Plaintiffs' Due Process Claim

Although *Space Exploration Technologies* primarily dealt with Article II issues, the Fifth Circuit's undertaking of a *Thunder Basin* analysis and reliance on *Axon* reflects that the Court should consider that Plaintiffs prior briefing raised a structural challenge not addressed by existing Fifth Circuit precedent.  Specifically, Plaintiffs demonstrated that the FTC's adjudicative rules, ***in addition*** to its combination-of-functions modus operandi, inherently deny due process against all parties appearing in the agency's in-house tribunal.

### 1.    *Illumina Does Not Foreclose a Challenge to Inherently Biased Rules*

*Illumina* does not foreclose Plaintiffs' due process challenges to the FTC's constitutionally deficient in-house adjudicative rules.    *Illumina*'s due process issue concerned solely a "combination of functions challenge."  *See Illumina*, *Inc. v. FTC,* 88 F.4th 1036, 1047 (5th Cir. 2023). While the Fifth Circuit rejected that challenge, it left the door open for other types of due process claims.  *See id.* (citation omitted) ("Of course, if there is evidence that a decisionmaker has 'actual bias' against a party, that raises due process concerns.").  Indeed, when an agency's rules preclude "a fair opportunity to rebut the [FTC's] factual assertions . . .," a party is deprived of its constitutional rights.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (citation omitted).

---

WL 2551247, at *1 (D.C. Cir. Sept. 2, 2025) (per curiam).  However, Chief Justice Roberts later issued an administrative stay of the district court's order.  *See Trump v. Slaughter*, No. 25A264, 2025 WL 2582814 (U.S. Sept. 8, 2025).  And the full Supreme Court subsequently granted the application for stay referred to it by the Chief Justice and treated the application as a petition for writ of certiorari before judgment, which it also granted.  *See Trump v. Slaughter*, __ U.S. __, 2025 WL 2692050 (Sept. 22, 2025).  Justices Kagan, Sotomayor, and Jackson dissented from the granting of the application for stay.  *Id.*  Furthermore, the Supreme Court directed the parties to brief and argue: "(1) Whether the statutory removal protections for members of the Federal Trade Commission violate the separation of powers and, if so, whether *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), should be overruled. (2) Whether a federal court may prevent a person's removal from public office, either through relief at equity or at law."  *Id.*  Finally, the Supreme Court directed the Clerk of the Supreme Court to establish a briefing schedule that will allow the case to be heard in its December 2025 argument session.  *Id.*  This Court should therefore consider granting Plaintiffs' preliminary injunction request on their Count V Article II claim as well.  There is no need for a harm showing, there is no question the FTC commissioners are officers of the United States, and severability analysis is premature for the reasons explained above with regard to ALJs.

### 2.    The FTC's Rules Are Inherently Biased Against All

Plaintiffs challenge the FTC's adjudicative rules—specifically, 16 C.F.R. Part 3 to 16 C.F.R. Part 4—on their own facial terms (in addition to their specific application to date in the FTC Proceeding). Those rules fail to provide Plaintiffs or any parties appearing before the FTC with a fair opportunity to rebut the FTC's factual assertions against them.

The specific circumstances of the FTC Proceeding as applied to Plaintiffs (to which they pointed in their prior briefing) amply demonstrate why the FTC's rules are structurally infirm and would deny due process to any party appearing before the agency. For example, the FTC has here had—but importantly by dint of its rules—will always have, many months or even years to develop its cases, such as by preparing experts, compiling data, and conducting statistical analysis. But the way the FTC's rules are structured, parties appearing before the agency are *ipso facto* forced into a proceeding which, among other injustices:

- Provides them only 14 days to file an initial responsive pleading (compared to 21 days in federal court);

- Provides them only 10 days to respond to motions filed by the Commission (compared to 14 days in federal court);

- Requires them to serve a list of experts intended to be used as witnesses no later than 1 day after the close of fact discovery and at the same time at the FTC (compare 16 CFR 3.31A to 30 days in federal court); and

- Requires them to serve an expert report no later than a mere **_14 days_** after the deadline for service of complaint counsel's expert reports (16 CFR 3.31A).

Moreover, an FTC ALJ must grant parties permission to obtain a deposition of the FTC's organizational representative (16 C.F.R. § 3.33(c)(1)).

Although Plaintiffs are not suggesting the FTC's in-house adjudicative procedures need to precisely mirror the Federal Rules of Civil Procedure, the FTC's current rules, systematically and *ipso facto* deny due process for **any** party facing the FTC's prosecutors in an in-house FTC

tribunal. There is simply little prospect for success for anyone other than the FTC's prosecutors in such circumstances due to a structural design that provides the FTC extensive opportunity for preparation while burdening its opponents with unrealistic deadlines and highly unfair restrictions. Indeed, the FTC's rules are another structural aspect of, as Supreme Court Justice Neil Gorsuch commented in his *Axon* concurrence, "just how tilted the game is" in the FTC's in-house adjudicative process. *Axon Enter., Inc.*, 598 U.S. at 215. In fact, before the Ninth Circuit, "the FTC d[id] not appear to dispute . . . that [it] ha[d] not lost a single [administrative] case in the past quarter-century. Even the 1972 Miami Dolphins would envy that type of record." *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd on other grounds*, 598 U.S. 175 (2023).

### 3. The Court has Jurisdiction to Hear Plaintiffs' Structural Rules-Focused Due Process Challenge

As suggested above, in addition to the Plaintiffs' as-applied and combination-of-functions due process claims, Plaintiffs also assert that the FTC's Adjudicatory Rules deny parties appearing before the FTC due process, and that complaint is properly before this Court. The rules are so unfair that they are not an attack on the "commonplace procedures [the FTC] use[s] to make such [its] decision[s]" such as in *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200 (1994), and *Elgin v. Department of Treasury,* 567 U.S. 1, 23 (2012). Rather, this aspect of Plaintiffs' due process challenge asserts structural here-and-now injury akin to those asserted in *Axon*.

In that regard, a run through the *Thunder Basin* considerations should sway the Court to favor exercising its jurisdiction over Plaintiffs' due process claim based on the inherent unfairness of the FTC rules. Courts "presume that Congress does not intend to limit jurisdiction…" if they answer yes to the questions of (1) whether the claim is "wholly collateral to [the] statute's review provisions," and (2) whether the claim is "outside the agency's expertise." *See Thunder Basin*, 510 U.S. at 212. Additionally, courts should exercise jurisdiction "particularly [if] a finding of

preclusion could foreclose all meaningful judicial review." *Id* at 212-213 (citation omitted). Initially here, rules that are per se unfair to all demand an immediate end to the proceeding applying them because they make the proceeding illegitimate; therefore, post-proceeding relief is inadequate. *See Axon*., 598 U.S. at 191 ("And—here is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in."). Additionally, such a claim is collateral to the statute's review provisions as the whole point is—as with the combination of functions challenge—to avoid the proceeding in the first place. Finally, the FTC's expertise is not in determining whether its own rules are inherently constitutionally infirm. *See, e.g., Axon*, 598 U.S. at 194 (noting that the FTC may "know[] a good deal about [consumer protection] policy, but nothing special about the separation of powers"). Accordingly, in addition to reconsidering its rulings concerning Plaintiffs' Article II claims (Counts IV and V of their complaint), the Court should also reconsider its rulings on Plaintiffs' due process challenge (Count III).

## III.    CONCLUSION

For the foregoing reasons and because of the Fifth Circuit's issuance of its *Space Exploration Technologies* opinion after this Court's Dismissal Order, the Court should reconsider its prior ruling on the preliminary injunction and the dismissal of the Plaintiffs' claims (Doc. 51); should vacate that ruling; should grant Plaintiffs' Expedited Motion for Preliminary Injunction; should deny Defendants' Motion to Dismiss Counts III, IV, and V of the complaint; and should issue a preliminary injunction in favor of and as requested by Plaintiffs (Doc. 6) until such time as this Court considers the merits of this case.

Dated: September 26, 2025                      Respectfully submitted,

                                              FOLEY & LARDNER LLP

Todd A. Murray                                By: /s/ *John Sepehri*
(Texas State Bar No. 00794350)
2021 McKinney Avenue, Suite 1600              Edward D. Burbach*
Dallas, Texas 75201                           (Texas State Bar No. 03355250)
Tel: 214.999.3000                             John Sepehri
Fax: 214.999.4667                             (Texas State Bar No. 00797408)
Email: tmurray@foley.com                      Robert F. Johnson III
                                              (Texas State Bar No. 10786400)
Michael J. Lockerby                           Brandon M. Livengood
(*Pro hac vice*)                              (Texas State Bar No. 24128022)
Megan Chester                                 600 Congress Avenue, Suite 2900
(*Pro hac vice*)                              Austin, Texas 78701
Washington Harbour                            Tel: 512.542.7000
3000 K Street N.W., Suite 600                 Fax: 512.542.7100
Washington, D.C. 20007                        Email: eburbach@foley.com
Tel.: 202.672.5300                            Email: jsepehri@foley.com
Fax: 202.672.5399                             Email: rjohnson@foley.com
Email: mlockerby@foley.com                    Email: brandon.livengood@foley.com
Email: mxchester@foley.com

                                              _____
                                              *Attorney in charge

                        *Counsel for the Plaintiffs*

                                  26