IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ASBURY AUTOMOTIVE GROUP, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE FEDERAL TRADE COMMISSION, *et al.*,. <br><br> *Defendants*. | No. 4:24-CV-00950-O |

# REPLY TO DEFENDANT' OPPOSITION TO
# PLAINTIFFS' MOTION FOR RECONSIDERATION

Edward D. Burbach*
   (Texas State Bar No. 03355250)
John Sepehri
   (Texas State Bar No. 00797408)
Robert F. Johnson III
   (Texas State Bar No. 10786400)
Brandon M. Livengood
    (Texas State Bar No. 24128022)
**FOLEY & LARDNER LLP**
600 Congress Avenue, Suite 3000
Austin, Texas 78701
Tel:  512.542.7000
Fax: 512.542.7100
Email: eburbach@foley.com
Email: jsepehri@foley.com
Email: rjohnson@foley.com
Email: brandon.livengood@foley.com
_____
*Attorney in charge
^ Admitted *pro hac vice*

Todd A. Murray
   (Texas State Bar No. 00794350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel:  214.999.3000
Fax: 214.999.4667
Email: tmurray@foley.com

Michael J. Lockerby^
Megan Chester^
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel.: 202.672.5300
Fax: 202.672.5399
Email: mlockerby@foley.com
Email: mxchester@foley.com

**Counsel for Plaintiffs**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    A.  This Court Has Discretion to Issue An Indicative Ruling. ...........................................1

    B.  Defendants' New Irreparable Harm Argument Is Still Flawed. ...................................2

    C.  Defendants' Equities Argument Erroneously Portrays the FTC as a Unicorn Agency.........................................................................................................................3

    D.  Defendants Severance Arguments Are Incorrect. ........................................................5

        1.  The Court Should Not Substantively Address Severance with Regard to Either a Motion for Preliminary Injunction or a Motion to Dismiss .......................5

        2.  The Defendants' Severability Analysis is Inapposite In Any Event........................6

    E.  The FTC Misstates Plaintiffs' Rules-based Structural Due Process Challenge. .........10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Slater*,
    528 U.S. 216 (2000) .................................................................................................................. 3

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) ............................................................................................................... 6, 7

*Arnesen v. Raimondo*,
    115 F.4th 410 (5th Cir. 2024) ................................................................................................... 9

*Aunt Bertha v. NLRB*,
    No. 4:24-CV-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) .................................... 7

*Chacon v. Granata*,
    515 F.2d 922 (5th Cir. 1975) .................................................................................................... 3

*Covenant Media of Illinois LLC v. City of Des Plaines*,
    391 F. Supp. 2d 682 (N.D. Ill. 2005) ........................................................................................ 6

*Crystal Clear Special Util. Dist. v. Jackson*,
    142 F.4th 351 (5th Cir. 2025) ................................................................................................... 9

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) ........................................................................................................ 6, 7, 8

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004) ............................................................................................................... 10

*Heidi Grp., Inc. v. Texas Health & Hum. Servs. Comm'n*,
    138 F.4th 920 (5th Cir. 2025) ................................................................................................... 2

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) .................................................................................................................. 7

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) .................................................................................................. 8, 9

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................................................. 9

*Murphy v. NCAA*,
    584 U.S. 453 (2018) .................................................................................................................. 6

*Rest. L. Ctr. v. U.S. Dep't of Labor*,
  66 F.4th 593 (5th Cir. 2023) ............................................................................................. 9

*Ridgely v. FEMA*,
  512 F.3d 727 (5th Cir. 2008) ........................................................................................... 3

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)......................................................................................................... 9

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020).................................................................................................. 6, 7, 8

*SO Apartments, L.L.C. v. City of San Antonio*,
  109 F.4th 343 (5th Circuit 2024) ..................................................................................... 5

*Space Expl. Techs. Corp. v. NLRB,*
  151 F.4th 761 (5th Cir. 2025) ................................................................................... passim

*SpaceX v. NLRB*,
  741 F. Supp. 3d 630 (W.D. Tex. 2024) ............................................................................ 7

*Spann v. JC Penney Corp.*,
  No. SA CV 12–0215 FMO (RNBx), 2015 WL 1526590 (C.D. Cal. Mar. 17, 2015).................. 5

*United States v. Bonilla-Romero*,
  984 F.3d 414 (5th Cir. 2020) ........................................................................................ 6, 9

*Walmart Inc. v. Chief Admin. Law Judge of Off. Of Chief. Admin. Hearing Officer*,
  144 F.4th 1315 (11th Cir. 2025) ................................................................................ 6, 8, 9

*Wulferic LLC v. FDA*,
  793 F. Supp. 3d 830 (N.D. Tex. 2025) ......................................................................... 2, 4

**Statutes**

15 U.S.C. Sec. 53(b) ............................................................................................................. 8

15 U.S.C. § 41 ...................................................................................................................... 7

28 U.S.C. § 1292(a)(1)......................................................................................................... 2

**Rules**

Fed. R. App. P. 12.1(b) ........................................................................................................ 1

Fed. R. Civ. P. 62.1……………………………………………………………………..1

**Regulations**

16 C.F.R. Part 3 .................................................................................................................... 10
16 C.F.R. Part 4 .................................................................................................................... 10

**Other Authorities**

5B Federal Practice and Procedure § 1357, at 676–77 (3d ed. 2004) ............................................. 6

**SUMMARY OF ARGUMENT**

The FTC Defendants' ("FTC") Opposition to Plaintiffs' Motion is wrong for at least *five* reasons. *First*, the Court has discretion to issue an indicative ruling and fulfill its expressed desire to revisit its rulings with the benefit of *SpaceX*, and this will serve judicial economy. *Second*, Plaintiffs continue to face "here and now" injury as the FTC opposes an indefinite stay of the FTC Proceeding pending final judicial resolution of this lawsuit, thereby proving Plaintiffs will continue to face imminent irreparable harm. *Third*, the FTC's mission is not so unique from other similarly situated agencies so as to allow it to evade an injunction. *Fourth*, it is inappropriate at this stage to consider the FTC' severance arguments and those arguments are wrong. *Fifth*, the FTC's actions support Plaintiffs' rules-based structural due process challenge.

**ARGUMENT**

**A. This Court Has Discretion to Issue An Indicative Ruling.**

The FTC's objection to the judicial efficiency of an indicative ruling—should this Court choose to provide one—is odd for multiple reasons. It's odd for the FTC to argue that a Rule 62.1 indicative ruling "undermines the ordinary appellate process" (Doc. 68 at 4). To the contrary, the rules of appellate procedure ***expressly provide*** a mechanism for indicative rulings, and the court of appeals retains control of the process. An indicative ruling cannot preempt appellate jurisdiction. Rather, "the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b). In short, the procedure is established and is not a deviation from an orderly appellate process.

The FTC's objection is also odd because this Court has already expressed a desire to reexamine its earlier ruling in light of *SpaceX*. And the FTC agrees that Rule 62.1 gives this Court a mechanism to possibly moot the appeal should this Court be inclined to alter its earlier decision.

Moreover, the FTC's objection is odd because on December 9, 2025, Plaintiffs filed with the court of appeals a motion to dismiss the appeal (without prejudice) pending this court's

1

indicative ruling. The FTC opposes that motion despite the fact that abating the appeal would be judicially efficient.

Finally, the FTC's objection is odd in that the FTC argues Plaintiffs are engaging in "procedural gamesmanship" and trying to "have it both ways" (Doc. 68 at 5). To make this argument, the FTC obscures 28 U.S.C. § 1292(a)(1), which only expressly authorizes an appeal of the injunction ruling. Plaintiffs' appeal thus did not *necessarily* invoke appellate jurisdiction over that part of this Court's ruling dismissing claims under Rule 12(b). Under the *discretionary* doctrine of pendent jurisdiction, the Fifth Circuit might or might not conclude that it should also exercise jurisdiction over the Rule 12(b) dismissals: "Whether to 'exercise' pendent appellate jurisdiction is 'a matter of discretion'" to be exercised "'with caution'" and "'used sparingly.'" *Heidi Grp., Inc. v. Texas Health & Hum. Servs. Comm'n*, 138 F.4th 920, 930 (5th Cir. 2025). That is, neither the parties nor this Court can be sure that Plaintiffs' appeal has "deprived this Court of subject-matter jurisdiction" over the Rule 12(b)(6) dismissals (Doc. 68 at 3).

**B. Defendants' New Irreparable Harm Argument Is Still Flawed.**

For the first time, the FTC makes an ill-supported argument that "[b]ecause the Commission has repeatedly stayed the administrative proceeding and there is no indication it would be unwilling to grant further stays, Asbury cannot show it faces 'imminent' irreparable harm." (Doc. 68 at 9). This argument is an effort to avoid binding Fifth Circuit precedent. See *Space Expl. Techs. Corp. v. NLRB,* 151 F.4th 761, 780 (5th Cir. 2025) [hereinafter *SpaceX*] (citations omitted) ("*Axon's* injury: the 'here-and-now injury' of 'being subjected to unconstitutional agency authority' . . . is irreparable*")*; *see also Wulferic LLC v. FDA*, 793 F. Supp. 3d 830, 851 (N.D. Tex. 2025) (citations omitted) (in analyzing a request for a permanent injunction, noting that "[b]ecause [the plaintiff company] can claim a 'here-and- now injury' like that in *Axon*, it satisfies the irreparable injury requirement").

Further, the FTC's argument is belied by its own conduct. The FTC[1] has declined an indefinite stay of the FTC Proceeding pending a final and unappealable federal court ruling on Plaintiffs' constitutional claims in lieu of a preliminary injunction.

Finally, the cases cited by the FTC in support of its new argument do not support it. For example, in one, landowners sued a city alleging that its annexation of land was a "first step in a scheme undertaken . . . to deprive them of property without just compensation, either by unlawful zoning ordinances or [later initiated] eminent domain proceedings . . . ." *Chacon v. Granata*, 515 F.2d 922, 923 (5th Cir. 1975). In that case, the Fifth Circuit unremarkably commented that ***the city had passed no applicable zoning ordinances***, legislative bodies are presumed to act with regard for constitutional rights, and it could not be foreseen how any ordinances would be drafted or applied. *Id.* at 925 (emphasis added). The Fifth Circuit thus found that "the injury plaintiffs fear about ***potential future*** zoning ordinances is not imminent." *Id*. (emphasis added). The circumstances in *Chacon* thus stand in stark contrast to and are vastly different from the circumstances in this case (i.e., apples to oranges)—here, the FTC has, in fact, ***instituted*** an illegitimate proceeding against Plaintiffs ***that remains pending***.[2]

### C. Defendants' Equities Argument Erroneously Portrays the FTC as a Unicorn Agency.

Once again trying to evade the Fifth Circuit's clear direction—see *SpaceX*, 151 F.4th at 780-81 (acknowledging that the government suffers the harm of denying the public interest in the

---

[1] The FTC Defendants include the FTC Commissioners who have the power to grant a stay.

[2] The other cases cited by the FTC presents similar non sequiturs. As one additional example, the Fifth Circuit vacated challenged provisions of a preliminary injunction issued against FEMA in connection with post-hurricane rental assistance payments FEMA administered. The court reasoned that the plaintiffs had not yet established a substantive property interest that would allow them to meet ***the first element of the injunction test***—likelihood of success on the merits. See *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008). The case did not turn on irreparable harm. A more apt analogy in relation to the FTC's novel argument—which actually undermines the argument—than the cases the FTC cites is found in general mootness caselaw addressing when a defendant voluntarily refrains from challenged conduct. See, e.g., *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (citations omitted) ("Voluntary cessation of challenged conduct moots a case . . . only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . . .' And the ''heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.'"). If there is nothing to see or fear here, the FTC flatly should have no problem with an indefinite stay of the FTC Proceeding pending the final resolution of Plaintiffs' current claims in federal court and the Plaintiffs would not need a preliminary injunction.

enforcement of laws but rejecting that as a basis to allow unlawful agency action to proceed)—the FTC argues that "the [FTC] administrative proceeding is not simply a matter of enforcing a legal technicality," and that it instead "implicates important equities concerning consumer welfare" (Doc. 68 at 9). But the NLRB and other agencies against which injunctions have been granted due to constitutional infirmities in their process also address important issues of consumer, public or labor welfare. Indeed, in two of the three injunctions the Fifth Circuit affirmed in *SpaceX*, the unfair labor practices charge of a ***single*** employee—rather than systemic accusations—supported an injunction.[3] See *id.* at 768-69. Furthermore, this Court only a few months ago rejected the FDA's contention that its regulatory scheme was "designed to promote the public interest" in the context of the FDA's allegations that a company sold "'adulterated' and 'misbranded' tobacco products—e-liquids . . . not . . . authorized for sale by the FDA," holding that interest was "outweighed, if not negated, by the deprivation of [the company's] Seventh Amendment Rights." *Wulferic*, 793 F. Supp. 3d at 851 (citations omitted).[4] None of which is to mention that—as explained more below—the FTC can pursue enforcement in federal court; it does not have to file an in-house administrative proceeding. The FTC simply does not have such a unique role that the Court should accept its equites claims here. In fact, unlike the FDA, the FTC does not have a preemptive role because each state has a co-equal consumer protection enforcement role.[5]

The cases the FTC cites do not save its arguments. For instance, in one case cited, apartment complexes sought an injunction on constitutional grounds, complaining about fines and

---

[3] The NLRB's investigation of the charge in one lead it to allege the employer's severance agreements violated the NLRA and in the other the NLRB complained because the employee was terminated. In the third affirmed case, the NLRB issued a consolidated complaint alleging "multiple unfair labor practices." *See id.*

[4] Although *Wulferic* involved analysis of a permanent injunction request, the Court's analysis reflects that the third and fourth elements (which merge when the government is the defendant) are the same as the third and fourth elements a plaintiff must demonstrate to secure a preliminary injunction.

[5] See https://thelaw.institute/consumer-protection-issues/consumer-protection-laws-usa-overview/ ("While federal laws establish baseline protections, state governments play a crucial role in consumer protection as well. Each state has its own consumer protection laws, often modeled after the federal FTC Act but sometimes providing stronger protections.").

inspections a city imposed in connection with property maintenance codes. *See SO Apartments, L.L.C. v. City of San Antonio*, 109 F.4th 343, 348 (5th Circuit 2024). Regarding the "balance of harms between the Complexes and the City and its Residents," the Fifth Circuit concluded the complexes had not met their burden since the potential harm was "monetary in nature and thus reparable" while the City would be prevented from exercising police powers. *Id.* at 352. The harm Plaintiffs face here is not reparable by money, as it involves the here and now injury of subjection to a decisionmaker and process to which the Fifth Circuit has instructed they may not be subjected.

**D. Defendants Severance Arguments Are Incorrect.**

The FTC attempts a two-step maneuver to convince the Court that *SpaceX* does not require the relief Plaintiffs are seeking from the Court. First, the FTC argues that because the Court is addressing a motion to dismiss, the Court should leap to the merits of severance. Second, the FTC contends if it does so, the Court cannot issue an injunction. The FTC is wrong on both counts.

   1. *The Court Should Not Substantively Address Severance with Regard to Either a Motion for Preliminary Injunction or a Motion to Dismiss*

*SpaceX* explicitly defeats the FTC's objections to the Plaintiffs' request for a preliminary injunction. For related reasons this Court should not address severance of the unconstitutional removal protections here in connection with Defendants' motion to dismiss. Initially, the Fifth Circuit noted in *SpaceX* that declaratory relief was not at issue before it. *See Space Expl. Techs. Corp.*, 151 F.4th at 773. Critically, Plaintiffs herein seek declaratory relief but the FTC is not asserting that declaratory relief is implausible. Rather, the FTC entirely (and incorrectly) posits that severability could obviate the need for an injunction (*See* Doc. 68 at 10-15).

However, "[w]hen a plaintiff states a claim, the appropriate form of relief is not to be decided upon a motion to dismiss." *Spann v. JC Penney Corp.*, No. SA CV 12–0215 FMO (RNBx), 2015 WL 1526590, at *4 (C.D. Cal. Mar. 17, 2015) (quoting Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1357, at 676–77 (3d ed. 2004), writing that

5

it "need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court").[6] It is telling in this regard that the removal cases the FTC cites did not involve a motion to dismiss; rather they involved late stage matters. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 208-09 (2020); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 487-88 (2010); *Walmart Inc. v. Chief Admin. Law Judge of Off. Of Chief. Admin. Hearing Officer*, 144 F.4th 1315, 1321 (11th Cir. 2025). So this Court need not and should not engage in a slippery, substantive severability analysis. See *SpaceX*, 151 F.4th at 773 (noting that the Supreme Court has acknowledged the "elusive" nature of severability).

### 2. The Defendants' Severability Analysis is Inapposite In Any Event

The "inquiry in evaluating severability is whether the statute will function in a manner consistent with the intent of Congress" if the invalid portion alone is voided. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis in original). It does not matter if a statute otherwise still works if "'rewrit[ing] [the] statute'" would "'give it an effect altogether different from that sought by the measure viewed as a whole.'" *Murphy v. NCAA*, 584 U.S. 453, 481-82 (2018) (citation omitted). "[W]hen a portion of a statute is unconstitutional, 'the traditional rule is that the unconstitutional provision must be severed **unless** the statute created in its absence is legislation that Congress would not have enacted.'" *United States v. Bonilla-Romero*, 984 F.3d 414, 418 (5th Cir. 2020) (citation omitted) (emphasis added).

As discussed in detail in Plaintiffs' opening brief, the removal protections for ALJs were designed to create independence for them and were "central" to the overall APA statutory scheme providing ALJs federal judge-like powers. The same sort of independence concerns infused

---

[6] *See also Covenant Media of Illinois LLC v. City of Des Plaines*, 391 F. Supp. 2d 682, 694 (N.D. Ill. 2005)("Because the court's inquiry was limited to determining whether Covenant stated a claim, the court did not address each constitutional challenge . . . . The court defers any decision regarding severability until there is a final determination as to the constitutionality of all the challenged provisions."); *SpaceX*, 151 F.4th at 773 (noting that "'[a] statute must be found to be inoperative or unconstitutional as it was written before the issue of severance can be reached.'").

6

Congress' crafting of the MSPB and removal protections for its members (Doc. 60 at 14-20). Moreover, the removal protections here would impact more than just FTC ALJs.[7] Thus, as amply demonstrated in the Plaintiffs' opening brief, severing removal provisions in this multi-faceted independence scheme presents an extraordinarily difficult, speculative, and inappropriate task for the Court—something judges presiding over cases consolidated into *SpaceX* at the Fifth Circuit expressly recognized. *See SpaceX v. NLRB*, 741 F. Supp. 3d 630, 639 (W.D. Tex. 2024); *Aunt Bertha v. NLRB*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *3 (N.D. Tex. Sept. 16, 2024).

Additionally, and importantly, the key cases the FTC cites are materially different from the present case. In *Free Enterprise Fund*, the Supreme Court's severance of the removal provisions at issue left just one layer of removal protections between the President and the PCAOB members. *Free Enter. Fund*, 561 U.S. at 508-10. In *Selia Law*, "[t]he only constitutional defect [the Supreme Court] . . . identified in the CFPB's structure is the Director's insulation from removal," and "[i]f the Director were removable at will by the President, the constitutional violation . . . disappear[ed]." *Seila Law LLC*, 591 U.S. at 235. And in both these cases, the issue boiled down to whether Congress would have preferred substantive regulatory agencies without independence for agency heads to no substantive regulatory agencies. See *Free Enterprise Fund*, 561 U.S. at 509; *Seila Law LLC*, 591 U.S. at 235.

The circumstances in this case markedly differ from the circumstances in those cases. Here, the Court confronts three layers of insulation for FTC ALJs, and it would have to choose

---

[7] Notably, the express severability provision in the FTC Act that the FTC cites does not necessarily make severance an easy option with respect to the FTC Commissioners' removal protection. Even with an explicit severability clause, strong evidence contradicting the use of severance can support a court's refusal to excise an objectionable provision. See *Alaska Airlines, Inc.*, 480 U.S. at 687. And as the Supreme Court has explained, 15 U.S.C. § 41 effectuates policy goals that "vitally contribute" to the operation of the FTC Act:

> [T]he language of the act, the legislative reports, and the general purposes of the legislation . . ., all combine to demonstrate the congressional intent to create a body of experts who shall gain experience by length of service; a body which shall be independent of executive authority, except in its selection . . . . [Thus], it is clear that Congress [thought] length and certainty of tenure would vitally contribute.

*Humphrey's Executor v. United States*, 295 U.S. 602, 625–26 (1935).

which two layers to sever in order to arrive at a constitutionally permissible level of only one layer. *See Seila Law*, 591 U.S. at 204. Additionally, if the Court does not sever the protections for ALJs and MSPB members, the substantive regulatory agency does not disappear. There is no cataclysm created by declining to sever here because the FTC can and typically does pursue enforcement actions against Plaintiffs in federal court [8] and often in conjunction with states attorneys general.[9]

*Walmart* is even more unpersuasive. Initially, the opinion is an out-of-circuit case, and its conclusion that the ALJ removal protection at issue is constitutional is at odds with the Fifth Circuit. Indeed, the Eleventh Circuit explicitly disagreed with the Fifth Circuit. *See Walmart*, 144 F.4th at 1343 (noting that "the Fifth Circuit['s *Jarkesy*] majority **incorrectly concluded** that SEC ALJs 'perform[ed] substantial executive functions'" (emphasis added)).

Furthermore, the Eleventh Circuit repeatedly emphasized that the Attorney General had plenary authority over the ALJ at issue and that the Attorney General is removable at will by the President. *Walmart*, 144 F.4th at 1343 ("***[C]ritically here***, . . . the adjudicative decisions made by the Department's ALJs in OCAHO are subject to direct and plenary review by a higher official ***who can be removed at will by the President***." (emphasis added)). Indeed, in making its severance "observation," the Eleventh Circuit wrote that if it were "to find the removal protection unconstitutional, [it] need only sever ***one level*** of protection and leave the Department's ALJs ***removable at will by the Attorney General, who also is removable at will***." *Id.* at 1348-49 (emphasis added). There is presently no such authority over FTC ALJs removable at will by the President. Accordingly, the FTC's cases do not support severance here.

Perhaps recognizing the weakness of the case law it cites, the FTC invites the Court to defy

---

[8] See https://www.ftc.gov/about-ftc/mission/enforcement-authority (with regard to consumer protection and judicial enforcement noting that "Section 13(b) of the FTC Act, 15 U.S.C. Sec. 53(b), authorizes the Commission to seek preliminary and permanent injunctions to remedy 'any provision of law enforced by the Federal Trade Commission.'")

[9] See https://www.ftc.gov/news-events/news/press-releases/2024/04/ftc-issues-report-congress-collaboration-state-attorneys-general.

8

*SpaceX*. Specifically, it argues that "*SpaceX* could not have overruled Supreme Court precedent establishing that where severance would be the appropriate final remedy, a plaintiff is not entitled to an injunction . . . against administrative proceedings, which would afford a greater remedy than what it would obtain at final judgment" (Doc. 68 at 13). But the cases the FTC cites establish no such thing, as two of them have nothing to do with severance in the injunction context or otherwise. Rather, the cases expound on the basic point that the plaintiffs had to show injury in fact to press their claims. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 348-49, 356-59 (1996); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–22 (1974).[10] The third case cited pertains to how a court should narrowly apply a severance remedy. *See Bonilla-Romero*, 984 F.3d at 419 ("Thus, excising the mandatory minimum nature of the life sentence is all that is needed to satisfy the constitutional issue for juveniles under § 1111.").

Finally, the FTC incorrectly dismisses *Jarkesy*'s instructiveness. By rejecting an invitation "to interpret the for-cause protections for ALJs to . . . allow removal for essentially any reason" and noting that would not "solve the Article II problem," the Fifth Circuit highlighted that this Court has to sever not just one, but two layers of removal protections here to reach a constitutionally permissible situation. *See Jarkesy v. SEC*, 34 F.4th 446, 465 (5th Cir. 2022). The FTC is thus asking the Court to improperly act as a legislative body, significantly rewriting the law by choosing which two of three layers of protection should be severed.

---

[10] The FTC's real purpose here may be found in footnote 2 of its Opposition, which suggests the "uncertainty" about how *SpaceX* can be "reconciled" with Supreme Court precedent is another reason the Court should decline to revisit its prior rulings with the benefit of *SpaceX* in hand. But the Fifth Circuit has repeatedly observed that it is "a court of review, not first view." *Rest. L. Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023); *see also Arnesen v. Raimondo*, 115 F.4th 410, 413 (5th Cir. 2024) (remanding for full district court treatment of issue recently resolved by Fifth Circuit after district court's decision issued – issue later resolved by U.S. Supreme Court); *Crystal Clear Special Util. Dist. v. Jackson*, 142 F.4th 351, 365–66 (5th Cir. 2025) (remanding to determine preemption issue in light of holding there was no express preemption – and to reconsider preliminary injunction factors as appropriate).

### E. The FTC Misstates Plaintiffs' Rules-based Structural Due Process Challenge.

The Plaintiffs' due process claims challenge both the application and the inherent bias and unfairness of the Commission's Rules of Practice (the "Rules"), 16 CFR § 3.1, parts 3 & 4.[11] The FTC responds by arguing that the claims "make[] no sense because th[e] rules give the ALJ discretion to extend . . . deadlines" (Doc 68 at 26). That misses the point. The Rules are *intrinsically* inflexible and unfair. In fact, the deadlines in the FTC Rules (including those concerning experts) are immovable, as the FTC ALJ has expressed. Indeed, Plaintiffs have repeatedly requested more time for key deadlines, but the ALJ, citing the Rules, has consistently stated she has no power to move the deadlines. See, e.g., Third Revised Scheduling Order at 2-3 n.2 (discussing the rules' deadlines for expert reports) at https://www.ftc.gov/legal-library/browse/cases-proceedings/222-3135-asbury-automotive-group-inc-et-al-matter.[12] The Rules thus do not provide the constitutional minimum of "a fair opportunity to rebut the [FTC's] factual assertions" against them. *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

---

[11] For example, FTC rules require respondents to serve experts report no later than a mere 14 days after the deadline for the service of the complaint counsel's expert reports. Furthermore, respondents must provide their initial responsive pleading within 14 days, compared to 21 days in federal court and to respond to motions filed by the Commission within 10 days, compared to 14 days in federal court. Additionally, the rules require respondents to serve a list of experts intended to be used as witnesses no later than one day after the close of fact discovery, the same deadline as the FTC, which contrasts with the 30-day period in federal court. *See* 16 C.F.R. Part 3 to 16 C.F.R. Part 4.

[12] As of this filing, the Asbury Respondents are operating under the 4th Amended Scheduling Order. *See* In the Matter of Asbury Automotive Group, Inc., et al., FTC Docket No. 9436, Fourth Revised Scheduling Order.; https://www.ftc.gov/legal-library/browse/cases-proceedings/222-3135-asbury-automotive-group-inc-et-al-matter.

Dated: December 12, 2025

Respectfully submitted,

FOLEY & LARDNER LLP

| | |
|---|---|
| Todd A. Murray | By: /s/ John Sepehri |
| (Texas State Bar No. 00794350) | |
| 2021 McKinney Avenue, Suite 1600 | Edward D. Burbach* |
| Dallas, Texas 75201 | (Texas State Bar No. 03355250) |
| Tel: 214.999.3000 | John Sepehri |
| Fax: 214.999.4667 | (Texas State Bar No. 00797408) |
| Email: tmurray@foley.com | Robert F. Johnson III |
| | (Texas State Bar No. 10786400) |
| Michael J. Lockerby | Brandon M. Livengood |
| (*Pro hac vice*) | (Texas State Bar No. 24128022) |
| Megan Chester | 600 Congress Avenue, Suite 3000 |
| (*Pro hac vice*) | Austin, Texas 78701 |
| Washington Harbour | Tel: 512.542.7000 |
| 3000 K Street N.W., Suite 600 | Fax: 512.542.7100 |
| Washington, D.C. 20007 | Email: eburbach@foley.com |
| Tel.: 202.672.5300 | Email: jsepehri@foley.com |
| Fax: 202.672.5399 | Email: rjohnson@foley.com |
| Email: mlockerby@foley.com | Email: brandon.livengood@foley.com |
| Email: mxchester@foley.com | |
| | *Attorney in charge |

**Counsel for the Plaintiffs**

11